

*ORIGINAL*

1  BRIEN SERS NICHOLAS
   Attorney at Law
2  UIU Bldg., 1st Floor
   P.O. Box 502876
3  Saipan, MP 96950

4  Telephone Nos.:     (670) 235-7190/91
   Facimile No.:       (670) 235-7192
5
   Attorney for Plaintiff
6      Rosario DLG Kumagai

7
8              IN THE FEDERAL DISTRICT COURT
                           FOR
9       THE DISTRICT OF THE NORTHERN MARIANA ISLANDS

   ROSARIO DLG KUMAGAI,              ]    CIVIL ACTION NO. 05-**0037**
10
                Plaintiff,           ]
11
       vs.                           ]
12
   PAMELA BROWN, a.k.a. PAMELA BROWN ]
13 BLACKBURN, personally and in her official ]
   capacity as the Attorney General for the ]
14 Commonwealth of the Northern Mariana Islands; ]    COMPLAINT AND DEMAND FOR
   FERMIN M. ATALIG, personally and in his ]         JURY
15 official capacity as the Secretary of Finance, ]
   COMMONWEALTH OF THE               ]
16 NORTHERN MARIANA ISLANDS;         ]
   MARIA LOURDES SEMAN ADA,          ]
17 personally and in her official capacity as ]
   the Executive Director for the Commonwealth ]
18 Development Authority;            ]
   COMMONWEALTH DEVELOPMENT          ]
19 AUTHORITY;                        ]
   BANK OF GUAM;                     ]
20 and JOHN DOES ONE thru TEN,       ]

21                Defendants.        ]
                                     ]
22
23
           **COMES NOW ROSARIO DLG GUERRERO KUMAGAI**, as Plaintiff herein, by and
24
   through her Counsel, Brien Sers Nicholas, Attorney at Law, and complains against the above-
25
   named Defendants in this matter as follows:
26
27
                        **Jurisdiction and Venue:**
28
   1.      Jurisdiction of this Honorable Court arises under 28 U.S.C. ¶¶ 1331, 1343(a), and

FILED
Clerk
District Court

NOV - 8 2005

For The Northern Mariana Islands
By_____
          (Deputy Clerk)

1367(a), 42 U.S.C. § 1983 (civil action for deprivation of rights), 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights), and 42 U.S.C. § 1988 (proceedings in vindication of civil rights).

2.    This Honorable Court is the proper venue as all the causes of action in this case arose our of events that took place on and within the Commonwealth of the Northern Mariana Islands.  48 U.S.C. § 1822(b).

3.    Jurisdiction of this Honorable Court for the pendent claims is authorized by Fed. R. Civ. Pro. 18(a) and arises under the "Doctrine of Pendent Jurisdiction" as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

**Parties:**

4.    Plaintiff Rosario Deleon Guerrero Kumagai, hereinafter referred to as "Plaintiff," is a citizen of the United States and a resident of Saipan, Commonwealth of the Northern Mariana Islands.  At all times relevant herein, Plaintiff was the owner of a certain "wetland" property identified as Lot E.A. 157-2-1 and located on Saipan, Northern Mariana Islands.

5.    Defendant Pamela Sue Brown, a.k.a., Pamela Brown Blackburn, hereinafter referred to as "Defendant Brown," is a citizen of the United States of America and a resident of Saipan, Commonwealth of the Northern Mariana Islands.  At all times relevant herein, Defendant Brown was the Attorney General for the Commonwealth of the Northern Mariana Islands, exercising the authorities vested in said office by the laws of the Commonwealth of the Northern Mariana Islands.

6.    Defendant Fermin M. Atalig,  hereinafter referred to as "Defendant Atalig," is a citizen of the United States of American and a resident of Saipan, Commonwealth of the Northern Mariana Islands.   At all times relevant herein, Defendant Atalig was the Secretary of Finance for the Commonwealth of the Northern Mariana Islands, exercising the authorities vested in said office by the laws of the Commonwealth of the Northern Mariana Islands.

7.    Defendant Commonwealth of the Northern Mariana Islands, hereinafter referred to as "Defendant CNMI," is a government duly created by the people of the Northern Mariana

2

Islands pursuant to the Constitution of the Commonwealth of the Northern Mariana Islands and the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, U.S. Public Law 94-241 (90 Stat. 263).

8.    Defendant Maria Lourdes Seman Ada, hereinafter referred to as "Defendant Ada," is a citizen of the United States of America and a resident of Saipan, Commonwealth of the Northern Mariana Islands.  At all times relevant herein, Defendant Ada was and continues to be the Executive Director of Defendant Commonwealth Development Authority ["Defendant CDA"], exercising the authorities vested in said office by the laws of the Commonwealth of the Northern Mariana Islands.

9.    Defendant Commonwealth Development Authority, hereinafter referred to as "Defendant CDA," is an autonomous governmental agency within Defendant CNMI pursuant to the laws of the Commonwealth of the Northern Mariana Islands.

10.    Defendant Bank of Guam, hereinafter referred to as "Defendant BOG," is a federally insured banking institution doing business as a banking institution within the Commonwealth of the Northern Mariana Islands.

11.    Defendants John Does 1 thru 10 are individuals who, in their personal or official capacities, either took actions or conspired with Defendants Brown and Atalig, in depriving or interfering with Plaintiff's rights and immunities in this case.  At the present, Plaintiff does not know the true identities of said Defendant John Does 1 thru 10 but, upon the same being made know to Plaintiff, Plaintiff will seek the permission of this Honorable Court in particularly identifying them in this action.

**Factual Allegations:**

12.    Plaintiff hereby repeats, realleges, and incorporates by reference her allegations in ¶¶ 1 through 11 above with the same force and effect as if herein set forth below.

13.    Plaintiff, at all times relevant herein, was the fee simple Owner of a certain "wetland property" more particularly identified as Lot E.A. 157-2-1, containing an area of 1,292 square meters, more or less, as set forth on DLS Check No. 2038/91, recorded at the

1  Commonwealth Recorder's Office as File No. 90-4988, dated December 5, 1990, hereinafter
2  referred to as "Plaintiff's Property."

3       14.     On November 16, 1993 and pursuant to its eminent domain powers, Defendant
4  CNMI took Plaintiff's Property for a public purpose, to wit: for the protection of the endangered
5  Marianas Moorhen "Pulattat." Attached hereto and made a part hereof, as **Exhibit "A,"** is a true
6  and correct copy of the certification letter from then Governor Lorenzo I. Deleon Guerrero to that
7  effect.

8       15.     Defendant CNMI took Plaintiff's Property but never did provide "just
9  compensation" to Plaintiff at that time as required by law.

10      16.     On July 23rd, 2002, Governor Juan N. Babauta ["Governor Babauta"] signed into
11 law CNMI Public Law 13-17 ["PL 13-17"], cited as the "Land Compensation Act of 2002,"
12 which authorized the Marianas Public Lands Authority ["MPLA"], in conjunction with Defendant
13 CDA, to incur a "public debt" in an amount of up to Forty Million Dollars ("$40,000,000.00) for
14 the purpose of settling pending land compensation claims against Defendant CNMI like that of
15 Plaintiff's. See PL 13-17.

16      17.     Defendant CDA, on behalf of Defendant CNMI and MPLA and, further, with the
17 assistance of Defendant BOG, did float a bond in said amount of $40,000,000.00 [referred to as
18 the "Compensation Fund"], as authorized under PL 13-17. Defendant BOG, at all times relevant
19 herein, was and still is the Trustee of said $40,000,000.00 land compensation fund with the
20 Commissioner of MPLA as the "Expenditure Authority" over the Compensation Fund subject,
21 however, to the approval of land claims by MPLA's Board of Directors,     See PL 13-17, § 4
22 (c).

23      18.     Under said PL 13-17, the settlement of land claims was subject to a prioritization
24 wherein private lands acquired for right of way purposes were to be compensated first, for
25 constructing public ponding basins second, for wetlands third, and for all other claims fourth.
26 See PL 13-17, § 4 (d).

27      19.     On September 21, 2004, said PL 13-17 was amended to do away with the
28 prioritization of land claim settlement above mentioned when Governor Babauta signed into law

4

CNMI Public Law 14-29 ["PL 14-29"].   The intent of PL 14-29 was to treat all private landowners whose lands were and have been taken by Defendant CNMI for any public purpose in an equal and fair manner.   See PL 14-29, § 1(b).   The foregoing was made very clear by Governor Babauta in his transmittal letter after signing PL 14-29 into law. Attached hereto and made a part hereof, as **Exhibit "B,"** is a true and correct copy of said transmittal letter from Governor Babauta, dated September 21, 2004.

20.   In addition to the above, PL 14-29 also mandated that the draw down of the Compensation Fund for payment of land claims shall be based upon procedures established by MPLA's Board of Directors and upon the concurrence of the Secretary of Finance, Department of Finance, CNMI ["CNMI-DOF"].   See PL 14-29, § 1(c).

21.   Pursuant to said PL 14-29, § 1(c), MPLA and CNMI-DOF did in fact enter into an "Agreement on Land Compensation Drawdown and Disbursement Procedures ['Disbursement Agreement']" which provided for, among other things, an opportunity for Defendant CNMI through the Office of the Attorney General to obtain court orders against those land claimants owing money to Defendant CNMI.   Except for the foregoing, no where in said Disbursement Agreement was Defendant Brown, individually or in her official capacity as the Attorney General for Defendant CNMI, not to mentioned Defendants CDA, Ada, and BOG, given any legal authority to stop any disbursement due to a land compensation beneficiary who has been identified by MPLA for compensation and whose land claim compensation has been concurred to by Defendant Atalig, like Plaintiff herein.   Defendant Brown, in her official capacity as the Attorney General for Defendant CNMI represented CNMI-DOF in the negotiation and execution of said Disbursement Agreement.   Attached hereto and made a part hereof, as **Exhibit "C,"** is a true and correct copy of said Disbursement Agreement.

22.   On May 5th, 2005 and pursuant to the above cited PL 13-17, as amended by PL 14-29, Plaintiff and MPLA entered into a Land Compensation Settlement Agreement ['MPLA Settlement Agreement'] wherein Plaintiff was to finally receive her land compensation, in the amount of $159,408.19, for the purpose of compensating her for the taking of her "wetland" by Defendant CNMI for public purposes, i.e., the preservation of wetlands and for the protection of

endangered spices here in the Northern Mariana Islands. Attached hereto and made a part hereof, as **Exhibit "D,"** is a true and correct copy of said MPLA Settlement Agreement mentioned herein.

23.    Pursuant to said MPLA Settlement Agreement, Plaintiff was also required to and did executed a Warranty Deed wherein she conveyed any and all of her rights, titles, and interests in her property to MPLA. Attached hereto and made a part hereof, as **Exhibit "E,"** is a true and correct copy of said Warranty Deed mentioned herein.

24.    On April 11th, 2005 and armed with the prior knowledge that Plaintiff will soon be receiving her land compensation from MPLA, as alleged in ¶ 22 above, the Office of the CNMI Attorney General ["AG's Office"] sued Plaintiff on behalf of Defendant CNMI and the Department of Public Health and Environmental Services ["DPHES"] in the CNMI Superior Court, in that lawsuit captioned as <u>CNMI, DPHES v. Rosario DLG Kumagai</u>, Civil Action No. 05-0149C ["CHC Lawsuit"], for payment of outstanding medical bills. Attached hereto and made a part hereof, as **Exhibit "F,"** is a true and correct copy of the complaint failed against Plaintiff in said CHC Lawsuit.

25.    The AG's Office, contemporaneous with the filing of the complaint in said CHC Lawsuit, also filed an *Ex Parte* Application for Writ of Prejudgment Attachment against Plaintiff and was able to obtain a Writ of Prejudgment Attachment against Plaintiff the following day, April 12th, 2005. Attached hereto and made parts hereof, as **Exhibits "G"** and **"H,"** are the true and correct copies of said *Ex Parte* Application for Writ of Prejudgment Attachment and Writ of Prejudgment mentioned herein.

26.    On April 28th, 2005, Defendant CNMI through DPHES, represented by Defendant Brown, and Plaintiff entered into a Settlement Agreement ["CHC Settlement Agreement"] in above-referred to CHC Lawsuit. The CHC Settlement Agreement was drafted by the AG's Office, wherein they all agreed that Plaintiff will only received half of her land compensation in the amount of $79,704.09, with the other half going to Defendant CNMI for payments of Plaintiff's medical bills. Pursuant to said CHC Settlement Agreement, Defendants CNMI and Brown made the representations that "the parties have conducted an investigation into the facts and the law underlying the claims asserted in the Action [i.e., the CHC Lawsuit] and have

concluded that a settlement of such claims according to the terms set forth below is in their respective best interests[.]" Defendant CNMI and Defendant Brown, furthermore, represented that "Plaintiff [i.e., Defendant CNMI] further agrees not to object, obstruct, or in any way hinder the disbursement of the remaining funds of approximately $79,704.10 held by MPLA to Defendant [i.e., Plaintiff herein]." Attached hereto and made a part hereof, as **Exhibit "I,"** is a true and correct copy of the CHC Settlement Agreement herein mentioned.

27.    At all times relevant herein and in light of the above-mentioned CHC Lawsuit, DefendantS CNMI and Brown knew or should have known that Plaintiff was and continues to be a kidney dialysis patient at CHC since 1998 and that Plaintiff was on a kidney transplant waiting-list with the California Pacific Medical Center, San Francisco, CA. Among the conditions that Plaintiff needed to meet was that she be financially able to afford such a transplant. Given the filing of the CHC Lawsuit, said Defendants CNMI and Brown therefore knew or should have known that Plaintiff did not have the financial resources for such a kidney transplant. Attached hereto and made a part hereof, as **Exhibit "J,"** is a true and correct copy of a September 13th, 2004 letter to Plaintiff and Defendant CNMI regarding the above allegations.

28.    Around the same time that the CHC Lawsuit was being settled, as alleged in ¶ 26, *supra*, and consistent with the Disbursement Agreement above-mentioned, on May 5th, 2005, MPLA did prepared a certain Requisition No. FY 05-11 in the name of Plaintiff and forwarded the same to Defendant Atalig, on May 6th, 2005, for his concurrence of Secretary Atalig. A copy of the same was also forwarded to the AG's Office. Attached hereto and made a part hereof, as **Exhibit "K,"** is a true and correct copy of Plaintiff's Requisition No. FY 05-11 along with a transmittal letter from the Commissioner of MPLA.

29.    Based on information and belief, when Plaintiff's Requisition No. FY 05-11 was received by Defendant Atalig, Defendant Atalig was instructed by Defendant Brown not to concur with the same. Defendant Brown also instructed Clyde Lemons, Jr., an Assistant Attorney General, to forward a letter to Secretary Atalig instructing him as well not to process Plaintiff's Requisition No. FY 05-11. Attached hereto and made a part hereof, as **Exhibit "L,"** is a true and correct copy of said letter, dated May 9th, 2005, to Secretary Atalig mentioned herein.

7

30. From May 6th, 2005 up to and including the filing of that certain civil action against Plaintiff in the CNMI Superior Court on August 15th, 2005, captioned as <u>CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al.</u>, Civil Action No. 05-0332E, a period of over 3 months, Defendants CNMI, Brown and Atalig, all refused to allow the release of Plaintiff's Requisition No. FY 05-11 back to MPLA for further processing consistent with the Disbursement Agreement herein-mentioned. In fact, during said period of time, neither Defendants CNMI, Brown, or Atalig ever advised Plaintiff of the reason or reasons why her land compensation was been delayed and prevented from being released to MPLA. Attached hereto and made a part hereof, as **Exhibit "M,"** is a true and correct copy of a letter from Mr. Edward M. Deleon Guerrero, MPLA's Commissioner, to Defendant Atalig inquiring of the status of certain requisitions, including that of Plaintiff's.

31. In light of the above allegations, on August 8th, 2005, Defendant Atalig finally gave his concurrence to Plaintiff's Requisition No. FY 05-11 and released the same back to MPLA. On the same day, August 8th, 2005 and upon receipt of Plaintiff's Requisition No. FY 05-11 from Defendant Atalig, MPLA transmitted the same to Defendants Ada and CDA for said Defendants to inform Defendant BOG [as the "Trustee"] to disbursement the funds for Plaintiff's land compensation. Attached hereto and made a part hereof, as **Exhibit "N,"** is a true and correct copy of MPLA transmittal letter along with Plaintiff Requisition No. FY 05-11 to Defendants Ada and CDA as herein mentioned.

32. On August 9th, 2005, the following day, and pursuant to MPLA's instructions, Defendants CDA and Ada did forward Plaintiff's Requisition No. FY 05-11 to Defendant BOG [as the "Trustee"] for the actual disbursement of funds to compensate Plaintiff in this case. Attached hereto and made a part hereof, as **Exhibit "O,"** is a true and correct copy of the transmittal letter along with Plaintiff Requisition No. FY 05-11 herein mentioned to Defendant BOG from Defendants CDA and Ada.

33. On the same day, August 9th, 2005, and after Defendants Ada and CDA had forwarded Plaintiff's Requisition No. FY 05-11 to Defendant BOG [as the "Trustee"], Defendant Brown contacted Defendant CDA and Ada and instructed them not to process Plaintiff's

Requisition No. FY 05-11 and also to inform Defendant BOG [as the "Trustee"] of the same. Defendants Ada and CDA complied with said instruction and did in fact advised Defendant BOG [as the "Trustee"] to stop the processing of Plaintiff's Requisition No. FY 05-11. Defendant BOG [as the "Trustee"], for its part, did also comply with and did in fact stop the processing of Plaintiff's Requisition No. FY 05-11. See **Exhibit "O."**

34.     On August 10th, 2005, Defendant Brown memorialized her instructions in a letter to Defendants Ada and CDA. In said letter, Defendant Brown basically took it upon herself to decide that Plaintiff's 'wetland' was worthless. Attached hereto and made a part hereof, as **Exhibit "P,"** is a true and correct copy of said letter from Defendant Brown to Defendants Ada and CDA. A copy of said letter from Defendant Brown was also forwarded by Defendant Ada to Defendant BOG as well. Attached hereto and made a part hereof, as **Exhibit "Q,"** is a true and correct copy of the facsimile transmittal to Defendant BOG by Defendant Ada.

35.     On August 15th, 2005, as mentioned in ¶ 32, Defendants CNMI and Brown caused to be file with the CNMI Superior Court a lawsuit against Plaintiff and others, captioned as CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al., Civil Action No. 05-0332E [the "MPLA Lawsuit"], wherein said Defendants sought declaratory and injunctive reliefs based on their argument that Plaintiff's land compensation claim was void under CNMI PL 13-17, as amended by CNMI PL 14-29. At all times relevant herein, based on said CNMI PL 13-17, as amended by CNMI PL 14-29, was well as their own actions, Defendants CNMI and Brown knew or should have known that the MPLA Lawsuit was a frivolous one. Attached hereto and made a part hereof, as **Exhibit "R,"** is a true and correct copy of the complaint filed by said Defendants CNMI and Brown in the above-cited lawsuit.

36.     On August 19th, 2005 and instead of seeking any injunctive reliefs from the CNMI Superior Court, as they requested in their complaint in the MPLA Lawsuit, Defendants CNMI and Brown then entered into an agreement with Defendants Ada and CDA whereby said Defendants effectively put a stop on the processing of Plaintiff's land compensation, i.e., Requisition No. FY 05-11. At all times relevant herein, based on said CNMI PL 13-17, as amended by CNMI PL 14-29, was well as their own actions, Defendants CNMI, Brown, CDA,

1 | and Ada knew or should have known that said agreement between them Ada was illegal and,
2 | further, that neither of them had any legal authority to stop the processing of Plaintiff's
3 | Requisition No. FY 05-11. Attached hereto and made a part hereof, as **Exhibit "S,"** is a true and
4 | correct copy of said CDA-CNMI Agreement herein mentioned.

5 | 37.  On August 30th, 2005, at around 4:33 p.m., the eve of the hearing of Plaintiff's
6 | motion to dismiss the MPLA Lawsuit, Defendants CNMI and Brown caused to be filed with the
7 | CNMI Superior Court an amended complaint purporting to amend the original complaint in the
8 | MPLA Lawsuit based on a non-existing law. Attached hereto and made a part hereof, as **Exhibit**
9 | **"T,"** is a true and correct copy of the amended complaint herein mentioned.

10 | 38.  On September 27th, 2005 and based on Plaintiff's motion to dismiss and to strike,
11 | Judge David A. Wiseman, Associate Judge, CNMI Superior Court, issued his written decision
12 | in the MPLA lawsuit by granting Plaintiff's motion to strike the amended complaint and also her
13 | motion to dismiss the MPLA Lawsuit. Judge Wiseman's decision is now a final decision not
14 | subject to any appeal. Attached hereto and made a part hereof, as **Exhibit "U,"** is a true and
15 | correct copy of said decision by Associate Judge Wiseman.

16 | 39.  At all times relevant herein, Defendants CNMI, Brown, Atalig, CDA, Ada, and
17 | BOG and each of them took the actions herein alleged against Plaintiff knowing full well that
18 | similarly situated "wetland" owners as that of Plaintiff, who have had their "wetlands properties"
19 | taken by Defendant CNMI, have been compensated without any interferences, delays, or stoppage
20 | of the same by any of said Defendants. These landowners and their compensation transactions,
21 | referred herein, are as follows, to wit:

22 |         a.    Land compensation payment to a Mrs. Teresita A. Deleon Guerrero Tudela
23 | pursuant a Land Compensation Settlement Agreement ["Settlement Agreement"] and a Warranty
24 | Deed ["Deed"], both dated January 31st, 2005, for the amount of $158,596.97. Attached hereto
25 | and made parts hereof, as **Exhibits "V" & "W"** respectively, are the true and correct copies of
26 | the Settlement Agreement and the Deed herein mentioned.

27 |         b.    Land compensation payment to Mrs. Ana DLG. Gillespie pursuant to a
28 | Land Compensation Settlement Agreement ["Settlement Agreement"] and a Warranty Deed

["Deed"], both dated April 13th, 2005, for the amount of $159,408.19. Attached hereto and made parts hereof, as **Exhibits "X" & "Y"** respectively, are the true and correct copies of the Settlement Agreement and the Deed herein mentioned.

       c.    Land compensation payment to Mr. Nicolas C. Sablan and Mrs. Lucy Ann T. Sablan pursuant to a Land Compensation Settlement Agreement ["Settlement Agreement"] and a Warranty Deed ["Deed"], both dated April 20th, 2005, for the amount of $1,958,587.32. Attached hereto and made parts hereof, as **Exhibits "Z" & "AA"** respectively, are the true and correct copies of the Settlement Agreement and the Deed herein mentioned.

       d.    Land compensation payment to Mr. Antonio B. Cabrera pursuant to an Amended Land Compensation Settlement Agreement ["Settlement Agreement"] and an Amended Warranty Deed ["Deed"], both dated April 19th, 2005, for the amount of $2,768,409.70. Attached hereto and made parts hereof, as **Exhibits "BB" & "CC"** respectively, are the true and correct copies of the Settlement Agreement and the Deed herein mentioned.

       40.    In addition to the above-allegations in ¶ 41 above, said Defendants CNMI, Brown, Atalig, CDA, Ada, and BOG, and each of them, have also allowed another similarly situated "wetland" Owner as that of Plaintiff to be fully compensated for the taking of her "wetland property." The foregoing compensation took place during the pendency of the MPLA Lawsuit with the CNMI Superior Court and without any lawsuit being filed against said Owner, much less any interference, obstruction, or stoppage by any of said Defendants. Attached herewith and forming part of **Exhibit "DD,"** are the true and correct copies of the relevant documents in support of the foregoing allegations, to wit:

       a.    Copy of a Land Compensation Settlement Agreement between one Catherine Rose U. Sheu and MPLA (dated October 24th, 2005), <u>see</u> **Exhibit "DD-1;"**

       b.    Copy of a Warranty Deed by one Catherine Rose U. Sheu (dated October 20th, 2005), <u>see</u> **Exhibit "DD-2;"**

       c.    Copy of a letter from Mr. Edward M. Deleon Guerrero, MPLA's Commissioner, to Defendant Atalig (dated October 4th, 2005) regarding Requisition No. FY 06-02 (Catherine Rose U. Sheu), <u>see</u> **Exhibit "DD-3;"**

11

d.    Copy of Requisition No. FY 06-02 (Catherine Rose U. Sheu), <u>see</u> **Exhibit "DD-4;"**

e.    Copy of a letter from Defendants CDA and Ada to Defendant BOG (dated October 12th, 2005) for payment of Requisition No. FY 06-02 (Catherine Rose U. Sheu), <u>see</u> **Exhibit "DD-5;"** and

f.    Copy of a Check No. 009811, in the amount of $107,101.28, payable to Catherine Rose U. Sheu (dated October 13th, 2005), <u>see</u> **Exhibit "DD-6."**

### Count I:    Violation of 42 U.S.C. § 1983 (Due Process and Equal Protection) Against Defendants Brown, Atalig, CDA, Ada, and BOG

41.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 above with the same force and effect as if herein set forth below.

42.    At all times relevant herein, Plaintiff had rights, privileges, and immunities under the due process and equal protection clauses of the Federal and NMI constitutions, including her right not be deprived of her constitutionally protected interest in her property.  U.S. Const. Amend. 5 & 14; NMI Const. Art. 1, §§ 5 & 6.

43.    At all times relevant herein, Defendants Brown, Atalig, CDA, Ada, and BOG were state actors and their conducts were subject to 42 U.S.C. §§ 1983.

44.    Acting under the color of law and in conspiracy with one another, said Defendants worked a denial of Plaintiff's rights, privileges, or immunities secured to her by the Constitutions of the United States and the Northern Mariana Islands and also by Federal and NMI laws as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article 1, §§ 5 and 6 of the NMI Constitution.  The actions taken by said Defendants included but were not limited to the following:

a.    be refusing and preventing the release of Plaintiff's Requisition No. FY 05-11 thereby resulting in the delay of releasing the funds necessary to compensate Plaintiff for the taking of her property by Defendant CNMI as called for and agreed to by and between Plaintiff and MPLA pursuant to the MPLA Settlement Agreement in this case;

1           b.     by refusing and continuing to prevent the release of the funds to

2 compensate Plaintiff, in light of their knowledge and actions in having allowed certain wetland

3 land Owners similarly situated as that of Plaintiff to be fully compensated for the taking of their

4 wetland properties no different then that of Plaintiff;

5           c.     by filing with the CNMI Superior Court a frivolous lawsuit [i.e., the MPLA

6 Lawsuit] aimed at further preventing and denying Plaintiff her rights and her receiving her land

7 compensation payment for the taking of her property by Defendant CNMI; and

8           d.     by allowing and permitting another wetland land Owner similarly situated

9 as that of Plaintiff to be again fully compensated for the taking of her wetland property no

10 different then that of Plaintiff but, all the while still, maintaining the MPLA Lawsuit against

11 Plaintiff by arguing that Plaintiff's land compensation was legally void.

12     45.    As a result of the concerted unlawful and malicious conducts as herein alleged by

13 Plaintiff against said Defendants Brown, Atalig, CDA, Ada, and BOG, Plaintiff did suffer and

14 was deprived of her rights to equal protection of all the laws and to due process of the laws, of

15 her right to her property, and the due course of justice was and continues to be impeded, all in

16 violation of the U.S. Const. Amends. 4, 5, & 14; NMI Const. Art. 1, §§ 5 & 6, and 42 U.S.C.

17 § 1983.

18     46.    Plaintiff has been and continues to be harmed, has and continues to incur legal

19 debts and expenses which would not otherwise have been incurred, and has suffered and

20 continues to suffer emotional scarring, all compensable as emotional distress and other damages

21 in this case.

22

23     WHEREFORE, Plaintiff demands judgment for the violations of her civil rights against

24 Defendants Brown, Atalig, CDA, Ada, and BOG, jointly and severally, for actual, general,

25 special, compensatory damages in the amount of $5,000,000 and further demands judgment

26 against each of said Defendants, jointly and severally, for punitive damages in an amount to be

27 determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other

28 relief deemed to be just, fair, and appropriate by this Honorable Court.

**Count II:  Violation of 42 U.S.C. § 1985(3) (Conspiracy)**
**Against Defendants Brown, Atalig, CDA, Ada, and BOG**

47.      Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 46 above with the same force and effect as if herein set forth below.

48.      The conspiratorial purposes, in this case, was for said Defendants Brown, Atalig, CDA, Ada, and BOG to deny and deprive Plaintiff of her constitutional and statutory rights to her property, i.e., her land compensation.

49.      The over acts committed by said Defendants Brown, Atalig, CDA, Ada, and BOG, in the furtherance of the conspiracy as herein alleged, included but were not limited to Defendant Brown instructing Defendant Atalig not to concur with Plaintiff's requisition, Defendant Brown instructing Lemons to sign-off and forward a letter to Defendant Atalig telling him not to concur with Plaintiff's requisition, Defendant Brown filing of an otherwise frivolous lawsuit before the CNMI Superior Court [the MPLA Lawsuit], Defendant Brown instructing and Defendants CDA, Ada, and BOG agreeing with Defendant Brown not to process Plaintiff's land compensation, i.e., Requisition No. FY 05-11.

50.      Defendants CDA, Ada and BOG joined in and became part of the conspiracy when they agreed to and consented to stop the processing of Plaintiff's Requisition No. FY 05-11 that would have resulted in Plaintiff finally receiving her long-overdue land compensation in this case for the taking of her property.

51.      Plaintiff, at all times relevant herein, was a part of a class of persons entitled to have the taking of her property compensated by Defendant CNMI as provided for under the Federal and CNMI constitutions, as well as under the CNMI PL 13-17, as amended by CNMI PL 14-29.

52.      As a result of the concerted unlawful and malicious conspiracy of said Defendants, Plaintiff was deprived of her rights to both due process and the equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §§ 1983 and 1985.

WHEREFORE, Plaintiff demands judgment for the violations of her civil rights against said Defendants Brown, Atalig, CDA, Ada, and BOG, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable Court.

### Count III:  Common Law Conspiracy Against
### Defendants Brown, Atalig, CDA, Ada, and BOG

53.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 52 above with the same force and effect as if herein set forth below.

54.    Defendant Brown, Atalig, CDA, Ada and BOG, at all times relevant herein, (a) all had an object to be accomplished; (b) had an agreement to the object or course of action, to wit: to deprive Plaintiff of her rights under the constitutions and laws of the United States and the CNMI; (c) performed one or more unlawful overt acts; and (d) caused Plaintiff damages that were a direct result of those acts, all herein alleged.

55.    In furtherance of their object, said Defendants did two or more overt acts against Plaintiff.  These overt acts included, but were not limited to, the facts outlined in Count II, *supra*, conspiracy under § 1985(3).

56.    Defendants Brown, Atalig, CDA, Ada and BOG are all liable for acts taken against Plaintiff in this case, as herein alleged.

57.    Plaintiff suffered harm and damages as a direct result of those acts against Plaintiff.

WHEREFORE, Plaintiff demands judgment for the violations of her civil rights against said Defendants Brown, Atalig, CDA, Ada, and BOG, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000, and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be

determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable Court.

### Count IV:  Abuse of Process Against
### Defendants CNMI and Brown

58.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 above with the same force and effect as if herein set forth below.

59.    Defendants CNMI and Brown willfully and intentionally abused the process in this case by filing a frivolous lawsuit against Plaintiff in the CNMI Superior Court, the MPLA Lawsuit, as alleged in ¶ 35, *supra*.

60.    Defendants CNMI and Brown willful and intentional filing of the MPLA Lawsuit in this case against Plaintiff was done for the ulterior motives or purposes of continuing to deprive Plaintiff's of her rights in this case and further delaying Plaintiff from receiving what is otherwise her property in this case, to wit;  her land compensation.

61.    The motives or purposes by Defendants CNMI and Brown in filing the MPLA Lawsuit against Plaintiff in this case were not proper or lawful in the use of such process in light of the PL 13-17, as amended by PL 14-29, and, in particular, their own actions herein alleged in allowing other similarly situated "wetland" Owners to be fully compensated for the taking of their wetland properties no different then Plaintiff herein and yet continuing to deny Plaintiff her land compensation.

62.    As a direct and proximate result of said misuse of process by Defendants CNMI and Brown, Plaintiff has suffered harm and damages including but not limited to having incurred attorney's fees and costs for her defense in said MPLA Lawsuit, to having lost potential interest income on her land compensation, and to having had to incur additional interest charges on her medical bills with Defendant CNMI.

WHEREFORE, Plaintiff demands judgment for said abuse of process against Defendants CNMI and Brown, jointly and severally, for actual, general, special, compensatory damages in

the amount of $5,000,000 and further demands judgment against Defendant Brown for punitive damages in an amount to be determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable Court.

### Count V: Malicious Prosecution Against
### Defendants CNMI and Brown

63.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 and ¶¶ 59 through 62 above with the same force and effect as if herein set forth below.

64.    On August 15th, 2005, Defendants CNMI and Brown cause to be filed the MPLA Lawsuit against Plaintiff in the CNMI Superior Court seeking declaratory and injunctive reliefs, as alleged in ¶ 35, *supra*.

65.    Defendants CNMI and Brown, in said MPLA Lawsuit, alleged that the land compensation payable to Plaintiff for the taking of her 'wetland' property was void under CNMI PL 13-49, as amended by CNMI PL 14-29.

66.    On August 30th, 2005 and in response to Plaintiff's motion to dismiss their complaint, set to be heard before the CNMI Superior Court the following day (August 31st, 2005) at 9:00 a.m., Defendants CNMI and Brown again caused to be filed an amended complaint and cited to a non-existing public law to the CNMI Superior Court in support of the same. Plaintiff, in response, moved to strike said amended complaint.

67.    Defendants CNMI and Brown, at all times relevant herein, knew or should have known that their allegations made against Plaintiff in their complaint and amended complaint in the MPLA Lawsuit all lacked any factual or legal basis and, therefore, were frivolous.

68.    Defendants CNMI and Brown, in light of the facts of this case and applicable laws, instituted and continue to prosecute the MPLA Lawsuit against Plaintiff without probable cause and for an improper purpose of continuing to deny Plaintiff her land compensation.

69.    On September 27th, Associate Judge Wiseman granted Plaintiff's motion to dismiss

17

1 | and to strike the complaint, including the amended complaint, filed by Defendants CNMI and
2 | Brown in said MPLA Lawsuit.

3 | 70.    As a direct and proximate result of said malicious prosecution by Defendant CNMI
4 | and Brown, Plaintiff has suffered harm and damages as alleged in ¶ 62, *supra*.

5 |

6 | WHEREFORE, Plaintiff demands judgment for said malicious against Defendants CNMI
7 | and Brown, jointly and severally, for actual, general, special, compensatory damages in the
8 | amount of $5,000,000 and further demands judgment against Defendant Brown for punitive
9 | damages in an amount to be determine by a jury at trial, plus the costs of this action, including
10 | attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable
11 | Court.

12 |

13 | **Count VI:  Breach of Duty of Good Faith and Fair Dealing**
**Against Defendant CNMI (CHC Settlement Agreement)**
14 |

15 | 71.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶
 | 1 through 40 above with the same force and effect as if herein set forth below.
16 |

17 | 72.    Plaintiff and Defendant CNMI, at all times relevant herein, had between them a
 | legally binding and enforceable contract in the form of a settlement agreement, to wit:  the CHC
18 |
 | Settlement Agreement.
19 |

20 | 73.    Defendant CNMI breached its duty of good faith and fair dealing with Plaintiff
 | under said CHC Settlement Agreement when it refused to pay Plaintiff her land compensation
21 |
 | in the amount of $79,704.10, as agreed to, and, instead, instituted a frivolous lawsuit against
22 |
 | Plaintiff in the CNMI Superior Court, i.e., the MPLA Lawsuit, contrary to the specific terms and
23 |
 | conditions of the CHC Settlement Agreement
24 |

25 | 74.    As a direct and proximate result of said breach by Defendant CNMI, Plaintiff has
 | suffered harm and damages as alleged in ¶ 62, *supra*.
26 |

27 |

28 | WHEREFORE, Plaintiff demands judgment for said breach against Defendant CNMI for

actual, general, special, compensatory damages in the amount of $5,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable Court.

### Count VII:  Intentional Interference with Contractual Rights
### Against Defendants Brown, Atalig, CDA, Ada, and BOG
### (MPLA Settlement Agreement)

75.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 above with the same force and effect as if herein set forth below.

76.    At all times relevant herein, Defendants Brown, Atalig, CDA, Ada, and BOG knew or should have known that Plaintiff and MPLA had between them a legally binding and enforceable contract in the form of a settlement agreement, to wit:  the MPLA Settlement Agreement.

77.    In light of the foregoing knowledge on the part of said Defendants Brown, Atalig, CDA, Ada, and BOG, said Defendants and each of them intentionally and maliciously took actions alleged herein that interfered with said MPLA Settlement Agreement and aimed at further denying Plaintiff her rights under said settlement agreement to the receipt of her land compensation.

78.    Defendants Brown, Atalig, CDA, Ada, and BOG, furthermore, knew or should have known that their actions in this case were improper and were all illegal.

79.    As a direct and proximate result of said interference by Defendants Brown, Atalig, CDA, Ada, and BOG, Plaintiff has suffered harm and damages as alleged in ¶ 62, *supra.*

WHEREFORE, Plaintiff demands judgment for said interference against Defendants Brown, Atalig, CDA, Ada, and BOG for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally for punitive damages in an amount to be determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate

1 | by this Honorable Court.

2

3 | **Count VIII: Intentional Interference with Economic Relations**
4 | **Against Defendants Brown, Atalig, CDA, Ada, and BOG**
| **(MPLA Settlement Agreement)**

5 | 80.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶
6 | 1 through 40 and ¶¶ 76 through 79 above with the same force and effect as if herein set forth
7 | below.

8 | 81.    At all times relevant herein, Defendants Brown, Atalig, CDA, Ada, and BOG knew
9 | or should have known that Plaintiff and MPLA had between themselves an economic relation as
10 | a result of a settlement agreement, to wit:  the MPLA Settlement Agreement.

11 | 82.    In light of the foregoing knowledge on the parts of said Defendants Brown, Atalig,
12 | CDA, Ada, and BOG, said Defendants and each of them intentionally and maliciously took
13 | actions, as alleged ¶ 49, *supra*, that interfered with Plaintiff's economic relations with MPLA.

14 | 83.    Defendants Brown, Atalig, CDA, Ada, and BOG, furthermore, knew or should
15 | have known that their actions in this case were improper and were all illegal.

16 | 84.    As a direct and proximate result of said interference by Defendants Brown, Atalig,
17 | CDA, Ada, and BOG, Plaintiff has suffered harm and damages in not having been able to receive
18 | her land compensation as originally agreed upon, in having lost potential interest income, and in
19 | having had to incur additional interest charges on her medical bills with Defendant CNMI.

20

21 | WHEREFORE, Plaintiff demands judgment for said interference against Defendants
22 | Brown, Atalig, CDA, Ada, and BOG, jointly and severally, for actual, general, special,
23 | compensatory damages in the amount of $5,000,000 and further demands judgment against each
24 | of said Defendants, jointly and severally, for punitive damages in an amount to be determine by
25 | a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed
26 | to be just, fair, and appropriate by this Honorable Court.

27

28

## Count IX:  Breach of Fiduciary Duties Against
### Defendant BOG

85.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 54 and ¶¶ 76 through 84 above with the same force and effect as if herein set forth below.

86.    At all times relevant herein, Defendant BOG was a Trustee of the Land Compensation Fund and Plaintiff, as a Land Claimant, was a Beneficiary under said Land Compensation Fund, as alleged in ¶17, *supra*.

87.    Defendant BOG therefore owed strict fiduciary duties to Plaintiff.

88.    Defendant BOG was required at all times to act honestly and in good faith with the view to the best interest of Plaintiff and to exercise care, skill, and diligence that a reasonably prudent person would exercise in comparable circumstances.

89.    Defendant BOG breached these duties to Plaintiff when it, among other things, decided not to process Plaintiff's Requisition No. FY 05-11 and further decided to join in on the conspiracy with the other Defendants to deny and deprive Plaintiff's of her constitutional and statutory rights herein allege, including but not limited to interfering with Plaintiff's contractual rights and economic relations.


WHEREFORE, Plaintiff demands judgment for said breach against Defendant BOG for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against said Defendant for punitive damages in an amount to be determine by a jury at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate by this Honorable Court.


## Count X:  Intentional Infliction of Emotional Distress
### Against All Defendants

90.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 89 above with the same force and effect as if herein set forth below.

91.    At all times relevant herein, all the Defendants and each of them took actions

21

1  intentionally and deliberately which inflicted emotional distress on Plaintiff. These actions
2  included but were not limited to interfering with her civil, statutory and contractual rights as
3  herein alleged.

4      92.    The actions and conducts of said Defendants and each of them were extreme and
5  outrageous, beyond any and all possible bounds of decency and utterly intolerable in a civilized
6  community.

7      93.    The emotional distress sustained by Plaintiff were severe and of a nature that no
8  reasonable person could or should be expected to endure.

9      94.    As a direct and proximate cause of said extreme and outrageous conducts and
10 actions of said Defendants, Plaintiff has suffered and with a high degree of likelihood, will
11 continue to suffer mental pain and anguish, embarrassment, humiliation, and severe emotional
12 trauma.

13

14     WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally,
15 for actual, general, special, compensatory damages in the amount of $5,000,000 and, except for
16 Defendants CNMI and CDA, further demands judgment against the remaining Defendants, jointly
17 and severally, for punitive damages in an amount to be determine by a jury at trial, plus the costs
18 of this action, including attorney's fees, and such other relief deemed to be just, fair, and
19 appropriate by this Honorable Court.

20

21                    **Count XI:  Negligent Infliction of Emotional Distress**
                                    **Against all Defendants**
22
23     95.    Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶
   1 through 89 above with the same force and effect as if herein set forth below.
24
25     96.    At all times relevant herein, all the Defendants and each of them had and
   continued to have an affirmative duty to perform their duties and responsibilities in this case
26
   towards Plaintiff in such manners as not to inflict emotional distress on Plaintiff.
27
28     97.    The Defendants all breached their duties in this case towards Plaintiff by

                                        22

1 negligently performing such duties, as herein alleged, thereby causing Plaintiff to suffer emotional

2 distress.

3    98.    As a direct and proximate cause of the negligent conducts and actions of said

4 Defendants, Plaintiff has suffered and will continue to suffer emotional distress such as severe,

5 continuous headaches, pain, anguish, several emotional trauma, embarrassment, and humiliation.

6

7    WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally,

8 for actual, general, special, compensatory damages in the amount of $5,000,000 and, except for

9 Defendants CNMI and CDA, further demands judgment against the remaining Defendants, jointly

10 and severally, for punitive damages in an amount to be determine by a jury at trial, plus the costs

11 of this action, including attorney's fees, and such other relief deemed to be just, fair, and

12 appropriate by this Honorable Court.

13

14    Dated this the ___7th___ day of November, 2005.

15

16

17                                             _____
                                               Brien Sers Nicholas, Esq.
18                                             Attorney for Plaintiff

19

20                        Request for a Jury Trial:

    COMES NOW ROSARIO DLG KUMAGAI, Plaintiff herein, by and through her Counsel,
21
Brien Sers Nicholas, Esq., and respectfully request that this matter be tried before a Jury in this
22
Honorable Court.
23
    Dated this the ___7th___ day of November, 2005.
24

25

26

27                                             _____
                                               Brien Sers Nicholas, Esq.
28                                             Attorney for Plaintiff

23