# EXHIBIT "U"

Brien Sers Nicolas, esq.

1

2

3

4

5    FOR PUBLICATION

6

7                    IN THE SUPERIOR COURT

8                           OF THE

9        COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

10

11   COMMONWEALTH OF THE          )   Civil Action No. 05-0332E
     NORTHERN MARIANA ISLANDS, EX )
12   REL. PAMELA BROWN, ATTORNEY  )
     GENERAL,                     )
13                                )
                  Plaintiff,      )   ORDER STRIKING PLAINTIFF'S
14                                )   AMENDED COMPLAINT; GRANTING
               vs.                )   IN PART AND DENYING IN PART
15                                )   DEFENDANT'S MOTIONS TO DISMISS
                                  )
16   MARIANAS PUBLIC LANDS        )
     AUTHORITY, VICTORIA S.       )
17   NICHOLAS, and ROSARIO DLG    )
     KUMAGAI,                     )
18                                )
                                  )
19                Defendants.     )
                                  )
20

21

22       **THIS MATTER** came on for hearing September 2, 2005 at 1:30 p.m. pursuant to a

23   Motion by Defendants to Dismiss Plaintiff's Complaint pursuant to Com. R. of Civ. Pro.

24   12(b)(6) and 56, and Motion to Strike Plaintiff's Amended Complaint.  James Livingston and

25   Deborah Covington appeared on behalf of Pamela Brown, who filed suit on behalf of the

26   Commonwealth ("Government" or "Plaintiff").  Ramon Quichocho appeared for Marianas Public

27   Lands Authority ("MPLA"), Brien Sers Nicholas appeared for Rosario DLG Kumagai,

28

                                    -1-

RECEIVED

**EXHIBIT "U"**

("Kumagai"), and Edward Manibusan appeared for Victoria S. Nicholas ("Nicholas").

## I. BACKGROUND

On August 15, 2005, Plaintiffs filed a Complaint seeking declaratory and injunctive relief to stop MPLA from issuing payment to Defendants as compensation for wetlands. Defendants responded with a Motion to Dismiss pursuant to Com. R. Civ. Pro. 12(b)(6), or in the alternative, a motion for summary judgment, arguing that there are no factual disputes in this case.

Defendants initially asked the Court to make a *sua sponte* ruling without first giving the Plaintiff notice and opportunity to be heard. The *sua sponte* request was followed with an *Ex Parte* Motion to Shorten time for a hearing of the Motion to Dismiss. The Court granted the Motion to Shorten time due to Defendant Kumagai's serious illness and the special circumstances of this case and a hearing was scheduled for August 31, 2005. Thereafter the hearing was rescheduled for September 2, 2005 due to inclement weather closing the court on August 31, 2005.

Plaintiff did not file a response to Defendants' motion, choosing instead to file an Amended Complaint at 4:33 p.m. on August 30, 2005, on the eve of the scheduled hearing, citing what they claim to be the liberal amendment policy found in Com. R. Civ.P. 15(a). At the rescheduled September 2, 2005 hearing, the Court tentatively granted Defendants' Motion to Strike Plaintiff's Amended Complaint and the parties proceeded with oral arguments on the Motion to Dismiss.

## II. MOTION TO STRIKE

Turning first to the Motion to Strike. Rule 15(a) of the Commonwealth Rules of Civil Procedure, which track the Federal Rules of Civil Procedure, allows a party to amend the party's

pleading once as a matter of course at any time before a responsive pleading is served. See,

Com. R. Civ. Pro. 15(a); Fed. R. Civ. Pro. 15(a). The rules specifically exclude motions from the

definition of a pleading. *See* Rule 7(a). Defendants filed a Motion to Dismiss and did not file

an Answer or any other document that could be deemed a pleading. Consequently, the

Government did not lose its ability to file an Amended Complaint. However, the underlying

facts or circumstances relied on by the plaintiff must be a proper subject of relief. See generally

*Foman v. Davis,* 371 U.S. 178 (Mass. 1962). Consequently, while the request to file an amended

complaint shall be freely given, it shall only be freely given in the absence of any apparent or

declared reasons such as undue delay, bad faith or dilatory motive. *Id.* To that end, it is "well

within the district court's discretion" to allow or disallow an amended complaint. *Donahue I,*

304 F.3d at 121; *see also O'Connell v. Hyatt Hotels of P.R.,* 357 F.3d 152, 154 (1st Cir.2004).

Here, Plaintiff's amended complaint reiterated the claims stated in the original complaint

and added a cause of action citing a non-existent law. The lack of any legal basis for the

additional cause of action combined with filing of the Amended Complaint on the eve of the

hearing, leads the Court to question whether the Amended Complaint was an attempt at

gamesmanship by the Plaintiff. The Commonwealth's Supreme Court has refused to allow

manipulation of a matter based on technicalities. See *Angelo v. Louis Vuitton Saipan, Inc,* 2000

NMI 17.

While it may be that the Amended Complaint was not an act of gamesmanship by

Plaintiff, the Court is mindful of the need to balance the equities of the parties, pursuant to Com.

R. Civ. Pro. 1, which states in part, that the Rules of Procedure shall be construed and

administered to secure the just, speedy and inexpensive determination of every action. The

United States Supreme Court, in interpreting the federal rules, also mentioned the Rule

-3-

1    mandate in rejecting an overly technical interpretation of pleading procedure, noting that, led

2    by Rule 1, the Rules "reject the approach that pleading is a game of skill in which one misstep by

3

4    counsel , may be decisive to the outcome and accept the principle that the purpose of pleading is

5    to facilitate a proper decision on the merits." *See Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99,

6    103, 2 L.Ed.2d 80 (1957). *See also Foman v. Davis*, 371 U.S. 178, 181-82, 83 S.Ct. 227, 230

7    (1962) (same quotation). Without any basis in law for the additional cause of action added to

8    Plaintiff's Amended Complaint, there can be no issue of fact and nor does the Amended

9

10   Complaint provide a proper subject for relief other than those presented in the original

11   Complaint. In view of the foregoing, the equities weigh in favor of Defendants and Plaintiff's

12   Amended Complaint is stricken.

13                                **III. MOTION TO DISMISS**

14
                                      **BACKGROUND**
15

16        Turning next to the Motion to Dismiss. Although Defendant's Kumagai and Nicholas are

17   jointly named as defendants in this matter, the Court believes the different facts regarding

18
     Kumagai and Nicholas merit a separate discussion.
19

20   ***Kumagai***

21        Kumagai owned Lot E.A. 157-2-1. The lot was and still is 100% wetland property. On

22
     November 16, 1993, then Governor Lornenzo I. Deleon Guerrero certified that the
23

24   Commonwealth took Lot E.A. 157-2-1 for the public purpose of protecting wetlands. Under the

25   law, MPLA is supposed to determine the compensation due to landowners, who are then

26   compensated for the taking. MPLA determined that the appropriate compensation was

27   $159,408.19.

28

On April 11, 2005, in a separate suit, the Commonwealth of the Northern Mariana Islands Department of Public Health and Environmental Services("Dept. Of Public Health") filed a Complaint against Kumagai for unpaid medical services since 1998, primarily hemodialysis, totaling more than $253,095.96. On April 28, 2005, Attorney General Pamela Brown signed a Settlement Agreement, effective on May 2, 2005, dismissing the Complaint against Kumagai (hereafter "CHC Agreement"). The CHC Agreement specifically stated, "[w]hereas, [Kumagai] is about to receive the sum of approximately $159,408.19 from the Marianas Public Lands Authority (MPLA) as compensation for land taken for public use; [w]hereas, **the parties have conducted an investigation into the facts and the law underlying the claims asserted in the Action and have concluded that a settlement of such claims according to the terms set forth below is in their respective best interests**..." (emphasis added). The CHC Agreement provided that Kumagai's signature on the agreement would thereby "instruct[] and direct[] appropriate officials of MPLA to disburse $79,704.09 of the land compensation payment due [Kumagai] to [the Dept. of Public Health], in the form of a check payable to the CNMI Treasurer. In return, Plaintiff "agree[d] not to object, obstruct, or in any way hinder the disbursement of the remaining funds". The CHC Agreement was "approved as to form and legal capacity" by Attorney General Pamela Brown.

Thereafter, on May 5, 2005, MPLA executed a "Land Compensation Settlement Agreement" (hereafter "Compensation Settlement") between MPLA and Kumagai, authorizing the $159,408.19 payment. Requisition No. FY 05-11 ("Kumagai Requisition") was forwarded to the Secretary of the Department of Finance, Fermin Atalig ("Atalig") that same day. Despite instructions from the Attorney General's office to withhold further action on the Kumagai Requisition, Atalig concurred with the requisition, releasing it back to MPLA, who then

1     transmitted the Kumagai Requisition to Commonwealth Development Authority ("CDA").

2     CDA, in turn, forwarded the same to Bank of Guam to prepare a disbursement of the Kumagai

3     funds. Soon thereafter Attorney General Pamela Brown allegedly instructed CDA to stop

4

5     processing Kumagai's compensation and subsequently entered into an alleged written agreement

6     with CDA whereby the processing of Kumagai's Requisition was effectively halted. The

7     Complaint at bar followed.

8     *Nicholas*
9

10        Nicholas claim is similar to Kumagai's in several aspects. Like Kumagai, Nicholas

11    owned a 100% wetland property, Lot 158-A-R1. Similar to the Kumagai facts, on April 21,

12    2005, Governor Juan N. Babauta certified the Commonwealth took Lot 158-A-R1 in 1993 for the

13

14    purpose of protecting wetlands and endangered species in the Commonwealth. On April 28,

15    2005, MPLA authorized a $1,166,403.14 payment to Nicholas using Land Compensation Funds

16    for the wetlands taking. The authorization was the result of negotiations between MPLA and

17    Nicholas, which were finalized in a "Land Compensation Settlement Agreement" (hereafter

18    "Nicholas Agreement"). Again similar to Kumagai, on April 29, 2005, MPLA prepared
19

20    Requisition No. FY 05-10 ("Nicholas Requisition"), referencing the Nicholas Agreement, and

21    forwarded said requisition to the aforementioned Atalig. Despite instructions from the Attorney

22    General's office to withhold further action on the Nicholas Requisition, Atalig concurred with

23    the requisition, which was in turn forwarded to CDA for further action. The Nicholas matter did

24
      not involve any agreement between Nicholas and the Attorney General wherein Pamela Brown
25

26    sanctioned the MPLA payment to Defendant.

27

28
                                                        -6-

1

2

3

## IV. MOTION TO DISMISS

### DISCUSSION

4      A Rule 12(b) motion to dismiss must be denied "unless it appears beyond doubt that the

5    plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

6    *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A court must accept any and all reasonable

7

8    inferences derived from those facts. *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392

9    (3rd Cir.1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (1991);

10   *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (1990). Further, the court must view all

11   allegations in a Complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416

12   U.S. 232, 236 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d

13   Cir.1994). The question before the court is not whether plaintiffs will ultimately prevail; rather,

14   it is whether they can prove any set of facts in support of their claims that would entitle them to

15

16   relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). The Court, however, has no duty to

17   strain to find inferences favorable to the non-moving party. *Govendo v. Marianas Public Land*

18   *Corp.,* 2 N.MI. 482.   Therefore, in deciding a motion to dismiss, a court should look to the face

19   of the complaint and decide whether, taking all of the allegations of fact as true and construing

20   them in a light most favorable to the non-movant, the Plaintiff is able to state a legal claim.

21

22   *Markowitz,* 906 F.2d at 103.

23      In the current matter, regarding both Kumagai and Nicholas, the Government is

24   attempting to prevent payment to the Defendants despite MPLA's approval on the basis of an

25

26   erroneous interpretation of the land compensation statutes.   In the case of Kumagai, the Attorney

27   General signed a Court endorsed settlement agreement certifying that the underlying facts and

28

1  law had been investigated. Since the settlement agreement was predicated on Kumagai's MPLA

2  compensation, the Attorney General's certifying the CHC agreement after stating that the

3  underlying facts and law had been investigated prevents the Attorney General from now claiming

4  that Kumagai's compensation by MPLA is improper. Any other interpretation would imply that

5  the Government did not enter into the settlement agreement with Kumagai in good faith. As

6  such, Kumagai's Motion to Dismiss is granted.

7  

8  Turning next to Defendant Nicholas. Unlike Kumagai, the only party certifying that

9  payment to Nicholas was proper was Defendant MPLA. There is no certification by the Attorney

10  General that the underlying facts and law were investigated and deemed proper. In fact, there is

11  nothing from the Attorney General that sanctioned the compensation amount at any time. As

12  such, while Nicholas *may* be able to defeat Plaintiff's Complaint, when viewing the fact in the

13  light most favorable to the non-moving party, Defendant Nicholas does not meet the burden

14  necessary to constitute dismissal of Plaintiff's Complaint. As such, Nicholas' Motion to Dismiss

15  is hereby DENIED.

16  

17  ### V. CONCLUSION

18  For the foregoing reasons, Defendant Kumagai's Motion to Dismiss is GRANTED and

19  CDA is ordered to proceed with disbursement of Requisition No. FY 05-11. Defendant

20  Nicholas' Motion to Dismiss is DENIED. Defendant MPLA's Motion to Dismiss is GRANTED

21  with respect to Kumagai's compensation payment, but DENIED with respect to Nicholas'

22  compensation.

23  //

24  //

-8-

1    **So ORDERED** this ___ day of September 2005.

2

3                                            _____
                                             David A. Wiseman, Associate Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "V"

FILE NO. *05-208*

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## MARIANAS PUBLIC LANDS AUTHORITY

'05 JAN 31 P4:10

## LAND COMPENSATION SETTLEMENT AGREEMENT

BOOK ___ *12* PAGE *69*

COMMONWEALTH RECORDER

THIS LAND COMPENSATION SETTLEMENT AGREEMENT (hereinafter the "Agreement") is made and entered into this 31st day of *January*, 2005, by and between the Marianas Public Lands Authority, (hereinafter the "MPLA") established under Public Law 12-33, as amended, and Teresita A. Deleon Guerrero Tudela (hereinafter the "Claimant"), a person of Northern Marianas descent under the laws of the Commonwealth of the Northern Mariana Islands (hereinafter the "Commonwealth").

## WITNESSETH:

WHEREAS, the MPLA has been given the responsibility pursuant to Article XI, Section 3 of the Commonwealth Constitution and Public Law 12-33, as amended, to manage and dispose of public lands in the Commonwealth; and

WHEREAS, all public lands belong collectively to the people of the Commonwealth who are of Northern Marianas descent, and it is intended that the management and disposition of public lands should ultimately benefit the people of the Commonwealth who are of Northern Marianas descent; and

WHEREAS, the Claimant is determined to be the owner of a parcel of land in Susupe, Saipan; and

WHEREAS, the Commonwealth wishes to acquire Claimant's land for a public purpose, described as Lot E.A. 157-2-3, containing an area of 1,293 square meters, more or less; and

WHEREAS, on November 16, 1993, former Governor Lorenzo I. Deleon Guerrero, through the Coastal Resources Management Office, certified the acquisition of Lot E.A. 157-2-3 for a public purpose, i.e., a wetland to protect the endangered Marianas Moorhen "Pulattat;" and

WHEREAS, the MPLA determined by appraisal that Lot E.A. 157-2-3 had a fair market value of $114,00.00, as of November 16, 1993, the date the property was certified to be taken by the Commonwealth for a public purpose; and

WHEREAS, the MPLA has offered cash compensation to the Claimant for acquisition of her land in the sum of $158,596.97, including interest at three percent (3%) per annum, compounded annually, from November 16, 1993 until January 14, 2005; and

## EXHIBIT "V"

WHEREAS, the MPLA Board of Directors approved the sum of $158,596.97 as cash compensation to the Claimant, as authorized by Public Law 13-17, as amended, in exchange for the Claimant executing a warranty deed that conveys good and marketable title to MPLA for Lot E.A. 157-2-3.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the MPLA and the Claimant mutually agree as follows:

ARTICLE 1:  CONVEYANCE BY THE CLAIMANT

The Claimant shall convey by warranty deed unto MPLA, its successors and assigns, her interest in that certain land situated in Susupe, Saipan, more particularly described as follows:

> Lot E.A. 157-2-3, containing an area of 1,293 square meters, more or less, as set forth on DLS 2038/91, recorded at the Commonwealth Recorder's Office as File No. 90-4988, dated December 5, 1990.

ARTICLE II:  CASH COMPENSATION BY MPLA

By and in consideration of this Agreement and the deed executed and delivered to MPLA by the Claimant, receipt of which is hereby acknowledged, the MPLA, having the powers to manage and dispose of public lands pursuant to Article XI, Section 3 of the Commonwealth Constitution, Public Law 12-33, as amended, and Public Law 13-17, as amended, on behalf of the Government of the Commonwealth of the Northern Mariana Islands, shall pay to Claimant, her heirs and assigns, the principal sum of $114,000.00, plus interest on said principal calculated at the rate of three percent (3%) per annum compounded annually from and after November 16, 1993 until January 14, 2005, in the sum of $44,596.97, for a total land compensation sum of $158,596.97, as full and complete compensation and payment for the acquisition of Lot E.A. 157-2-3, more particularly described above.

ARTICLE III: FULL SETTLEMENT AND RELEASE

Except for the rights and obligations created by this Agreement, all other claims, demands, rights, duties, obligations and liabilities arising between the parties to this Agreement are hereby mutually satisfied, discharged and released. Each party hereto releases, discharges and forever waives any such claims, demands, rights, duties, obligations and liabilities against the other party, their heirs and assigns, past, present and future, as it relates to the Commonwealth's acquisition of Lot E.A. 157-2-3, more particularly described above.

ARTICLE IV:  ASSIGNABILITY

This Agreement shall inure to the benefit of and be binding upon the heirs, personal representatives, agents, affiliates, employees, officers, officials, successors, predecessors, assigns, and all other persons, firms, corporations or other entities in privity or joint liability with the parties hereto.

*Land Compensation Settlement Agreement*
*Teresita A. Deleon Guerrero Tudela*
*Page 2 of 5*

ARTICLE V: FUTURE COOPERATION

If it becomes necessary for MPLA, its successor agencies, or the Government of the CNMI to defend a quiet title action or other challenge to ownership of Lot E.A. 157-2-3, Claimant agrees to cooperate in the defense of such action and to not cooperate in the prosecution of such action or challenge.

ARTICLE VI: UNDERSTANDING AND COUNSEL

The Claimant hereby represents that she has had sufficient time to adequately review this Agreement, and thereby fully understands its contents, conditions and covenants. The Claimant further represents that in the event that she does not read, write or fully understand the English language, she has sought translation of the provisions of this Agreement into her primary language. The Claimant further represents that she has had an opportunity to seek legal advice and counseling prior to executing this Agreement.

ARTICLE VII: ENTIRE AGREEMENT

This Agreement represents and contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof, and supersedes any and all prior oral and written agreements and understandings. It is admitted by all parties that no representation, warranty, condition, understanding or agreement of any kind with respect to the subject matter of this Agreement shall be relied upon by the parties unless incorporated herein, that this compromise is made by the parties with full knowledge of the facts and possibilities of the claims and defenses asserted, and that the terms of the releases contained herein are contractual and not a mere recital. This Agreement may not be amended or modified except by an agreement in writing signed by all parties hereto.

ARTICLE VIII: ATTORNEY'S FEES

Should legal action be necessary to enforce any of the terms and conditions of this Agreement, the prevailing party shall pay to the other party reasonable attorney's fees and costs to be fixed by the court.

ARTICLE IX: WARRANTY OF AUTHORITY

The Claimant warrants and represents that she is the lawful owner or authorized representative with legal authority over Lot E.A. 157-2-3, more particularly described above, that is the subject of this Agreement, and that she has not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, or by operation of law, any of the claims herein released, or any portion thereof. The Claimant hereby warrants and represents that she is fully and legally empowered to act on behalf of Lot E.A. 157-2-3 in all respects and for all purposes in this Agreement. The Chairperson of the MPLA warrants that she is fully and legally empowered to act on behalf of the MPLA in all respects and for all purposes in this Agreement.

## ARTICLE X: SEVERABILITY

If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction in any action or proceeding instituted by, on behalf, or by agreement, and such provision cannot be modified to be enforceable, such provision shall immediately become null and void and the parties shall negotiate such provision in good faith, leaving the remainder of this Agreement in full force and effect.

## ARTICLE XI: GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of the Northern Mariana Islands.

## ARTICLE XII: COUNTERPARTS

This Agreement may be executed in separate counterparts, each counterpart when so executed to be deemed an original, and all counterparts when taken together shall constitute one and the same Agreement. To promote timely compliance with this Agreement, facsimile transmissions of executed documents shall be deemed sufficient to warrant commensurate performance. Confirmations shall nevertheless be made by delivery of the executed original to the other party as soon as possible.

IN WITNESS WHEREOF, the parties set their hands on the day, month and year written below.

MARIANAS PUBLIC LANDS AUTHORITY:

_____          _____ 1/31/05
Ana Demapan-Castro                        Date
Chairperson, MPLA


Approved as to form and Legal Capacity:

_____          _____ 1/26/05
Alan L. Lane                              Date
Legal Counsel for MPLA


OWNER/CLAIMANT:

BY: _____           _____ 1/31/05
Teresita A. Deleon Guerrero Tudela        Date

*Land Compensation Settlement Agreement*
*Teresita A. Deleon Guerrero Tudela*
*Page 4 of 5*



Commonwealth of the Northern    }
Mariana Islands                 }        ss:  Acknowledgment
Saipan, MP                      }

ON THIS *31ˢᵗ* day of *Jan.*, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Ana Demapan-Castro,** Chairperson, Board of MPLA, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year written above.



Notary Public
**DEWAYNE DUENAS**
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: *Mar. 19, 200*

Commonwealth of the Northern    }
Mariana Islands                 }        ss:    **Acknowledgment**
Saipan, MP                      }

ON THIS *31ˢᵗ* day of *Jan*, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Teresita A. Deleon Guerrero Tudela,** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have set my hand and affixed my official seal the day and year written above.

Notary Public

Jacqueline Manglona Sasaki
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: *Jun 16, 2005*

*Land Compensation Settlement Agreement*
*Teresita A. Deleon Guerrero Tudela*
*Page 5 of 5*

# EXHIBIT "W"

FILE NO. 05-267

'05 JAN 31 P 4:09

_____
Space Provided Above is for Recordation Purposes Only

BOOK____ PAGE____

**WARRANTY DEED**    COMMONWEALTH RECORDER

This Warranty Deed is made this 31st day of January, 2004, by Teresita A. Deleon Guerrero Tudela, a person of Northern Marianas descent, hereinafter the "Grantor".

WITNESSETH:

**WHEREAS,** Grantor and the Marianas Public Lands Authority (hereinafter the "MPLA") entered into a Land Compensation Settlement Agreement pursuant to which Grantor has agreed to transfer Lot E.A. 157-2-3, containing an area of 1,293 square meters, more or less, located in Susupe, Saipan, to the MPLA in exchange for $158,596.97 and

**WHEREAS,** Grantor has further agreed to settle all of her claims against the MPLA and the Commonwealth Government relating to the public use of the above-described property by accepting the above compensation;

**NOW, THEREFORE,** in consideration of $158,596.97 and the mutual promises and covenants contained in the Land Compensation Settlement Agreement entered into between the parties on ___1/31/05___, Grantor hereby bargains and conveys unto the MPLA, its successors and assigns, forever Grantor's interest in that certain parcel of land situated in Susupe, Saipan, more particularly described as follows:

> Lot E.A. 157-2-3, containing an area of 1,293 square meters, more or less, as set forth on DLS 2038/91, recorded at the Commonwealth Recorder's Office as File No. 90-4988, dated December 5, 1990.

*Land Compensation Warranty Deed*
*Teresita A. Deleon Guerrero Tudela*
*Page 1*



**EXHIBIT "W"**

**TO HAVE AND TO HOLD**, the same, together with all buildings, improvements, tenements, hereditaments, rights, easements, privileges, and appurtenances thereunto belonging or appertaining or held and enjoyed therewith, unto the MPLA, in fee simple, its successors and assigns forever.

Grantor warrants that she is lawfully seized of the above-described property in fee simple absolute, that she has good right to convey the property, that the property is free and clear of any restrictions or encumbrances, that the MPLA shall quietly enjoy the property without lawful disturbance, that Grantor will forever warrants and defend the title to the property at her own expense, and that Grantor will forever indemnify the MPLA against any interest or claim arising in or to the property.

**IN WITNESS WHEREOF**, the Grantor hereby enters her signature on the day and year first above written.

GRANTOR:



Teresita A. Deleon Guerrero Tudela

**Commonwealth of the Northern**  )
**Mariana Islands**  )    ss:  **Acknowledgment**
**Saipan, MP**  )

ON THIS ___31st___ day of ___Jan___, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Teresita A. Deleon Guerrero Tudela**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

Jacqueline Manglona Sasaki
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: ___Jun 16, 2005___

*Land Compensation Warranty Deed*
*Teresita A. Deleon Guerrero Tudela*
*Page 2*

# EXHIBIT "X"

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS *05-1179*
MARIANAS PUBLIC LANDS AUTHORITY

'05 APR 18 AM :34

## LAND COMPENSATION SETTLEMENT AGREEMENT *34*

BOOK *13* PAGE *34*

THIS LAND COMPENSATION SETTLEMENT AGREEMENT (hereinafter the "Agreement") is made and entered into this *13* day of *April*, 2005, by and between the Marianas Public Lands Authority, (hereinafter the "MPLA"), established under Public Law 12-33, as amended, and Ana DLG. Gillespie (hereinafter the "Claimant"), a person of Northern Marianas descent under the laws of the Commonwealth of the Northern Mariana Islands (hereinafter the "Commonwealth").

### WITNESSETH:

WHEREAS, the MPLA has been given the responsibility pursuant to Article XI, Section 3 of the Commonwealth Constitution and Public Law 12-33, as amended, to manage and dispose of public lands in the Commonwealth; and

WHEREAS, all public lands belong collectively to the people of the Commonwealth who are of Northern Marianas descent, and it is intended that the management and disposition of public lands should ultimately benefit the people of the Commonwealth who are of Northern Marianas descent; and

WHEREAS, the Claimant is determined to be the owner of a parcel of land in Susupe, Saipan; and

WHEREAS, the Commonwealth wishes to acquire Claimant's land for a public purpose, described as Lot E.A. 157-2-2, containing an area of 1,292 square meters, more or less; and

WHEREAS, on November 16, 1993, former Governor Lorenzo I. Deleon Guerrero, through the Coastal Resources Management Office, certified the acquisition of Lot E.A. 157-2-2 for a public purpose, i.e., a wetland to protect the endangered Marianas Moorhen " Pulattat;" and

WHEREAS, the MPLA determined by appraisal that Lot E.A. 157-2-2 had a fair market value of $114,00.00, as of November 16, 1993, the date the property was certified to be taken by the Commonwealth for a public purpose; and

WHEREAS, the MPLA has offered cash compensation to the Claimant for acquisition of her land in the sum of $159,408.19, including interest at three percent (3%) per annum, compounded annually, from November 16, 1993 until March 18, 2005; and

**EXHIBIT "X"**

WHEREAS, the MPLA Board of Directors approved the sum of $159,408.19 as cash compensation to the Claimant, as authorized by Public Law 13-17, as amended, in exchange for the Claimant executing a warranty deed that conveys good and marketable title to MPLA for Lot E.A. 157-2-2.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the MPLA and the Claimant mutually agree as follows:

ARTICLE 1:  CONVEYANCE BY THE CLAIMANT

The Claimant shall convey by warranty deed unto MPLA, its successors and assigns, her interest in that certain land situated in Susupe, Saipan, more particularly described as follows:

> Lot E.A. 157-2-2, containing an area of 1,292 square meters, more or less, as set forth on DLS 2038/91, recorded at the Commonwealth Recorder's Office as File No. 90-4988, dated December 5, 1990.

ARTICLE II:  CASH COMPENSATION BY MPLA

By and in consideration of this Agreement and the deed executed and delivered to MPLA by the Claimant, receipt of which is hereby acknowledged, the MPLA, having the powers to manage and dispose of public lands pursuant to Article XI, Section 3 of the Commonwealth Constitution, Public Law 12-33, as amended, and Public Law 13-17, as amended, on behalf of the Government of the Commonwealth of the Northern Mariana Islands, shall pay to Claimant, her heirs and assigns, the principal sum of $114,000.00, plus interest on said principal calculated at the rate of three percent (3%) per annum compounded annually from and after November 16, 1993 until March 18, 2005, in the sum of $45,408.19, for a total land compensation sum of $159,408.19, as full and complete compensation and payment for the acquisition of Lot E.A. 157-2-2, more particularly described above.

ARTICLE III: FULL SETTLEMENT AND RELEASE

Except for the rights and obligations created by this Agreement, all other claims, demands, rights, duties, obligations and liabilities arising between the parties to this Agreement are hereby mutually satisfied, discharged and released. Each party hereto releases, discharges and forever waives any such claims, demands, rights, duties, obligations and liabilities against the other party, their heirs and assigns, past, present and future, as it relates to the Commonwealth's acquisition of Lot E.A. 157-2-2, more particularly described above.

ARTICLE IV: ASSIGNABILITY

This Agreement shall inure to the benefit of and be binding upon the heirs, personal representatives, agents, affiliates, employees, officers, officials, successors, predecessors, assigns, and all other persons, firms, corporations or other entities in privity or joint liability with the parties hereto.

ARTICLE V:  FUTURE COOPERATION

If it becomes necessary for MPLA, its successor agencies, or the Government of the CNMI to defend a quiet title action or other challenge to ownership of Lot E.A. 157-2-2, Claimant agrees to cooperate in the defense of such action and to not cooperate in the prosecution of such action or challenge.

ARTICLE VI:  UNDERSTANDING AND COUNSEL

The Claimant hereby represents that she has had sufficient time to adequately review this Agreement, and thereby fully understands its contents, conditions and covenants.  The Claimant further represents that in the event that she does not read, write or fully understand the English language, she has sought translation of the provisions of this Agreement into her primary language.  The Claimant further represents that she has had an opportunity to seek legal advice and counseling prior to executing this Agreement.

ARTICLE VII:  ENTIRE AGREEMENT

This Agreement represents and contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof, and supersedes any and all prior oral and written agreements and understandings.  It is admitted by all parties that no representation, warranty, condition, understanding or agreement of any kind with respect to the subject matter of this Agreement shall be relied upon by the parties unless incorporated herein, that this compromise is made by the parties with full knowledge of the facts and possibilities of the claims and defenses asserted, and that the terms of the releases contained herein are contractual and not a mere recital.  This Agreement may not be amended or modified except by an agreement in writing signed by all parties hereto.

ARTICLE VIII:  ATTORNEY'S FEES

Should legal action be necessary to enforce any of the terms and conditions of this Agreement, the prevailing party shall pay to the other party reasonable attorney's fees and costs to be fixed by the court.

ARTICLE IX:  WARRANTY OF AUTHORITY

The Claimant warrants and represents that she is the lawful owner or authorized representative with legal authority over Lot E.A. 157-2-2, more particularly described above, that is the subject of this Agreement, and that she has not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, or by operation of law, any of the claims herein released, or any portion thereof.  The Claimant hereby warrants and represents that she is fully and legally empowered to act on behalf of Lot E.A. 157-2-2 in all respects and for all purposes in this Agreement.  The Chairperson of the MPLA warrants that she is fully and legally empowered to act on behalf of the MPLA in all respects and for all purposes in this Agreement.

ARTICLE X: SEVERABILITY

If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction in any action or proceeding instituted by, on behalf, or by agreement, and such provision cannot be modified to be enforceable, such provision shall immediately become null and void and the parties shall negotiate such provision in good faith, leaving the remainder of this Agreement in full force and effect.

ARTICLE XI: GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of the Northern Mariana Islands.

ARTICLE XII: COUNTERPARTS

This Agreement may be executed in separate counterparts, each counterpart when so executed to be deemed an original, and all counterparts when taken together shall constitute one and the same Agreement.   To promote timely compliance with this Agreement, facsimile transmissions of executed documents shall be deemed sufficient to warrant commensurate performance.  Confirmations shall nevertheless be made by delivery of the executed original to the other party as soon as possible.

IN WITNESS WHEREOF, the parties set their hands on the day, month and year written below.

MARIANAS PUBLIC LANDS AUTHORITY:

_____          _____4-15-05_____
Ana Demapan-Castro                                          Date
Chairperson, MPLA



Approved as to form and Legal Capacity:

_____          _____4/13/05_____
Alan L. Lane                                                       Date
Legal Counsel for MPLA



OWNER/CLAIMANT:

BY: _____          _____4-13-05_____
       Ana DLG. Gillespie                                      Date

*Land Compensation Settlement Agreement*
*Ana DLG. Gillespie*
*Page 4 of 5*

Commonwealth of the Northern      }
Mariana Islands                   }      ss:  Acknowledgment
Saipan, MP                        }

ON THIS _15_ day of _April_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Ana Demapan-Castro**, Chairperson, Board of MPLA, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year written above.

Notary Public
**Francisco Jerome K. Aldan**
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: _2/96/06_

Commonwealth of the Northern      }
Mariana Islands                   }      ss:      Acknowledgment
Saipan, MP                        }

ON THIS _13th_ day of _April_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Ana DLG. Gillespie**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have set my hand and affixed my official seal the day and year written above.

Notary Public
Jacqueline Manglona Sasaki
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: _Jun 16, 2005_

*Land Compensation Settlement Agreement*
*Ana DLG. Gillespie*
*Page 5 of 5*

# EXHIBIT "Y"

FILE NO. *05-1178*

'05 APR 18 /11:34

_____
Space Provided Above is for Recordation Purposes Only

BOOK *13* PAGE *34*

**WARRANTY DEED**       COMMONWEALTH RECORDER

This Warranty Deed is made this *13th* day of *April*, 200*5*, by Ana DLG.
Gillespie, a person of Northern Marianas descent, hereinafter the "Grantor".

WITNESSETH:

**WHEREAS,** Grantor and the Marianas Public Lands Authority (hereinafter the "MPLA")
entered into a Land Compensation Settlement Agreement pursuant to which Grantor has agreed to
transfer Lot E.A. 157-2-2, containing an area of 1,292 square meters, more or less, located in Susupe,
Saipan, to the MPLA in exchange for $159,408.19 and

**WHEREAS,** Grantor has further agreed to settle all of her claims against the MPLA and the
Commonwealth Government relating to the public use of the above-described property by accepting the
above compensation;

**NOW, THEREFORE,** in consideration of $159,408.19 and the mutual promises and
covenants contained in the Land Compensation Settlement Agreement entered into between the parties
on _____, Grantor hereby bargains and conveys unto the MPLA, its successors and
assigns, forever Grantor's interest in that certain parcel of land situated in Susupe, Saipan, more
particularly described as follows:

> Lot E.A. 157-2-2, containing an area of 1,292 square meters, more or less,
> as set forth on DLS 2038/91, recorded at the Commonwealth Recorder's
> Office as File No. 90-4988, dated December 5, 1990.

*Land Compensation Warranty Deed*
*Ana DLG. Gillespie*
*Page 1*

**EXHIBIT "Y"**

**TO HAVE AND TO HOLD**, the same, together with all buildings, improvements, tenements, hereditaments, rights, easements, privileges, and appurtenances thereunto belonging or appertaining or held and enjoyed therewith, unto the MPLA, in fee simple, its successors and assigns forever.

Grantor warrants that she is lawfully seized of the above-described property in fee simple absolute, that she has good right to convey the property, that the property is free and clear of any restrictions or encumbrances, that the MPLA shall quietly enjoy the property without lawful disturbance, that Grantor will forever warrants and defend the title to the property at her own expense, and that Grantor will forever indemnify the MPLA against any interest or claim arising in or to the property.

**IN WITNESS WHEREOF**, the Grantor hereby enters her signature on the day and year first above written.


GRANTOR:

_____
Ana DLG. Gillespie


**Commonwealth of the Northern**      )
**Mariana Islands**                   )      **ss:   Acknowledgment**
**Saipan, MP**                        )


    ON THIS _____ day of _____, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Ana DLG. Gillespie,** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public
Jacqueline Manglona Sasaki
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: _____


*Land Compensation Warranty Deed*
*Ana DLG. Gillespie*
*Page 2*

# EXHIBIT "Z"

FILE NO. _____ *05-210*

# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## MARIANAS PUBLIC LANDS AUTHORITY

'05 APR 20 A9:32

## LAND COMPENSATION SETTLEMENT AGREEMENT

THIS LAND COMPENSATION SETTLEMENT AGREEMENT (hereinafter the "Agreement") is made and entered into this 20th day of *April*, 2005, by and between the Marianas Public Lands Authority, (hereinafter the "MPLA"), established under Public Law 12-33, as amended, and Nicolas C. Sablan and Lucy Ann T. Sablan (hereinafter the "Claimants"), persons of Northern Marianas descent under the laws of the Commonwealth of the Northern Mariana Islands (hereinafter the "Commonwealth").

### WITNESSETH:

WHEREAS, the MPLA has been given the responsibility pursuant to Article XI, Section 3 of the Commonwealth Constitution and Public Law 12-33, as amended, to manage and dispose of public lands in the Commonwealth; and

WHEREAS, all public lands belong collectively to the people of the Commonwealth who are of Northern Marianas descent, and it is intended that the management and disposition of public lands should ultimately benefit the people of the Commonwealth who are of Northern Marianas descent; and

WHEREAS, the Claimants are determined to be the owners of a parcel of land in Chalan Laulau, Saipan; and

WHEREAS, the Commonwealth wishes to acquire a portion of Claimant's land for a public purpose, described as Lot 1983, containing an area of 20,892 square meters, more or less; and

WHEREAS, on October 8, 1991, former Governor Lorenzo I. Deleon Guerrero, certified the acquisition of Lot 1983 for a public purpose, i.e., a wetland; and

WHEREAS, the MPLA determined by appraisal that Lot 1983 had a fair market value of $1,316,000.00 as of October 8, 1991, the date the property was originally to be taken by the Commonwealth for a public purpose; and

WHEREAS, the MPLA has offered cash compensation to the Claimants for acquisition of their land in the sum of $1,958,587.32, including interest at three percent (3%) per annum, compounded annually, from October 8, 1981 until March 18, 2005; and

## EXHIBIT "Z"

WHEREAS, the MPLA Board of Directors approved the sum of $1,958,587.32 as cash compensation to the Claimant, as authorized by Public Law 13-17, as amended, in exchange for the Claimants executing a warranty deed that conveys good and marketable title to MPLA for Lot 1983.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the MPLA and the Claimants mutually agree as follows:

ARTICLE 1:    CONVEYANCE BY THE CLAIMANTS

The Claimants shall convey by warranty deed unto MPLA, its successors and assigns, their interest in that certain land situated in Chalan Laulau, Saipan, more particularly described as follows:

> Lot 1983, containing an area of 20,892 square meters, more or less
> as set forth on DLS 2075/90, recorded at the Commonwealth Recorder's
> Office as File No. 90-722, dated February 21, 1990.

ARTICLE II:    CASH COMPENSATION BY MPLA

By and in consideration of this Agreement and the Deed executed and delivered to MPLA by the Claimants, receipt of which is hereby acknowledged, the MPLA, having the powers to manage and dispose of public lands pursuant to Article XI, Section 3 of the Commonwealth Constitution, Public Law 12-33, as amended, and Public Law 13-17, as amended, on behalf of the Government of the Commonwealth of the Northern Mariana Islands, shall pay to Claimants, their heirs and assigns, the principal sum of $1,316,000.00, plus interest on said principal calculated at the rate of three percent (3%) per annum compounded annually from and after October 8, 1981 until March 18, 2005, in the sum of $642,587.32, for a total land compensation sum of $1,958,587.32 as full and complete compensation and payment for the acquisition of Lot 1983, more particularly described above.

ARTICLE III: FULL SETTLEMENT AND RELEASE

Except for the rights and obligations created by this Agreement, all other claims, demands, rights, duties, obligations and liabilities arising between the parties to this Agreement are hereby mutually satisfied, discharged and released. Each party hereto releases, discharges and forever waives any such claims, demands, rights, duties, obligations and liabilities against the other party, their heirs and assigns, past, present and future, as it relates to the Commonwealth's acquisition of Lot 1983, more particularly described above.

ARTICLE IV:    ASSIGNABILITY

This Agreement shall inure to the benefit of and be binding upon the heirs, personal representatives, agents, affiliates, employees, officers, officials, successors, predecessors, assigns, and all other persons, firms, corporations or other entities in privity or joint liability with the parties hereto.

ARTICLE V: FUTURE COOPERATION

If it becomes necessary for MPLA, its successor agencies, or the Government of the CNMI to defend a quiet title action or other challenge to ownership of Lot 1983, Claimants agree to cooperate in the defense of such action and to not cooperate in the prosecution of such action or challenge.

ARTICLE VI: UNDERSTANDING AND COUNSEL

The Claimants hereby represent that they have sufficient time to adequately review this Agreement, and thereby fully understands its contents, conditions and covenants. The Claimants further represent that in the event that they does not read, write or fully understand the English language, they have sought translation of the provisions of this Agreement into their primary language. The Claimants further represent that they have had an opportunity to seek legal advice and counseling prior to executing this Agreement.

ARTICLE VII: ENTIRE AGREEMENT

This Agreement represents and contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof, and supersedes any and all prior oral and written agreements and understandings. It is admitted by the parties that no representation, warranty, condition, understanding or agreement of any kind with respect to the subject matter of this Agreement shall be relied upon by the parties unless incorporated herein, that this compromise is made by the parties with full knowledge of the facts and possibilities of the claims and defenses asserted, and that the terms of the releases contained herein are contractual and not a mere recital. This Agreement may not be amended or modified except by an agreement in writing signed by all parties hereto.

ARTICLE VIII: ATTORNEY'S FEES

Should legal action be necessary to enforce any of the terms and conditions of this Agreement, the prevailing party shall pay to the other party reasonable attorney's fees and costs to be fixed by the court.

ARTICLE IX: WARRANTY OF AUTHORITY

The Claimants warrant and represent that they are the lawful owner or authorized representative with legal authority over Lot 1983, more particularly described above, that is the subject of this Agreement, and that they have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, or by operation of law, any of the claims herein released, or any portion thereof. The Claimants hereby warrant and represent that they are fully and legally empowered to act on behalf of Lot 1983 in all respects and for all purposes in this Agreement. The Chairperson of the MPLA warrants that she is fully and legally empowered to act on behalf of the MPLA in all respects and for all purposes in this Agreement.

ARTICLE X:  SEVERABILITY

If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction in any action or proceeding instituted by, on behalf, or by agreement, and such provision cannot be modified to be enforceable, such provision shall immediately become null and void and the parties shall negotiate such provision in good faith, leaving the remainder of this Agreement in full force and effect.

ARTICLE XI:  GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of the Northern Mariana Islands.

ARTICLE XII:  COUNTERPARTS

This Agreement may be executed in separate counterparts, each counterpart when so executed to be deemed an original, and all counterparts when taken together shall constitute one and the same Agreement.   To promote timely compliance with this Agreement, facsimile transmissions of executed documents shall be deemed sufficient to warrant commensurate performance.  Confirmations shall nevertheless be made by delivery of the executed original to the other party as soon as possible.

IN WITNESS WHEREOF, the parties set their hands on the day, month and year written below.


MARIANAS PUBLIC LANDS AUTHORITY


Reviewed For Accuracy and Completeness:

_____          ___4/18/05___
Edward M. Deleon Guerrero                              Date
Commissioner


Approved:

_____          ___4-19-05___
Ana Demapan-Castro                                       Date
Chairperson, MPLA

*Land Compensation Settlement Agreement*
*Nicolas C. Sablan and Lucy Ann T. Sablan*
*Page 4 of 6*

Approved as to form and Legal Capacity:

_____

Alan L. Lane
Legal Counsel for MPLA

_____4/19/05_____
Date

OWNERS/CLAIMANTS

BY: _____
Nicolas C. Sablan

_____4/20/05_____
Date

BY: _____
Lucy Ann T. Sablan

_____4/20/05_____
Date

**Commonwealth of the Northern**    }
**Mariana Islands**                  }    **ss: Acknowledgment**
**Saipan, MP**                       }

ON THIS _19th_ day of _April_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Edward M. Deleon Guerrero**, Commissioner MPLA, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year written above.

_____
Notary Public

**Francisco Jerome K. Aldan**
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: _2/26/06_

*Land Compensation Settlement Agreement*
*Nicolas C. Sablan and Lucy Ann T. Sablan*
*Page 5 of 6*

Commonwealth of the Northern     }
Mariana Islands                  }     ss:     Acknowledgment
Saipan, MP                       }

ON THIS _19ᵗʰ_ day of _April_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Ana Demapan-Castro,** Chairperson, Board of MPLA known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have set my hand and affixed my official seal the day and year written above.

_____
Notary Public
**Francisco Jerome K. Aldan**
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: _2/26/06_

Commonwealth of the Northern    }
Mariana Island                  }     ss:     Acknowledgment
Saipan, MP                      }

ON THIS _20ᵗʰ_ day of _April_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Nicolas C. Sablan and Lucy Ann T. Sablan,** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same as their free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have set my hand and affixed my official seal the day and year written above.

_____
Notary Public
**Francisco Jerome K. Aldan**
NOTARY PUBLIC
Commonwealth of the Northern Mariana
My Commission expires: _2/20/06_