1

## I. INTRODUCTION

2        Defendants, Commonwealth of the Northern Mariana Islands ("CNMI") and Pamela Brown

3   ("Brown"), Attorney General of the CNMI, in her official and individual capacities, bring this motion

4   to dismiss Plaintiff's Complaint filed in the matter pursuant to Rule 12(b)(6) of the Federal Rules of

5   Civil Procedure for failure to state claims upon which relief can be granted.    The following

6   memorandum of points and authorities is submitted in support of the motion.

7

## II. FACTS ALLEGED IN THE COMPLAINT

8        The Complaint alleges that Plaintiff owned wetland property in the CNMI identified as Lot

9   E.A. 157-2-1, containing an area of 1,292 square meters ("Property"), Complaint, ¶ 12, and that in

10  1993, by letter, then Governor Lorenzo I. Deleon Guerrero certified a "taking" of the Property.

11  Complaint, ¶ 14. That letter, attached to the Complaint as Exhibit "A," indicated that Plaintiff's

12  property needed to be exchanged for public land to protect the endangered Marianas Moorhen

13  "Pulattat." *Ibid.*    The Complaint further alleges that CNMI P.L. 13-17 went into effect in 2002,

14  authorizing the Marianas Public Lands Authority ("MPLA"), in conjunction with the Commonwealth

15  Development Authority ("CDA"), to incur up to $40 Million of public debt for purposes of settling

16  land compensation claims, and that the CDA floated a $40 Million bond for that purpose. Complaint,

17  ¶¶ 16-17. Plaintiff alleges that in 2004, CNMI P.L. 14-29 was passed amending CNMI P.L. 13-17 to

18  get rid of the priorities set forth under the prior law for payment of compensation claims. *Id.* ¶ 19.

19       The Complaint alleges that under the authority of CNMI P.L. 14-29, the MPLA and the

20  Commonwealth Secretary of Finance-Department of Finance, entered into an agreement setting forth

21  a procedure allowing for the filing by the Commonwealth Attorney General to obtain court orders

22  against land claimants that owed money to the CNMI.. *Id.* ¶ 21.

23       According to Plaintiff, on May 5, 2005, Plaintiff and the MPLA entered into a Land

24  Compensation Settlement Agreement, attached as Exhibit "D" to the Complaint, regarding payment

25  to Plaintiff for her Property, *id.* ¶ 22, pursuant to which Plaintiff agreed to execute a deed for her

26  wetland Property in exchange for consideration of $159,408.19. *Id.* ¶ 23. The Complaint alleges that

27  Plaintiff executed the deed as required under the Agreement. *Id.* ¶ 23. The Complaint alleges that on

28  April 11, 2005, the CNMI Department of Public Health and Environmental Services ("CNMI

DPHES"), through the Office of the Attorney General, filed a lawsuit against Plaintiff in the CNMI Superior Court, Civ. Action No, 05-0149C ("CHC lawsuit") for payment of Plaintiff's outstanding medical bills, and that the AG's Office obtained a Writ of Prejudgment Attachment against Plaintiff in that suit. *Id.* ¶¶ 24-25.    The complaint in that case, attached as Exhibit "F" to the Complaint, indicates that the in CNMI DPHES sued for payment in the amount of $ 253,095.96.  Complaint, Exhibit "F."  The Complaint alleges that the CHC and Plaintiff signed a Settlement Agreement on April 28, 2005, with Plaintiff agreeing that she would retain$79,704 of the amount she was to receive in land compensation with the remaining amount to be released to the CHC for payment of Plaintiff's debt to the CHC, *id.* ¶ 26, and that the CHC Settlement Agreement was approved as to form and legal capacity by Attorney General Brown.  *See* Complaint, Exhibit "I."

The Complaint further alleges that at the time the CHC lawsuit was being settled, the MPLA prepared Requisition No. FY05-11, for the payment under May 5, 2005 Settlement Agreement, in the name of Plaintiff, which was forwarded to Secretary of Finance Atalig for his approval on May 6, 2005, *id.* ¶ 28.  Plaintiff references and attaches as Exhibit "L," a letter from the Attorney General's Office to Secretary Atalig, dated May 9, 2005, indicating that the Attorney General's Office was investigating several draw downs sent to Secretary Atalig's office for approval, and was contemplating taking action against the MPLA with respect the draw downs, and requesting that Secretary Atalig's office not process any land compensation payments until further notice from the AG's Office. Complaint, ¶ 29, Exhibit "L."

The Complaint alleges that during the months of May 2005 through August 2005, Plaintiff was not paid under the Settlement Agreement.  *Id.* ¶ 30.  The Complaint alleges that on August 8, 2005, Secretary Atalig gave concurrence to Requisition No. 05-11 and released this to the MPLA, and that the MPLA transmitted this to the CDA and the executive director of the CDA (Ms. Ada), instructing the CDA to inform the Bank of Guam ("BOG") as Trustee of the funds to disburse the funds to Plaintiff.  *Id.* ¶ 31.  The CDA and Ada forwarded the requisition to BOG on August 9, 2005.  *Id.* ¶ 32. Plaintiff alleges that on August 9, 2005, Attorney General Brown contacted the CDA and Ada, instructing them to stop processing payment of Requisition No. FY 05-11, and that these instructions were forwarded to BOG which complied.  *Id.* ¶ 33.

1      The Complaint alleges that on August 10, 2005, Attorney General Brown forwarded a letter

2  to Ms. Ada requesting that the CDA not process Requisition No. FY 05-11. *Id.* ¶ 34. This letter,

3  attached as Exhibit "P" to the Complaint, requests that the Requisition not be processed until the end

4  of the day on August 15, 2005, because the AG was investigating the amount of the requisition and

5  whether the MPLA had the authority to compensate with bond money wetland properties not taken for

6  right-of-ways. Complaint, Exhibit "P." The Complaint alleges that the Letter was transmitted to Ms.

7  Ada and BOG.

8      The Complaint alleges that on August 15, 2005, the CNMI, acting through the Attorney

9  General, filed Civil Action No. 05-0332E against the MPLA in the CNMI Superior Court, seeking

10  declaratory and injunctive relief that Plaintiff's land compensation claim was void under CNMI P.L.

11  13-17, as amended by CNMI P.L. 14-29. *Id.* ¶ 35.

12      The Complaint further alleges that on August 19, 2005, the CNMI and Attorney General Brown

13  entered into an agreement with the CDA relating to payment of Requisition No. FY 05-11. *Id.* ¶ 36.

14  A review of the agreement, attached to the Complaint as Exhibit "S,"indicates that CDA acknowledges

15  that the CNMI brought suit against the MPLA, Civil Action No. 05-0332E, and agrees that it would

16  not process Requisition No. FY05-11 until the final resolution of the action. Complaint, Exhibit "S."

17      The Complaint alleges that on August 30, 2005, the CNMI, acting through Attorney General

18  Brown, filed an amended complaint in Civil Action No. 05-0332E, and that upon motion of Plaintiff,

19  the Superior Court issued a decision striking the amended complaint and dismissing the case against

20  Plaintiff. *Id.* ¶ 37.

21      The Complaint alleges that a number of other individual that entered into agreements with the

22  government were paid land compensation for their wetland properties. *Id.* ¶¶39-40.

23      Based on these above factual allegations, and the documents attached as exhibits to the

24  Complaint, Plaintiff asserts various federal and state law claims against Defendants CNMI and Brown.

25  Plaintiff alleges claims against the CNMI for abuse of process, malicious prosecution, breach of the

26  duty of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction

27  of emotional distress, and claims against Pamela Brown, in her official and individual capacities, under

28  42 U.S.C. §§ 1983 and 1985(3), for common law conspiracy, abuse of process, malicious prosecution,

1  intentional interference with contractual rights, intentional interference with economic relations,
2  intentional infliction of emotional distress, and negligent infliction of emotional distress.

3       For the reasons set forth below, the Complaint should be dismissed against Defendants CNMI
4  and Brown under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5  **III. ARGUMENT**

6  **A. STANDARDS FOR A 12(b)(6) MOTION**

7       FRCP 12(b)(6) authorizes dismissal for the failure to state a claim upon which relief can be
8  granted. Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss, the complaint is construed favorably to the
9  pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  In spite of
10  the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the
11  court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the
12  defendants have violated the ... laws in ways that have not been alleged." *Associated General*
13  *Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

14  **B. FEDERAL CLAIMS**

15      **1. 42 U.S.C. § 1983**

16  **a) Claim barred against CNMI officers in their official capacity**

17       Plaintiff alleges a claim against Defendant Pamela Brown under 42 U.S.C. § 1983.  In *De Nieva*
18  *v. Reyes,* 966 F.2d 480 (9th Cir.1992), the Ninth Circuit held that "[n]either the [Commonwealth] nor
19  its officers acting in their official capacity can be sued under § 1983." *De Nieva*, 966 F.2d at 483.
20  Thus, Plaintiff fails to state a claim under § 1983 against Defendant Brown in her official capacity as
21  the Attorney General of the Commonwealth, and such claim must be dismissed.

22  **b) Failure to allege a constitutional violation**

23       Plaintiff's § 1983 claim against Ms. Brown in her personal capacity must also be dismissed for
24  failure to state a claim for relief because Plaintiff has failed to allege facts supporting a finding of a
25  constitutional violation.

26       The notice pleading standard of Fed. R. Civ. P. 8(a) applies to § 1983 claims. *Empress LLC*
27  *v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).  To state a § 1983 claim, a
28  plaintiff must allege that (1) the conduct complained of was committed by a person acting under color

4

1  of state law, and (2) the conduct deprived the plaintiff of a constitutional right.  *See West v. Atkins,*

2  487 U.S. 42, 48, 108 S.Ct. 2250, 2254-2255 (1988); *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.

3  1997).

4       The Complaint fails to allege a deprivation of a constitutional right.  When scrutinized, it is

5  apparent that the Complaint alleges, at most, a breach of contract.  Plaintiff's 1983 claim is premised

6  on her theory that Ms. Brown interfered with her right to compensation for the taking of her property.

7  Complaint, ¶ 45.  Plaintiff's allegations of a deprivation of her rights relates to her rights under the

8  Land Compensation Settlement Agreement ("Settlement Agreement") entered into between Plaintiff

9  and the Marianas Public Land Authority ("MPLA") on May 5, 2005.  *Id.* ¶ 44.  The Settlement

10  Agreement was a contract wherein the government paid consideration in exchange for a deed to

11  Plaintiff's property.  The payment which Plaintiff accuses defendants of interfering with was a

12  payment alleged due under the Settlement Agreement contract.  Accordingly, at most, Plaintiff's

13  § 1983 claim alleges a breach or interference with her contractual right to compensation under the

14  Settlement Agreement.

15            **i) No Due Process Violation**

16       The law regarding redressing contractual rights under § 1983 was comprehensively explained

17  by the court in *Gannett Fleming West, Inc. v. Village of Angel Fire,* 375 F. Supp. 2d 1104, 1108-1109

18  (D.N.M. 2004).  There, the court stated:

19            The Supreme Court of the United States has held that a simple breach of
     contract claim does not give rise to a claim under 42 U.S.C. § 1983. In Shawnee
20     Sewerage & Drainage Co. v. Stearns, 220 U.S. 462, 31 S.Ct. 452, 55 L.Ed. 544 (1911),
     the Court held that when "[a] simple breach of contract is ⋯ alleged[,] ⋯ [t]he breach
21     of a contract is neither a confiscation of property nor a taking of property without due
     process of law."... Other federal courts have also found that breach of contract claims
22     do not fall within the scope of constitution violations that § 1983 protects. More
     recently, the Supreme Court affirmed that, where a state provides a remedy thought a
23     breach of contract suit in state court, there is no due process violation where a contract
     is not paid by the state. See Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189,
24     195-96... (2001). In Lujan v. G & G Fire Sprinklers, Inc., the Supreme Court assumed,
     without deciding, that the state statutory scheme depriving contractors of payment
25     constituted a property interest, but then held "it is an interest, unlike the interests
     discussed above [that require a pre-deprivation hearing to comport with due process],
26     that can be fully protected by an ordinary breach-of-contract suit." 532 U.S. at 196....
     Accordingly, the Court ruled: "We hold that if California makes ordinary judicial
27     process available to respondent for resolving its contractual dispute, that process is due
     process." 532 U.S. at 197,...121 S.Ct. 1446.

28

1  *Gannett Fleming West, Inc. v. Village of Angel Fire,* 375 F. Supp. 2d 1104, 1108 -1109 (D.N.M. 2004).

2  The Plaintiff's § 1983 action therefore fails because a breach of the Settlement Agreement is not

3  actionable under § 1983. *See id.* As explained by the court in *Gannett,* any alleged denial of payment

4  under the Settlement Agreement does not amount to a due process violation. Plaintiff clearly had the

5  remedy of a breach of contract suit available to her for payment under the Settlement Agreement, *see*

6  7 CMC § 2251(b) (permitting a claim against the Commonwealth government founded upon "any

7  express or implied contract with the Commonwealth government"), and any right she had to payment

8  pursuant to the Settlement Agreement could be fully protected by a breach of contract suit. Such

9  process is "due process," and any allegation that the Government failed to adhere to its end of the

10  bargain therefore does not rise to the level of a due process violation. *See Gannett Fleming West, Inc.,*

11  375 F. Supp. 2d at 1108 -09.

12                               **ii) Taking claim not actionable**

13         A dismissal under FRCP 12(b)(6) is warranted assuming *arguendo* that the 1993 letter from

14  the then-Governor, Complaint Ex. "A," qualifies as a taking of property for Fifth Amendment

15  purposes. First, any claim under § 1983 for a taking of Plaintiff's property without just compensation

16  would be barred by the two-year statute of limitations. *See* Title 7 CMC § 2503(d) (providing a two

17  year statute of limitations for "[a]ctions for injury to or for the death of one caused by the wrongful act

18  or neglect of another"); *Usher v. City of Los Angeles,* 828 F.2d 556, 558 (9th Cir. 1987) (stating that

19  the proper statute of limitations for section 1983 actions in California was California's analogous

20  statute of limitations). Second, even if not time barred, Plaintiff does not allege that she exhausted

21  state remedies as required for recovery under § 1983 for a taking and the claim would therefore be

22  subject to dismissal for lack of jurisdiction. *See Jama Const. v. City of Los Angeles,* 938 F.2d 1045

23  (1991), 1047 (9 th Cir. 1991) ("[B]ecause the Fifth Amendment proscribes takings *without just*

24  *compensation,* no constitutional violation occurs until just compensation has been denied. The nature

25  of the constitutional right therefore requires that a property owner utilize procedures for obtaining

26  compensation before bringing a § 1983 action and a taking claim is premature unless the plaintiff has

27  sought "compensation through the procedures the State has provided for doing so." . . . . *Id.* at 194, 105

28  S.Ct. at 3120. The Court explained that, "because the Fifth Amendment proscribes takings *without just*

1    *compensation,* no constitutional violation occurs until just compensation has been denied. The nature

2    of the constitutional right therefore requires that a property owner utilize procedures for obtaining

3    compensation before bringing a § 1983 action." (Citing *Williamson County Regional Planning*

4    *Commission v. Hamilton Bank,* 473 U.S. 172, 194, 194 n.13 (emphasis in original)). Third, Plaintiff's

5    claim is barred by the terms of the Settlement Agreement, wherein Plaintiff specifically agreed as

6    follows:

7           Except for the rights and obligations created by this Agreement, all other claims,
       demands, rights, duties, obligations and liabilities arising between the parties to this

8           Agreement are hereby mutually satisfied, discharged and released. Each party hereto
       releases, discharges and forever waives any such claims, demands, rights, duties,

9           obligations and liabilities against the other party, their heirs and assigns, past, present
       and future, as it relates to the Commonwealth's acquisition of E.A. 157-2-1, more

10          particularly described above.

11   Settlement Agreement, Art. III, Ex. D to Complaint (emphasis added). This release not only precludes

12   Plaintiff from asserting any claim against the Commonwealth for an alleged taking in 1993, but also

13   indicates that Plaintiff's rights to compensation for her Property clearly arose out of the Settlement

14   Agreement itself, and were not based on any other theory of compensation.[1]

15                             **iii) No equal protection violation**

16          Plaintiff's allegation that she was deprived of equal protection under the law also fails to

17   withstand scrutiny under FRCP 12(b)(6). Plaintiff appears to allege that she was not compensated as

18   were the other individuals whose property was taken for wetland purposes. Plaintiff's claim is thus

19   based on a class of one. Because Plaintiff does not allege discrimination based on a suspect or *quasi-*

20   suspect class, her equal protection claim is subject to review under a rational basis scrutiny. *See*

21   *Nelson v. City of Selma,* 881 F.2d 836, 838-39 (9th Cir. 1989).

22          The Ninth Circuit has explained that "[a]lthough '[a] successful equal protection claim may be

23   brought by a 'class of one,' the plaintiff still bears the burden of proving that she 'has been

24   intentionally treated differently from others similarly situated and that there is no rational basis for the

25   difference in treatment.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting

26

27        [1] As stated above, the Government's refusal to pay under the terms of a contract does not rise to a taking of

28   property or a due process violation actionable under § 1983 where the right to payment is actionable through a breach of
contract action. *Gannett Fleming West, Inc. v. Village of Angel Fire,* 375 F. Supp. 2d 1104, 1108 -1109 (D.N.M. 2004).

1 | *Sea River Maritime Financial Holding, Inc. v.* 309 F.3d 662, 679 (9th Cir. 2002)).

2 |       In *Zavatsky v. Anderson,* 130 F. Supp. 2d 349, 356 -357 (D. Conn. 2001), the court explained

3 | the analysis of a rational basis standard under FRCP 12(b)(6), stating:

4 |       "[T]he rational basis standard requires the government to win if any set of facts
5 | reasonably may be conceived to justify its classification, [while] the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts
6 | that could be proved consistent with the allegations." *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir.1992). In order to reconcile both standards, a court must
7 | take as true all of the complaint's allegations, including all reasonable inferences that follow, and apply those "resulting facts in light of the deferential rational basis
8 | standard." *Id.* at 460. To survive a 12(b)(6) motion in such a case, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to
9 | government classifications." *Id.* A complaint's conclusory assertion that a policy is "without rational basis" is insufficient to overcome this presumption where the
   justification for the policy is "readily apparent." *Id.*
10 | *Zavatsky v. Anderson,* 130 F. Supp. 2d 349, 356 -357 (D. Conn. 2001).

11 |       In *Parrish v. Consolidated City of Jacksonville*, No. 304CV986J32HTS, 2005 WL 1500894

12 | (M.D. Fla. June 22, 2005), the district court similarly summarized the practice under Rule 12(b)(6)

13 | with respect to equal protection claims, stating "When confronted with 12(b)(6) motions to dismiss

14 | equal protection claims subject to the rational basis standard, courts have... dismissed the claims if

15 | plaintiffs have failed to negate all reasonable justifications for the challenged classifications. See,

16 | e.g.,... *Hernandez-Mezquita v. Ashcroft,* 293 F.3d 1161, 1164 (9th Cir.2002)...." *Parrish v.*

17 | *Consolidated City of Jacksonville*, No. 304CV986J32HTS, 2005 WL 1500894, **3-4 (M.D. Fla. June

18 | 22, 2005).  The court concluded that while the plaintiff alleged that the classification "does not have

19 | a rational basis," "[s]he does not attempt to negate all bases that might support the classification. This

20 | failure alone is enough to dismiss the complaint." *Id.*

21 |       In the present case Plaintiff does not allege "facts sufficient to overcome the presumption of

22 | rationality that applies to government classifications" necessary to survive a 12(b)(6) motion, nor does

23 | Plaintiff even attempt to negate all bases to support Defendants' alleged treatment of her. *Zavatsky*

24 | *v. Anderson,* 130 F. Supp. 2d 349, 357 (D. Conn. 2001). The Complaint alleges that Defendants acted

25 | to deny her payment under the Settlement Agreement as compared to other third persons that received

26 | payment under their respective agreements with the Government.  The actions of the CNMI and

27 | Defendant Brown are explained when reviewing the MPLA Complaint. *See* Complaint, Ex. "R." In

28 | the MPLA Complaint, the CNMI alleges that it seeks to enjoin payment on the ground that the

1   Settlement Agreement is void as violation Commonwealth law, which is clearly a rational basis for

2   Defendants' actions.[2]   Because Plaintiff's Complaint completely lacks any factual allegations to

3   support a claim that Defendants did not have a rational basis, Plaintiff's equal protection claim under

4   § 1983 fails and must be dismissed under FRCP 12(b)(6).

5                       **c) Section 1983 claim barred by qualified immunity.**

6        Plaintiff's § 1983 claim must also be dismissed against Defendant Brown in her personal

7   capacity because Ms. Brown is entitled to qualified immunity.   In determining whether Ms. Brown is

8   entitled to qualified immunity for purposes of dismissal under 12(b)(6), the court must determine:

9           (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ⋯ the
            facts alleged show the officer's conduct violated a constitutional right"; and, if a
10          violation of a constitutional right is found, (2) "whether the right was clearly
            established."

11

12  *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (quoting *Saucier,* 533 U.S. at 201,

13  121 S.Ct. 2151); *see also Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir. 1997)

14  ("The defendants assert the defense of qualified immunity in a Rule 12(b)(6) motion to dismiss, and

15  they are entitled to qualified immunity at this stage in the proceedings if Williams's amended complaint

16  fails to allege the violation of a clearly established constitutional right.").   As shown above, the facts

17  alleged in the Complaint at most allege a violation of a contractual right to payment under the

18  Settlement Agreement, and not a constitutional right.   As such, Defendant Brown is entitled to

19  qualified immunity.

20  _____

21      [2] The documents attached to the Complaint in the present case further buttress the motivation for and rational basis
    evident on the face of the MPLA Complaint.  The Complaint here references a letter from the Attorney General's Office
22  to Secretary Atalig, dated May 9, 2005.  *See* Complaint, Exhibit "L."  In that letter, the Acting Attorney General Clyde
    Lemons, Jr., states that the Office of the Attorney General "is currently reviewing several drawdowns that have been sent
23  to your office for approval.  Additionally, we are contemplating taking action against MPLA with respect to such
    drawdowns." Complaint, Exhibit "L."  Similarly, attached to the present Complaint as Exhibit "P" is a letter dated August
24  10, 2005, from the Attorney General to the Executive Director of the CDA.  This letter states:

            We are investigating requisitions FY 05-10 and FY 05-11 because the valuations appear too high for
25          properties that generally have little or no market value.  Both involve 100% wetland properties.  We are
            also investigating these requisitions because MPLA is not authorized to compensate with bond money
26          wetland properties that are not taken for right-of-ways and it does not appear that these properties were
            taken for that reason.  We will conclude our investigation into these matters by the end of the day on
27          Friday, August 12 th.  By the end of the day on Monday, August 1, 2005, we will either bring court action
            to void the payments (and other similar payments that have already been paid) or recommend that the
            payments be authorized.
28  Complaint, Exhibit "P."

                                                    9

1

**d) Section 1983 claim barred by absolute immunity.**

2      Finally, the § 1983 claim cannot be maintained against Defendant Brown in her personal

3  capacity under the doctrine of absolute immunity as announced in *Fry v. Melaragno*, 939 F. 2d 832,

4  837 (9 th Cir. 1991). In *Fry*, the Ninth Circuit explained:

5          Whether the government attorney is representing the plaintiff or the defendant, or is
           conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity
6          is "necessary to assure that ··· advocates ··· can perform their respective functions
           without harassment or intimidation." Given the similarity of functions of government
7          attorneys in civil, criminal and agency proceedings, and the numerous checks on abuses
           of authority inherent in the judicial process, we reiterate our statement in *Flood* that
8          "[t]he reasons supporting the doctrine of absolute immunity apply with equal force
           regardless of the nature of the underlying action." If the government attorney is
9          performing acts "intimately associated with the judicial phase" of the litigation, that
           attorney is entitled to absolute immunity from damage liability.

10

11  *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) (quoting *Butz v. Economou*, 438 U.S. 478, 512,

12  98 S. Ct. 2894, 2913 (1978), and *Flood v. Harrington*, 532 F.2d 1248, 1251 (9th Cir.1976)); *see also*

13  *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2nd Cir. 1992) (stating that absolute immunity

14  extends to "government attorneys who initiate civil suits").

15      The allegations in the Complaint relate to Defendant Brown's actions undertaken in her official

16  capacity as the Attorney General of the Commonwealth. The allegations further relate solely to

17  Defendant Brown's actions during litigation of the case filed by the CNMI against Plaintiff in the

18  Commonwealth Superior Court, Civil Action No. 05-0332E, (attached to Plaintiff's Complaint as

19  "Exhibit R"), and in furtherance of the litigation. Therefore, Defendant Brown is absolutely immune

20  for those actions, and Plaintiff's claim must therefore be dismissed. *See Bly-Magee v. California*, 236

21  F.3d 1014, 1018 (9th Cir. 2001). ("If sued in an individual capacity, Lungren and any OAG attorneys

22  are . . . absolutely immune for conduct during performance of official duties. . . . Bly-Magee cannot

23  state a claim against Lungren and any other OAG attorneys for official conduct, and dismissal with

24  prejudice of all such claims is affirmed.") (citing *Fry v. Melaragno*, 939 F.2d 832, 836-37 (9th

25  Cir.1991)); *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2nd Cir. 1992) ("[W]hen a high

26  executive officer of a municipality authorizes a civil lawsuit in pursuit of that municipality's

27  governmental interests, absolute immunity attaches.").

28

**2. 42 U.S.C. § 1985(3).**

Plaintiff alleges a claim under 42 U.S.C. § 1985(3). Section 1985 creates a "cause of action against those who *conspire* to obstruct justice, or to deprive any person of equal protection or the privileges and immunities provided by the Constitution...." *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984). To fall within section 1983(3):

> a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (U.S. 1971).

Furthermore, the plaintiff must show "that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action . . . .'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quoting *Breckenridge*, 403 U.S. at 102). As recognized by the Supreme Court, "'[t]he language [of § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic* 506 U.S. at 268-269 (quoting *Breckenridge*, 403 U.S. at 102). A complaint should be dismissed under FRCP 12(b)(6) where "the plaintiffs have not alleged that the conspiracy was motivated by class-based animus." *Perry v. Southeastern Boll Weevil Eradication Foundation*, 2005 WL 3051563 at *8 (affirming the district court's dismissal of the complaint for the failure to allege a class-based animus and stating that "the complaint offers no basis for what would have motivated the defendants' purported actions in this case."); *see also Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) ("A plaintiff also must show that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus. . . . As correctly noted by the district court, the Peters alleged no facts that suggest the defendants acted with any class-based animus. Therefore, the district court properly dismissed this claim.") (citation omitted).

In the present case, the Complaint completely fails to allege a class-based, invidiously discriminatory animus. Plaintiff alleges, at most, that she was part of a class of claimants seeking

1   compensation for the government's acquisition of their wetland properties under settlement

2   agreements. Plaintiff fails to allege that Defendant Brown was motivated by any animus. Even

3   assuming the Complaint can be read as alleging that Defendant Brown had an animus towards parties

4   to settlement agreements for payment of government acquired lands, *see* Complaint, ¶¶ 39, 40, 48 and

5   51, such allegation does not satisfy §1985(3)'s requirement that Plaintiff establish that Defendant

6   Brown was motivated by a class-based invidiously discriminatory animus. *See United Broth. of*

7   *Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 839 (1983) (holding

8   that "[e]conomic and commercial conflicts ... are best dealt with by statutes, federal or state,

9   specifically addressed to such problems, as well as by the general law proscribing injuries to persons

10  and property" and not cognizable under § 1985(3)." Therefore, Plaintiff has failed to state a claim for

11  relief under 42 U.S.C. § 1985(3). *See Lucas v. New York City,* 842 F. Supp. 101, 104 (S.D.N.Y. 1994)

12  ("The complaint is devoid of any allegation of a "class-based, invidious discriminatory animus;" it thus

13  fails to state a claim under § 1985(3)."); *Piorkowski v. Parziale*, No. 3:02CV00963, 2003 WL

14  21037353, *3 (D. Conn. May 7, 2003) (same).

15      For the reasons stated above, Plaintiff's federal claims against Defendant Brown must be

16  dismissed pursuant to FRCP 12(b)(6).

17  **C. State Claims**[3]

18      Plaintiff's state law claims must also be dismissed for failure to state a claim in which relief

19  can be granted.

20      **1. Sovereign Immunity - CNMI and Defendant Brown in her Official Capacity**

21      Plaintiff alleges claims against the CNMI for abuse of process, malicious prosecution, breach

22  of the duty of good faith and fair dealing, intentional infliction of emotional distress, and negligent

23  infliction of emotional distress, and against Pamela Brown for common law conspiracy, abuse of

24  process, malicious prosecution, intentional interference with contractual rights, intentional interference

25

26  [3] Title 7 CMC § 3401 provides: "In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary." 7 CMC § 3401.

27

28      Thus, in the absence of written or customary law, this court must resort to Restatement principles in analyzing the state law claims set forth in the Complaint. *Id.*

1  with economic relations, intentional infliction of emotional distress, and negligent infliction of

2  emotional distress.

3      The Ninth Circuit has recognized that "a federal court exercising supplemental jurisdiction over

4  state law claims is bound to apply the law of the forum state to the same extent as if it were exercising

5  its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir.

6  2000); *see also Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995).

7      The CNMI's Government Liability Act, 7 CMC §2202, is a partial waiver of sovereign

8  immunity as to the government's liability in tort. This court has recognized that "the Government

9  Liability Act . . . is . . . relevant to the CNMI's amenability to suit based on state law . . . ."*Ahmed v.*

10  *Goldberg,* Nos. Civ. A. 00-0005, Civ. A. 99-0046, 2001 WL 1842399, *9 (D.N. Mar. I. May 11, 2001).

11  The waiver of immunity found in § 2202 is, however, subject to the exceptions found in Title 7 CMC

12  § 2204, which provides in relevant part:

13      The government is not liable for the following claims:

14      (a) Any claim based upon an act or omission of an employee of the government,
        exercising due care, in the execution of a statute or regulation, whether or not the
15      statute or regulation is valid or based upon the exercise or performance or the failure
        to exercise or perform a discretionary function or duty on the part of the
16      Commonwealth agency or an employee of the government, whether or not the
        discretion is abused;
17
        (b) any claim arising out of assault, battery, false imprisonment, false arrest, malicious
18      prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference
        with contract rights . . .
19  Title 7 CMC § 2204 (a), (b).

20      Section 2204 extends immunity to suits naming employees or agents of the Commonwealth in

21  their official capacity as defendants. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845

22  F.2d 113, 115 -16 (6th Cir. 1988) (stating that sovereign immunity cannot be avoided by naming

23  officers of the U.S. as defendants, and dismissing an action barred under the Federal Tort Claims Act,

24  28 U.S.C. § 2680, "insofar as this is an action against the defendants in their official capacities"); *See*

25  *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982) ("The bar of sovereign immunity

26  cannot be avoided merely by naming officers and employees of the United States as agents.").

27      The CNMI Government Liability Act excludes claims for malicious prosecution, abuse of

28  process, and interference with contract rights. 7 CMC § 2204(b). Thus, Plaintiff's claims of malicious