prosecution and abuse of process against both the CNMI and Pamela Brown in her official capacity, clearly must be dismissed under the doctrine of sovereign immunity. Furthermore, Plaintiff's claims against Ms. Brown in her official capacity for intentional interference with contractual rights and intentional interference with economic relations, must also be dismissed under the authority of 7 CMC § 2204(b). Both claims allege an interference of contractual rights, which is explicitly excluded under section 2204(b). *See e.g. Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151, 1154-1155 (D. C. Cir. 1985) (interpreting the analogous exception in the Federal Tort Claims Act, 28 U.S.C. § 2680(h) barring claims against the U.S. arising out of "interference with contract rights").[4]

### 2. Absolute Immunity - Defendant Brown in her Personal Capacity

The Restatement of Law provides the rule for defenses applicable in all tort actions. Section 895D of the Restatement (Second) Torts states:

> (1) Except as provided in this Section a public officer is not immune from tort liability.
> (2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.
> (3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
> (a) he is immune because engaged in the exercise of a discretionary function,
> (b) he is privileged and does not exceed or abuse the privilege, or
> (c) his conduct was not tortious because he was not negligent in the performance of his responsibility.

RESTATEMENT (SECOND) OF TORTS § 895D (1979).

Comment c to Section 895D explains: "[A] judge or court of general jurisdiction or a legislator is given an immunity that is general in character. He is not liable for his discretionary acts or omissions even though he is found to have acted with malicious or improper motives. . . . The immunity may extend beyond judges and legislators. It may apply, for example, to a prosecuting attorney or to a clerk of court or to a legislative official." RESTATEMENT (SECOND) OF TORTS, § 895D cmt. c (1979).

The Restatement acknowledges that the common law immunities may be modified by statute.

---

[4] In *Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151, 1154-1155 (D. C. Cir. 1985) (interpreting the analogous exception in the Federal Tort Claims Act, 28 U.S.C. § 2680(h) barring claims against the U.S. arising out of "interference with contract rights"), the court explained: "to hold that interference with prospective advantage does not arise out of interference with contract rights under section 2680(h) would subject the government to liability if its employees interfered with the plaintiff's mere expectation of entering a contract, but not if they interfered with a contract already in existence. Such a result would be illogical and contrary to the " 'words and reason of the exception.'" *Id.*

14

RESTATEMENT (SECOND) OF TORTS, § 895D, cmt. i (1979). The Restatement cites 42 U.S.C. § 1983 as an example of a law where immunity for official discretion is not applicable, but states that in accordance with Supreme Court authority, "the immunity continues to apply [in § 1983 actions] in behalf of judges and legislators." *Id.* As indicated previously, the Ninth Circuit in *Fry* has held that such absolute immunity afforded to judges and legislators applies also to prosecutors. *See Fry v. Melaragno,* 939 F.2d 832, 835-237, 837 (9th Cir. 1991) ("The [Supreme] Court has granted absolute immunity to 'the President, judges, prosecutors, witnesses, and officials performing 'quasi-judicial' functions, and legislators." . . . "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that ⋯ advocates ⋯ can perform their respective functions without harassment or intimidation.'") (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 520 (1985), and *Butz, v. Economou,* 438 U.S. 478, 512 (1978)). Specifically, prosecutors are immune from civil suit based on its actions in bringing a criminal, civil, or administrative action. *Id.*; *see also Spear v. Town of West Hartford,* 954 F.2d 63, 66 (2nd Cir. 1992) (stating that absolute immunity extends to "government attorneys who initiate civil suits"). The immunity extends to acts associated with the judicial phase of litigation. *Fry,* 939 F.2d at 837.

The common law immunity that is preserved under federal law in relation to section 1983 claims similarly applies to bar the state law claims against Defendant Brown arising out of Defendant Brown's actions in pursuing litigation undertaken on behalf of the Commonwealth. *See Fry v. Melaragno,* 939 F.2d 832, 836 (9th Cir. 1991) (stating that "in determining whether a government official should be given absolute immunity for a particular function," the court considers "whether there is 'a historical or common law basis for the immunity in question'") (quoting *Mitchell,* 472 U.S. at 521-22). These include Plaintiff's claims for common law conspiracy, abuse of process, malicious prosecution, intentional interference with contractual rights, intentional interference with economic relations, intentional infliction of emotional distress, and negligent infliction of emotional distress, all of which are premised on Defendant Brown's actions in her capacity as the Attorney General related to the litigation of *CNMI v. MPLA,* CNMI Superior Court No. 05-0322E. In addition to the grounds for dismissal set forth below, the aforementioned state law claims asserted against Defendant Brown

must be dismissed under the doctrine of absolute immunity.

### 3. Common Law Conspiracy

Plaintiff's claim for common law conspiracy against Defendant Brown. The CNMI Supreme Court has held that "the common law as generally understood and applied in the United States does not provide relief for the tort of attempted extortion or the tort of conspiracy. Thus, we have no basis for recognizing the alleged torts." *I.G.I. Gen. Contractor & Dev., Inc. V. Public School Sys.*, 1999 MP 12 ¶ 12, 5 N.M.I. 250, 252 (N.M.I. 1999). Because the tort of conspiracy is not recognized in the C.N.M.I., Plaintiff's common law conspiracy claim must be dismissed.

### 4. Abuse of Process

Plaintiff alleges a claim for abuse of process against Defendants CNMI and Brown. As stated earlier, Plaintiff's claim for abuse of process against the CNMI and Defendant Brown in her official capacity must be dismissed on sovereign immunity grounds pursuant to 7 CMC § 2204(b).

The claim must also be dismissed against the CNMI and Defendant Brown in her official and personal capacities for a failure to state facts to support the elements of the abuse of process claim.

The Restatement provides: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." RESTATEMENT (SECOND) OF TORTS § 682 (1977).

The C.N.M.I Superior Court has further explained:

> The three essential elements of abuse of process are:
> "(1) regularly issued process compelling the performance or foreclosure of some prescribed act; (2) an intent to do harm without excuse or justification; and (3) the person using the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process." Riddell Sports, Inc. v. Brooks, 872 F. Supp. 73, 79 (S.D.N.Y. 1993).
>
> Merely filing a complaint cannot give rise to an abuse of process claim. Id. Instead, the plaintiff must have engaged in a "perverse" misuse of process.

*Hiraga v. House*, C.N.M.I. Super. Ct. Civ. No. 98-0100A, p. 6 (July 29, 1999) (footnote omitted).

The comment to the Restatement further explains:

> [T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. . . .
>
> For abuse of process to occur there must be use of the process for an immediate purpose

other than that for which it was designed and intended.

RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977).

The Complaint does not allege that Defendant Brown or the CNMI's actions in bringing the lawsuits to enjoin payment to Plaintiff under the Settlement Agreement were brought for any other purpose than to enjoin payment. Because the Complaint does not allege that Defendant Brown or the CNMI were acting under some pretense or for any purpose other than what the process was designed or intended, Plaintiff's abuse of process claim must therefore be dismissed for the failure to state a claim.

### 5. Malicious Prosecution

Plaintiff alleges a claim for malicious prosecution against the CNMI and Attorney General Brown. Again, as stated above, the CNMI and Defendant Brown in her official capacity are entitled to sovereign immunity for any claim of malicious prosecution under 7 CMC § 2204(b).

Moreover, Plaintiff's claim must be dismissed as otherwise failing to state a claim upon which relief may be granted.

First, Plaintiff's cannot maintain an action for "malicious prosecution" *per se* as she has not alleged anywhere that criminal proceedings were instituted against her. *See Mitchell v. Estate of Hillblom*, 1997 MP 30 ¶ 2 n.1, 5 N.M.I. 136, 137 n.1 (N.M.I. 1997) ("The terms malicious prosecution and wrongful use of civil proceedings have been used interchangeably by the parties in the Briefs. However, malicious prosecution involves the initiation of a criminal proceeding which is not applicable in this case.") (citing RESTATEMENT (SECOND) OF TORTS § 653 at 406 (1976)).

To the extent that the Complaint pleads a claim for wrongful use of civil proceedings, the claim must also be dismissed under FRCP 12(b)(6).

The elements of wrongful use of civil proceedings are:

(1) The defendant must take an active part in the initiation, continuation, or procurement of civil proceedings against another;
(2) The defendant acts without probable cause;
(3) The defendant acts primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based; and
(4) The proceedings must have terminated in favor of the person against whom they are brought.

*See Mitchell v. Estate of Hillblom*, 1997 MP 30 ¶ 2, 5 N.M.I. 136, 137 (N.M.I. 1997).

Like Plaintiff's abuse of process claim, assuming Plaintiff is alleging a wrongful use of civil proceedings, such claim also fails because Plaintiff has failed to allege that Defendants CNMI or Brown filed suit against Plaintiff for "a purpose other than securing the proper adjudication of the claim in which the proceedings were based." *Id.* Plaintiff's allegations amount to a claim that the lawsuit was initiated for the purpose of enjoining payment under the Settlement Agreement. Such allegations, however, fall short of stating that Defendants' actions were for another purpose unrelated to the relief sought in the suit as required to prove a claim for wrongful use of civil proceedings. Plaintiff's claim must therefore be dismissed under FRCP 12(b)(6).

> Moreover, there can be no allegation that the proceedings have terminated in the claimant's favor until the possibility of change in the outcome of the offending action has been eliminated through the exhaustion of post-trial or appellate remedies. When an appeal is taken, "the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail." RESTATEMENT (SECOND) OF TORTS § 674, cmt. j.

*Pepperell Trust Co. v. Mountain Heir Financial Corp.*, 708 A.2d 651, 656 (Me. 1998) (footnote omitted). "[A] cause of action for malicious prosecution or wrongful use of civil proceedings cannot accrue until the offending proceeding has fully terminated in favor of the original defendant inclusive of any right to or pendency of post-trial process or appeal . . . ." *Id.*; *see* RESTATEMENT (SECOND) OF TORTS § 674 (1977) ("If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail.")

Here, Plaintiff has failed to adequately plead that the proceedings brought by the Commonwealth against Plaintiff (C.N.M.I. Superior Court Case No. 05-0332E) have been fully terminated. The order issued by the Superior Court, referenced in the Complaint as Exhibit "U," dismisses the complaint in that case against Kumagai, a defendant therein. The order indicates on its face that the court did not dismiss the complaint against Kumagai's co-defendant Nicholas in that suit. *See* Complaint, Exhibit "U" (Order, Sept. 27, 2005) ("Nicholas' Motion to Dismiss is hereby Denied."). Significantly, Plaintiff did not attach to her Complaint herein a copy of a Final Judgment in the Case No. 05-0332E, or any document indicating that the action filed in the CNMI Superior Court has fully terminated, or that the time for appeal of that decision has passed in that case. Thus, Plaintiff has failed to allege an essential element of a claim from malicious prosecution or wrongful

use of civil process. *See Smith v. Hurd*, 699 F. Supp. 1433, 1436 (D. Hawaii 1988) ("[T]he weight of authority in other jurisdictions holds that an action has not been favorably terminated until the time for appeal has passed or the appeal has been decided. . . . [T]his court holds that an action is not favorably terminated until it has been finally decided on appeal or the time for appeal has passed. Since the time for appeal has not passed in the *Nagano* case, Smith fails to meet an essential element of his malicious prosecution claim at this time.").

### 6. Breach of Duty of Good Faith and Fair Dealing.

Plaintiff alleges a claim against the CNMI for breach of duty of good faith and fair dealing. This claim must also be dismissed.

A breach of the covenant of good faith and fair dealing constitutes a breach of the contract. *See Hardy v. Vision Service Plan,* 120 P.3d 402, 405 (Mont. 2005) ("Every contract contains a covenant of good faith and fair dealing. . . . A breach of the covenant constitutes a breach of the contract"); *JHE, Inc. v. Southeastern Pennsylvania Transp. Auth.,* No. 1790 Nov. Term 2001, 2002 WL 1018941, *7 (Pa. Com. Pl. May 17, 2002) (holding that "a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative."); *Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F.Supp.2d 785, 794 (D. Md. 2002) ("this duty is merely part of an action for breach of contract" ). It is universally held that, with the exception of insurance contracts, the breach of the implied covenant of good faith and fair dealing results in contract damages, not tort damages. *Fairchild v. Park*, 109 Cal.Rptr.2d 442, 447 (Cal. Ct. App. 2001) ("Yet, with the exception of bad faith insurance cases, a breach of the covenant of good faith and fair dealing permits a recovery solely in contract."); *Worldlogics Corp. v. Chatham Reinsurance Corp.*, 108 P.3d 5, 7 (Okla. Civ. App. 2004 ) ("Under ordinary principles of contract law, a breach of the duty of good faith and fair dealing results only in damages for breach of contract, not liability for the tort of bad faith.").

Title 7 CMC § 2251 provides:

> Except as provided in article 1 of this chapter (commencing with 7 CMC § 2201), action upon the following claims may be brought against the Commonwealth government in the <u>Commonwealth Trial Court which shall have exclusive original jurisdiction</u> thereof:
>
> . . .

(b) Any other civil action or claim against the Commonwealth government founded upon any law of this jurisdiction or any regulation issued under such law, or upon any express or implied contract with the Commonwealth government, or for liquidated or unliquidated damages in cases not sounding in tort.

Title 7 CMC § 2251(b).

Title 7 CMC § 2251 is a waiver of immunity. "[W]aivers of sovereign immunity are to be strictly construed." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998).

Plaintiff's claim for the breach of the duty of good faith and fair dealing is founded upon the April 28, 2005 Settlement Agreement entered into between Plaintiff and the Commonwealth Department of Public Health and Environmental Services. Because the claim amounts to an allegation that the CNMI breached the contract, Title 7 CMC § 2251 strictly precludes Plaintiff from maintaining such action in this court. This particular claim for relief must therefore be dismissed against the CNMI.

### 7. Intentional Interference with Contractual Rights and Intentional Interference with Economic Relations

Plaintiff alleges a cause of action against Defendant Brown for intentional interference with contractual rights and for intentional interference with economic relations. As explained by the C.N.M.I. Supreme Court in *Lucky Development Co., Ltd. v. Tokai, U.S.A., Inc.*, 3 N.M.I. 379, pp. 94-95 (N.M.I. 1992):

> The laws on interference with contract relations and with economic relations in the Commonwealth are as expressed in the restatements of the law.
> [T]he applicable restatement provision is the *Restatement (Second) of Torts* § 766 (1979). This section states that:
> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Lucky Development Co., Ltd. v. Tokai, U.S.A., Inc.*, 3 N.M.I. 379, pp. 94-95 (N.M.I. 1992).

As explained earlier, Plaintiff's claims against Defendant Brown in her official capacity for interference with contractual and economic relations must be dismissed under 7 CMC § 2204(b), which excludes from the government's waiver of immunity any claim arising out of "interference with contract rights." 7 CMC § 2204(b).

Furthermore, the Complaint alleges actions that Defendant Brown undertook under her

authority as the Attorney General of the Commonwealth as is therefore entitled to absolute immunity as explained previously. *See* RESTATEMENT (SECOND) OF TORTS § 895D (1979); *see Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991); *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2nd Cir. 1992). The allegations in the Complaint regarding Defendant's Brown's actions in allegedly interfering with Plaintiff's Settlement Agreement and her economic relations with the MPLA all relate to Defendant Brown's actions undertaken in her official capacity as the Attorney General of the Commonwealth and in furtherance of the litigation instituted to enjoin payment, which litigation is still pending. Defendant Brown is absolutely immune for those actions, and Plaintiff's claim must therefore be dismissed. S*ee id.; see also Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001).

Finally, an allegation of malice alone, without alleging lack of justification, is insufficient to state a claim for relief for the tort of intentional interference with contractual rights and economic relations. *See North American Energy Systems, LLC v. New England Energy Management, Inc.*, 269 F. Supp. 2d 12, 18-19 (D. Conn. 2002). ("Plaintiffs allege that NEEM and Hinson acted maliciously. This will not suffice to support this claim. Under Connecticut law, plaintiffs bear the burden of establishing that NEEM and Hinson engaged in intentional interference without justification, not malice alone. . . .This, they have not done.") (citing 4 Restatement (Second) Torts § 766, comment (s)(1979)).

The Complaint here alleges claims for intentional interference with contractual rights and intentional interference with economic relations. With regard to both claims, the Complaint alleges respectively that Defendants "intentionally and maliciously took actions alleged herein that interfered with said MPLA Settlement Agreement," and that Defendants "intentionally and maliciously took actions, as alleged ¶ 49, *supra*, that interfered with Plaintiff's economic relations with MPLA." Complaint, ¶¶ 77, 82. Plaintiff has not alleged intentional interference without justification. Plaintiff's allegation of malice alone is not enough to support the claim for relief. *See id.* Accordingly, the claims for intentional interference with contractual and economic relations must be dismissed under Rule 12(b)(6).

### 8. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Plaintiff's Complaint alleges claims for intentional and negligent infliction of emotional distress

against Defendants CNMI and Brown. The CNMI and Attorney General Brown in her official capacity are protected by sovereign immunity from this claim. *See* 7 CMC § 2204(b). In interpreting the analogous Federal Tort Claims Act ("FTCA"), courts have determined that where the underlying facts giving rise to the claim for emotional distressed are barred by sovereign immunity under the exceptions of the FTCA, 28 U.S.C. § 2680(h), the emotional distress claim is also barred. *See Gay v. Garvey*, No. Civ.A. 03-CV-01485, 2004 WL 2203730, *1 (E.D. Pa. Sept. 30, 2004) ("Because the emotional distress claim arises from slander and libel, which are both precluded, the emotional distress claim must also fail."); *see also Numrich v. U.S. Postal Service,* No. CV-01-532-ST, 2002 WL 31440877, *3 (D. Or. Jan. 3, 2002) ("The First Amended Complaint adds a claim for "Intentional Interference with Another's Completion of His Own Contract." . . . Each count of that claim expressly alleges that, in various ways, Postal Service employees "intentionally interfered with [Numrich]'s completion of his contract with Ms. Numrich." . . . [T]hese claims may not be brought under the FTCA because they either arise out of misrepresentations or interference with contract rights and therefore are barred by 28 USC § 2680(h).").

In the present case, the Complaint alleges that Defendants interfered with Plaintiff's "civil, statutory, and contractual rights as herein alleged," and that Defendants "had and continue to have an affirmative duty to perform their duties and responsibilities in this case towards Plaintiff in such manners so as not to inflict emotional distress" and "negligently perform[ed] such duties, as herein alleged." Complaint, ¶¶ 91, 96-97 (Complaint, Nov. 8, 2005). While it is extremely difficult to discern from the pleadings exactly what conduct Plaintiff alleges to have caused her alleged emotional distress, at most in light of the pleadings Plaintiff alleges that Defendants CNMI and Brown acted improperly in filing the MPLA lawsuit to enjoin payment under the Settlement Agreement. Title 7 CMC § 2204(b) explicitly excludes actions against the CNMI and its officers for interference with contractual rights, abuse of process, and malicious prosecution. Plaintiff's emotional distress claims are premised on the CNMI's and the Attorney General's actions in filing suit to enjoin payment under the Settlement Agreement and taking actions in furtherance of prosecution of that lawsuit are essentially claims that Defendants interfered with her contract rights, abused the legal process and maliciously prosecuted her. Because such claims are barred by sovereign immunity under section

2204(b), the emotional distress claims are therefore also barred.[5]

The claims for emotional distress must also be dismissed against the CNMI and Brown, both officially and individually, because Plaintiff failed to allege outrageous conduct necessary for relief. As stated in *Charfauros v. Board of Elections*, 1998 MP 16, 5 N.M.I. 188, 1998 WL 34073646, *16-17 (N.M.I. 1998),

> The action asserted by plaintiffs is defined in the RESTATEMENT (SECOND) OF TORTS § 46 (1965) (hereinafter RESTATEMENT) as "Outrageous Conduct Causing Severe Emotional Distress," and is, in relevant part, as follows:
>
>> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm.
>
> To maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *See, Arriola v. Insurance Company of North America*, 2 CR 113, 121 (Trial. Ct.1985), *citing Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 at 1273 (10th Cir.1979).

*Charfauros v. Board of Elections*, 1998 WL 34073646, * 16-17 (N.M.I. 1998).

A claim for negligent infliction of emotional distress similarly requires an allegation of outrageous conduct. *See Dillon v. City of New York,* 261 A.D.2d 34, 41, 704 N.Y.S.2d 1, 7-8 (N.Y.A.D. 1999) ("A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' . . . We have applied the same standard to both the intentional and negligence theories of emotional distress") (citations omitted); *see also Muniz v.*

---

[5] *Cf. Ahmed v. Goldberg,* 2001 WL 1842399, *10 (D.N. Mar. I. 2001) ("All plaintiffs allege intentional and negligent infliction of severe emotional distress against all defendants and are seeking damages, including punitive damages. Defendant appears to presume the emotional distress claims are derivative of the unlawful imprisonment claims and argues that they are barred by sovereign immunity. Because plaintiffs have not clearly alleged which acts caused the emotional distress, it cannot be determined if the claims are barred by sovereign immunity. Accordingly, the count is dismissed for failure to state a claim for relief and plaintiffs are granted leave to amend.")

*Kravis*, 757 A.2d 1207, 1212 (Conn. App. 2000) ("The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous."); *Eaton v. Continental General Ins. Co.*, 147 F. Supp. 2d 829, 836 (N.D. Ohio 2001) ("Whether the claim is for intentional or negligent infliction of emotional distress, extreme and outrageous conduct is required.").

Comment d to the Restatement of Torts § 46 provides: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965). Courts adopting the Restatement comment have held that "the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high . . . ." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting *Rugg v. McCarty*, 173 Colo. 170, 176, 476 P.2d 753, 756 (1970)).

In order to survive a motion to dismiss pursuant to FRCP 12(b)(6), "a plaintiff must allege behavior by a defendant that is extremely egregious." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). A failure to allege outrageous conduct subjects the claim to dismissal as a matter of law. *See id.* at 666 (holding that "[a]s a matter of law," the plaintiff's allegations failed to meet the "exacting standard" of outrageous conduct, and affirming a dismissal of a claim for intentional infliction of emotional distress under the state rule mirroring FRCP 12(b)(6)).

In the present case, Plaintiff has not alleged "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965). Plaintiff's allegations are that (1) Defendants CNMI and Attorney General Brown filed a lawsuit against her to enjoin payment under the Settlement Agreement, (2) that Defendant CNMI entered into an Agreement on August 19, 2005, with the Commonwealth Development Authority ("CDA") wherein the CDA agreed not to approve requisitions for payment under the Settlement Agreement, and (3) that Defendant Brown approved "as to form and legality" the May 2, 2005 Settlement Agreement entered into between Plaintiff and the Commonwealth Department of Public Health and Environmental Services ("CDPHES") regarding the outstanding debt Plaintiff owed to the

CDPHES for Plaintiff's medical treatment. A review of the complaints in both lawsuits filed against Plaintiff in the Superior Court (CNMI Superior Court Case Nos. 05-0332E and 04-0149C), as well as the Agreement between the CNMI and the CDA, reveals the underlying reasons supporting those actions. The complaint in Case No. 05-0149C specifically alleges that Plaintiff was sued to collect payment owed to the CDPHES, *see* Complaint, Exhibit "F", and the Settlement Agreement in that case which Defendant Brown approved as to form and legality reflects an agreement between the CDPHES and Plaintiff in settlement of Plaintiff's debt. *See* Complaint, Exhibit "I". The complaint in 05-0322E alleges that the May 5, 2005 Land Compensation Settlement Agreement entered into between the MPLA and Plaintiff authorizing payment by the MPLA was void in light of the relevant CNMI statutes. *See* Complaint, Exhibits "R" and "T". Furthermore, the August 15, 2005 agreement signed by Defendant Brown on behalf of the CNMI and the CDA explains that the CDA agreed to not approve the requisition for payment to Plaintiff in light of the lawsuit filed by the CNMI against Plaintiff questioning the propriety of paying Plaintiff under the Settlement Agreement, and because the CDA did not want to involve itself with payments that are potentially illegal, it would await the outcome of the civil suit. *See* Complaint, Exhibit "S." A reading of these documents referenced in the Complaint reveals that Defendants were acting pursuant to a rational basis and within the scope of their respective duties and responsibilities. The Complaint simply does not allege any facts which constitute extreme and outrageous behavior as a matter of law. Plaintiff's claims against the CNMI and Defendant Brown for intentional and negligent infliction of emotional distress must therefore be dismissed for failure to state a claim as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's federal and state claims against Defendants CNMI and Brown should be dismissed under FRCP 12(b)(6).

CIVILLE & TANG

Date: December 28, 2005    By: _____
G. PATRICK CIVILLE
*Commonwealth of the Northern Mariana Islands, and Pamela Brown, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands*