*Ahmed v. Goldberg*

Not Reported in F.Supp.2d                                                                                               Page 1
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

H
Only the Westlaw citation is currently available.
District Court for the Northern Mariana Islands.
Juyel AHMED, et al., Plaintiffs,
v.
Robert GOLDBERG, in his personal capacity, United States of America, Commonwealth of the Northern Mariana Islands, and Does 1-25 Defendants.
Rui LIANG, et al., Plaintiffs,
v.
Robert GOLDBERG, in his personal capacity, United States of America, Commonwealth of the Northern Mariana Islands, and Does 1-25, Defendants.
Nos. Civ.A.00-0005, Civ.A. 99-0046.

May 11, 2001.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CNMI'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MUNSON, J.
*1 *Liang v. Goldberg,* [FN1] Civil Action No. 99-0046, came before the Court on September 7, 2000, for hearing on (1) Defendant Commonwealth of the Northern Mariana Islands's ("CNMI") Motion to Dismiss Second Amended Complaint ("SAC"), (2) CNMI's Motion for Supersedeas Bond, and (3) Plaintiffs' Cross-Motion for Partial Summary Judgment Against CNMI. Bruce Jorgensen appeared for plaintiffs. Assistant Attorney General Robert Goldberg appeared on behalf of the CNMI.

    FN1. This motion was filed and heard before *Liang v. Goldberg* was consolidated with *Ahmed v. Goldberg,* Civ. No. 00-0005.

Upon consideration of the written and oral argument of counsel, the Court hereby GRANTS IN PART and DENIES IN PART defendant CNMI's motion to dismiss as follows: counts one and two (unlawful imprisonment) are dismissed with prejudice to the extent they are based on 42 U.S.C. § 1983, and are dismissed with leave to amend to the extent they are based on 28 U.S.C. § 1350; count three (unlawful seizure) is dismissed with prejudice; the asylum claims in counts four and five are dismissed and plaintiffs are granted leave to amend consistent with the Court's Order; count six (open government act defiance) is dismissed without prejudice; count seven (conspiracy) is not directed against defendant CNMI; defendant's motion to dismiss is denied as to count eight (concealment); counts nine (emotional distress), ten (estoppel) and thirteen (Art. X, Sec.9) are dismissed and plaintiffs are granted leave to amend; counts eleven (punitive damages) and twelve (joint and several liability) are dismissed with prejudice. Plaintiffs' cross-motion for partial summary judgment is DENIED. The CNMI's Motion for Supersedeas Bond was DENIED pursuant to the Court's September 7, 2000 Order Denying Defendant CNMI's Motion for Supersedeas Bond.

DEFENDANT CNMI'S MOTION TO DISMISS 2

    FN2. In plaintiffs' reply to the CNMI's opposition to summary judgment, plaintiffs contend that defendant's motion should be considered as one for summary judgment because defendant relied on matters outside the pleadings in its motion to dismiss. The matters pointed to by plaintiffs are matters of which this court can take judicial notice without converting defendant's motion to dismiss into one for summary judgment. See *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.") Accordingly, plaintiffs' contention is without merit.

The SAC asserts thirteen counts based on the defendants' alleged failure to provide asylum and torture protection procedures in the CNMI and the alleged prolonged and arbitrary detention of plaintiffs Liang and Nian. Defendant CNMI moves to dismiss the SAC on six grounds: (1) the CNMI was not served within 120 days; (2) plaintiffs did not cure the deficiencies in the First Amended Complaint ("FAC"); (3) plaintiffs' asylum claims are barred; (4) the CNMI has sovereign immunity; (5) the SAC is defective; and (6) the Court has discretion to decline supplemental jurisdiction over the local claims. Defendant also argues in its reply that the SAC should be dismissed because plaintiffs filed an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037    Document 39-2    Filed 12/29/2005    Page 3 of 14

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

improper opposition which did not address the legal issues raised by defendant. [FN3]

> FN3. Plaintiffs did not squarely address several of defendant's arguments, however plaintiffs' cross-motion/opposition, when read together, and a careful reading of plaintiffs' complaint which incorporates many of plaintiffs' arguments in support of the viability of their claims, is sufficient to oppose defendant's arguments, notwithstanding the improper form of plaintiffs' submissions.

In ruling on a motion to dismiss, all allegations of material fact are to be construed as true and the court should not dismiss a plaintiff's claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 248 (9th Cir.1997). "The Supreme Court has explained that it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test. In reviewing the sufficiency of a complaint, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 249 (internal quotation marks and citations omitted). A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). Leave to amend may be granted where the court can "conceive of facts that would render plaintiff's claim viable" or "if it appears at all possible that the plaintiff can correct the defect" and the court can "discern from the record no reason why leave to amend should be denied." *Id.* at 701 (internal quotation marks omitted).

I. SERVICE OF PROCESS

*2 The CNMI argues it was not served within 120 days of the filing of the original complaint and notes that the Court denied plaintiffs' multiple requests to enlarge the time for service of process. The CNMI maintains that the 120 day period for service runs from the filing of the original complaint and that the filing of the amended complaint pursuant to the Court's June 22, 2000 Order did not renew the period in which to effect service. Plaintiffs contend that they complied with the Court's June 22, 2000 Order permitting amendment and service of the complaint.

Plaintiffs filed their complaint on September 2, 1999, and filed the FAC on September 3, 1999, but failed to effect service of the FAC within 120 days. On February 17, 2000, the FAC was dismissed without prejudice as to defendant CNMI. [FN4] (Feb. 18, 2000 Am. Notice of Order Granting Mots. of Commonwealth to Dismiss and to Quash). The FAC was dismissed without prejudice as to defendant United States on April 10, 2000, and in the interest of judicial efficiency, plaintiffs were granted leave to amend and re-file the complaint. (Order Granting Def. United States' Mot. to Dismiss). On June 22, 2000, the Court instructed plaintiffs to file their amended complaint within 20 days and to effect proper service of process. (Order Den. Pls.' Mot. to Consolidate Cases and Den. Pls.' Permission to File Consolidated Compl.). The Court did not in any of its orders explicitly grant an enlargement of time in which to effect service.

> FN4. The Court dismissed the FAC as to the CNMI because plaintiffs failed to file a written opposition to the CNMI's motion to dismiss and did not appear at the hearing on the motion.

Plaintiffs complied with the Court's June 22nd Order and at the hearing on September 7, 2000, the Court granted plaintiffs an extension of the period in which to effect service, *nunc pro tunc,* to the time when the SAC was served. [FN5] Accordingly, defendant's motion to dismiss on this ground is moot.

> FN5. "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time ..." Fed. R .Civ. P. 4(m). Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." *Id.,* Advisory Committee's note for 1993 amendments.

II. DEFICIENCIES FROM THE FIRST AMENDED COMPLAINT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037   Document 39-2   Filed 12/29/2005   Page 4 of 14

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

Defendant argues the SAC should be dismissed with prejudice because the deficiencies upon which the Court based its dismissal of the FAC have not been cured. Plaintiffs argue that the SAC comports with the "notice" pleading requirement of the Federal Rules of Civil Procedure.

Pursuant to a Rule 12(b)(6) motion to dismiss by defendant United States, the Court dismissed the FAC on the ground that it was not pled with sufficient particularity to give defendants adequate notice of the legal bases for the asylum-related claims and consequently, whether plaintiffs had standing to assert those claims. (April 10, 2000 Order Granting Def. United States' Mot. to Dismiss). Because of the seriousness of the claims, the Court granted plaintiffs leave to amend. Plaintiffs amended the complaint but made little substantive changes with respect to those issues discussed by the Court in its Order.

Defendant now moves to dismiss the SAC with prejudice for failure to cure those deficiencies and plead with specificity. Defendant also moves to dismiss the asylum-related claims for failure to state a claim upon which relief can be granted.

*3 When a pleading is defective because it is vague and ambiguous such that a party cannot reasonably be required to frame a responsive pleading, the proper remedy is a motion for a more definite statement pursuant to Rule 12(e). *See* 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1376 (1990). But "[i]f the movant believes his opponent's pleading does not state a claim for relief, the proper course is a motion under Rule 12(b)(6) even if the pleading is vague or ambiguous." *Id.*

Because defendant has moved to dismiss the asylum claims for failure to state a claim for relief, even with respect to the vague and generalized legal bases asserted in support of those claims, the Court will treat defendant's motion to dismiss for lack of specificity as a motion pursuant to Rule 12(b)(6) and will discuss the complaint's failure to cite specific bases of law regarding asylum in conjunction with defendant's other arguments that the asylum counts do not state a claim for relief.

### III. VIABILITY OF ASYLUM CLAIMS

Defendant argues that the asylum claims fail to state a claim upon which relief can be granted, and in the interest of litigation economy, refer to the legal arguments made by the United States in its Motion to Dismiss the FAC filed on January 18, 2000 and the United States' Reply filed February 25, 2000. [FN6] Plaintiffs did not squarely address these incorporated arguments in their opposition.

> FN6. In the United States' motion to dismiss the FAC, the United States advanced the following arguments concerning asylum which the CNMI now adopts: (1) plaintiffs cannot rely on the 1967 Protocol because the treaty is not self-executing; (2) plaintiffs cannot rely on U.S. domestic law because the Immigration and Nationality Act ("INA") which governs asylum and withholding of deportation matters in the United States does not apply in the CNMI by its own terms and is not applicable pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), Act of Mar. 24, 1976, Pub.L. No. 94-241, 90 Stat. 263 (1976), *reprinted at* 48 U.S.C. § 1681; (3) plaintiffs have not identified the specific principles of customary international law upon which they rely nor can they rely on customary international law because it has been superseded by the Covenant and domestic laws implemented by the CNMI pursuant to its plenary authority over its immigration matters; and (4) even though the Covenant may make U.S. treaty obligations binding on the CNMI, it does not make the treaties self-executing and otherwise enforceable in court.

Defendant also argues it is not a proper party because as a legal matter there is no cause of action against the CNMI concerning asylum, and as a practical matter, it cannot provide plaintiffs with relief concerning asylum. [FN7] Plaintiffs argue the CNMI is a proper and necessary party because the CNMI failed to abide by CNMI, federal, international, and human rights laws and because it employed defendant Goldberg, who promoted the unlawful conduct.

> FN7. The CNMI in its brief did not assert any argument with respect to the torture protection claims. (Torture protection claims were not part of the FAC). Accordingly, whether or not plaintiffs have stated a claim for relief against the CNMI concerning

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

torture protection is not before the Court.

### A. Claims Based on the 1967 Protocol

In their complaint, plaintiffs allege that the failure of the CNMI and the United States to provide asylum/refugee procedures and protection from refoulement in the CNMI violates the 1967 Protocol Relating to the Status of Refugees ("Protocol"). [FN8] Plaintiffs allege the Protocol is the supreme law of the CNMI and is binding on the CNMI through the Covenant. Plaintiffs also allege the Protocol is binding on the CNMI through the CNMI's adoption of the Restatements of Law as rules of decision for the courts.

> FN8. Protocol Relating to the Status of Refugees, January 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267. (Signed by United States on Nov. 1, 1968).

Defendant argues the Protocol is not self-executing and therefore does not provide plaintiffs with enforceable rights. Defendant also argues the INA which implements the Protocol, is not applicable to the CNMI by its own terms and under the terms of the Covenant. Lastly, defendant argues that even if the Protocol is binding on the CNMI through the Covenant, it does not make the Protocol self-executing or otherwise enforceable in court.

### i) *Claims based directly on the Protocol.*

The 1967 Protocol entered into force in the United States on November 1, 1968 and incorporates articles 2 to 34 of the 1951 Convention Relating to the Status of Refugees ("1951 Convention"). [FN9] Plaintiffs rely on Article 33 of the Convention which provides "[n]o Contracting State shall expel or return ("refouler") a refugee in any manner to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." Plaintiffs also rely on Article 34 of the Convention which provides "[t]he Contracting States shall as far as possible facilitate the assimilation and naturalization of refugees." The Protocol by its terms is applicable to the CNMI as part of the United States. [FN10]

> FN9. Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 137.

> FN10. Article I, section 3 of the Protocol provides that the "Protocol shall be applied by the States Parties hereto without any geographical limitation."

*4 The Protocol, however, is not self-executing. *See United States v. Aguilar*, 883 F.2d 662, 680 (9th Cir.1989). Its provisions, therefore, are not directly enforceable by a private party in court. *See People of Saipan v. United States Dept. of Interior*, 502 F.2d 90, 100-101(9th Cir.1974) (Trask, J., concurring). Accordingly, plaintiffs cannot state a claim for relief based on a violation of the Protocol.

### ii) *Claims based on the legislation implementing the Protocol.*

When a treaty is not self-executing, its terms must be implemented through domestic legislation and a private individual may then invoke the domestic law to secure any rights provided. *See id.* at 101. The legislation implementing the Protocol is the INA. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 424, 107 S.Ct. 1207, 1209 (1987) (the 1980 Refugee Act amended the INA to fully implement the United States' obligations under the Protocol). However, the Covenant which governs the applicability of federal law to the CNMI, [FN11] renders most INA provisions inapplicable to the CNMI, including the provisions for asylum and withholding of deportation (non-refoulement). *See* Cov. § 503. [FN12] The purpose of restricting the INA is to allow the CNMI to control its own immigration. [FN13] This authority includes the granting of political asylum and refugee status within the CNMI because of the close nexus with immigration. *See Tran v. CNMI*, 780 F.Supp. 709, 713 (D.N.M.I.1991).

> FN11. *See generally United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir.1993) (applicability of federal law within the CNMI is governed by the Covenant).

> FN12. Section 503 of the Covenant provides "[t]he following laws of the United States, presently inapplicable to the Trust Territory of the Pacific Islands, will not apply to the Northern Mariana Islands except in the manner and to the extent made applicable to them by the Congress by law after termination of the Trusteeship Agreement:

Case 1:05-cv-00037  Document 39-2  Filed 12/29/2005  Page 6 of 14

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
**(Cite as: Not Reported in F.Supp.2d)**

(a) except as otherwise provided in Section 506, the immigration and naturalization laws of the United States." Pursuant to § 506 of the Covenant, the CNMI is deemed to be part of the United States under the INA only for limited purposes pertaining to citizenship, naturalization and nationality issues.

FN13. *See* H.R.Rep. No. 94-364 at 5-19 (1975) ("Subsection 503(a) provides that until Congress acts to make the immigration and naturalization laws applicable, the Northern Marianas will have local control over immigration"); *see also* Marianas Political Status Comm'n Sec. By Sec. Analysis of the Covenant § 506 (1975), *reprinted in Northern Mariana Islands: Hearing before the Senate Committee on Interior and Insular Affairs,* 94th Cong., 356-396 (1975) ("the laws of the Northern Marianas will set the conditions under which people will be able to immigrate to the Northern Marianas").

Because the Covenant restricts application of the INA, the CNMI is not constrained by the INA and a violation of inapplicable INA provisions would not subject the CNMI to liability. Accordingly, plaintiffs cannot state a claim for asylum against the CNMI based on the INA.

iii) *Claims based on the supremacy of the Protocol over CNMI law.*

Plaintiffs allege the Protocol is the supreme law of the CNMI under the Covenant and is part of CNMI law through the CNMI's adoption of the Restatements of law. *See* 7 CMC § 3401. [FN14] Defendant contends that even if the Protocol is applicable pursuant to the Covenant, it is still unenforceable in court because it is not self-executing.

FN14. "In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary." 7 CMC § 3401.

"International law and international agreements of the United States are law of the United States and supreme over the law of the several states." *Restatement (Third) of the Foreign Relations Law of the United States* (hereinafter "*Restatement*") § 111(1). "The Supremacy Clause requires the invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties." *De Canas v. Bica,* 424 U.S. 351, 357 n. 5, 96 S.Ct. 933, 937 n. 5 (1976). The CNMI's immigration laws which lack an asylum procedure and provide only discretionary non-refoulement relief, [FN15] do not wholly comport with the principles of the Protocol as interpreted by the U.S. Supreme Court. [FN16] *See generally Restatement* § 111(1) cmt. d ("Interpretations of international agreements by the United States Supreme Court are binding on the States."). However, under the supremacy clause adopted in the Covenant, [FN17] only *applicable* international agreements of the United States are considered to be the supreme law of the CNMI, and the Protocol does not appear to fall within that purview.

FN15. "The Attorney General may decline to designate as destination any country where in his opinion the excluded or deported person would be subject to persecution on account of race, religion or political persuasion." 3 CMC § 4344(d).

FN16. In *Cardoza-Fonseca,* 480 U.S. at 441, 107 S.Ct. at 1218, the Supreme Court stated that the Article 34 asylum provisions of the Protocol/Convention are precatory and therefore discretionary. *See also INS v. Stevic,* 467 U.S. 407, 428 n. 22, 104 S.Ct. 2489, 2500 n. 22 (1984) ("Article 34 merely called on nations to facilitate the admission of refugees *to the extent possible;* the language of Article 34 was precatory and not self-executing.") (emphasis in the original). In contrast, the Supreme Court stated the Protocol/Convention's provision regarding refoulement is mandatory. *See Cardoza-Fonseca* at 441, 107 S.Ct. at 1218 ("Article 33.1 provides an entitlement for the subcategory [of refugees] that 'would be threatened' with persecution upon their return."); *see also Stevic,* 467 U.S. at 428 n. 22, 104 S.Ct. at 2500 n. 22 ("Article 33 gave the refugee an entitlement to avoid deportation to a country in which his life or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037    Document 39-2    Filed 12/29/2005    Page 7 of 14

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
**(Cite as: Not Reported in F.Supp.2d)**

freedom would be threatened.... As the Secretary of State *correctly* explained at the time of consideration of the Protocol: '[F]oremost among the rights which the Protocol would guarantee to refugees is the prohibition (under Article 33 of the Convention) against their expulsion or return to any country in which their life or freedom would be threatened." ') (emphasis in the original).

FN17. "The relations between the Northern Mariana Islands and the United States will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands." Cov. § 102. "This provision is analogous to the Supremacy Clause of the Constitution of the United States. However, since the Northern Mariana Islands will not be incorporated into the United States, this section has been limited to the provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands." S.Rep. No. 94-433, pp. 65-94 (1975).

*5 Although the Protocol is applicable to the CNMI by its own terms, [FN18] the INA which implements the Protocol excludes the CNMI from the definition of "United States," in a geographical sense, and also from the definition of a state. [FN19] It is not clear if this exclusion was intended to render the Protocol's principles wholly inapplicable as supreme law of the CNMI or whether the intent was only to limit the INA's application in order to permit the CNMI to control its own immigration, but within the bounds of the Protocol. Because there is no indication of legislative intent, effect must be given to the plain and unambiguous language of the statute. That language serves to supercede the Protocol's provision regarding geographical application [FN20] and thereby renders the Protocol inapplicable as supreme law of the CNMI under Covenant § 102. See *In Re Li,* 71 F.Supp.2d 1052, 1055 (D.Haw.1999) (in construing these same INA provisions with respect to Midway Island, the court stated "[i]f the language of a statute is clear and unambiguous, the court will apply the plain meaning of the language unless a plain meaning interpretation would lead to an absurd result or a result at odds with the legislature's intent.") (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570 (1990).

FN18. *See supra,* n. 10.

FN19. The INA provides "[t]he term 'United States', except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States." 8 U.S.C.A. § 1101(a)(38) (1999). "The term 'State' includes the District of Columbia, Puerto Rico, Guam, and the Virgin Islands of the United States." *Id.* at § 1101(a)(36).

FN20. *See generally Aguilar,* 883 F.2d at 679 ("Congress is not bound by international law [and] if it chooses to do so, it may legislate contrary to the limits posed by international law.").

Because the Protocol's implementing legislation excludes the CNMI, the Protocol cannot be considered applicable federal law under the Supremacy Clause of the Covenant. Accordingly, plaintiffs cannot state a claim for relief based on the repugnancy of CNMI law to the Protocol.

B. Claims Based on International Law

Plaintiffs allege the provisions of the 1967 Protocol and the 1951 Convention are part of customary international law and are binding on the CNMI through the principle of jus cogens. Defendant argues that plaintiffs fail to identify any specific principle of customary international law relating to asylum. Defendant also argues that Congress may act contrary to international law and that any principle of international law relating to asylum has been displaced by effect of Article V of the Covenant (limiting applicability of the INA in the CNMI) and the CNMI's local immigration law. Defendant argues that pursuant to the authority delegated by Congress, the CNMI has enacted a comprehensive scheme of immigration laws which preempt international law or override international law to the extent of any conflict.

Congress may supersede a principle of international law if it chooses to do so. [FN21] However, the laws of a state or constituent unit such as the CNMI cannot override or preempt international law which is law of the United States and therefore supreme law under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Covenant. *See Hines v. Davidowitz, 312 U.S. 52, 61, 61 S .Ct. 399, 401 (1941)* (in discussing the regulation of aliens, the Court stated that even where a state can legislate on this subject, "its power is subordinate to supreme national law"); *see also Restatement* § 115 cmt. e ("[s]ince any treaty or other international agreement of the United States, and any applicable rule of customary international law, is federal law (§ 111), it supersedes inconsistent State law or policy whether adopted earlier or later").

FN21. *See supra,* n. 20.

**\*6** When Congress agreed to relinquish authority over immigration to the CNMI, it did so with the understanding that the laws implemented by the CNMI were subject to other applicable federal laws. *See* S.Rep. No. 94-433, pp. 65-94 (1975) and Administration's *Section by Section Analysis of the Covenant reprinted in To Approve 'The Covenant to Establish the Commonwealth of the Northern Mariana Islands' and for other Purposes: Hearings before the Subcommittee on Interior and Insular Affairs of the House Committee on Interior and Insular Affairs,* 94th Cong. 385-399 (1975) ("It will be noted that until the introduction of the Immigration and Naturalization Act into the Northern Mariana Islands the latter will have the power to enact its own Immigration and Naturalization laws, subject however, to the requirement of applicable federal law."). Thus Congress has clearly expressed its intent that the CNMI's immigration authority is limited by the Supremacy Clause of the Covenant.

Although the Court has determined that the Protocol cannot be considered the supreme law of the CNMI, international law principles concerning asylum are not so excluded. The INA and the Covenant show no clear intent by Congress to preclude application of customary international law. Nor is application of customary international law principles to the CNMI incongruous with the plain language of the Covenant or the INA.

Covenant § 503 renders the asylum and non-refoulement provisions of the INA inapplicable in the CNMI. The expressed purpose of this limitation is to allow the CNMI to control its own immigration [FN22] and evinces no indication that Congress also intended to supersede or preempt principles of customary international law. [FN23] Further, as noted above, this grant of local immigration control was made with the express understanding that the laws implemented by the CNMI would comport with the requirements of other federal law. [FN24]

FN22. *See supra* n. 13.

FN23. Nor does the Court find that § 503 of the Covenant was intended to or has the effect of superceding the Protocol. "A treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed." *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 104 S.Ct. 1776, 1782 (1984). It is the INA and § 102 of the Covenant which combine to effectively preclude application of the Protocol.

FN24. *See generally, Hines,* 312 U.S. at 66, 61 S.Ct. at 403-404 (because regulation of aliens is so intertwined with the responsibility of the national government, state laws, though enacted in the exercise of powers not controverted, must yield to the supreme laws of the national government); *see also De Canas,* 424 U.S. at 357 n. 5, 96 S.Ct. at 937 n. 5 (where Congress has permitted states to legislate concurrently with federal law, federal law will preempt state provisions "to the extent necessary to protect the achievement of the aims of the federal law"); *see also Hines* at 68, 61 S.Ct. at 405 ("whatever power a state may have [to regulate aliens] is subordinate to supreme national law .").

As to the INA, the plain language of §§ 1101(a)(36) and (38) renders the Protocol inapplicable to the CNMI and therefore inapplicable as the supreme law of the CNMI under Covenant § 102. In the absence of legislative intent to indicate that customary international law relating to asylum is also inapplicable to the CNMI, the Court will not presume that Congress intended to preempt its application, thereby permitting the CNMI to exercise its immigration authority without regard to international standards. *See Murray v. The Schooner Charming Betsy,* 6 U.S. (2 Cranch), 64 (1804) (to the extent possible, courts must construe federal law so as to avoid violating principles of public international law); *see also Maria v. McElroy,* 68 F.Supp.2d 206 (E.D.N.Y.1999) ("Congress can be assumed, in the absence of a statement to the contrary, to be legislating in conformity with international law and to be cognizant of this country's global leadership position and the need for it to set an example with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

respect to human rights obligations. Where possible, statutes should be construed with this principle in mind.").

*7 Although plaintiffs have not identified a specific principle of customary international law relating to their asylum claims, plaintiffs appear to allege that the 1967 Protocol reflects existing international law principles. (SAC ¶ 42). Any customary international law principle reflected therein, exists independently of the Protocol, and is not displaced or superseded by the Protocol as law of the United States. See Hines, 312 U.S. at 65, 61 S .Ct. at 403 (noting that a body of customary international law defining the duties owed by all nations to aliens exists apart from treaty obligations); see also Restatement § 102 cmt. i (widely accepted international agreements may be declaratory of customary international law and "[i]f an international agreement is declaratory of, or contributes to, customary law, its termination by the parties does not of itself affect the continuing force of those rules as international law"); see also id. introductory note, pt. I at 18 ("Indeed, codification itself assumed the essential validity of the customary law that is being codified and the authenticity of its substantive content. Even after codification, moreover, custom maintains its authority, particularly as regards states that do not adhere to the codifying treaty.").

Because there is no clear intent by Congress to preempt application of customary international law principles with respect to the CNMI, and neither the Covenant, the Protocol, nor the INA otherwise supercede or preempt international law with respect to the CNMI, the CNMI's exercise of its immigration authority is subject to limitations imposed by customary international law. See generally Restatement § 115 cmt. a ("[W]hen an act of Congress and an international agreement or a rule of customary law relate to the same subject, the courts ... will endeavor to construe them so as to give effect to both. The courts do not favor a repudiation of international obligation by implication and require clear indication that Congress, in enacting legislation, intended to supersede the earlier agreement or other international obligation.").

The Court recognizes that customary international law ordinarily will not give rise to a private right of action, however, plaintiffs are asserting claims based on the supremacy of international law and application of customary international law is especially appropriate to plaintiffs circumstances where the Covenant renders the controlling treaty, the Protocol, and the controlling legislative act, the INA, inapplicable. See The Paquete Habana, 175 U.S. 677, 20 S.Ct. 291 (1900) ("International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination. For this purpose, where there is no treaty and no controlling executive or legislative act or judicial decision, resort must be had to the customs and usages of civilized nations ...").

*8 Further, plaintiffs are also asserting their claims pursuant to the Alien Tort Claims Act ("ATCA") [FN25] which provides aliens with a cause of action based on a violation of international law. See In re Estate of Marcos, Human Rights Litigation, 25 F.3d 1467, 1475 (1994) ("The [ATCA] creates a cause of action for violation of specific, universal and obligatory international human rights standards which confer fundamental rights upon all people vis-a-vis their own governments.").

> FN25. The ATCA provides "[t]he district courts shall have original jurisdiction in any action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C.A § 1350 (1993). Although plaintiffs have not specifically cited the ATCA in counts four and five, it is alleged in ¶ 17 of the SAC and incorporated by reference in counts four and five.

For the foregoing reasons, plaintiffs' allegations that the CNMI has failed to implement meaningful asylum and non-refoulement procedures may state a cognizable claim for relief based on principles of customary international law. However, because plaintiffs have failed to clearly identify a "specific, universal and obligatory" principle of customary international law relating to their asylum claims, plaintiffs have failed to sufficiently state a claim for relief. Accordingly, the asylum claims in counts four and five are dismissed and plaintiffs are granted leave to amend those counts consistent with the Court's ruling.

### C. CNMI is Not a Proper Defendant

Defendant argues it is not a proper defendant because as a legal matter there is no cause of action against the CNMI concerning asylum and as a practical

Case 1:05-cv-00037   Document 39-2   Filed 12/29/2005   Page 10 of 14

Not Reported in F.Supp.2d                                                                                           Page 9
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

matter the CNMI cannot provide plaintiffs with relief concerning asylum.

Because plaintiffs may be able to assert cognizable asylum-related claims based on principles of international law against the defendant, the CNMI is a proper defendant.

### IV. CNMI'S SOVEREIGN IMMUNITY

Defendant moves to dismiss the SAC with prejudice because the claims are barred by sovereign immunity and immunity has not been waived. More specifically, defendant argues that counts one, two, three, and nine are barred by the CNMI Government Liability Act. [FN26] Defendant also argues that to the extent sovereign immunity raises jurisdictional issues, the Court lacks subject matter jurisdiction and/or personal jurisdiction. [FN27] Defendant points out that the Supreme Court has stressed the importance of state sovereign immunity in three recent decisions. [FN28] Lastly, defendant argues that to the extent any claim against the CNMI is based on 42 U.S.C. § 1983, the claim is barred because the CNMI is not a person for § 1983 purposes.

FN26. Although defendant moves for dismissal of the entire complaint on the basis of immunity, it only specifically addresses the issue with respect to these four claims. Because defendant bears the burden of establishing its immunity, the court will only address the four claims specifically discussed by defendant. *See generally Lazar v. California*, 237 F.3d 967, 974 (9th Cir.2001) ("Under the law of this circuit, an entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense.").

FN27. In *Hill v. Blind Industries and Services of Maryland*, the court stated Eleventh Amendment immunity is a "personal privilege" which can be waived and does not implicate a federal court's subject matter jurisdiction. 179 F.3d 754, 760 (9th Cir.1999) *amended by Hill v. Blind Indus. and Serv. of Md.*, 201 F.3d 1186 (9th Cir.2000). Accordingly, defendant's argument is without merit.

FN28. The CNMI cites *Alden v. Maine*, 119 S.Ct. 2240 (1999) (Congress can not subject a state to suit in state court without its consent), *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 119 S.Ct. 2199 (1999) (Commerce Clause and Patent Clause did not provide Congress with authority to abrogate state sovereign immunity, nor did the Fourteenth Amendment provide Congress with such authority respecting patents), and *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 119 S.Ct. 2219 (1999) (Congress could not abrogate state sovereign immunity under Trademark Remedy Clarification Act).

Plaintiffs argue the CNMI is a proper and necessary party because the CNMI failed to abide by CNMI, federal, international, and human rights laws and because it employed defendant Goldberg, who promoted the unlawful conduct.

#### A. Unlawful Imprisonment Counts (Counts 1, 2 and 3)

Count one for unlawful imprisonment, count two for unlawful policy/practice and count three for unlawful seizure are based on the allegedly arbitrary, indefinite and capricious imprisonment of plaintiffs Liang and Nian. Plaintiffs allege the detention violated their liberty interests, procedural and substantive due process rights, and the U.S. and CNMI constitutional prohibitions against unreasonable seizure. Plaintiffs seek money damages pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1350.

*9 Counts one, two and three fail to state a claim for relief against the CNMI to the extent they are based on § 1983 because the CNMI is not a "person" within the meaning of § 1983. *See DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir.1992). Accordingly, the counts are dismissed with prejudice to the extent they are based on § 1983.

Count three also fails because the Court has determined that a plaintiff cannot state a claim for unlawful seizure where the initial arrest and imprisonment appears to be valid and the plaintiff challenges only the subsequent arbitrary and indefinite nature of the detention. (*Liang v. Goldberg*, No. 99-46, November 20, 2000 Am. Order Granting in Part and Den. in Part Def. Goldberg's Mot. to Dismiss). Accordingly, count three for unlawful seizure against the CNMI fails to state a claim for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relief and is dismissed with prejudice.

Counts one and two, to the extent they are based on the ATCA, fail if there is no waiver of sovereign immunity. See Koohi v. United States, 976 F.2d 1328, 1332 n. 4 (9th Cir.1992) (Alien Tort Claims Act does not constitute a waiver of sovereign immunity). Defendant contends the CNMI's Government Liability Act does not a waive sovereign immunity for these "false imprisonment" claims.

The Government Liability Act waives the CNMI's immunity for tort damages but does not waive immunity for claims arising out of false imprisonment. [FN29] The Government Liability Act, however, is only relevant to the CNMI's amenability to suit based on state law and is not relevant when a claim is based on federal law, such as the ATCA. The Ninth Circuit held that pursuant to the Covenant, the CNMI lacks Eleventh Amendment immunity and has "impliedly waived whatever immunity it might otherwise have enjoyed against suits in federal courts arising under federal law." See Fleming v. Department of Public Safety, 837 F.2d 401, 407 (9th Cir.1988), overruled on other grounds by DeNieva v. Reyes, 966 F.2d 480, 483 (9th Cir.1992); see also Magana v. CNMI, 107 F .3d 1436, 1440 (9th Cir.1997) (court noted that the CNMI is amenable to suit for money damages where the Eleventh Amendment would preclude such a suit against a state). The Fleming court found confirmation of this waiver of immunity to federal suit in the "Marianas Political Status Commission's authoritative study of the Covenant .... [which] found that 'the Government of the Northern Mariana Islands will have sovereign immunity, so that it cannot be sued on the basis of its own laws without its consent." [FN30] Fleming, 837 F.2d at 407.

> FN29. "The Commonwealth Government shall be liable in tort for damages arising from the negligent acts of employees of the Commonwealth acting within the scope of their office or employment ..." 7 CMC § 2202. "The government is not liable for ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." Id. at § 2204(b).

> FN30. The Supreme Court's decision in Alden v. Maine, 119 S.Ct. 2240 (1999), does not compel a different result. In Alden, the Court stated "the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." Id. at 2246. In Fleming, the Ninth Circuit found that the CNMI could not claim Eleventh Amendment immunity, and that it waived any other immunity to suit in federal court on a federal claim that it may have possessed. See id. 837 F.2d at 407-408.

Because the CNMI lacks immunity to suit in federal court based on federal law, plaintiffs may maintain a claim against the CNMI based on the ATCA. Nonetheless, plaintiffs have failed to state a claim for relief based on the ATCA because they have not sufficiently alleged a violation of international law by defendant. The complaint specifically alleges the Doe defendants violated jus cogens norms and cites to § 702(d) and (e) of the Restatement. (SAC ¶ 8 and n. 4). Section 702(e) of the Restatement states "[a] state violates international law if, as a matter of state policy, it practices, encourages, or condones ... prolonged arbitrary detention ." Plaintiffs have not made such a direct charging allegation against the defendant, either in the background allegations or in the counts. In fact, counts one and two contain no reference to international law except to invoke the ATCA.

*10 Accordingly, counts one and two are inadequate to state a claim for relief against the CNMI based on the ATCA and those counts, to the extent they are based on the ATCA, are dismissed. Because it appears plaintiffs may be able to state a claim for relief, plaintiffs are granted leave to amend. [FN31]

> FN31. See generally Martinez v. City of Los Angeles, 141 F.3d 1373, 1383-1384 (9th Cir.1998) (recognizing that a claim for false imprisonment grounded on the international norm proscribing prolonged arbitrary detention is cognizable under the ATCA); but see Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir.1995) (holding excludable alien could not state a claim based on international norm prohibiting prolonged arbitrary detention because international law in the area of immigration detention had been displaced by controlling legislative, executive and judicial acts.). As discussed in Section III, supra, the Court finds there is an absence of such controlling legislative, executive and judicial acts with respect to the CNMI.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037    Document 39-2    Filed 12/29/2005    Page 12 of 14

Not Reported in F.Supp.2d                                                                                                Page 11
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

### B. Conspiracy (Count 7)

Plaintiffs' claim for conspiracy does not appear to be directed against defendant CNMI, therefore defendant CNMI need not respond to this count. Further, to the extent the count is based on § 1983, the count fails to state a claim for relief as to the CNMI.

### C. Emotional Distress (Count 9)

All plaintiffs allege intentional and negligent infliction of severe emotional distress against all defendants and are seeking damages, including punitive damages. Defendant appears to presume the emotional distress claims are derivative of the unlawful imprisonment claims and argues that they are barred by sovereign immunity.

Because plaintiffs have not clearly alleged which acts caused the emotional distress, it cannot be determined if the claims are barred by sovereign immunity. Accordingly, the count is dismissed for failure to state a claim for relief and plaintiffs are granted leave to amend.

### V. DEFECTS IN THE SECOND AMENDED COMPLAINT

Defendant points out the following "defects" in the SAC: (1) the complaint refers to Juyel Ahmed who is not a plaintiff in the action; (2) the claims for estoppel, punitive damages, and joint and several liability are not legal claims but are requests for relief or juridical concepts; and (3) the claim asserted pursuant to Article X, Section 9 of the CNMI Constitution (permitting taxpayers to bring suit to enjoin spending) is not applicable because the complaint does not allege plaintiffs are taxpayers and the suit does not seek to enjoin spending.

Plaintiffs argue that the use of the name Ahmed is a mistake that is easily remedied, that estoppel, punitive damages, and joint and several liability are all grounds for relief to which they are entitled, and that plaintiffs are required to pay CNMI taxes on income regardless of whether their employment in the CNMI was lawful or unlawful. Plaintiffs also argue the lawsuit seeks to protect CNMI taxpayers from ongoing violations of law by the CNMI.

### A. References to Juyel Ahmed

The SAC includes the name of Juyel Ahmed in the heading of the three unlawful imprisonment counts and in ¶ 130 of the conspiracy count. Because the *Ahmed* and *Liang* actions have now been consolidated, and plaintiffs have leave to file an amended complaint, this issue is moot.

### B. Estoppel (Count 10)

Plaintiffs allege five incidents where an asylum process was allegedly made available to other aliens in the CNMI. Plaintiffs allege by effect of such occurrences, defendants have made promises, inducements and/or public representations to plaintiffs on which they have detrimentally relied. Plaintiffs assert they have suffered "damages including continued lack of due process required for enforcement of lawful human rights within the CNMI," (SAC ¶ 154), and request that defendants be estopped from denying the substance and effect of such promises, inducements and representations.

*11 A claim for estoppel against the government is cognizable in the CNMI. See *In re Blankenship,* 3 N. Mar. I. 209, 213 (1992) ("Estoppel is [sic] doctrine of law separate unto itself, and estoppel may be asserted if the facts and circumstances of a particular case warrant."); see also *Aquino v. Tinian Cockfighting Board,* 3 N.M.I. 284, 295 (1991) (plaintiffs may seek the benefit of estoppel, and even if not specifically pleaded, it may nonetheless be available to plaintiffs if established by the evidence). A claim for estoppel requires the presence of four elements: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *In re Blankenship,* at 214.

It may be inferred from the allegations that defendant's conduct indicated to plaintiffs that asylum procedures are available in the CNMI. The allegations of detrimental reliance, however, are vague because the manner in which plaintiffs relied on defendants' conduct is not clear. The nature of the damages suffered is also vague. Lastly, it is not clear what plaintiffs wish to estop defendants from doing. Accordingly, plaintiffs' claim for estoppel fails to state a claim for relief and is dismissed. Because plaintiffs may be able to correct the deficiencies,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037  Document 39-2  Filed 12/29/2005  Page 13 of 14

Not Reported in F.Supp.2d                                                                                      Page 12
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
**(Cite as: Not Reported in F.Supp.2d)**

leave to amend is granted.

### C. Punitive Damages (Count 11)

Plaintiffs set forth a request for punitive damages as a separate count. However, a request for punitive damages is more appropriately made in the appropriate substantive count and/or the prayer for relief because punitive damages may only be available with respect to certain claims and against certain defendants. Further, because plaintiffs have requested punitive damages in their other counts and in their prayer for relief, a separate count is redundant. Accordingly, the count for punitive damages is dismissed with prejudice.

### D. Joint and Several Liability (Count 12)

Plaintiffs seek to hold the defendants jointly and severally liable. Joint and several liability is not a cause of action; it is a request for relief that should be made in the substantive counts and/or in the prayer for relief, which plaintiffs have done. Accordingly, the count for joint and several liability is dismissed with prejudice.

### E. Article X, Section 9 Damage/Attorney Fee Award (Count 13)

Plaintiffs seek relief under Article X, Section 9 of the Commonwealth Constitution for an award of compensation including attorneys' fees. Article X, Section 9 provides "[a] taxpayer may bring an action against the government or one of its instrumentalities in order to enjoin the expenditure of public funds for other than public purposes or for a breach of fiduciary duty. The court shall award costs and attorney fees to any person who prevails in such an action in a reasonable amount relative to the public benefit of the suit."

*12 It can be inferred from the allegations that plaintiffs Hossain and Jane Roe I are employed and are thus taxpayers. (SAC ¶ ¶ 4 and 25 and ex. 6). The complaint raises no such inference with respect to plaintiffs Liang and Nian. Moreover, the complaint does not seek to enjoin the expenditure of public funds. Lastly, an award of damages is not available under this Constitutional provision. Accordingly, plaintiffs have failed to state a claim for relief and the CNMI's motion to dismiss the count is granted. Because it appears plaintiffs may be able to remedy the deficiencies with respect to the claim, plaintiffs are granted leave to amend.

### VI. DISCRETION TO DECLINE JURISDICTION OVER LOCAL CLAIMS

Defendant argues that as a matter of judicial comity, the Court should decline jurisdiction over the claims for Open Government Act Defiance (count six), Concealment (count eight), Emotional Distress (count nine), Estoppel (count ten), and Article X, Section 9 damages and attorney fees (count thirteen). Plaintiffs argue that they cannot retain Superior Court counsel or finance piecemeal litigation and that the Court's exercise of jurisdiction over the local claims promotes judicial economy and avoids conflicting rulings.

A district court has supplemental jurisdiction over non-federal claims when those claims "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Federal and non-federal claims are part of the same case or controversy if they "derive from a common nucleus of operative facts, and the claims are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding, and the federal issues are substantial." *Executive Software N. Am., Inc. v. U.S. Dist. Court,* 24 F.3d 1545, 1552 (9th Cir.1994) (internal quotation marks omitted) (*citing United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).

The exercise of supplemental jurisdiction, however, is discretionary and the court may decline to exercise jurisdiction if one of the bases enumerated in 28 U.S.C. § 1367(c) is present and to decline the exercise of jurisdiction would best accommodate the values of economy, convenience, fairness and comity. See *Executive Software,* 24 F.3d at 1551 ("It is clear that, once it is determined that the assertion of supplemental jurisdiction is permissible under sections 1367(a) and (b), section 1367(c) provides the only valid basis upon which the district court may decline jurisdiction ..."); *see also id.,* at 1557. The bases in § 1367(c) upon which a court may decline jurisdiction are: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for

Case 1:05-cv-00037    Document 39-2    Filed 12/29/2005    Page 14 of 14

Not Reported in F.Supp.2d                                                                                           Page 13
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

declining jurisdiction.

*13 Plaintiffs' local law claims arise from a common nucleus of operative facts with plaintiffs' federal claims-the alleged unlawful imprisonment of Liang and Nian and plaintiffs' attempt to seek asylum within the CNMI. Plaintiffs' local law claims do not substantially predominate over the federal claims or raise novel or complex issues of local law. The Court has not dismissed all the federal claims and defendant has not proffered any compelling reasons or set forth any exceptional circumstances to warrant declining jurisdiction. Because none of the circumstances set forth in § 1367(c) are present, the Court will exercise supplemental jurisdiction over counts eight, nine, ten and thirteen. Accordingly, defendant's motion for the Court to decline supplemental jurisdiction is denied as to counts eight, nine, ten and thirteen.

The Court finds that it lacks jurisdiction over plaintiffs' claim for Open Government Act Defiance (count six), because the remedy for this claim is vested solely with the Commonwealth Superior Court. See 1 CMC § 9917(b) ( "Recourse may be had to the Commonwealth Superior Court by any person unlawfully denied access to public records. Cost of suit and reasonable attorney fees shall be awarded to the prevailing party in such a suit."); see also Cov. § 402(b) ("The District Court will have original jurisdiction in all causes in the Northern Mariana Islands not described in Subsection (a) jurisdiction over which is not vested by the Constitution or laws of the Northern Mariana Islands in a court or courts of the Northern Mariana Islands."). Accordingly, count six is dismissed without prejudice.

PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE CNMI

Plaintiffs appear to seek summary judgment on their unlawful imprisonment claims (counts one and two) and on that portion of count five concerning the lack of asylum procedures in the CNMI. However, the nature of the relief they are requesting in their summary judgment motion is unclear.

Because the asylum claims have been dismissed with leave to amend, plaintiffs' cross-motion for summary judgment regarding asylum is moot. Plaintiffs' unlawful imprisonment counts have also been dismissed with leave to amend, thus the cross-motion is also moot with respect to these counts. Moreover, summary judgment on the unlawful imprisonment claims prior to any discovery is premature.

Accordingly, and for the foregoing reasons, plaintiffs' motion for partial summary judgment is denied as moot.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part as follows: counts one and two are dismissed with prejudice to the extent they are based on 42 U.S.C. § 1983, and are dismissed with leave to amend to the extent they are based on 28 U.S.C. § 1350; count three is dismissed with prejudice; the asylum claims in counts four and five are dismissed with leave to amend consistent with this Order; count six is dismissed without prejudice; defendant's motion is denied as to count eight; counts nine, ten and thirteen are dismissed with leave to amend; and counts eleven and twelve are dismissed with prejudice. Plaintiffs' cross-motion for partial summary judgment is denied.

*14 Plaintiffs shall have 20 days from the date of this order to amend their complaint in conformance with this order.

IT IS SO ORDERED.

D.N.Mar.I.,2001.
Ahmed v. Goldberg
Not Reported in F.Supp.2d, 2001 WL 1842399 (D.N.Mar.I.)

END OF DOCUMENT