*Dillon v. City of New York*

704 N.Y.S.2d 1                                                                                              Page 1
261 A.D.2d 34, 704 N.Y.S.2d 1, 1999 N.Y. Slip Op. 10616
(Cite as: 261 A.D.2d 34, 704 N.Y.S.2d 1)

**H**

Supreme Court, Appellate Division, First
Department, New York.
John T. DILLON, Jr., et al., Plaintiffs-Respondents,
v.
CITY OF NEW YORK, et al., Defendants-
Appellants.

Dec. 14, 1999.

Assistant district attorneys who had been terminated for cause after they submitted their resignations prior to completion of initial three-year period of service to which they had agreed as condition of hiring brought suit against city, and various supervisory personnel in district attorneys' office, asserting claims for defamation, emotional distress, and under other theories. The Supreme Court, Bronx County, Gerald Esposito, J., denied defendants' motion to dismiss. Defendants appealed. The Supreme Court, Appellate Division, Tom, J., held that: (1) attorneys had no right to resign prior to completion of three-year period, and could be terminated for attempting to do so; (2) statements that they had been terminated thus were truthful, and could not support defamation claims; (3) other allegations by attorneys failed to state claim for defamation; and (4) challenged actions could not support emotional distress claims.

Reversed, motion granted, and complaint dismissed.

West Headnotes

[1] Libel and Slander 6(1)
237k6(1) Most Cited Cases
Defamation arises from the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.

[2] Libel and Slander 1
237k1 Most Cited Cases
Elements of defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and which either causes special harm or constitutes defamation per se.

Restatement (Second) of Torts § 558.

[3] Libel and Slander 80
237k80 Most Cited Cases

[3] Libel and Slander 84
237k84 Most Cited Cases
Defamation complaint must allege the time, place, and manner of the false statement, and specify to whom it was made.

[4] Libel and Slander 19
237k19 Most Cited Cases
In evaluating whether a cause of action for defamation is successfully pleaded, words must be construed in the context of the entire statement or publication
as a whole, tested against the understanding of the average reader, and if the words are not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.

[5] Libel and Slander 19
237k19 Most Cited Cases
Courts will not strain to find defamation where none exists.

[6] Libel and Slander 6(1)
237k6(1) Most Cited Cases
Loose, figurative, or hyperbolic statements, even if deprecating the plaintiff, are not actionable as defamation.

[7] Libel and Slander 10(6)
237k10(6) Most Cited Cases

[7] Libel and Slander 45(2)
237k45(2) Most Cited Cases
Internal employment reviews may be protected speech, either as an expression of opinion, or in recognition of the principle that an employer has the right to assess an employee's performance on the job without judicial interference.

[8] Libel and Slander 54
237k54 Most Cited Cases
Truth provides a complete defense to defamation claims.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[9] Libel and Slander** 🔑123(2)
237k123(2) Most Cited Cases
Allegations of defamation present, in the first instance, an issue of law for judicial determination.

**[10] Libel and Slander** 🔑54
237k54 Most Cited Cases
Statements by management personnel in district attorney's office that assistant district attorneys, who had attempted to resign prior to expiration of initial three-year period of service they agreed to as condition of hiring, had been terminated for cause, were truthful, and thus could not support defamation claims by attorneys, where assistant district attorneys did not have right to resign, and were permissibly fired by cause by district attorney's office after they attempted to do so.

**[11] District and Prosecuting Attorneys** 🔑3(.5)
131k3(.5) Most Cited Cases
Assistant district attorneys who had agreed as condition of their hiring to give three-year period of initial service did not have the right to resign at will during contractual commitment period, absent an express agreement to that effect, and could be fired for cause as a consequence of their breach of their employment agreement by not fulfilling their commitment period obligation.

**[12] District and Prosecuting Attorneys** 🔑3(.5)
131k3(.5) Most Cited Cases
District attorney's unilateral reduction of initial period of service to which assistant district attorneys agreed as condition of hiring from four years to three only reduced extent of obligation, and did not abrogate it.

**[13] Libel and Slander** 🔑85
237k85 Most Cited Cases
Allegations by terminated assistant district attorney that official of district attorney's office had implied that assistant district attorney was untrustworthy and underhanded when he announced termination, in which assistant district attorney failed to set forth particular words giving rise to implication, were vague and conclusory, and failed to state defamation claim.

**[14] Libel and Slander** 🔑80
237k80 Most Cited Cases
Allegations by terminated district attorney that letter sent by former supervisor to third parties had communicated in "sum and substance" that assistant district attorney was "unprofessional and cavalier" were insufficient to state defamation claim; allegations were conclusory rather than accusatory, failed to specify time, place, and manner of communication, and did not satisfy statutory pleading requirement for defamation actions. McKinney's CPLR 3016(a).

**[15] Libel and Slander** 🔑45(2)
237k45(2) Most Cited Cases
To extent that memoranda are prepared for internal use in connection with an employee review, or are placed in a personnel file, or statements are made about an employee in an employment context, they are qualifiedly privileged as having been made by one person to another upon a subject in which they have a common interest.

**[16] Libel and Slander** 🔑51(4)
237k51(4) Most Cited Cases
Shield of privilege which protects statements which are made for internal use in connection with an employee review, placed in a personnel file, or made about an employee in an employment context, is pierced only by a plaintiff's showing of actual malice.

**[17] Libel and Slander** 🔑51(4)
237k51(4) Most Cited Cases
Allegations by terminated assistant district attorney that former supervisor had acted with ill-will and spite when sending allegedly defamatory letter retarding attorney to third parties were based solely on surmise and conjecture, and were insufficient to establish malice which would overcome privilege protecting communications in question.

**[18] Libel and Slander** 🔑10(3)
237k10(3) Most Cited Cases
Statement in which former supervisor of terminated assistant district attorney implied that attorney was not "upstanding" was too vague and imprecise in meaning to support defamation claim.

**[19] Libel and Slander** 🔑10(3)
237k10(3) Most Cited Cases
Former supervisor's use of term "fucking asshole" to describe terminated assistant district attorney could not reasonably have been construed to communicate actual facts, and thus was not actionable as defamation.

**[20] Municipal Corporations** 🔑723
268k723 Most Cited Cases
(Formerly 115k50.10)
Claims of intentional infliction of emotional distress

against government bodies are barred as a matter of public policy.

[21] Damages ⚖ 57.15
115k57.15 Most Cited Cases
(Formerly 115k49.10)

[21] Damages ⚖ 57.22
115k57.22 Most Cited Cases
(Formerly 115k50.10)
Cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

[22] Damages ⚖ 149
115k149 Most Cited Cases
Extreme and outrageous conduct underlying claim for intentional or negligent infliction of emotional distress must be clearly alleged for pleadings to survive dismissal.

[23] Damages ⚖ 57.58
115k57.58 Most Cited Cases
(Formerly 115k50.10, 115k49.10)
Actions of former supervisors of assistant district attorneys, who were terminated after seeking to resign before completing initial three-year service period required as condition of hiring, in allegedly revealing termination of attorneys to remaining employees, making statements which questioned integrity of attorneys, and using vulgar epithet to refer to one of attorneys, were not sufficiently extreme and outrageous to support claim for negligent or intentional infliction of emotional distress.

[24] Damages ⚖ 57.18
115k57.18 Most Cited Cases
(Formerly 115k49.10)

[24] Damages ⚖ 57.25(1)
115k57.25(1) Most Cited Cases
(Formerly 115k50.10)
Description of plaintiff as a "fucking asshole," while hardly admirable, could not in this day and age reasonably be said to perpetrate so great a harm that it would support claim for negligent or intentional infliction of emotional distress.

[25] Constitutional Law ⚖ 225.4
92k225.4 Most Cited Cases
Action by state actor in waiving the terms of a contract as to one person, and declining to do so for others, does not make out an equal protection claim. U.S.C.A. Const.Amend. 14.

[26] Constitutional Law ⚖ 238.5
92k238.5 Most Cited Cases

[26] District and Prosecuting Attorneys ⚖ 3(.5)
131k3(.5) Most Cited Cases
Actions of district attorney's office in terminating assistant district attorneys who had sought to resign prior to termination of initial three-year service period to which they had agreed as condition of hiring, but allegedly allowing other attorneys to leave prior to satisfaction of their commitment periods, did not support equal protection claim by terminated attorneys. U.S.C.A. Const.Amend. 14.

**3 *35 Gary T. Certain, of counsel (Certain & Monopoli LLP, attorneys) for plaintiffs-respondents,

Helen P. Brown, of counsel (Kristin M. Helmers and Michele Lerner, on the brief, Michael D. Hess, Corporation Counsel of the City of New York, attorney) for defendants-appellants.

ERNST H. ROSENBERGER, J.P., PETER TOM, ANGELA M. MAZZARELLI, ALFRED D. LERNER and DAVID FRIEDMAN, JJ.

TOM, J.

Defendants appeal from an order of the Supreme Court denying their motion to dismiss the complaint of two former assistant district attorneys of Bronx County for defamation and related claims.

Plaintiffs were appointed to the position of Assistant District Attorneys in Bronx County in August 1993. Prior to being hired, they signed a document, as a condition of employment, indicating their acknowledgment that "Assistant District Attorneys are required to abide by a commitment to give four years of initial service to the Office of the District Attorney. Failure to honor that commitment may result in a loss of benefits and an *36 unfavorable termination from the Office." The District Attorney's office policy manual **4 included the same statement of policy. In July 1995, the DA's Office reduced the employment commitment period to three years, which was communicated to plaintiffs on or about August 24, 1995.

Both plaintiffs putatively ended their tenure with the Bronx District Attorney's office by the submissions of letters of resignation prior to the three-year commitment period.

Plaintiff Michael Newman submitted his resignation to the Administrative ADA, defendant Eileen Koretz, on Monday, August 28, 1995. Later that day, Newman's Bureau Chief, defendant Joseph Ferdenzi, asked Newman why he had handed in a resignation letter without first discussing the matter with him. Newman responded by noting that the DA's Office had a policy of terminating ADA's who failed to complete their commitment period, and he wanted to make sure that it was clear that he was resigning to avoid termination. Subsequently, Newman met with the Executive Assistant District Attorney, defendant Richard Mangum, who rejected the resignation and terminated Newman for having violated the office's commitment period policy. Mangum indicated that the termination would be noted in Newman's personnel file and would be communicated to any prospective employer making inquiries. A memorandum in Newman's personnel file, apparently written by Koretz, is said to contain only a handwritten notation: "Terminated--Did Not Fulfill Commitment." This memorandum, though, is not included in the record. Newman alleges that other memoranda--also not included in the record--contained similar language.

Later that day, Ferdenzi called a meeting of Bureau personnel at which, it is alleged, Ferdenzi told the assembled ADA's that he had "fired" Newman. Newman alleges that Ferdenzi also intimated that the discharge was for cause, and that the general tenor of Ferdenzi's presentation emphasized the importance of trust and the fault of being underhanded, implying the absence of that virtue in him. The actual words used are not particularized in the complaint, and no affidavit of anyone attending that meeting is included in the record.

In early December, 1995, ADA Michele Monopoli, apparently intending to enter practice with Newman and others, tendered her voluntary resignation to Mangum, who conducted her exit interview. Newman alleges that Mangum tried to discourage her from entering practice with him, stating "one of your partners-- Gary--is an upstanding guy as you and I well know; *37 the other ..."-- apparently suggesting Newman--at which point Mangum made deprecating facial expressions and shook his head--"he had some nerve pulling that shit while his brother is still in this office ... what a fucking asshole." Mangum then asked, rhetorically, why she was not being made a name partner in the firm, then, apparently answering his own inquiry, surmised "it sounds like you don't trust your partner any more than I do." No affidavit by Monopoli appears in the record.

Plaintiff John Dillon was hired at the same time as Newman. Dillon, too, submitted a typewritten resignation, on October 6, 1995, effective that date. Dillon first submitted his resignation to his Bureau Chief, ADA Joseph Giampaolo, but Giampaolo indicated that the resignation should be submitted directly to the District Attorney, defendant Robert Johnson. After the letter was submitted to Johnson, Giampaolo indicated that Dillon should remain in the office until he was contacted by Johnson. Johnson left that day without contacting Dillon, who then submitted it to Senior Executive Assistant District Attorney Eric Warner. Plaintiff Dillon alleges that on or about November 15, 1995, Koretz wrote him a letter, subsequently placed in his personnel file and allegedly shown to other employees, stating that Dillon had acted unprofessionally. However, this letter is not included in the record. Dillon also asserts that Koretz issued a memorandum **5 dated October 11, 1995, stating that Dillon had been terminated and had not fulfilled his commitment. Dillon further states that during the Winter of 1996, members of the District Attorney's office communicated to the District of Columbia's Board of Bar Examiners that Dillon had been terminated.

Plaintiffs' complaint sets forth, *inter alia*, causes of action for defamation, and for negligent and intentional infliction of emotional distress on behalf of both plaintiffs. Defendants moved to dismiss the complaint or, in the alternative, for summary judgment.

The IAS court, apparently treating the motion as one for summary judgment, denied the motion in its entirety. The court found triable factual issues concerning Newman's last effective date of employment, the truthfulness of statements that both plaintiffs were terminated, and whether the defendants' conduct was so extreme as to support the emotional distress claims. We reverse.

[1][2][3] Defamation has long been recognized to arise from "the making of a false statement which tends to 'expose the plaintiff to *38 public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society' " (*Foster v. Churchill*, 87 N.Y.2d 744, 751,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

642 N.Y.S.2d 583, 665 N.E.2d 153, quoting _Rinaldi v. Holt, Rinehart, & Winston, Inc.,_ 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 366 N.E.2d 1299, cert. denied 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456, quoting _Sydney v. MacFadden Newspaper Publishing Corp.,_ 242 N.Y. 208, 151 N.E. 209). The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se (Restatement of Torts, Second § 558). CPLR 3016(a) requires that in a defamation action, "the particular words complained of ... be set forth in the complaint." The complaint also must allege the time, place and manner of the false statement and to specify to whom it was made (_Arsenault v. Forquer,_ 197 A.D.2d 554, 602 N.Y.S.2d 653; _Vardi v. Mutual Life Insurance Co. of New York,_ 136 A.D.2d 453, 523 N.Y.S.2d 95).

[4][5][6][7] In evaluating whether a cause of action for defamation is successfully pleaded, [t]he words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction (_Silsdorf v. Levine,_ 59 N.Y.2d 8, 462 N.Y.S.2d 822, 449 N.E.2d 716, cert. denied 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111). "Courts will not strain" to find defamation "where none exists" (_Cohn v. National Broadcasting Co.,_ 50 N.Y.2d 885, 887, 430 N.Y.S.2d 265, 408 N.E.2d 672, cert. denied 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484). Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable (_Gross v. New York Times,_ 82 N.Y.2d 146, 152-153, 603 N.Y.S.2d 813, 623 N.E.2d 1163; _Immuno A.G. v. Moor-Jankowski,_ 77 N.Y.2d 235, 244, 566 N.Y.S.2d 906, 567 N.E.2d 1270, cert. denied 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713). Internal employment reviews also may be protected speech, either as an expression of opinion, or in recognition of the principle that "[a]n employer has the right to assess an employee's performance on the job without judicial interference" (_Ott v. Automatic Connector, Inc.,_ 193 A.D.2d 657, 598 N.Y.S.2d 10), often allowing for dismissal on the pleadings (_id.;_ see also _Williams v. Varig Brazilian Airlines,_ 169 A.D.2d 434, 564 N.Y.S.2d 328, lv. denied 78 N.Y.2d 854, 573 N.Y.S.2d 467, 577 N.E.2d 1059 [internal memorandum stated that plaintiff had a bad attitude and was difficult to work with]; _Goldberg v. Coldwell Banker,_ 159 A.D.2d 684, 553 N.Y.S.2d 432 [plaintiff said to be uncooperative, abrasive and dilatory]; **6 _Hollander v. Cayton,_ 145 A.D.2d 605, 536 N.Y.S.2d 790 [hospital employee said at professional staff meeting that physician plaintiff was immoral, unethical and had mismanaged cases] ).

[8][9] *39 Truth provides a complete defense to defamation claims (_Rinaldi, supra;_ _Fairley v. Peekskill Star Corp.,_ 83 A.D.2d 294, 297, 445 N.Y.S.2d 156). Allegations of defamation present, in the first instance, an issue of law for judicial determination (_Silsdorf v. Levine,_ 59 N.Y.2d 8, 12-13, 462 N.Y.S.2d 822, 449 N.E.2d 716, cert. denied 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111; _James v. Gannett Co.,_ 40 N.Y.2d 415, 419-420, 386 N.Y.S.2d 871, 353 N.E.2d 834).

[10][11] Plaintiffs complain that communicating to third parties that they had been "terminated" defamed them and harmed their professional reputation. A salient fact upon which this analysis turns is that, under the terms of their employment, plaintiffs did not have the right to resign at will during the contractual commitment period. While plaintiffs were obligated to remain for the commitment period, the policy manual did not create any obligation on the employer to retain plaintiffs' services for a term certain absent an expressed agreement (_Sabetay v. Sterling Drug, Inc.,_ 69 N.Y.2d 329, 336, 514 N.Y.S.2d 209, 506 N.E.2d 919; cf., _Murphy v. American Home Products Corp.,_ 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448 N.E.2d 86). There being no express limitation on the employer's right to terminate plaintiffs (_Sabetay, supra;_ _Civiletti v. Independence Savings Bank,_ 236 A.D.2d 436, 653 N.Y.S.2d 142), they could be fired for cause as a consequence of their breach of their employment agreement by not fulfilling their commitment period obligation. Since the District Attorney retained the contractual right to terminate their employment on this basis, and to characterize the severance of the employment relationship as termination, statements to that effect were true. Since truth is a complete defense, these claims should have been dismissed.

Parenthetically, to allow an employee who contractually commits to work a number of years, which is common in many prosecutors' offices, to "resign" prior to satisfaction of the commitment period, and then threaten to sue for defamation if the employer characterizes the employee's departure as termination, would render meaningless the contractual commitment.

[12] Plaintiffs argue that the District Attorney's own,

unilateral, reduction of the commitment period from four years to three years, abrogated the contractual commitment. This is meritless. The District Attorney's action only reduced the extent, and not the obligation, of employees' time commitments.

[13] Plaintiff Newman also argues a defamation theory arising from Ferdenzi's alleged statement to other Bureau employees at the August 28, 1999 meeting, announcing that Newman had been "fired" (a true statement), intimating that it was for cause (again, true), and implying that Newman was untrustworthy and underhanded. The particular words giving rise to the *40 implication are not set forth in any manner that would support a defamation claim, leaving only a vague and conclusory allegation requiring the dismissal of claims arising from these alleged statements (Vardi, supra; Flowers v. Stillrock Management, 179 A.D.2d 361, 578 N.Y.S.2d 546; Alanthus Corp. v. Travelers Insurance Co., 92 A.D.2d 830, 460 N.Y.S.2d 549).

[14][15][16][17] The challenge to the Koretz letter suffers from the same defect, that the particular defamatory words are not alleged in the complaint. Allegations that the letter communicated to third parties that "in sum and substance [Dillon was] unprofessional and cavalier" are conclusory rather than accusatory, fail to specify time, place and manner of the communication (Arsenault, supra; Vardi, supra ) and do not satisfy the pleading requirement of CPLR 3016(a) that the actual defamatory **7 words be specified. The defect is all the more curious in that Dillon concedes being a recipient of the letter, presumably enabling him to quote from it at length. Moreover, to the extent that memoranda are prepared for internal use in connection with an employee review, or are placed in a personnel file, or statements are made about an employee in an employment context (see, Williams, supra; Hollander, supra ), they are qualifiedly privileged as having been made by one person to another upon a subject in which they have a common interest (Liberman v. Gelstein, 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344; Loughry v. Lincoln First Bank, 67 N.Y.2d 369, 376, 502 N.Y.S.2d 965, 494 N.E.2d 70; accord Herlihy v. Metropolitan Museum of Art, 214 A.D.2d 250, 259, 633 N.Y.S.2d 106 [statements among fellow employees about an employee in an employment context may enjoy qualified privilege] ). The shield of privilege is pierced only by a plaintiff's showing of actual malice (Liberman, supra, at 437-438, 590 N.Y.S.2d 857, 605 N.E.2d 344; Loughry, supra ). Actual malice is not supported in these pleadings where allegations of ill-will and spite manifested by the letter rest solely on surmise and conjecture (Dano v. Royal Globe Insurance Co., 59 N.Y.2d 827, 829, 464 N.Y.S.2d 741, 451 N.E.2d 488; Hollander, supra ).

[18][19] Newman also challenges various Magnum statements to Monopoli uttered during her exit interview. These statements are particularized in the complaint. However, even if we surmise that Newman is "the other" partner to whom Magnum alludes, whether or not he is stated to be "upstanding" is too vague and imprecise in meaning to support a defamation claim (Gross, supra, at 153, 603 N.Y.S.2d 813, 623 N.E.2d 1163; Savitt v. Vacco, 1998 WL 690939, 1998 U.S. Dist. LEXIS 15582 [terminated Assistant Attorneys General *41 characterized as "dead wood" and "dead bodies," terms lacking precise meaning]; Hollander, supra; Goldberg, supra ). The epithet used by Magnum could not reasonably have been construed to communicate actual facts, and thus evades defamation (Gross, supra; Immuno A.G. v. Moor-Jankowski, supra, 244, 566 N.Y.S.2d 906, 567 N.E.2d 1270; 600 West 115 th Street Corp. v. Von Gutfeld, 80 N.Y.2d 130, 139-140, 589 N.Y.S.2d 825, 603 N.E.2d 930, cert. denied 508 U.S. 910, 113 S.Ct. 2341, 124 L.Ed.2d 252). The remainder of the statement conveyed only non-actionable opinion based on facts known to both the declarant and the listener (Steinhilber v. Alphonse, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550).

[20][21][22][23][24] The emotional distress claims, arising from the same conduct as the defamation claims, are entirely meritless. Initially, claims of intentional infliction of emotional distress against government bodies are barred as a matter of public policy (Lauer v. City of New York, 240 A.D.2d 543, 659 N.Y.S.2d 57, lv. denied 91 N.Y.2d 807, 669 N.Y.S.2d 260, 692 N.E.2d 129; Wheeler v. State of New York, 104 A.D.2d 496, 498, 479 N.Y.S.2d 244). In any event, the pleadings are insufficient for other reasons. A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 [citation omitted]; see also, Howell v. New York Post Co., 81 N.Y.2d 115, 121-122, 596 N.Y.S.2d 350, 612 N.E.2d 699). We have applied the same standard to both the

intentional and negligence theories of emotional distress (*Young v. GSL Enterprises*, 237 A.D.2d 119, 654 N.Y.S.2d 24; *Naturman v. Crain Communications, Inc.*, 216 A.D.2d 150, 628 N.Y.S.2d 281). Such extreme and outrageous conduct must be clearly alleged for the pleadings to survive dismissal **8(*Trachtman v. Empire Blue Cross and Blue Shield*, 251 A.D.2d 322, 673 N.Y.S.2d 726). To the extent that the statements complained of are true, plaintiffs can hardly claim sufficient distress; thus, dismissal is required in this case (*Lauer, supra*). Moreover, the alleged disparagement of plaintiffs' characters in this case simply does not rise to that standard. In this day and age the epithet, while hardly admirable, cannot reasonably be said to perpetrate so great a harm as that required for emotional distress.

The remainder of the claims set forth in the complaint are not briefed by the parties on appeal and were not directly addressed in the order under review. Upon review of the record, we conclude that these claims should also be dismissed. The retaliatory discharge claims allege only that plaintiffs were *42 terminated in retaliation for trying to resign; this is perhaps true, but, in view of the employer's contractual right to do so, plaintiffs fail to allege how the discharge was wrongful (*Murphy v. American Home Products, supra*, at 300, 461 N.Y.S.2d 232, 448 N.E.2d 86; *Civiletti, supra*).

[25][26] The negligence claim, alleging harm arising from the dissemination of false information in a negligent and careless manner to prospective employers, must fail insofar as those statements were true. The causes of action purporting to raise Insurance Law and Labor Law claims based on rejection of reimbursement for Newman's wife's dental work, fails to indicate any section of either statute that was violated. In any event, since the District Attorney's office now represents, and may be held to that representation, that it will arrange for payment, plaintiffs have no damages in this regard. The breach of contract claim arising out of the District Attorney's substitution of a three-year commitment period for a four-year period is frivolous. The equal protection claim, alleging that other Assistant District Attorneys, unidentified except for a single named employee, were allowed to leave prior to satisfaction of their commitment periods, is unsubstantiated except as to that named employee. In any event, even if true, waiving the terms of a contract as to one person and declining to do so for others, does not make out an equal protection claim.

Accordingly, the order of the Supreme Court, Bronx County (Gerald Esposito, J.), entered March 24, 1998, which denied defendants' motion to dismiss the complaint, should be reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint.

All concur.

261 A.D.2d 34, 704 N.Y.S.2d 1, 1999 N.Y. Slip Op. 10616

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.