# *JHE, Inc. v. Southeastern Pennsylvania Transp. Auth.*

Westlaw

Not Reported in A.2d  
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)  
(Cite as: Not Reported in A.2d)

Page 1

Only the Westlaw citation is currently available.
Court of Common Pleas of Pennsylvania,
Philadelphia County.
JHE, INCORPORATED, Plaintiff
v.
SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY, Defendant
No. 1790 NOV.TERM 2001, CONTROL 010312,
CONTROL 020586.

May 17, 2002.

ORDER

*1 AND NOW, this 17th day of May 2002, upon consideration of the Preliminary Objections of defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"), to the Complaint of plaintiff, JHE, Incorporated, the plaintiff's response in opposition, and the plaintiff's Preliminary Objections to the defendant's Preliminary Objections and the defendant's response in opposition, the respective memoranda, all matters of record and in accord with the Opinion being filed contemporaneously with this Order, it is hereby ORDERED and DECREED as follows:

a. Plaintiff's Preliminary Objections to Preliminary Objections are Overruled.
b. Defendant's Preliminary Objections to Count II-Pennsylvania Public Works Bond Payment Act, Count V-Breach of Implied Duty of Good Faith and Fair Dealing, Count VI-Negligent Misrepresentation and Count VII-Fraudulent Misrepresentation are Sustained, and Counts II, V, VI and VII are Dismissed.
c. Defendant's Preliminary Objections to the plaintiff's demand for punitive damages is Sustained, and the demands for punitive damages are Stricken.
d. Defendant's Preliminary Objections asserting insufficient specificity are Sustained, in part, and Paragraphs 17, 43, 45, 46 and 47 of the Complaint are Stricken.
e. Defendant's Preliminary Objections asserting the inclusion of scandalous and impertinent material are Sustained, and Paragraphs 28, 34 and 52 of the Complaint are Stricken.
f. The remaining Preliminary Objections are Overruled.
g. Defendant shall file an answer to the Complaint within twenty-two (22) days of the date of this Order.

OPINION

SHEPPARD, J.
Defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"), has filed Preliminary Objections to the Complaint ("Complaint") of plaintiff, JHE, Incorporated ("JHE"). In response JHE has filed Preliminary Objections to the Preliminary Objections.

For the reasons set forth, JHE's Preliminary Objections are overruled, and SEPTA's Preliminary Objections are sustained, in part, and overruled, in part.

BACKGROUND

In September 1997, SEPTA awarded a general construction contract for renovations to its Overbrook Station ("Project") to Craft Century Construction, Inc. ("CCC"). SEPTA terminated its contract with CCC in April 1998 after design, production and management difficulties arose. Three months later, CCC's bonding company requested quotations to complete the Project, and JHE was awarded the Project contract in December 1998.

Of the four parallel tracks that traverse SEPTA's Overbrook Station ("Station"), the outer two are owned by SEPTA, and the inner two are owned by that National Railroad Passenger Corp. ("Amtrak"). As part of the construction contract between JHE and SEPTA ("Contract"), JHE agreed that any work to be performed within 15 feet of the Amtrak-owned tracks ("Amtrak Tracks") required the presence of an Amtrak safety flagperson. However, the Complaint alleges that SEPTA later unilaterally expanded this exclusion zone from 15 feet to 25 feet. This expansion, along with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

SEPTA-mandated complete track outages in lieu of flagperson protection, allegedly caused JHE to incur significant cost increases and resulted in numerous time delays. Allegedly, SEPTA also pushed for early opening of a pedestrian tunnel requiring extra work outside the scope of the contract, and failed to provide proper plans and specifications. Finally, after SEPTA's demands allegedly made work on the Project impracticable, SEPTA terminated the Contract on October 5, 2001.

*2 Within this context, JHE brought suit for breach of contract, violations of the Pennsylvania Public Works Bond Payment Act ("PWBPA"), [FN1] breach of contract/cardinal change, estoppel, breach of implied duty of good faith and fair dealing, negligent misrepresentation and fraudulent misrepresentation. SEPTA filed comprehensive Preliminary Objections ("SEPTA's Objections"), which include a novel question regarding the implied covenant of good faith and fair dealing and the defense of sovereign immunity.

FN1. 62 Pa.C.S. § 3939-3939.

JHE countered with its own set of Preliminary Objections ("JHE's Objections") asserting that the affirmative defense of sovereign immunity may not be raised by way of preliminary objections.

DISCUSSION

This court holds that JHE may not raise an alleged breach of an implied covenant of good faith and fair dealing as a separate count and that this claim (Count V) must be dismissed. Further, three additional counts-- Count II (Pennsylvania Public Works Bond Payment Act); Count VI (Negligent Misrepresentation), Count VII (Fraudulent Misrepresentation)-are dismissed. Also, certain portions of the Complaint are either insufficiently specific or scandalous and impertinent and are stricken.

I. The Court May Consider SEPTA's Objections Asserting Sovereign Immunity

Pennsylvania Rule of Civil Procedure 1030(a) generally requires that affirmative defenses, including the affirmative defense of sovereign immunity, be pled as a new matter and not raised in preliminary objections. *Heifetz v. Philadelphia State Hosp.*, 482 Pa. 386, 390 n. 5, 393 A.2d 1160, 1162 n. 5 (1978); *CSX Transp., Inc. v. Franty Constr.*, 157 Pa. Commw. 620, 623 n. 1, 630 A.2d 932, 934 n. 1 (1993). This supports JHE's assertion that SEPTA's attempt to raise sovereign immunity in its Objections is improper.

SEPTA counters that in *Caplen v. Burcik*, No. 3144, 2000 WL 33711068 (Pa.Com.Pl. Aug.4, 2000), this Court recognized that "sovereign immunity may be raised by preliminary objection where it is apparent on the face of the pleadings or where the plaintiff has not objected to this procedure, despite that immunity is an affirmative defense which normally should be pleaded as new matter in accordance with Pa.R.C.P. 1030." 2000 WL 33711068, at *9. See also *E-Z Parks, Inc. v. Larson*, 91 Pa. Commw. 600, 608, 498 A.2d 1364, 1369 (1985), aff'd, 509 Pa. 496, 503 A.2d 931 (1986) (noting that a court may "address an immunity issue on preliminary objections where the immunity is apparent on the face of the pleadings, or where the plaintiff has not objected to the use of preliminary objections in its answer or any other pleading"); *Potts v. Davis*, 149 Pa. Commw. 8, 11, 610 A.2d 74, 75 (1990) ("[P]reliminary objections are a proper vehicle for raising the defense of sovereign immunity where, as here, the defense is apparent on the face of the pleading under attack"); *Poliskiewicz v. East Stroudsburg Univ.*, 113 Pa. Commw. 13, 15 n. 1, 536 A.2d 472, 473 n. 1 (1988) ("Preliminary objections are a proper vehicle for raising the defense of sovereign immunity where, as here, the defense is apparent on the face of the pleading under attack."). Cf. *Malia v. Monchak*, 116 Pa. Commw. 484, 489, 543 A.2d 184, 187 (1988) ("[I]f the defense of immunity is apparent on the face of the challenged pleading, the defense of immunity will be considered on preliminary objection unless the opposing party challenges this procedure by filing preliminary objections to the preliminary objections.").

*3 This court finds SEPTA's argument persuasive. Thus, the court may address and sustain SEPTA's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)  
(Cite as: Not Reported in A.2d)

Page 3

Objections asserting sovereign immunity if this defect is apparent from the face of the Complaint. JHE's Objections are, therefore overruled.

### II. SEPTA's Objections Asserting Legal Insufficiency Are Sustained in Part and Overruled in Part

A review of the Complaint reveals that Count II-- Pennsylvania Public Works Bond Payment Act, Count V-- Breach of Implied Duty of Good Faith and Fair Dealing, Count VI-- Negligent Misrepresentation and Count VII-- Fraudulent Misrepresentation are legally insufficient and must be dismissed. Additionally, JHE is not entitled to an award of punitive damages, although it may proceed on its remaining contract-related claims.

#### A. JHE's Claim for Violations of the PWBPA Is Legally Insufficient

Under 62 Pa.C.S. § 3932, a "government agency shall pay the contractor or design professional strictly in accordance with the contract." However, this provision does not apply to "[a] transportation authority organized or operating under 74 Pa.C.S. Ch. 17 (relating to metropolitan transportation authorities)." 62 Pa. C.S. § 3938(b)(5). Our Commonwealth Court has held that SEPTA meets the definition of an entity operating under this chapter. *Warrick v. Pro Cor Ambulance, Inc.*, 709 A.2d 422, 425 (Pa.Commw.Ct.1997), aff'd, 559 Pa. 44, 739 A.2d 127 (1999). Accordingly, the PWBPA does not apply to SEPTA, and Count II, which asserts violations of the PWBPA, must be dismissed.

#### B. The Objections to Count III Are Overruled

The doctrine of cardinal change has been applied in a construction contract context and articulated as follows: It is well-settled that a cardinal change occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. Consequently, a plaintiff has no right to complain if the project it ultimately constructed was essentially the same as the one it contracted to construct. This doctrine is created to provide a breach remedy for contractors who are directed by the government to perform work which is not within the general scope of the contract and exceeds the scope of the contract's changes clause. A modification generally falls within the scope of the original procurement if potential bidders would have expected it to fall within the contract's changes clause. The government cannot impose obligations on a contractor which far exceed those contemplated in their contract.

Cases that have found cardinal changes have involved changes that altered the nature of the thing constructed. Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole. Moreover, the contractor must prove facts with specificity that support its allegations that a cardinal change occurred.

*4 *PCL Constr. Servs., Inc. v. United States*, 47 Fed. Cl. 745, 804 (2000) (citations, quotation marks and brackets omitted). This doctrine is used almost exclusively by contractors suing government entities and has been applied by Pennsylvania courts. See, e.g., *Roy F. Weston Servs., Inc. v. Halliburton Nus Envtl. Corp.*, No. Civ. A. 91-1133, 1993 WL 57182 (E.D.Pa. Mar.3, 1993).

It appears that courts treat the cardinal change doctrine as a vehicle for contract interpretation, not as a separate claim:

[U]nder the contract doctrine of "cardinal" changes that where a party to a contract alters the terms of the other party's performance to such an extent that the alterations could not have been within the realm of the parties contemplation as evidenced by the parties' written agreement, the other party may elect not to perform and hold the other party *liable for breach of contract.*

*Fuller Co. v. Brown Minneapolis Tank & Fabricating Co.*, 678 F.Supp. 506, 509 (E.D.Pa.1987) (emphasis added). However, ignoring for a moment how Count III is titled, it appears that JHE intends for Count III to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)  
(Cite as: Not Reported in A.2d)

Page 4

serve as an equitable claim in the event that the Contract between the parties is found to be invalid due to SEPTA's modifications. *See* Pl. Mem. 11 ("When a party is subjected to a cardinal change in its contract, the change is such to affect [sic] a repudiation of that contract. The party is then able to seek damages either in quantum meruit or quasi contract."). [FN2] In situations like this, "Pennsylvania courts faced with a conflict between the allegations of a count and the count's title look at the allegations and not the title." *Thermacon Enviro Sys., Inc. v. GMH Assocs. of Amer., Inc.*, No. 4369, 2001 WL 1807890, at *3 n. 1 (Pa.Com.Pl. July 18, 2001) (citing *Zernhelt v. Lehigh County Office of Children & Youth Servs.*, 659 A.2d 89 (Pa.Commw.Ct.1995), *Maute v. Frank*, 441 Pa.Super. 401, 403-04, 657 A.2d 985, 986 (1995), and *Commonwealth ex rel. Saltzburg v. Fulcomer*, 382 Pa.Super. 422, 555 A.2d 912 (1989)). Because Count III makes out a viable claim based on quantum meruit, those Objections are overruled.

> FN2. The elements of a claim for unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa.Super.Ct.1999), *app. denied*, 561 Pa. 700, 751 A.2d 193 (2000). Similarly, an action based on the quasi-contract doctrine of quantum meruit requires that "one person has been unjustly enriched at the expense of another," and thus cannot be sustained without satisfying the elements of unjust enrichment. *Mitchell v. Moore*, 729 A.2d 1200, 1202 n. 2 (Pa.Super.Ct.1999) (citation omitted).

C. JHE May Proceed on its Estoppel Claim

Pennsylvania has adopted Restatement (Second) of Contracts Section 90(1), which states that "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Thatcher's Drug Store v. Consolidated Supermarkets*, 535 Pa. 469, 476, 636 A.2d 156, 159 (1994) (brackets omitted). SEPTA asserts that the doctrine of estoppel is unavailable where the parties' relationship is founded on a written agreement or express contract. [FN3] Even if this is so, however, Pennsylvania Rule of Civil Procedure 1020(c) allows the presentation of claims in the alternative. *See Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 626, 375 A.2d 1285, 1291 (1977) ( Rule 1020(c) "reflect[s] the general principle that plaintiffs should not be forced to elect a particular theory in pursuing a claim, and avoids the attendant possibility that meritorious claims will fail because the wrong legal theory was chosen"); *Lampl v. Latkanich*, 210 Pa.Super. 83, 231 A.2d 890 (1967) (allowing plaintiff to proceed on breach of contract and unjust enrichment claims). *Cf. Peisach v. Continental Assurance Co.*, June Term, No. 3663, slip op. at 5 (Pa.Com.Pl. Jan. 8, 2002) (Herron, J.) (dismissing unjust enrichment claim where "the clear existence of a contract in the form of the Policy doubtlessly will preclude the Plaintiff from proceeding on her unjust enrichment claim"). [FN4]

> FN3. Although SEPTA does not cite any case law in support of this proposition, several cases do support this principle of law. *See, e.g., Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.Ct.1999); *Roman Mosaic & Tile Co. v. Vollrath*, 226 Pa.Super. 215, 217, 313 A.2d 305, 307 (1974). *Cf. Gee v. Eberle*, 279 Pa.Super. 101, 119, 420 A.2d 1050, 1060 (1980) (allowing plaintiffs to assert claim for unjust enrichment where they did not and could not assert any contractual right against defendant).

> FN4. Opinion available at http://courts.phila.gov/cptcvcomp.htm.

*5 Thus, the fact that JHE's primary claims may be predicated on a contract does not preclude it from continuing on its estoppel claim at this stage.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 5
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

### D. JHE's Claim for Breach of the Implied Covenant of Good Faith Is Legally Insufficient

The implied contractual covenant, or duty, of good faith is a legal concept shrouded in mystery and confusion in Pennsylvania.

After reviewing the relevant decisions, this court concludes that the implied covenant of good faith does *not* allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.

#### 1. JHE's Claim Against SEPTA for Breach of the Duty of Good Faith Does Not Sound in Tort

At the outset, it is important to be clear on the nature of the good faith claim that JHE is raising. As a rule, allegations of a breach of the covenant of good faith sound in contract. See *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*, 385 Pa.Super. 30, 35, 560 A.2d 151, 153 (1989) ("Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts."). While other jurisdictions have recognized a tort claim for bad faith, almost exclusively in an insurance context, Pennsylvania has declined to do so. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981) (rejecting *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (Cal.1973), which allowed insured to bring a claim in tort against insurer for bad faith). Instead, Pennsylvania statutory law allows an action against an insurance company for bad faith conduct. 42 Pa.C.S. § 8371. Although it remains to be seen whether an action under this statute sounds in tort or contract, [FN5] it is clear that a bad faith action against an insurer is distinct from an action based solely on the covenant of good faith. Thus, the conclusions reached in this Opinion are limited to contract-related claims of the type brought by JHE and do not extend to "good faith" as the term may be used in other contexts.

FN5. For an extensive discussion on this issue, see *Trujillo v. State Farm Mutual Automobile Insurance Co.*, No.2047, 2001 WL 1807927 (Pa.Com.Pl. Dec.6, 2001).

#### 2. Breach of the Contractual Duty of Good Faith Is Not a Claim Separate from a Breach of Contract Action

In Count V, JHE asserts an independent claim for breach of the covenant of good faith implied in the contract. Because it is clear that this is not a bad faith claim arising under § 8371, the court must focus on how a plaintiff can assert a claim arising from a breach of contract of the covenant of good faith. Thus, the court must ask the following question: is the covenant of good faith a principle of contract interpretation, making a breach of the covenant nothing more than a facet of a breach of contract claim, or does a breach of the covenant of good faith give rise to a separate cause of action that may and must be pled separately? [FN6]

FN6. It is important to recognize the implications of the answer to this question. The interpretation of a contract generally is an issue of law to be determined by the court. *Highmark, Inc. v. Hospital Serv. Ass'n of N.E. Pa.*, 785 A.2d 93, 98 (Pa.Super.Ct.2001); *Mellon Bank, N.A. v. National Union Ins. Co. of Pittsburgh*, 768 A.2d 865, 868 (Pa.Super.Ct.2001). In contrast, questions as to the intent of the parties and whether the contract has been breached are questions of fact often reserved for a jury. *GMH Associates, Inc. v. Prudential Realty Group*, 752 A.2d 889, 898 (Pa.Super.Ct.2000). Thus, how the covenant of good faith is categorized will affect how it is treated by trial and appellate courts alike. More specifically, if the implied covenant is a rule of contract interpretation, determining what obligations the covenant involves will raise questions of law, while determining whether those ligalities have been sustained will be questions of fact.

*6 Although there is no Pennsylvania case on this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subject, courts in other jurisdictions have found that breach of the covenant of good faith is subsumed in a breach of contract claim. In *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir.1995), for example, the court held that the covenant of good faith "is not an independent source of duties for the parties to a contract," but merely "guides the construction of the explicit terms in the agreement." 69 F.3d at 792 (citations and quotation marks omitted). *See also, e.g., Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1106 (7th Cir.1997) ("The obligation of good faith ... creates neither a cause of action sounding in tort nor its own sui generis cause of action."); *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir.1994) ("Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim."); *Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F.Supp.2d 193, 196 (E.D.N.Y.2001) ("A claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action that is separate and different from a breach of contract claim. Rather, breach of that duty is merely a breach of the underlying contract."); *Adams v. NVR Homes, Inc.*, 135 F.Supp.2d 675, 699 (D.Md.2001) ('[A] plaintiff seeking a recovery for breach of contract may not in Maryland assert a separate claim for breach of the covenant of good faith and fair dealing implied in that contract."). FN7

> FN7. In an insurance context, where an insured brings a tort or tort-like bad faith claim against her insurer, some courts have justifiably held that these claims are distinct and separate from claims stemming from breach of the covenant of good faith. *See, e.g., Aranda v. Insurance Company of North America*, 748 S.W.2d 210, 213-14 (Tex.1988). *Cf. The Birth Center v. St. Paul Cos.*, 567 Pa. 386, ---, 787 A.2d 376, 390 (2001) (Nigro, J.) (concurring opinion) ("I believe that the law in this Commonwealth establishes that there are two separate 'bad faith' claims that an insured can bring against an insurer-a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim sounding in tort under 42 Pa.C.S. § 8371.").

This court suggests that the analysis of Pennsylvania law undertaken in *McHale v. NuEnergy Group*, No. Civ. A. 01-4111, 2002 WL 321797, (E.D.Pa. Feb.27, 2002), is particularly insightful:

Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be dismissed. This court finds that Pennsylvania law would not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim. Plaintiffs cite *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (Pa.Super.Ct.1992) in support of the claim for breach of implied covenant of good faith and fair dealing. However, the majority in *Somers* only stated that the general duty of good faith and fair dealing in the performance of a contract has been adopted in this Commonwealth, and that a party may bring a claim for breach of contract. A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing. Therefore, the claim for breach of covenant of good faith and fair dealing is dismissed.

2002 WL 321797, at *8 (citations omitted). *See also Commonwealth v. BASF Corp.*, No. 3127, 2001 WL 1807788, at *12 (Pa.Com.Pl. Mar.15, 2001) ("Pennsylvania law does not allow for a separate cause of action for breach of either an express or implied duty of good faith, absent a breach of the underlying contract."). FN8

> FN8. A detailed analysis of how to plead a breach of contract claim arising from a breach of the duty of good faith was set forth in *Galileo International, L.L.C. v. Ryanair, Ltd.*, 2002 WL 314500, *6 (N.D.Ill.), where the court examined counterclaim defendant Galileo's assertion that Ryanair's claim for breach of the covenant of good faith could not be brought as a separate action:
> Galileo is correct in that Illinois law does not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

permit a party to seek an independent claim for breach of the implied obligation of good faith which Illinois law incorporates into all contracts. To bring a claim for breach of the obligation of good faith, a party must include such a claim within a breach of contract claim. Where a party fails to properly plead a claim for good faith within a count for breach of contract, the court should properly dismiss the separate claim for good faith.

Here, Ryanair concedes that it cannot state an independent claim for breach of good faith. However, Ryanair contends that its good faith claim is part of a count for breach of contract, and therefore is properly pled. Count IV is titled "BREACH OF CONTRACT (Obligation of good faith)" and incorporates by reference Ryanair's breach of contract claims (Counts I and II). This position is contrary to the Seventh Circuit's interpretation of Illinois law in *Echo, Inc.*, 121 F.3d at 1105-06, where the court clearly stated independent claims of breach of duty of good faith are not permitted under Illinois law. 2002 WL 314500, at *6 (citations omitted).

*7 Based on this analysis, this court holds that a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative. [FN9] Accordingly, JHE's claim for breach of the covenant of good faith in the Contract is dismissed. Because JHE's independent claim for breach of the covenant of good faith is legally insufficient, the court need not consider, at this stage, whether the relationship between the parties allows the court to imply a covenant of good faith.

FN9. The implication of this conclusion is that determining the existence of a particular duty arising from a party's contractual duty of good faith is a question of law, while determining whether the particular duty was breached is a question of fact. This implication, too, is supported by case law from outside the Commonwealth. *See, e.g., Guardian Alarm Co. of Mich. v. May*, 24 Fed. Appx. 464 (6th Cir.2001) ("[T]he question of whether a party has adhered to the duty of good faith is properly decided by the jury...."); *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1290 (10th Cir.2000) (holding that trial court properly determined what obligations were imposed by the contractual duty of good faith before allowing jury to determine whether duty was breached); *Youell v. Grimes*, 2001 WL 121955, *2 (D.Kan. Feb.8, 2001) ("Whether the underwriters breached their duty of good faith and thereby relieved the defendants of their duties under the contract is also a question of fact.").

E. The Economic Loss Doctrine Bars JHE's Negligent Misrepresentation Claim

The purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 550, 564 A.2d 919, 925 (1989). Pennsylvania's economic loss doctrine has its origins in *R.E.M. Coal Co. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989). There, the court considered:

[T]he appropriateness of permitting recovery in tort where a product malfunctions because of an alleged defect in the product, causing damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff.

386 Pa.Super. at 403, 563 A.2d at 129. Ultimately, the Court concluded that "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." 386 Pa.Super. at 412-13, 563 A.2d at 134. In its current form, the Commonwealth's version of the doctrine precludes recovery for economic losses in negligence [FN10] and strict liability actions where the plaintiff has suffered no physical injury or property damage. *See, e.g., Moscatiello v. Pittsburgh Contractors Equip. Co.*, 407 Pa.Super. 378, 385-86, 595 A.2d 1198, 1201

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

Page 8

(1991) ("[P]urely economic losses cannot be recovered where the plaintiff's action sounded solely in negligence or strict liability."); *Spivak v. Berks Ridge Corp.*, 402 Pa.Super. 73, 78, 586 A.2d 402, 405 (1990) ("The general rule of law is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage.").

> FN10. The economic loss doctrine initially applied solely to strict liability torts but has gradually been extended to negligence claims and, by some courts, to intentional torts as well. *See* Steven C. Tourek, Thomas H. Boyd & Charles J. Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, The Economic Loss Doctrine and Common Law Causes of Action for Fraud and Misrepresentation*, 84 Iowa L.Rev. 875, 885-891 (1999) (tracing the history of the economic loss doctrine nationwide).

In the instant dispute, there is no allegation in the Complaint of any physical injury or property damage incurred by JHE. JHE's negligent misrepresentation claim does nothing more than incorporate its earlier allegations, including those iterated in its breach of contract claim. Accordingly, the economic loss doctrine bars JHE's negligent misrepresentation claim, and Count VI must be dismissed.

The opposite outcome is required for JHE's fraudulent misrepresentation claim. This Court has previously examined the cases applying the economic loss doctrine to fraudulent and intentional misrepresentation cases and held the doctrine inapplicable. *See, e.g., First Republic Bank v. Brand*, 50 Pa. D. & C.4th 329, 340-45 (Pa.Com.Pl.2000). [FN11] As such, the economic loss doctrine does not apply to Count VII-Fraudulent Misrepresentation.

> FN11. In reaching its conclusion, the *First Republic Bank* court relied on *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862 (7th Cir.1999); *KNK MedicalDental Specialties, Ltd. v. Tamex Corp.*, No. Civ. A.

99-3409, 2000 WL 1470665 (E.D.Pa. Sept.28, 2000); *Sunquest Info. Sys. v. Dean Witter Reynolds*, 40 F.Supp.2d 644 (W.D.Pa.1999); *Budgetel Inns, Inc. v. Micros Sys., Inc.*, 34 F.Supp.2d 720 (E.D.Wis.1999); *Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F.Supp. 1227 (W.D.Wis.1997); *Palco Linings, Inc. v. Pavex, Inc.*, 755 F.Supp. 1269 (M.D.Pa.1990); *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.*, 735 So.2d 1219 (Fla.2000); R. Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L.Rev. 1789 (2000); Tourek, Boyd & Schoenwetter, 84 Iowa L.Rev. at 885-891.

F. The Doctrine of Sovereign Immunity Protects SEPTA Against JHE's Claim for Fraudulent Misrepresentation and Request for Punitive Damages

*8 Under 1 Pa.C.S. § 2310, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." The Pennsylvania Supreme Court has held that SEPTA is an agency of the Commonwealth and is therefore entitled to the general sovereign immunity protection afforded all Commonwealth agencies. *Feingold v. Southeastern Pa. Transp. Auth.*, 512 Pa. 567, 579, 517 A.2d 1270, 1276 (1986). *See also Warnecki v. Southeastern Pa. Transp. Auth.*, 689 A.2d 1023, 1025 (Pa.Commw.Ct.1997) (holding that SEPTA is a "Commonwealth party" entitled to sovereign immunity protection).

Certain exceptions where the Commonwealth has waived sovereign immunity are set forth in 42 Pa.C.S. § 8522, which allows for tort claims based on the *negligent* acts related to the following:
• Vehicle liability;
• Medical-professional liability;
• Care, custody or control of personal property;
• Commonwealth real estate, highways and sidewalks;
• Potholes and other dangerous conditions;
• Care, custody or control of animals;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

Page 9

- Liquor store sales;
- National Guard activities; and
- Toxoids and vaccines.

42 Pa.C.S. § 8522(b). The Pennsylvania Supreme Court has instructed that courts "apply a rule of strict construction in interpreting these exceptions." *Jones v. Southeastern Pa. Transp. Auth.*, 565 Pa. 211, 220, 772 A.2d 435, 440 (2001) (citation omitted). See also *Finn v. City of Phila.*, 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995) ("Because the legislature's intent was to provide immunities, we have held that the exceptions to immunity must be strictly construed.").

As Pennsylvania law allows an exception to sovereign immunity for tort claims arising from negligent actions only, JHE's claim for fraudulent misrepresentation, an intentional tort, is legally insufficient. See *Frazier v. Southeastern Pa. Transp. Auth.*, 868 F.Supp. 757, 762 (E.D.Pa.1994) (holding that plaintiff's fraud claim against Commonwealth agency was barred by sovereign immunity); *Faust v. Commonwealth, Dept. of Rev.*, 140 Pa. Commw. 389, 398, 592 A.2d 835, 839 (1991) ("[I]ntentional tort claims and civil rights actions are not within the narrow exceptions set forth in 42 Pa.C.S. § 8522(b)"). Accordingly, it must be dismissed.

Similarly, Commonwealth agencies are entitled to protection against an award of punitive damages:
Regarding retribution, it remains true that an award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

*9 *Feingold*, 512 Pa. at 580-81, 517 A.2d at 1277 (quoting *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)) (internal citations omitted). Thus, JHE's demands for punitive damages must be stricken.

### G. The Allegations in the Complaint Entitle JHE to an Award of Consequential Damages

SEPTA next argues that JHE has not pled facts to support an award of consequential damages. Under Pennsylvania law, consequential damages may be awarded "(1) such as would normally and ordinarily result from the breach, or (2) that they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) that the damages can be proven." *Commonwealth, Dept. of Transp. v. Cumberland Constr. Co.*, 90 Pa. Commw. 273, 282, 494 A.2d 520, 525 (1985) (citing *Taylor v. Kaufhold*, 368 Pa. 538, 546, 84 A.2d 347, 351 (1951)). Cf. *Burly Constr. Corp. v. Commonwealth, Dept. of Justice*, 4 Pa. Commw. 46, 52, 284 A.2d 841, 844 (1971) (holding that contractor was "required to present evidence which afforded a sufficient basis for estimating the damages with reasonable certainty"). Here, JHE has indicated that it is seeking monetary damages amounting to $2,513,201.00 and has broken this sum down into discrete amounts for the value of additional work and overhead and lost bonding capacity and profits, among others. The allegations in the Complaint are sufficient to support the conclusion that these awards are normal, foreseeable and provable. As such, the challenge to the consequential damages JHE allegedly suffered is without merit.

### III. Portions of the Complaint Are Insufficiently Specific

SEPTA also attacks the specificity of the Complaint in that it makes repeated references to unspecified "other" damages incurred and "other" representations of SEPTA. These allegations are improper and are stricken.

In presenting its argument, SEPTA relies on *Connor v. Allegheny General Hospital*, 501 Pa. 306, 461 A.2d 600 (1983). In *Connor*, the plaintiff's complaint alleged that, in addition to several specific acts of negligence, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

Page 10

defendant had "otherwise fail[ed] to use due care and caution under the circumstances." 501 Pa. at 310, 461 A.2d at 602. The Pennsylvania Supreme Court concluded that the plaintiff could amend her complaint to assert additional negligence allegations after the statute of limitations had run because the additional allegations merely would "amplify" the catch-all clause's claims. *Id.* In dicta, the court stated that any objections to the specificity of the catch-all clause should have been made at the pleadings stage and that the defendant waived its right to object by answering the complaint. 501 Pa. at 311 n. 3, 461 A.2d at 602 n. 3.

Pennsylvania trial courts have routinely relied on *Connor* to strike portions of complaints that are so general that they could permit a plaintiff to supplement allegations at a later point in time. *See, e.g., Philadelphia HGI Assocs., L.P. v. Cope Linder Assocs.*, No. 2981, 2001 WL 1807792, at *2 (Pa.Com.Pl. Apr.6, 2001) (plaintiff's "vague allegations about claims that may arise and damages that may occur in the future" were insufficiently specific); *Clarkson v. Geisinger Med. Clinic*, 46 Pa. D. & C.4th 431, 433 (2000) ("As a result of *Connor*, defendants are properly concerned about unidentified allegations of negligence arising late in the litigation process flowing out of a general allegation of negligence raised early in the process."); *Mitchell v. Remsky*, 39 Pa. D. & C.4th 122, 125 (1998) (General allegations of negligent conduct "represent[ ] an attempt by the plaintiff to preserve all unpleaded theories of liability against the moving defendants."); *Flurer v. Pocono Med. Ctr.*, 15 Pa. D. & C.4th 645, 671 (1992) ("Pennsylvania courts view this vague and all-inclusive language with disfavor."); *Hamilton v. American Cas. Co.*, 24 Phila. 354, 356 (1992) ("The language in the Plaintiff's Complaint which 'reserves the right to include additional claims for himself or his attorney' does not satisfy the pleading requirements under Rule 1019(a) and is unacceptable pleading in Pennsylvania."). [FN12]

FN12. In at least one case, a trial court has held that a defendant's fears of future amendments that "amplify" general allegations are unfounded because language in *American States Insurance Co. v. State Auto Insurance Co.*, 721 A.2d 56 (Pa.Super.Ct.1998), limits *Connor's* applicability. See *Fasula v. Hijazi*, 44 Pa. D. & C.4th 553, 565 (1999) ( "[A]ccording to the most recent appellate pronouncement, *Connor* simply states that a defendant may not obtain a compulsory nonsuit if the defendant does not request a more specific pleading ... and does not obligate a defendant to preemptively object to general averments in order to safeguard against untimely pleadings."). However, no other court has read *American States Insurance Co.* in this way, and *Connor* continues to serve as a basis for striking broad catch-all allegations such as the one set forth in Paragraph 8(f) of the Complaint.

*10 JHE characterizes *Connor* as holding nothing more than "that the trial court erred in not permitting appellants to amend their complaint to amplify one of the allegations of the original complaint, and reversed the Superior Court's order affirming summary judgment in favor of appellee." Pl. Mem. 15 n. 4. Pennsylvania trial courts, including this court, do not share this limited reading. As a result, those portions of the Complaint referring to unspecified "other" damages and conduct are insufficiently specific and must be stricken.

IV. Portions of the Complaint are Scandalous and Impertinent

SEPTA attacks certain statements in the Complaint as being scandalous and impertinent. Under Pennsylvania Rule of Civil Procedure 1028(a)(2), a party may object to a pleading's inclusion of "scandalous or impertinent matter." "Scandalous or impertinent matter" is defined as "allegations ... immaterial and inappropriate to the proof of the cause of action." *Common Cause/Pa. v. Commonwealth*, 710 A.2d 108, 115 (Pa.Commw.Ct.1998) (citing *Department of Envtl. Resources v. Peggs Run Coal Co.*, 55 Pa. Commw. 312, 423 A.2d 765 (1980)). Pennsylvania courts have been restrained in striking scandalous and impertinent pleadings, however:

[T]here is some authority for the proposition that, even if the pleading of damages was impertinent matter, that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                 Page 11
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)
(Cite as: Not Reported in A.2d)

matter need not be stricken but may be treated as "mere surplusage" and ignored.... Furthermore, the right of a court to strike impertinent matter should be sparingly exercised and only when a party can affirmatively show prejudice.

**_Commonwealth, Department of Envtl. Resources v. Hartford Accident & Indemnity Co.,_** 40 Pa. Commw. 133, 137-38, 396 A.2d 885, 888 (1979) (citations omitted).

SEPTA contends that JHE's allegations of recklessness, malicious intent and personal animosity are irrelevant to JHE's remaining causes of action, which assert claims for breach of contract, quantum meruit and estoppel. SEPTA is correct, as the emotions and intentions associated with SEPTA's alleged breach of the Contract or unjust enrichment have no bearing whatever on JHE's remaining claims. Moreover, it is not difficult to see how SEPTA is prejudiced by comments that portray it as being unscrupulous, and these extraneous comments must be stricken.

The Court disagrees with SEPTA as to the propriety of using the term "bad faith." To the extent that JHE uses the term "bad faith" to mean a breach of the covenant of good faith, it may be relevant to JHE's breach of contract claim and is therefore neither scandalous nor impertinent. Accordingly, the Objections to this term's use are overruled.

## CONCLUSION

Because SEPTA's Objections asserting sovereign immunity can be addressed by looking at the face of the Complaint, JHE's Objections are overruled. Four of JHE's claims, as well as its demands for punitive damages, are legally insufficient and are dismissed. In addition, certain portions of the Complaint must be stricken because they are scandalous and impertinent or insufficiently specific. SEPTA's remaining Objections are overruled.

*11 This court will enter a contemporaneous Order consistent with this Opinion.

Pa.Com.Pl.,2002.
JHE, Inc. v. Southeastern Pennsylvania Transp. Authority
Not Reported in A.2d, 2002 WL 1018941 (Pa.Com.Pl.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.