# *Parrish v. Consolidated City of Jacksonville*



Slip Copy
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
(Cite as: Slip Copy)

Page 1

Only the Westlaw citation is currently available.
United States District Court, M.D. Florida.
Marsha PARRISH, Plaintiff,
v.
CONSOLIDATED CITY OF JACKSONVILLE and Jacksonville Police and Fire Pension Fund, Defendants.
No. 304CV986J32HTS.

June 22, 2005.

**Thomas A. Delegal, III**, Delegal Law Offices, P.A., Jacksonville, FL, for Plaintiff.
**Andres Rojas**, General Counsel's Office, Jacksonville, FL, Robert D. Klausner, Klausner & Kaufman, P.A., Plantation, FL, for Defendants.

ORDER

**CORRIGAN**, J.
*1 Plaintiff Marsha Parrish brings this equal protection action challenging an amendment to a municipal ordinance governing pension benefits available to surviving spouses of deceased police officers. Defendants Consolidated City of Jacksonville ("Jacksonville") and Jacksonville Police and Fire Pension Fund ("Pension Fund") move to dismiss her complaint under Federal Rule of Civil Procedure 12(b), arguing that it fails to state a claim upon which relief can be granted because it was filed after the limitations period and fails to demonstrate the absence of a rational basis for the amendment. Plaintiff opposes the motion. The parties filed memoranda in support of their respective positions and presented oral argument at a June 16, 2005 hearing.

I. *Facts*

The facts are straightforward and undisputed.[FN1] The Pension Fund was created in 1937 for Jacksonville's firefighters and police officers. 1937 Fla. Laws ch. 18615. Today, the Pension Fund is governed by chapter 121 of the Jacksonville Ordinance Code and administered by the Board of Trustees, Police and Fire Pension Fund ("Pension Board"). JACKSONVILLE, FLA., ORDINANCE CODE § 121.101(a).[FN2]

FN1. The Court takes judicial notice of the language and legislative history of the laws relating to the Pension Fund. Other facts are taken from the complaint and assumed to be true for purposes of deciding whether dismissal is warranted. The Court notes that at oral argument, counsel for both parties indicated that no factual discovery was necessary and that, in the interests of judicial economy, the motion to dismiss could be decided as a motion for summary judgment since the case presents only legal issues.

FN2. The Pension Board must administer the Pension Fund in accordance with chapter 121 and state law that establishes minimum benefits and standards for municipal police pension funds. Fla. Stat. § 185.01. The Pension Board has a role in developing law relating to the Pension Fund, but does not have any legislative authority. *See* JACKSONVILLE, FL., ORDINANCE CODE § 121.104 ("Prior to the adoption of any proposed legislation concerning the [Pension Fund], the legislation ... shall be presented to the Board for review and comment. The Council shall consider such comments but shall not be bound by them. An actuarial report together with recommendations and comments from the State Division of Retirement shall accompany all proposed legislation concerning the [Pension Fund]....").

On July 11, 2000, at the request of the Pension Board, the Jacksonville City Council President introduced an amendment to the section of chapter 121 governing benefits available to surviving spouses of firefighters

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
(Cite as: Slip Copy)

Page 2

and police officers who die outside the line of duty.[FN3] Before the amendment, such surviving spouses became ineligible for benefits upon remarriage. They remained ineligible for as long as their remarriage continued. The amendment sought to "remove the penalty imposed upon surviving spouses in the event of their remarriage" by allowing benefits to continue even upon remarriage. *See* Jacksonville, Fla., Ordinance 2000-0704. The amendment was prospective only; it included a limitation that surviving spouses who became ineligible for benefits because they were remarried before October 1, 2000 remained ineligible for as long as their remarriage continued. *See id.*

> FN3. A separate section of chapter 121 governs benefits available to surviving spouses of firefighters and police officers who die in the line of duty. *See* JACKSONVILLE, FL., ORDINANCE CODE § 121.204(c). In accordance with state law, this section allows such surviving spouses to remain eligible for benefits after remarriage and, as of July 1, 1994, reinstates benefits that were terminated because of remarriage. *Id.* Plaintiff does not take issue in this case with the distinction based on whether the firefighter or police officer died in or outside the line of duty.

The amendment included an effective date: "This Ordinance shall become effective upon signature by the Mayor or upon becoming effective without the Mayor's signature." *See id.* at § 5. The Jacksonville City Council passed the amendment on September 12, 2000, and the mayor signed it into law on September 18, 2000; *a priori,* the amendment became effective on September 18, 2000. The amendment, as enacted, reads:
Notwithstanding any other provision of law to the contrary, the surviving spouse of any pension participant member who shall be killed or die from the effects of an injury, illness or disease outside of the line of duty shall not lose survivor retirement benefits if the spouse remarries after September 30, 2000. Surviving spouses who were removed from the pension rolls due to remarriage prior to October 1, 2000 shall continue to be ineligible for reinstatement of pension benefits so long as such previously existing marriage continues.

*2 JACKSONVILLE, FL., ORDINANCE CODE § 121.101.

Plaintiff was married to James Costner, a police officer with the Jacksonville Sheriff's Office and a participant in the Pension Fund. Officer Costner died on April 20, 1995 of non-duty related causes, at which point plaintiff became eligible for Pension Fund benefits as a surviving spouse. After Officer Costner's death and before October 1, 2000, plaintiff remarried, which caused her to become ineligible for Pension Fund benefits for as long her remarriage continues. Because she was remarried before October 1, 2000, she could not take advantage of the amendment.

On September 30, 2004, over four years after the amendment's effective date, plaintiff filed this action. She alleges that the amendment creates "a class or category of persons who [are] deprived of pension benefits based on the date of their remarriage." (Doc. 1 ¶ 18.) According to plaintiff, "This class ... was created without any rational relationship to any legitimate governmental interest or purpose, and therefore violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States." [FN4] (Doc. 1 ¶ 20.) Plaintiff asserts a single claim under **42 U.S.C. § 1983**.

> FN4. To attempt to show the arbitrariness of the amendment, plaintiff states that she could divorce her current husband, remarry him the next day, and once again become eligible for benefits. At oral argument, plaintiff's counsel conceded that the amendment drafters envisioned and accounted for this potential shenanigan. The amendment included a section, and chapter 121 now provides, that "eligibility for the reinstatement of survivors benefits resulting from a temporary divorce and remarriage to the same individual subsequent to October 1, 2000[is] subject to the successful demonstration by the petitioner that such marital status changes were not unduly motivated by the desire to restore pension benefits." JACKSONVILLE, FL., ORDINANCE CODE § 121.205(c).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
(Cite as: Slip Copy)

Page 3

## II. *Discussion*

The Court does not need to decide whether plaintiff's claim is barred by a statute of limitations because a decision on whether plaintiff states a cognizable equal protection claim is dispositive.[FN5]

> FN5. Plaintiff asserts that Florida's four year statute of limitations for personal injuries applies. *See Owens v. Okure,* 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); FLA. STAT. § 95.11(3)(a) & (o). Defendants assert that the applicable Florida law is the statute governing waiver of sovereign immunity for tort actions which requires notice to the applicable state agency or subdivision within three years of accrual. *See* FLA. STAT. § 768.28. Defendants argue that, in any event, plaintiff's claim is barred even under the more liberal four year statute of limitations. Aside from which law applies, the issues raised by plaintiff are whether the statute of limitations began to accrue on the amendment's effective date of September 18, 2000 or on the cut-off date specified in the amendment as October 1, 2000; whether each denial of incremental benefits to plaintiff constitutes a continuing violation; and whether a statute of limitations applies at all to an equal protection action challenging a law as unconstitutional on its face. These are substantial questions that the Court need not answer to decide this case. *See Blasland, Bouck & Lee, Inc. v. City of North Miami,* 283 F.3d 1286, 1300-01 (11th Cir.2002)(declining to "clutter[ ] up opinion with an extraneous discussion of the niceties of ... statute of limitations law ... where other dispositive issue was clear); *Terry Props., Inc. v. Standard Oil Co. (Ind.),* 799 F.2d 1523, 1533 (11th Cir.1986)(declining to address statute of limitations issues and instead affirming judgment on substantive merits).

The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. To determine whether a law violates the Equal Protection Clause, a court first must examine the classification made by the law to determine whether a suspect class or fundamental right is involved. *Lofton v. Secretary of Dept. of Children & Families,* 358 F.3d 804, 818 (11th Cir.2004). If no suspect class or fundamental right is involved, the court will uphold the classification if it bears a rational relationship to a legitimate governmental interest. *Id.*

In this case, the classification is between surviving spouses married before October 1, 2000 and those married afterward. This classification does not involve a suspect class or a fundamental right. At oral argument, plaintiff's counsel conceded this point, and that the rational-basis standard therefore applies.

The rational-basis standard has been called a "paradigm of judicial restraint." *Federal Communications Comm. v. Beach Communications, Inc.,* 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* Accordingly, the rational-basis standard "does not provide a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* (quotations omitted). This is particularly true of laws relating to governmental payments of monetary benefits. *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

*3 Under the rational-basis standard, a legislative classification "is accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe,* 509 U.S. 312, 319-20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quotations omitted). Given this presumption, a state or local government whose law is being challenged does not have to produce evidence to sustain its rationale;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
(Cite as: Slip Copy)

Page 4

rather, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, ... whether or not the basis has a foundation in the record." *Id.* (quotations omitted). Rational basis review, therefore, "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications, 508 U.S. at 315.* Moreover, it is "entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [state or local action]." *Id.*

In *Wroblewski v. City of Washburn, 965 F.2d 452, 459-60* (7th Cir.1992), the Seventh Circuit explained the confluence of the rational basis standard with the 12(b)(6) motion to dismiss standard:
A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under [Rule] 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations.... The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.... While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard.

*Id.* (quotations omitted). The Seventh Circuit then held: "To survive a motion to dismiss ..., a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

When confronted with 12(b)(6) motions to dismiss equal protection claims subject to the rational basis standard, courts have relied on *Wroblewski* and similar cases to interpret basic facts about the possible classes of individuals in a manner most favorable to the plaintiff, but hypothesize about any justifications that would support distinctions between the classes. Courts have dismissed the claims if plaintiffs have failed to negate all reasonable justifications for the challenged classifications. *See, e.g., Gilmore v. County of Douglas, State of Neb., 406 F.3d 935, 939-40* (8th Cir.2005); *Cuno v. DaimlerChrysler, Inc., 386 F.3d 738, 748* (6th Cir.2004); *Hernandez-Mezquita v. Ashcroft, 293 F.3d 1161, 1164* (9th Cir.2002); *Restrepo v. Miami-Dade County, No. 00-1132-CIV, 2002 WL 548821, at *8* (S.D.Fla. Feb.26, 2002); *Phelan v. City of Chicago, 125 F.Supp.2d 870, 876 (N.D.Ill.2000).*

*4 In this case, plaintiff alleges that the amendment's classification between surviving spouses married before October 1, 2000, and those married afterward does not have a rational basis. She does not attempt to negate all bases that might support the classification. This failure alone is enough to dismiss the complaint. *Zavatsky v. Anderson, 130 F.Supp.2d 349, 356-57 (D.Conn.2001)* (explaining that to overcome presumption at motion to dismiss stage, plaintiff must assert more than conclusory allegations that policy is without a rational basis). Nevertheless, the Court will engage in further analysis to avoid a futile amended complaint.

Defendants assert that the classification is rationally related to a legitimate interest in providing actuarially sound and affordable pension benefits. They assert that providing prospective, rather than retrospective, application is an effective cost management tool.[FN6] The Court likewise can think of a reason for the classification that is rationally related to a legitimate interest. *Malmed v. Thornburgh, 621 F.2d 565, 569* (6th Cir.1980)( "The court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.")(citing *Weinberger v. Salfi, 422 U.S. 749, 780, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)*). It is conceivable that the Jacksonville City Council wanted to make the amendment prospective only because it knew that former beneficiaries entered into remarriage before October 1, 2000 with the knowledge and expectation that they would be losing their benefits and planned accordingly.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 5
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
(Cite as: Slip Copy)

FN6. Defendants neither cite evidence in the form of legislative history or otherwise, nor assert that these were the actual motivations for the amendment. These omissions are of no moment. See Beach Communications, 508 U.S. at 315 ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."); United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980)(explaining that since legislature is not required to articulate its reasons for enacting a law, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature).

Economic regulation, like the amendment in this case, must be sustained if there is any conceivable motivation for the state or local government "to believe that the means they have selected will tend to accomplish the desired end." Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1242 (11th Cir.1991). Courts have refused to find an equal protection violation when there is any such conceivable motivation. See, e.g., Sarvasova v. Office of Personnel Mgmt., No. 04-3314, 2005 WL 674821, at *3 (Fed.Cir. March 23, 2005)(holding that law requiring surviving spouses to have been married for at least nine months had rational basis in preventing financial windfalls); Melton v. Gunter, 773 F.2d 1548, 1553 (11th Cir.1985)(holding that law distinguishing between municipal firefighters who transferred to the county and those who did not had rational basis in integrating retirement systems and keeping it actuarially sound); Talon v. Brown, 999 F.2d 514, 517 (Fed.Cir.1993)(noting that budgetary considerations alone were sufficient reason to exclude certain veterans from particular pension benefits); Oliver v. Ledbetter, 821 F.2d 1507, 1515 (11th Cir.1987) (holding that Social Security Act provision was rationally related to legislative goal of distributing limited welfare funds to neediest families); Strickland v. City of Albany, 270 Ga. 31, 504 S.E.2d 666, 668 (Ga.1998)(holding that pension ordinance giving retired city employees more options than non-retired city employees had rational basis because retired employees generally worked longer, contributed more, and had shorter life expectancies); Giancaterino v. Brown, 7 Vet.App. 555, 561 (1995)(holding that budgetary considerations combined with rationale that marriages that end in divorce or death pose less of a financial burden than marriages terminated by annulment provided rational basis for statute barring veteran from reinstatement of benefits terminated by marriage); Board of Trustees of Policemen's & Firemen's Retirement Fund v. Cardwell, 400 So.2d 402, 404 (Ala.1981)(finding that terminating benefits upon remarriage has rational purpose and legitimate interest of preventing a pension system from being unduly burdened).

*5 Whether for the reason asserted by defendants or that hypothesized by the Court, the classification between surviving spouses remarried before October 1, 2000, and those married afterward clearly is rationally related to legitimate governmental interests. Plaintiff has failed to negate these rational bases and, accordingly, her claim must be dismissed. FN7 The Court agrees with defendants that plaintiff's recourse is through the Jacksonville City Council and not in a judicial forum.

FN7. Plaintiff cites Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled in part by Edelman v. Jordon, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and Saenz v. Roe, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), for the broad proposition that protection of fiscal integrity alone will never be a sufficient reason for denying funds to a class of citizens. The Court does not think that Shapiro and Saenz, both of which dealt with welfare benefits based on in-state residency period, stand for so broad of a proposition. In any event, there are conceivable reasons beyond fiscal soundness that justify the amendment's classification.

III. Conclusion

For these reasons, it is hereby ORDERED:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6
Slip Copy, 2005 WL 1500894 (M.D.Fla.)
**(Cite as: Slip Copy)**

Defendants Consolidated City of Jacksonville and Jacksonville Police and Fire Pension Fund's Joint Motion to Dismiss (Doc. 5) is GRANTED. This case is hereby DISMISSED WITH PREJUDICE. [FN8] The Clerk is directed to close the file.

> FN8. At oral argument, plaintiff's counsel made an *ore tenus* motion to amend the complaint to allege that the challenged amendment violates equal protection by making a distinction based on marital status. According to the plaintiff, this distinction runs counter to Florida policies favoring marriage as expressed in the Florida Civil Rights Act, FLA. STAT. ch. 760 ("FCRA"). The Court denies the *ore tenus* motion, finding that an amended complaint would be futile. The challenged amendment distinguishes between surviving spouses remarried before October 1, 2000 and those remarried afterward-a distinction that is based on the date of remarriage and not on marital status. To the extent that plaintiff seeks to add an additional theory to allege that the pension scheme's former remarriage penalty made an unconstitutional distinction between those who remarried and those who did not, such a claim likewise would fail the rational basis test. Finally, the Court finds that the FCRA, and policies stated therein, do not apply since the FCRA addresses only unlawful employment practices and not municipal legislation or non-employee participants of pension plans. Indeed, at oral argument, plaintiff's counsel conceded that plaintiff was not asserting an FCRA claim.

DONE AND ORDERED.

M.D.Fla.,2005.
Parrish v. Consolidated City of Jacksonville
Slip Copy, 2005 WL 1500894 (M.D.Fla.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.