# *Piorkowski v. Parziale*

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Ⓒ
**Briefs and Other Related Documents**
Only the Westlaw citation is currently available.

United States District Court,D. Connecticut.
Mitchell PIORKOWSKI, Plaintiff,

v.

Debra PARZIALE, Patricia J. Gillin, State of Connecticut Governor John G. Roland, State of Connecticut Attorney General Richard Blumenthal, Judge Paul M. Vasington, Judge Thomas F, Parker, Judge Elliot N. Solomon and Warden Theresa C. Lantz of Corrigan Correctional Institute, Defendants.
**No. 3:02CV00963 (GLG).**

May 7, 2003.

*Memorandum Decision*

**GOETTEL**, J.

*1 This federal suit arises out of a state court divorce proceeding. The *pro se* plaintiff, Mitchell Piorkowski, brings this federal law suit pursuant to 42 U.S.C. §§ 1983 and 1985 seeking redress for what he claims were violations of his constitutional and federal statutory rights by virtue of the actions of the various defendants in connection with his divorce and the proceedings thereafter. [FN1] The plaintiff has sued his former wife, Debra Parziale, for perjury during the divorce proceedings; his former attorney, Patricia Gillin, for grievances concerning her handling of the case; the Governor of the State of Connecticut, John G. Roland; the State Attorney General, Richard Blumenthal; three State Court Judges, Judge Paul M. Vasington, Judge Thomas F. Parker, and Judge Elliot N. Solomon, who were involved with his case; and, finally, the Warden at Corrigan Correctional Institute, Theresa C. Lantz, where he was incarcerated for failure to pay alimony and child support, seeking to turn their alleged involvement (or lack of involvement) with his divorce into a matter of constitutional proportions. In three separate motions, the defendants have moved to dismiss the plaintiff's complaint in its entirety. Finding that the plaintiff has failed to state a claim upon which relief can be granted against any of these defendants and that the state defendants are entitled to immunity, for the reasons more fully set forth below, these motions will be granted.

> **FN1.** The plaintiff has filed also a motion with this Court seeking access to his minor child [Doc. 22]. For the reasons set forth below, that motion is denied.

In deciding a Rule 12(b)(6) motion,

the Court accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party. The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

***Scala v. American Airlines***, 249 F.Supp.2d 176, 2003 WL 1130811, at *1 (D.Conn. Mar. 13, 2003) (citations omitted; quotation marks omitted). We note that "[w]hen considering the sufficiency of the allegations in a *pro se* complaint, the Court applies less stringent standards than [those applied to] formal pleadings drafted by lawyers ... and should interpret the plaintiff's complaint to raise the strongest arguments [it] suggest[s]." *Marczeski v. Brown*, No. 3:02-CV-894, 2002 **WL 31682175, at *2 (D.Conn. Nov. 21, 2002)**; *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145, 146 (2d Cir.2002).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Though the court allows considerable leeway when it construes a *pro se* plaintiff's complaint, he must, nevertheless, plead facts sufficient to show a legal wrong has been committed from which he may be granted relief. *McLittle v. O'Brien,* 974 F.Supp. 635, 636 (E.D.Mich.1997).

## I. Background/Facts

*2 On April 22, 1998, the divorce proceeding giving rise to this law suit took place in Connecticut Superior Court. The plaintiff, [FN2] though represented by defendant Gillin in the divorce proceeding, did not appear in court. In its May 19, 1998 decision, the state court ordered the disposition of various property and ordered the plaintiff to pay a certain amount of child support, alimony and other monies to defendant Parziale. Subsequently, the state court issued a continuation of its May 19, 1998 orders in an effort to compel the plaintiff to meet his obligations under the court-issued divorce decree. It appears that the court's continuance was predicated on or resulted from the plaintiff's attempts to have the judgment opened and modified. Those attempts proved unsuccessful. The plaintiff then filed suit in this Court alleging a multitude of violations of his constitutional and federal statutory rights.

FN2. The plaintiff in this case was the defendant in the state court divorce proceeding.

## II. Discussion

### A. Parziale and Gillin Motions to Dismiss

Defendants Parziale and Gillin have filed separate motions to dismiss the plaintiff's claims, which may be addressed simultaneously. Defendant Parziale's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1), (2), (4), (5) and (6). Defendant Gillin's motion is based on Rule 12(b)(6), and both defendants assert the Rooker-Feldman Doctrine [FN3] as a bar to the plaintiff's claims. "The standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 169 n. 3 (2d Cir.1999). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied unless "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682 (1946). If the claim is neither immaterial nor insubstantial, "we assume or find sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Carlson v. Principal Financial Group,* 320 F.3d 301, 307 (2d Cir.2003).

FN3. All of the defendants assert this doctrine, which is addressed below.

Here, the plaintiff's complaint, though admittedly vague and confusing, seeks relief under the Fourteenth Amendment of the United States Constitution via 42 U.S.C. §§ 1983 and 1985. *See Ford v. Reynolds,* 316 F.3d 351, 353 (2d Cir.2003) (federal question jurisdiction proper because claims were brought pursuant to United States Constitution and section 1983). Given the most liberal construction to the plaintiff's pleadings, we find that this Court has subject matter jurisdiction.

Having determined that subject matter jurisdiction lies properly with this Court, we consider now the merits of the plaintiff's claims to determine if he has stated any claim pursuant to 42 U.S.C. §§ 1983 and/or 1985 upon which relief can be granted. [FN4] *See* Fed.R.Civ.P. 12(b)(6).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00037    Document 39-14    Filed 12/29/2005    Page 4 of 10

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

**FN4.** The plaintiff lists also fifteen different federal statutes at the end of his complaint, which will be addressed below.

To state a section 1983 claim, the plaintiff must allege that (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). We note, again, though we interpret liberally the pleadings of *pro se* plaintiffs, sufficient facts must be pled to show a legal wrong has been committed from which he may be granted relief. *McLittle,* 974 F.Supp. at 636. Taking the plaintiff's allegations as true, we determine now if the complaint survives a motion to dismiss.

**\*3** The plaintiff claims that his ex-wife, defendant Parziale, perjured herself during the state court divorce proceeding to "gain an unfair advantage before the court" through her testimony regarding, *inter alia,* the plaintiff's employment history, their child's medical coverage, family and individual spending habits, adulterous affairs, the viewing of pornographic materials, gambling, loans, involvement in a dating service, and the plaintiff's alleged abandonment of his family. [FN6] (Comp. at 2-4.) He alleges further that his attorney in the divorce proceeding, defendant Gillin, acted "in concerted effort [with defendant Parziale and] ... willfully and with disregard to moral and legal obligations to her client did in the court of the state of Connecticut allow by lack of client wishes, legal/moral requirements and legal/moral needs to allow [defendant Parziale] to gain an unfair advantage before the court." (Comp. at 4-5.) He supports this claim by alleging that defendant Gillin (1) failed to bring the divorce case to trial within a specified time period, (2) lied about the court's denial of a continuance of the proceeding, and (3) ignored the plaintiff's request for certain information necessary for his preparation for trial.

**FN5.** The plaintiff argues that defendant Parziale's claim of abandonment of his family is fraudulent and malicious because, "as the main provider for the family [he had] a moral right to fix the place of domicile [and if the need to support his family] require[d] ... removal to another state and the wife refuses to follow then it is she who is guilty of abandonment and desertion." (Comp. at 4.)

Though the plaintiff makes numerous allegations, the complaint contains none whatsoever suggesting that defendants Parziale and Gillin were acting under color of state law when they engaged in the conduct alleged by the plaintiff. Even the most liberal construction of the plaintiff's complaint cannot cure this failure. Because it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief, his section 1983 claims against defendants Parziale and Gillin are dismissed for failure to state a claim upon which relief can be granted. *See* **Fed.R.Civ.P. 12(b)(6)**.

The plaintiff asserts also a conspiracy claim against defendants Parziale and Gillin under section 1985, but does not specify whether his claim is based on subsection (2) or (3). [FN7] His claim, however, must fail under both subsections (2) [FN7] and (3) [FN8] because an essential element to such a conspiracy claim requires allegations that it was motivated by some racial or otherwise class-based, invidious discriminatory animus. *Chavis v. Clayton County School Dist.,* 300 F.3d 1288, **1293 (11th Cir.2002);** *Brown v. City of Oneonta, New York,* 221 F.3d 329, 341 (2d Cir.2000); *B & M Service Station v. City of Norwich,* 2000 WL 305981, at \*8 (D.Conn.2000) (stating essential element of section 1985 claim is proof that conspiracy was motivated by some racial or otherwise class-based, invidious discriminatory animus). Because no such allegations appear anywhere within the complaint, the plaintiff's section 1985 claim asserted against defendants Parziale and Gillin are dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

**FN6.** In reviewing the plaintiff's complaint and section 1985, we find that the allegations could not possibly support a claim under section 1985(1). *See* 42 U.S.C. § 1985(1); *Hoai v. Vo,* 935 F.2d 308, 314 n. 8 **(D.C.Cir.1991)** (concluding section 1985(3) claim proper when it appeared not possible under sections 1985(1) **and (2)**).

**FN7.** Subsection (2), entitled "Obstructing justice; intimidating party, witness, or juror," provides in relevant part:
[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.... [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**FN8.** Subsection (3), entitled "Depriving persons of rights or privileges," provides in relevant part:
If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*4** In evaluating the plaintiff's claims, we recognize that the crux of his complaint seems to be his apparent displeasure with the outcome of the state court divorce proceeding. The fact that he alleges his former wife perjured herself in that proceeding does not give rise to a federal claim. Moreover, his allegations in regard to defendant Gillin are more accurately categorized as attorney grievances. The plaintiff's avenue for redress against defendants Parziale and Gillin sits properly with the state court and not with the federal courts; no federal private right of action exists to address such claims.

### B. State Defendants' Motion to Dismiss

The plaintiff brings this action against the state defendants pursuant to 42 U.S.C. §§ 1983. [FN9] The plaintiff, however, has failed to state explicitly in what capacity he is suing the state defendants. When a complaint does not specify the capacity or capacities in which the plaintiff is suing a state defendant, we look to the substance of the complaint and the course of proceedings to determine the nature of the liability to be imposed. *See Rodriguez v. Phillips,* 66 F.3d 470, 479 **(2d Cir.1995);** *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993). The court can properly conclude that a defendant is being sued in his individual capacity if the relief sought consists of compensatory and punitive damages, coupled with the fact that the defendant asserts immunities available to him by way of an individual capacity suit. *See Rodriguez,* 66 **F.3d at 479** (prayer for punitive damages and defense of qualified immunity suggests individual capacity suit); *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 89 (2d Cir.1991); Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation, Claims and Defenses, § 6.6 (3d ed.1997). Here, the plaintiff seeks "both compensatory and punitive"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 5
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

damages, as well as reinstatement of his veteran's benefits and parental rights to his minor child. In response, the state defendants assert sovereign immunity under the Eleventh Amendment, the common law doctrines of absolute and qualified immunity, and the Rooker-Feldman Doctrine. We will address the plaintiff's claims *as if* he had asserted them against the state officials in both their official and individual capacities. Our assumption conforms with case law and the fact that we afford more leeway to *pro se* plaintiffs with respect to their the characterizations of their section 1983 claims, and that we should not automatically construe the complaint as focusing on one capacity to the exclusion of the other. *__Frank,__* 1 F.3d at 1326.

> **FN9.** Although the plaintiff attempts to invoke 42 U.S.C. § 1985, it is not relevant here because, as we have stated already above, a section 1985 claim is actionable "only if it involves a discriminatory animus based on race or some other invidious classification," which the plaintiff must allege. *Sundwall v. Leuba,* No. 3:00-CV-1309, 2001 U.S. Dist. LEXIS 737, at \*22 (D.Conn. Jan. 23, 2001) (citation omitted); *Chavis,* 300 F.3d **at 1293;** *Brown,* 221 F.3d 341; *B & M Service Station,* 2000 WL 305981, at \*8. No such allegations exist in the complaint.

The plaintiff alleges various wrongs committed by three State Court Judges. In regard to Judge Vasington, the presiding judge in the plaintiff's divorce proceeding, the plaintiff challenges his competence to handle such matters. He claims that Judge Vasington should not have presided over the case because he had "not judged a divorce (or any other) case in [seven] months." (Comp. at 5.) He claims also that Judge Vasington's impartiality was compromised. The basis of the plaintiff's claim in this regard stems from a comment in which Judge Vasington stated allegedly, "I have a daughter who was left by her husband who doesn't give her anything, or very little." (Comp. at 6.) The defendant perceived this statement as malicious and biased. Finally, he claims that Judge Vasington's rulings disregarded the law and were tantamount to theft by the court. The plaintiff contends that Judge Vasington's actions and rulings amount to a court imposed "condition of involuntary servitude and peonage upon [him] with the intent to forcefully seize [his property] for an illegitimate purpose under threat of fine, penalty, or imprisonment for failure to comply." (Comp. at 5.)

**\*5** The plaintiff also takes issue with subsequent court rulings, which involved Judge Parker and Judge Solomon. He challenges orders regarding, *inter alia,* the modification to alimony and spousal support, child custody, dispositions of property, and the enforcement of such orders. He claims further that comments made by Judges Parker and Solomon evidenced the court's malice towards him and its "lack of interest in equal justice." (Comp. at 6.) For instance, he claims that Judge Parker's court order stating that he "shall submit a brief setting forth authority" as to why the court should open and modify the divorce rulings demonstrated bias and discrimination on behalf of the court. (Comp. at 6.) Again, the plaintiff asserts that the collective actions and rulings of Judge Parker and Judge Solomon amount to the court's enforcement of orders by "involuntary servitude and peonage ... with the intent to forcefully seize [his] ... property for an illegitimate purpose under threat of fine, penalty, or imprisonment for failure to comply ." (Comp. at 6, 7.)

It appears that the plaintiff was incarcerated for his failure to capitulate to the court's orders regarding his divorce. In that regard, the plaintiff alleges that Warden Lantz, by holding him at the Corrigan Correctional Institute pursuant to judicial decree, "knowingly and willfully ke[pt him] imprisoned to enforce unlawful decisions that would compel [him] to pay an imposed debt or obligation termed alimony, maintenance, and spousal support, in an attempt to establish, maintain, and enforce [his] service and labor, and to otherwise impose a condition of involuntary servitude and peonage upon [him] with the intent to forcefully seize [his] personal earnings and property for an illegitimate purpose." (Comp. at 8.)

Finally, the plaintiff asserts also claims against Governor Roland and Attorney General Blumenthal. The plaintiff's allegations here are almost incomprehensible. He appears to allege that by way of their high positions they somehow influenced the state court's rulings in regard to his divorce. The plaintiff alleges that Governor Roland, Attorney General

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Blumenthal "knowingly, wilfully unlawfully and with malice compel[led]" him to pay certain amounts as a result of his divorce which essentially acted to imposed a condition of involuntary servitude and peonage upon him, and that this was caused because their "station allows their capacity of influence over courts, police agencies, and penal institutions." (Comp. at p. 8.)

In response to these allegations, the state defendants argue collectively that the plaintiff's claims must be dismissed based on sovereign immunity under the Eleventh Amendment or, in the alternative, qualified immunity, as well as the Rooker-Feldman Doctrine. Additionally, the three state court judges assert absolute judicial immunity.

### 1. *Sovereign Immunity*

The Eleventh Amendment to the United States constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

*6 To the extent the plaintiff seeks money damages against the state defendants in their official capacities, dismissal is proper because such a suit is essentially one against the state of Connecticut, which is barred. *See Ford,* 316 F.3d at 354; *Sundwall v. Leuba,* No. 3:00-CV-1309, 2001 U.S. Dist. LEXIS 737, at *9 (D.Conn. Jan. 23, 2001). "States-- state officers, if sued in their official capacities for retrospective relief-- are immunized by the Eleventh Amendment from suits brought by private citizens in federal court and, in any event, are not 'persons' subject to suit under [section] 1983." *K & A Radiological Tech. Servs., Inc. v. Comm'r of the Dep't of Health,* 189 F.3d 273, 278 (2d Cir.1999) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 & n. 10 (1989); *Edelman v. Jordan,* 415 U.S. 651, 664-68 (1974)); *Sundwall,* 2001 U.S. Dist. LEXIS 737, at *9. Consequently, the plaintiff cannot sue any of the state defendants in their official capacities under section 1983 for retrospective money damages because the Eleventh Amendment bars such a suit. *Sundwall,* 2001 U.S. Dist. LEXIS 737, at *10. The plaintiff's claims in that regard are, therefore, dismissed. [FN10]

> **FN10.** It does not appear from the complaint that the plaintiff is seeking injunctive relief against the state officials in their official capacities, which would not be barred by the Eleventh Amendment. *See Ford,* 316 F.3d at 354-5.

The Eleventh Amendment, however, does not extend to a suit against a state official in his or her individual capacity. *See* 42 U.S.C. § 1983; *Frank,* 1 F.3d at 1326. We determine now if the state defendants are entitled to immunity from this lawsuit based on the doctrines of absolute and/or qualified immunity.

### 2. *Absolute immunity*

Judges Vasington, Parker and Solomon, being sued in their individual capacities, assert that they are absolutely immune from the plaintiff's claims. While it is true that state defendants sued in their individual capacities are "persons" for the purposes of section 1983 claims, state judges are not just state officials, but also judicial officers. *See Perales,* 948 F.2d at 88 n. 4; *Sundwall,* 2001 U.S. Dist. LEXIS 737, at *10. "It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir.1999) (citations omitted). Moreover, absolute "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (citations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A judge may invoke judicial immunity if two conditions are met. First, immunity applies only to a judge's actions performed while in his or her judicial capacity. *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir.1997) (citations omitted); *see Sundwall*, 2001 U.S. Dist. LEXIS 737, at *13. The focus of this determination "is the nature and function of the act, not the act itself." *Mireles*, 502 U.S. at 13 (citations omitted). " 'Whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." ' *Id.* at 12 (citation omitted). "In other words, we look to the particular act's relation to a general function normally performed by a judge." *Id.* at 13.

*7 Second, we ask if the judge was acting within his or her jurisdiction. Only if the judge acted in "clear absence of all jurisdiction" will he or she be subject to liability for that act. *See Sundwall*, 2001 U.S. Dist. LEXIS 737, at *13, *14. The Second Circuit has stated that a judicial officer acts with a clear absence of all jurisdiction when two circumstances appear. *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir.1988). First, jurisdiction must be objectively clearly absent. *Id.* In other words, no reasonable judge would have thought jurisdiction was proper. Second, the judge must have known subjectively that he or she was acting in the clear absence of jurisdiction. *Id.* at 53.

Here the defendant judges are entitled to absolute judicial immunity. First, the act of presiding over a dissolution of marriage proceeding, which includes, *inter alia*, the determination of custody of any minor children, orders of support of the child and former spouse, and the disposition and transfer of property is a function normally performed by a judge. *See* Conn. Gen.Stat. §§ 46b-40 through 46b-87a. And, the parties dealt with the judges in their judicial capacities. Second, it is within a judge's jurisdiction in the state of Connecticut to act in regard to all determinations involved in a divorce proceeding. *Id.* Thus, Judges Vasington, Parker and Solomon are entitled to absolute judicial immunity insofar as they are being sued in their individual capacities. The plaintiff's claims against all three judges, therefore, are dismissed.

### 3. *Qualified Immunity*

The remaining state defendants, Governor Roland, Attorney General Blumenthal and Warden Lantz, sued in their individual capacities, are entitled to qualified immunity, which "is an entitlement not to stand trial." *Russo v. City of Hartford*, 158 F.Supp.2d 214, 233 (D.Conn.2001). Where a defendant seeks qualified immunity, a ruling on that basis should be made early in the proceedings. *Id.* For the defendants to avail themselves of the protection of qualified immunity, we must determine "if their actions were objectively reasonable, as evaluated in the context of the legal rules that were clearly established at that time." *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir.2002). As an initial inquiry, taking all of the allegations in the light most favorable to the plaintiff, we must determine whether those allegations show, if proven, that the defendants violated his constitutional rights. *See Russo*, 158 F.Supp.2d at 233. If we find that the complaint alleges such facts, our second inquiry addresses whether the right in question was clearly established at the time the violation occurred. *Poe*, 282 F.3d at 133.

The plaintiff cannot satisfy the threshold inquiry because he has alleged no facts to show that, if proven, the remaining state defendants violated his constitutional rights. In fact, there is absolutely no basis for his claims against them. At best, the plaintiff's allegations are sweeping and somewhat incomprehensible; he makes naked assertions that their respected positions somehow allowed them to influence the "courts, police agencies, and penal institutions" in this state as they pertained to his divorce case. (Comp. at 8.) And, the plaintiff fails to allege any personal involvement on behalf of any of the remaining state defendants upon which to base his claim. *See Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989) (personal involvement necessary to establish liability under section 1983). In addition, the high positions of authority held by the Governor Roland, Attorney General Blumenthal and Warden Lantz are not, alone, sufficient to impose liability under section 1983. *See Id.* at 1065 (high position of authority insufficient basis for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

imposition of personal liability under section 1983).

*8 Consequently, the plaintiff's claims against the remaining state defendants must be dismissed because Governor Roland, Attorney General Blumenthal and Warden Lantz are entitled to qualified immunity.

### 4. Other Claims

At the end of his complaint, the plaintiff seems to claim that all of the defendants violated fifteen separate federal statutes: 18 U.S.C. § § 241, 245, 666, 1001, 1581, 1584, 1621, 1623, 2312, 2313, 2314, 2315; 28 U.S.C. § 1343; and 42 U.S.C. §§ 1581 and 1994. (Comp. at 8, 9.) It is not at all clear to this Court if the plaintiff seeks to state a claim under any of these statutes. Assuming that the plaintiff intends to state claims under these statutes, we dismiss them for failure to state claims upon which relief can be granted.

In the first instance, not only has the plaintiff failed to allege any facts that might conceivably implicate any of these statutes or cite to any authority that these statutes provide for private rights of action, most of the listed statutes are completely irrelevant to the plaintiff's claims, as he alleges them. For instance, 18 U.S.C. § 241 is a criminal statute addressing conspiracies against a person's civil rights; section 245 concerns federally protected rights not implicated here; **section 666** is a criminal statute for theft or bribery concerning programs receiving federal funds; section 1001 is a criminal statute providing in relevant part that one within the jurisdiction of any department or agency of the United States who makes false or fraudulent statements shall be fined or imprisoned; section 1581 and 1584 make criminal peonage and the holding or sale of a person into involuntary servitude; section 1623 addresses false declarations in front of a jury or grand jury in courts of the United States, not state divorce courts; sections 2312, 2313, 2314, and 2315 concern the transportation, sale or receipt of stolen property. Even had the plaintiff alleged any facts at all that might implicate 18 U.S.C. §§ 241, 245, 666, 1001, 1581, 1584, 1621, 1623, 2312, 2313, 2314, or 2315, his claims must fail. All of the statutes the plaintiff cites from Title 18 are criminal and do not provide, explicitly or implicitly, a civil cause of action and the plaintiff has cited no authority otherwise. *See Cok v. Cosentino* 876 F.2d 1, 2 (1st Cir.1989) (stating only the United States as prosecutor can bring a complaint under section 241); *Lamont v. Haig*, 539 F.Supp. 552, 558 **(D.S.D.1982)** (plaintiff failed to cite authority implying civil cause of action under section 241); *John's Insulation, Inc. v. Siska Const. Co., Inc.*, 774 F.Supp. 156, 163 (S.D.N.Y.1991) (section 245 confers neither substantive rights nor a private right of action for damages); *Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y.1992) (stating no private right of action is provided under section 1001); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1357 (6th Cir.1996) (section **1584** is a criminal statute enacted by Congress to enforce Thirteenth Amendment and does not provide for a private civil remedy); *Roemer v. Crow*, 993 F.Supp. 834, (D.Kan.), *aff'd*, 162 F.3d 1174 (10th Cir.1998) (section 1621 is a criminal statute which does not provide a civil right of action for damages); *O'Donnell v. City of Chicago*, No. 02C1847, 2003 **WL 1338027, at *5 (N.D.Ill. Mar. 17, 2003)** (stating sections 1621 and 1623 are criminal statutes that offer no civil causes of action).

*9 In regard to 28 U.S.C. § 1343, which gives the federal courts original jurisdiction over civil rights actions, as discussed above, the plaintiff has failed to state claims under section 42 U.S.C. §§ 1983 and 1985, or any other statute. Also, 42 U.S.C. § 1581 is completely irrelevant here because it concerns housing dispositions under the control of the Secretary of Housing and Urban development. Finally, 42 U.S.C. § 1994, which abolishes peonage, is not relevant here because the plaintiff has proffered no facts to suggest a claim of peonage. Therefore, to the extend that the plaintiff seeks to assert claims under any of these statutes, they are dismissed for failure to state a claim upon which relief can be granted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 9
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

### 5. *Rooker-Feldman Doctrine*

All of the defendants assert that the plaintiff's claims are barred by the Rooker-Feldman doctrine, which holds that "inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *King v. Commissioner and New York City Police Dept.,* No. 00-9234, 2003 WL 1343011, at *2 (2d Cir. Mar. 19, 2003).

As we stated earlier, the plaintiff's complaint is quite confusing; it seems to shade, by way of constitutional allegations, the plaintiff's true desire to modify the state court rulings regarding his divorce. To the extent that the plaintiff's claims seek to modify such rulings, including orders of alimony, spousal support, child custody, property disposition, or any other aspect of the divorce, they are barred by the Rooker-Feldman doctrine. Such claims, to the extent that they exist, cannot be heard by this Court because it lacks subject matter jurisdiction in that regard. Fed.R.Civ.P. 12(b)(1); *See King,* 2003 WL 1343011, at *2. Additionally, we must DISMISS for lack of subject matter jurisdiction the plaintiff's motion seeking access to his minor child.

### III. Conclusion

Because the plaintiff has failed to state claims upon which relief can be granted, his section 1983 and 1985 claims against defendants Parziale and Gillin cannot stand and are dismissed. Assuming the plaintiff is suing the state defendants in their official capacities, all of the state defendants are entitled to sovereign immunity. Assuming the state defendants are being sued in their individual capacities, state court Judges Vasington, Parker and Solomon are entitled to absolute judicial immunity and the remaining state defendants, Governor Roland, Attorney General Blumenthal and Warden Lantz are entitled to qualified immunity. Moreover, to the extent that the plaintiff seeks to modify any of the state court's rulings regarding the divorce proceeding, which includes the plaintiff's motion for access to his minor child, those claims are dismissed for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine.

In summary, we GRANT all of the defendants' separate motions to dismiss [Doc's 19, 25 & 30], and DISMISS the plaintiff's complaint in its entirety. We DISMISS also the plaintiff's motion for access [Doc. 22].

*10 The CLERK is directed to enter judgment accordingly.

SO ORDERED.

D.Conn.,2003.
Piorkowski v. Parziale
Not Reported in F.Supp.2d, 2003 WL 21037353 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 3:02CV00963 (Docket) (Jun. 06, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.