# Smith v. Floyd County Bd. of Educ.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 1

**Briefs and Other Related Documents**
Only the Westlaw citation is currently available.
United States District Court,E.D. Kentucky.
Dani SMITH, Plaintiff
v.
FLOYD COUNTY BOARD OF EDUCATION, a corporate entity, Paul W. Fanning, Individually and as Superintendent of Floyd County Schools, Defendants
No. CIV.A. 03-304.

Nov. 22, 2005.

**Background:** Teacher brought suit against school board and individuals, claiming that nonrenewal of her contract and failure to hire her for alternative position, due to her outspoken criticism of district leadership and advocacy of union, violated her First Amendment rights. Defendants moved for summary judgment.

**Holdings:** The District Court, Caldwell, J., held that:

2(1) board was not liable for contract nonrenewal;

3(2) fact issues precluded summary judgment of nonliability of superintendent for failure to renew teacher's contract covering district-wide position;

4(3) superintendent was not liable for failure to hire for local position;

5(4) there were fact issues regarding whether superintendent had sufficient authority to be responsible for failure to appoint teacher to district-wide position;

6(5) there were fact issues whether superintendent violated First Amendment by failing to hire teacher for one of eight local positions that had essentially same duties as prior district-wide position;

7(6) there were fact issues as to whether superintendent retaliated against teacher;

8(7) there was no qualified immunity;

10(8) school board and employees acting in official capacities had statutory immunity under Kentucky law; and

11(9) no reinstatement action could be maintained against superintendent under Kentucky law.

Motion granted in part, denied in part.

[1] Constitutional Law 92 €═82(3)

92 Constitutional Law
  92V Personal, Civil and Political Rights

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 2

92k82 Constitutional Guaranties in General
 92k82(3) k. First Amendment Guaranties. Most Cited Cases

To establish a First Amendment retaliation claim, a plaintiff must show that (1) she engaged in constitutionally protected activity, (2) she was subjected to adverse action or was deprived of some benefit, and (3) the protected activity was a substantial or a motivating factor in the adverse action. U.S.C.A. Const.Amend. 1.

[2] Civil Rights 78 ⇐1349

78 Civil Rights
 78III Federal Remedies in General
  78k1342 Liability of Municipalities and Other Governmental Bodies
   78k1349 k. Employment Practices. Most Cited Cases

School board was not liable under § 1983 for violation of First Amendment rights of teacher, whose contract was not renewed allegedly because of outspoken criticism of district leadership and advocacy of teachers' union, when decision not to renew was made by superintendent and there was no evidence of board involvement. U.S.C.A. Const.Amend. 1; **42 U.S.C.A. § 1983**; KRS § 161.750.

[3] Civil Rights 78 ⇐1359

78 Civil Rights
 78III Federal Remedies in General
  78k1353 Liability of Public Officials
   78k1359 k. Employment Practices. Most Cited Cases

Superintendent who made decision not to renew teacher's contract for district-wide technology research teacher (TRT) position was potentially liable under § 1983 for violating First Amendment rights of teacher who was critical of district leadership and was advocate of her union. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

[4] Civil Rights 78 ⇐1359

78 Civil Rights
 78III Federal Remedies in General
  78k1353 Liability of Public Officials
   78k1359 k. Employment Practices. Most Cited Cases

Superintendent of schools, who under Kentucky law had responsibility of forwarding list of candidates for teacher appointments to principal for final decision when local teaching position was involved, was not liable under § 1983 in suit by teacher claiming she was not hired for local position, in violation of First Amendment, because of her outspoken criticism of district leadership and advocacy of her union. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983; KRS 160.345.

[5] Federal Civil Procedure 170A ⇐2497.1

170A Federal Civil Procedure
 170AXVII Judgment
  170AXVII(C) Summary Judgment
   170AXVII(C)2 Particular Cases
    170Ak2497 Employees and Employment Discrimination, Actions Involving
     170Ak2497.1 k. In General. Most Cited Cases

Material issues of fact as to whether superintendent of schools had final hiring and firing responsibility for teachers for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 3

district-wide appointments precluded summary judgment of nonliability in § 1983 suit by teacher claiming she was not hired for any district-wide position, in violation of First Amendment, because of her outspoken criticism of district leadership and advocacy of her union. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

[6] Federal Civil Procedure 170A ⇐2497.1

170A Federal Civil Procedure  
    170AXVII Judgment  
        170AXVII(C) Summary Judgment  
            170AXVII(C)2 Particular Cases  
                170Ak2497 Employees and Employment Discrimination, Actions Involving  
                    170Ak2497.1 k. In General. Most Cited Cases  
Material issues of fact as to who made decision whether to hire local technology research teachers (TRTs) precluded summary judgment of nonliability of superintendent under § 1983 for failure to hire teacher for one of eight positions, allegedly because of her outspoken criticism of school district leadership. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

[7] Federal Civil Procedure 170A ⇐2497.1

170A Federal Civil Procedure  
    170AXVII Judgment  
        170AXVII(C) Summary Judgment  
            170AXVII(C)2 Particular Cases  
                170Ak2497 Employees and Employment Discrimination, Actions Involving  
                    170Ak2497.1 k. In General. Most Cited Cases  
Material issues of fact as to whether superintendent of schools declined to place teacher in one of eight local technology research teacher (TRT) positions in retaliation for her union activities precluded summary judgment that teacher was not denied position in retaliation for her exercise of First Amendment rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

[8] Civil Rights 78 ⇐1376(10)

78 Civil Rights  
    78III Federal Remedies in General  
        78k1372 Privilege or Immunity; Good Faith and Probable Cause  
            78k1376 Government Agencies and Officers  
                78k1376(10) k. Employment Practices. Most Cited Cases  
Clearly established nature of right to be free from discrimination based on political opinions precluded determination that school district officials had qualified immunity from § 1983 suit by teacher, claiming that her contract was not renewed and she was not offered alternative positions in retaliation for her union activities. U.S.C.A. Const.Amend. 1; **42 U.S.C.A. § 1983**.

[9] Federal Courts 170B ⇐418

170B Federal Courts  
    170BVI State Laws as Rules of Decision  
        170BVI(C) Application to Particular Matters  
            170Bk418 k. Immunity from Suit. Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 4

State law governs the applicability of immunity to state law claims.

[10] Schools 345 €147.51

345 Schools  
    345II Public Schools  
        345II(K) Teachers  
            345II(K)2 Adverse Personnel Actions  
                345k147.50 Actions  
                    345k147.51 k. In General. Most Cited Cases  
School board, as arm of state, and school officials, as board employees in their official positions, had statutory immunity from state law claims of damages arising out of wrongful termination of contract and failure to rehire, brought by teacher. Ky. Const. §§ 1, 2, 8; KRS 161.164, 161.750(2).

[11] Schools 345 €147.47

345 Schools  
    345II Public Schools  
        345II(K) Teachers  
            345II(K)2 Adverse Personnel Actions  
                345k147.46 Reinstatement; Back Pay  
                    345k147.47 k. In General. Most Cited Cases  
Teacher whose contract was not renewed and who was not appointed to alternate position could not maintain suit for reinstatement against local superintendent of schools, in his individual capacity, due to inability of superintendent to provide relief sought.

**James Follace Fields, III**, Mary Wheeler Ruble, Brooks, McComb, Fields, Ruble & Mullins, Lexington, for plaintiff.  
**Michael J. Schmitt**, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, for defendants.

OPINION AND ORDER

**CALDWELL**, District J.  
*1 This matter is before the Court on the Motion for Summary Judgment (Rec. No. 22) of the Defendants, Floyd County Board of Education (the "Board") and its Superintendent, Paul W. Fanning ("Superintendent Fanning"), in both his individual and official capacities. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

I. FACTS.

A. Smith's Employment.

Plaintiff Dani Smith ("Smith") asserts that she began employment for the Board in March 2001 as a math teacher at Betsy Layne High School. (Rec. No. 1, Complaint ¶ 5). She states that she was hired directly by the Principal of the high school and was not interviewed by any committee. (Rec. No. 28, Response at 2). Superintendent Fanning testified that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)
(Cite as: --- F.Supp.2d ----)

Page 5

he was not involved in hiring Smith for this position. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 14). At the end of the 2000-01 school year, Smith received a notice of non-renewal. (Rec. No. 28, Response at 2). Superintendent Fanning testified that the practice in Floyd County is that all non-tenured teachers regularly receive notices of non-renewal. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 15).

Smith was then hired as the Alternative Individualized Education Program ("AIEP") Teacher for the high school for the 2001-02 school year. (Rec. No. 1, Complaint ¶ 5; Rec. No. 28, Response at 2-3). Again, she was not interviewed by any hiring committee. (Rec. No. 28, Response at 3). Again, she received a notice of non-renewal at the end of the year. (Rec. No. 28, Response at 3). Smith then received a notice of her hiring as a math teacher at the high school for the 2002-03 school year. (Rec. No. 1, Complaint ¶ 5; Rec. No. 28, Response at 3).

Approximately two weeks into the 2002-03 school year, Smith applied for the newly created district-wide Technology Resource Teacher ("TRT"). (Rec. No. 28, Response at 3). She and one other applicant were interviewed by a four-person committee. (Rec. No. 28, Response at 3). The other applicant withdrew his name and Smith was hired. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 20-21). Her supervisor was Debbie Daniels ("Daniels"). Smith worked as the district's TRT for the entire 2002-03 school year. (Rec. No. 1, Complaint ¶ 5). During that time, the district received a grant funding eight TRTs to be placed at individual schools. (Rec. No. 28, Response at 5).

B. Smith's Nonrenewal as District-Wide TRT.

Smith asserts that throughout her employment in Floyd County, she was a member of the Kentucky Education Association ("KEA"), a teacher's union, and its local affiliate, the Floyd County Education Association ("FCEA"). (Rec. No. 28, Response at 5). During the 2002-03 school year, she was a member of the FCEA Board of Directors. (Rec. No. 28, Response at 5). Smith asserts that, throughout the fall of 2002, she attended multiple school board meetings and other meetings at which she voiced her concerns regarding the leadership of the Floyd County schools on a number of issues. (Rec. No. 1, Complaint, ¶ 9). Daniels testified that Smith was "very vocal" in her support of FCEA and that members of the Central Office Administration including Matt Wireman, the District Finance Officer, Joyce Watson, Instructional Supervisor and Phil Paige, Human Resources Director, were aware of Smith's union activities. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 36-39). Superintendent Fanning testified that he attended meetings with the FCEA at which Smith was present. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 26-30). Superintendent Fanning characterized his relationship with the FCEA as "[f]airly calm... Sorta like a marriage. You have to agree to disagree but try not to be disagreeable in doing it... we didn't share common opinions on every topic...." (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 27).

*2 On or about April 23, 2003, Smith was elected President of the FCEA. (Rec. No. 23, Smith Dep. at 90). By letter dated April 29, 2003, Superintendent Fanning informed Smith that her contract would not be renewed for the 2003-04 school year. (Rec. No. 23, Smith Dep., Def.'s Ex. 2). The reason stated in the letter for the nonrenewal was "Honoring Continuing Contracts."

At Smith's request, Superintendent Fanning provided a letter detailing the reasons for the non-renewal of her contract. (Rec. No. 1, Complaint ¶ 12; Rec. No. 23, Smith Dep., Def.'s Ex. 3). He stated that Smith was the only member of the district certified staff who held a limited contract. He further stated that he had received notice from the Kentucky Department of Education that two certificated staff members who held continuing contracts with the district would be returning from a temporary assignment with the state Department of Education. Superintendent Fanning stated that these two member must be assigned positions. He stated:
Generally, I try to disrupt school staffing as little as possible and look first to district positions for opportunities to absorb

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 6

returning staff. One of the returning individuals has a great amount of experience and training with educational technology as well as other significant training and knowledge provided to all associates working with the Kentucky Department of Education. I felt the best position to make use of this individual's talents and not disrupt the staffing of an individual school was that of Technology Resource Teacher.

In his deposition, Superintendent Fanning stated that the two returning district staff members had been on temporary assignment to the Kentucky Department of Education. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 47, 50). He stated that he assigned one of these two returning individuals, Stanton Watson, to the district-wide TRT position held by Smith during the 2002-03 school year. Superintendent Fanning stated that Watson's specialty while on loan to the state was technology. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 53).

Superintendent Fanning testified that he made the decision to place Watson in the district-wide TRT position and there was no hiring committee. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 63, 80). Superintendent Fanning testified that there were other vacant positions in which he could have placed Watson. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 68). Before taking the temporary assignment, Watson had been in a teaching position for the Floyd County School District. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 69). Superintendent Fanning testified that, pursuant to the agreement with the Kentucky Department of Education, Watson was entitled to be placed in a position substantially similar to the one he left. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 69).

Daniels testified that she told Superintendent Fanning that she did not believe that Watson had the skills or expertise that Smith had. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 45). Daniels also testified that, in her opinion, Smith lost her position because of her FCEA activities. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 100). She stated she believed this because she knew "the controversy and I know how outspoken she is." (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 100). Daniels stated, "I think that based on her job description and job performance, that Dani did what she was supposed to be reemployed. I do feel like that some of the controversy and confrontation around her work with the FCEA kept her from being rehired." (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 69-70).

C. Failure to Hire Smith for Other Positions.

*3 For the 2003-04 school year, Smith applied for one of eight vacant TRT positions but was not hired. (Rec. No. 1, Complaint ¶ 15). The job descriptions for these positions and the district-wide TRT position Smith had held were virtually identical. (Rec. No. 23, Smith Dep., Pf.'s Ex. 8, 13). The members of the interview committee were Joyce Watson (Instructional Supervisor and Stanton Watson's wife), Stanton Watson (District-wide TRT), Matt Wireman (District Finance Officer), Davida Bickford (Principal) and Kerry Fannin (Instructional Supervisor). (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 100). On July 24, 2003, Superintendent Fanning wrote Smith stating that the committee had not recommended her for his consideration. (Rec. No. 23, Smith Dep., Def.'s Ex. 4).

Smith asserts that she also applied for various other positions for the Floyd County School District but was not hired. (Rec. No. 1, Complaint ¶ 15). Daniels testified that, in August or September 2003, she called a principal, who she refused to identify, to recommend Smith for a job. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 87). She testified that the principal told Daniels that Phil Paige had told the principal "not to consider that application." (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 84-86). Another principal told Daniels the same. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 90). Daniels stated that Smith was "blackballed" from employment in the Floyd County Schools. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 85).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 7

### D. Smith's Complaint.

Smith claims that the "primary motives of the Defendants for their actions in non-renewing and failing to hire Plaintiff...were to punish and penalize the Plaintiff for her continued association with FCEA and her election to a leadership role in that organization. By non-renewing Plaintiff's employment, the district was attempting to eliminate the leadership of FCEA, thereby significantly weakening that organization." (Rec. No. 1, Complaint ¶ 19).

Smith asserts a claim under 42 U.S.C. § 1983 alleging that the Defendants failed to renew her contract and to hire her in retaliation for her lawful exercise of her rights protected under the First and Fourteenth Amendments. (Rec. No. 1, Complaint ¶¶ 23-25). She also alleged that the Defendants violated Sections 1, 2 and 8 of the Kentucky Constitution and **KRS § 161.164**, a Kentucky statute which specifically prohibits teachers and school board employees from being discriminated against because of their political opinions. (Rec. No. 1, Complaint ¶¶ 24, 26, 27). Smith also alleges that the Defendants violate KRS 161.750(2) because they did not comply with certain procedural requirements. (Rec. No. 1, Complaint ¶ 28). Defendants move for summary judgment on all claims.

### II. STANDARD ON SUMMARY JUDGMENT.

Under Fed.R.Civ.P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

*4 The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id. at 322-25*. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.*, 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 8

as a matter of law." *Anderson,* 477 U.S. at 251-52.

### III. ANALYSIS.

#### A. § 1983 Claim.

[1] With her § 1983 claim, Smith argues that her contract was not renewed and she was not rehired by the Defendants because she exercised protected First Amendment rights. To establish a First Amendment retaliation claim, a plaintiff must show that: 1) she engaged in constitutionally protected activity; 2) she was subjected to adverse action or was deprived of some benefit; and 3) the protected activity was a substantial or a motivating factor in the adverse action. *Leary v. Daescher,* 349 F.3d 888, 897 (6th Cir.2003).

*5 Once the plaintiff has met her burden and established a *prima facie* case, the burden of persuasion shifts to the defendant to show that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue. *Id.* at 898. "These are issues of fact, however, and may not be decided on a motion for summary judgment unless the evidence is so one-sided that one party must prevail as a matter of law." *Id..*

With their Motion for Summary Judgment, the Defendants do not contest that Smith was engaged in constitutionally protected activity when she served as President of the local teacher's union and engaged in union activities. Nor do they contest that she suffered an adverse action when her contract was not renewed and when she was not hired for other positions with the Floyd County School District.

Defendants argue, however, that Smith can produce no evidence that her election as President of the local teacher's union or other union activities was a substantial or motivating factor in the decision to not renew her contract or the decision not to hire her. They argue that Superintendent Fanning did not make the decision not to rehire Smith. Instead, the Defendants argue Superintendent Fanning merely followed the recommendation of a hiring panel and that there is no proof that the hiring panel was motivated by Smith's union activities.

#### 1) Liability Requires Proof that Defendants Caused the Adverse Action.

"As to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." *Johnson v. State of Louisiana,* 369 F.3d 826, 831 (5th Cir.2004). Thus, Superintendent Fanning and the Board may only be liable for the adverse actions in this case only if they actually caused the adverse action. Further, Smith cannot base her claim against the Board on the conduct of Superintendent Fanning or any employee. *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir.1996). Rather, Smith must show that the Board itself was the wrongdoer. *Id.* This is because political subdivisions like the Board [FN] cannot be held liable under § 1983 for the actions of its employees on a *respondeat superior* theory. *Id.* (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Under *Monell,* the Board can incur § 1983 liability only if Martin can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right. *Id.* (citing *Monell,* 436 U.S. at 690-91).

#### a) Final Decisionmaker for Non-renewal of Smith's Contract.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 9

[2] As to the non-renewal of Smith's contract, the Board did not make that decision or play any role in that decision at all. Superintendent Fanning testified that he made the decision to place Watson in Smith's prior position as district-wide TRT. He did not indicate that the Board was involved in that decision. Likewise, KRS § 161.750 provides that if the superintendent does not renew a teacher's contract, he must present written notice to the teacher that the contract will not be renewed. KRS § 161.750(2). The statute does not indicate that the local board of education has any role in the decision.

*6 [3] Because Smith has presented no evidence that the Board was involved in any way in the decision not to renew her contract or that the Board should have been involved in that decision but failed to be, the Board may not be liable for the nonrenewal of Smith's contract. On the other hand, the Superintendent made the decision not to renew Smith's contract and is therefore subject to liability for that action.

b) Final Decisionmaker for Hiring School-level Positions.

Superintendent Fanning testified that, for school level positions, the principals of the schools making the hiring decision after consulting with faculty. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 96-97). The district's Human Resources Department forwards to the schools the applications of all applicants who meet certain basic standards. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 96-97).

KRS § 160.345 states that, "[f]rom a list of applicants submitted by the local superintendent, the principal at the participating school shall select personnel to fill vacancies, after consultation with the school council.... Personnel decisions made at the school level under the authority of this subsection shall be binding on the superintendent who completes the hiring process." KRS 160.345(2)(h).

In Yanero v. Davis, 65 S.W.3d 510 (Ky.2001), the Kentucky Supreme Court discussed the role of the Board in hiring school personnel and stated, "under the Kentucky Education Reform Act, the local board of education is no longer directly involved in hiring school personnel. The school principal, after consultation with the school council, hires school personnel from a list of applicants submitted by the superintendent." Id. at 527-28.

Thus, there is no evidence that the Board was responsible or even involved in any decisions to fill vacancies in individual schools. Nor is there any evidence that the Board should have been involved in those decisions but failed to be. Accordingly, the Board may not be liable for any decisions not to hire Smith for school vacancies.

The Superintendent has some role in hiring for school-level positions because he is responsible for forwarding applications to the schools for such positions. If the Superintendent was responsible for forwarding applications to principals for their consideration in hiring and refused to forward Smith's application, then he could be viewed as the final decision-maker on the decision not to hire Smith for school-level positions. Nevertheless, there is no evidence in the record that the Superintendent caused Smith's application not to be forwarded to schools. Smith does not even make any such allegation.

[4] Instead, Smith asserts that Superintendent Fanning may be liable for the failure to hire her for school level positions because he told principals not to hire her. There is no evidence in the record, however, that Superintendent Fanning told the principals not to hire Smith. In her deposition, Daniels asserted that two principals she refused to identify told her that Phil Paige told them not to hire Smith. As an initial matter, this testimony is inadmissible hearsay. Furthermore, even if this testimony were admissible, it is not evidence implicating Superintendent Fanning. Accordingly, there is no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 10

evidence that Superintendent Fanning was the final decisionmaker with regard to the decision not to hire Smith for school-level positions.

c) Final Decisionmaker for Hiring District-wide Positions.

*7 [5] There is evidence that, after her nonrenewal, Smith applied for two district-wide positions: a Curriculum Resource Teacher position (Rec. No.23, Smith Dep. at 114-16), and a Home/Hospital teaching position (Rec. No. 23, Smith Dep., Def.'s Ex. 5).

It appears that district-wide positions are filled according to Board Policy 03.11 AP.2. (Rec. No. 22, Ex. 7, Fanning Dep. at 94-97). Under that policy, applicants are required to submit an application to the Floyd County School District. (Rec. No. 22, Ex. 7, Fanning Dep., Pf.'s Ex. 3). Then applicants are screened by a Panel Hiring Screening Committee consisting of a Principal, member of the local teacher's union, member of the local bus driver's union and two members of the central office certified staff. (Rec. No. 22, Ex. 7, Fanning Dep., Pf.'s Ex. 3). Superintendent Fanning stated that Phil Paige and Paige's assistant decide who are on the committee. (Rec. No. 22, Mot. for Summ. J., Ex. 7, Fanning Dep. at 97-99).

Under Board Policy 03.11 AP.2, the committee is charged with recommending the highest ranking applicants to the Superintendent and State Manager. The best qualified applicants are then chosen for a interview to be conducted by the State Manager, Superintendent and/or his designee.

Policy 03.11 AP.2 further states, "[i]n keeping with state law, the Superintendent of Schools shall be responsible for all personnel actions including hiring... Upon being employed by the Superintendent of Schools, the new employee is notified by the Department of Human Resources for Floyd County Schools in writing."

Again, the Board does not play any role in the hiring of any district-wide positions. Accordingly, it is not subject to liability for the decision not to hire Smith for any district-wide positions. It appears, however, that the Superintendent is responsible for the actual appointment of district-wide positions. It is not clear whether he is able to hire any individual not recommended to him by the screening committee. Nor is it clear whether the screening committee did recommend Smith for certain positions. Thus, there is an issue of fact as to whether Superintendent Fanning was the final decisionmaker on the decision not to hire Smith for district-wide positions.

d) Final Decisionmaker for Hiring School-level TRT Positions.

[6] It is not clear as to how the school-level TRT positions were filled. Smith asserts in her response that, ultimately, "many of the new TRT positions were split between schools, thereby making them 'district-wide' positions." (Rec. No. 28, Response at 26). If the TRT positions were treated as district-wide positions, it would seem they should have been filled pursuant to Board Policy 03.11 AP.2.

As explained above, however, under that policy, a Panel Hiring Screening Committee should have forwarded names of the highest ranking applicants to the Superintendent for interviews. For certain of the TRT positions, however, the empaneled committee actually conducted the interviews and it appears that they then made a recommendation to Superintendent Fanning who did not conduct any interviews. It is not clear whether the interview panel recommended one name or several for each position.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                Page 11
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)
(Cite as: --- F.Supp.2d ----)

*8 In her response, Smith also states that eventually 11 people were hired for the TRT positions but that only five were actually interviewed by the committee. (Rec. No. 28, Response at 24). She states that the Defendants asserted in their answers to interrogatories that, because they did not receive enough qualified and acceptable applicants, they asked district principals to determine if existing members could fill the vacancies on a part-time basis. (Rec. No. 28, Response at 25). If the principals decided who would fill some of the vacancies, it appears that at least some of the TRT positions were treated as school-level positions.

In any case, there is no evidence that the Board took any part in the decision not to hire Smith for one of the TRT positions. Nor is there any evidence that the Board should have taken part in those decisions but failed to. Accordingly, the Board may not be liable for any decision not to hire Smith for a TRT position. Because the Board cannot be liable under § 1983 for any of the adverse actions claimed by Smith, the § 1983 claim against it must be dismissed. [FN2] Likewise, the § 1983 claim against the Superintendent in his official capacity must be dismissed because actions against parties in their official capacities are essentially actions against the entities for which the officers are agents. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Superintendent argues that he based his decision not to hire Smith for a TRT position on the "recommendation of the consensus of interview panel members." (Rec. No. 22, Mot. for Summ. J. at 13). His letter to Smith stated that the committee had not recommended her name for consideration. (Rec. No. 23, Smith Dep., Def.'s Ex. 4). This would indicate that Superintendent Fanning could not have hired Smith for the position because the interview panel did not recommend her.

Superintendent Smith made the final decision regarding whom to hire for at least some of the TRT positions. Nevertheless, it is not clear who made the final decision not to hire Smith for these positions. It could be that the interview panel made the final decision when it failed to recommend Smith to the Superintendent. On the other hand, if the Superintendent was not bound by the interview panel's recommendation, then he made the final decision not to hire Smith when he placed someone else in the position. Thus, there is an issue of fact as to whether Superintendent Fanning made the final decision not to hire Smith for any of the TRT positions.

2) Evidence of Retaliation.

[7] Accordingly, the Superintendent was the final decisionmaker with regard to the nonrenewal of Smith's district-wide TRT position. In addition, there is an issue of fact as to whether he was the final decisionmaker with regard to the failure to hire her for one of the school-level TRT positions and for other district-wide positions. The next issue is whether Smith has presented any evidence that her union activities caused Superintendent Fanning to make these decisions. The causal element of the retaliation claim is satisfied where "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Brown v. Crowley,* 312 F.3d 782, 787 (6th Cir.2002).

*9 The Court recognizes that "[i]t is the rare situation when direct evidence of discrimination is readily available" and that "victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof." *Kline v. Tennessee Valley Authority,* 128 F.2d 337, 348 (6th Cir.1997). Nevertheless, to avoid summary judgment, Smith must present some evidence that her constitutionally protected activities were a "substantial" or "motivating" factor in the Defendants' employment decision. Smith cannot rely on conclusory allegations. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

Smith has presented sufficient evidence to at least raise an issue of fact as to whether, when he failed to renew her contract, Superintendent Fanning was retaliating against Smith for her union activities. There is no dispute that Smith

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 12

was qualified for the district-wide TRT position. Daniels' testimony makes clear that she had performed well in that job. Superintendent Fanning has never asserted that the reason for the nonrenewal was Smith's performance.

Further, Superintendent Fanning asserted in the letter to Smith that the reason for the nonrenewal was that he had to place one of the returning certified personnel in the position. Nevertheless, he conceded in his deposition testimony that he could have placed Stanton Watson in any of various vacant positions in the school district.

As to the failure to hire Smith for one of the school-level TRT positions, the job description for these jobs was virtually identical to Smith's district-wide TRT position. After Smith's interview for one of the school-level TRT positions, interview panel member Stanton Watson sent an e-mail to KDE representatives stating that the panel had recommended only three applicants for the positions and requesting to lower certain qualifications for the positions. (Rec. No. 28, Response, Ex. 4). Ultimately, Danny O'Neal was hired as one of the full-time TRT's and he had lower cumulative scores on the interview panel's Interview Evaluation Sheets than Smith. (Rec. No. 28, Response, Ex. 3, 5).

Smith's supervisor Daniels also testified that, in her opinion, Smith lost her position because of her FCEA activities. Daniels stated her opinion was based on "the controversy and I know how outspoken she is" and because "I think that based on her job description and job performance, that Dani did what she was supposed to be reemployed. I do feel like that some of the controversy and confrontation around her work with the FCEA kept her from being rehired." In addition, Daniels testified that in her opinion Smith was "blackballed" from employment in the Floyd County Schools. (Rec. No. 22, Mot. for Summ. J., Ex. 1, Daniels Dep. at 85).

Finally, the Court notes the temporal proximity between Smith's election as President of the FCEA (April 23, 2003) and her nonrenewal letter (April 29, 2003). The fact "that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). The Court recognizes that Smith's union activities began before her election as president. The Court also recognizes that the Superintendent had to make the decision regarding nonrenewal by April 30. KRS § 161.750(2). Nevertheless, the close proximity between Smith's election as union president and her nonrenewal is relevant to the issue of whether Smith's union activities caused the Superintendent to fail to renew her contract.

*10 Smith has presented sufficient evidence to at least raise an issue of fact as to whether the Superintendent failed to renew her contract as district-wide TRT and failed to hire her for other positions because of her union activities.

3) Qualified Immunity for Superintendent.

[8] Qualified immunity is an affirmative defense that shields government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[I]t has long been clearly established that one may not, acting under color of state law, separate another from employment upon the basis of one's exercise of the freedoms of speech and/or association." *Creager v. Board of Education of Whitley County, Ky.*, 914 F.Supp. 1457, 1460 (E.D.Ky. 1996)(citing *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "In particular, speech and association on matters of union representation and organization are protected by the first amendment." *Id.* (citing *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). Accordingly, the § 1983 action against Superintendent Fanning cannot be dismissed on qualified immunity grounds.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 13

B. State Law Claims.

Again, Smith asserts state law claims against the Defendants under Sections 1, 2 and 8 of the Kentucky Constitution; **KRS § 161.164**, a Kentucky statute which specifically prohibits teachers and school board employees from being discriminated against because of their political opinions; and KRS 161.750(2), which specifies certain procedural requirements for adverse actions. In the pleadings on the Motion for Summary Judgment, neither party addresses the merits or the appropriate remedy for any of these state law claims. In their Motion for Summary Judgment, Defendants argue only that the state law claims should be dismissed pursuant to certain immunity defenses. Accordingly, in this Opinion and Order, the Court only addresses whether the Board and the Superintendent in his official and individual capacities are entitled to immunity from damages for the state law claims.

1) Governmental Immunity for Board and Superintendent in Official Capacity.

[9] [10] "[S]tate law governs the applicability of immunity to state law claims." *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir.2003)(quoting *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998)). Under *Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001), the Board is entitled to governmental immunity against damages for its governmental, as opposed to proprietary, functions. *Id.* at 519. Proprietary functions include "corporate acts" or acts occurring when a government agency "is engaged in a business of a sort theretofore engaged in by private persons or corporations for profit." *Id.* at 520. Governmental functions are those that are integral to government. *Id.* For her state law claims, Smith alleges that the Board failed to renew her contract or to hire her. Clearly hiring school district employees is an act essential to the function of the school district. Accordingly, the Board is entitled to governmental immunity from damages for those acts.

*11 Furthermore, "when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled." *Id.* at 522. Thus, since the Board has governmental immunity from damages against state law claims, these claims against Superintendent Fanning in his official capacity should also be dismissed. The doctrine of governmental immunity thus shields the Superintendent, in his official capacity, and the Board from any claim for damages.

In her Complaint, however, Smith seeks both damages and reinstatement to a position "commensurate" with the district-level TRT position. In her response to the Defendant's Motion for Summary Judgment, however, Smith makes no mention that she seeks injunctive relief. Thus, it is unclear whether she continues to seek reinstatement. Any such claim against the Superintendent in his official capacity should be dismissed because, as discussed above, such a claim is, in effect, a claim against the Board. Thus, all claims against the Superintendent in his official capacity will be dismissed in their entirety.

If Smith does not seek injunctive relief, then all claims against the Board should also be dismissed in their entirety as any claim for damages against it is barred by the doctrine of governmental immunity. Thus, Smith is directed to file a notice within 10 days of the entry date of this Order stating whether she seeks reinstatement.

2) Immunity for Superintendent in Individual Capacity.

[11] As to the state law claims against the Superintendent in his individual capacity, under Kentucky law, "public officers and employees enjoy only qualified immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* at 522. For the reasons discussed above regarding the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 14
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)
(Cite as: --- F.Supp.2d ----)

qualified immunity defense to Smith's § 1983 claim, Superintendent Fanning, in his individual capacity, is not entitled to a qualified immunity defense to his state law claims. In addition, to the extent that Smith seeks injunctive relief, in the form of reinstatement, from the Superintendent in his individual capacity, any such claim must be dismissed because the Superintendent, in his individual capacity, is powerless to reinstate Smith.

For all the above reasons, the Court hereby ORDERS as follows:
1) the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part;
2) the motion is GRANTED with regard to the § 1983 claim against the Floyd County Board of Education and that claim is hereby DISMISSED;
3) the motion is GRANTED with regard to all claims against Superintendent Fanning in his official capacity and those claims are hereby DISMISSED;
4) the motion is GRANTED with respect to any claim for damages under state law against the Board;
5) the motion is GRANTED with respect to any claim for injunctive relief against the Superintendent in his individual capacity;
*12 6) the motion is DENIED with respect to the § 1983 claim for damages against Superintendent Fanning in his individual capacity; and with respect to any claim for damages under state law against the Superintendent in his individual capacity;
7) the motion is DENIED with respect to any claim for injunctive relief under state law against the Board; and
8) Smith is hereby ORDERED to file a notice within 10 days of the entry date of this Order stating whether she seeks reinstatement to a position with the Floyd County School District commensurate with the district-wide TRT position.

> FN1. "In accordance with well-settled precedent within the Eastern District of Kentucky," local school boards are local political subdivisions and not arms of the state. *M.W. ex rel. T.W. v. Madison County Board of Education,* 262 F.Supp.2d 737, 743 (E.D.Ky.2003)(citing cases). Thus, local school boards are not immune from damage suits under the Eleventh Amendment. The status of a governmental entity for Eleventh Amendment purposes is a question of federal law. *Id.* at 743 n. 2.

> FN2. Thus, this case differs from *Hickman v. Valley Local School District Board of Education,* 619 F.2d 606 (6th Cir.1980) where board action was required in order to impose the adverse action. In that case, there was no evidence that the board was motivated by retaliatory intent and the issue was whether the retaliatory intent of administrators could be imputed to the board. In the case currently before this Court, no board action was required to impose the adverse action and there was, in fact, no board action.

E.D.Ky.,2005.
Smith v. Floyd County Bd. of Educ.
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 1923863 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief (Jun. 28, 2005)
• 2005 WL 1923862 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Motion for Summary Judgment (Jun. 17, 2005)
• 2005 WL 1362275 (Trial Motion, Memorandum and Affidavit) Memorandum Brief in Support of Motion for Summary Judgement. (May. 05, 2005)
• 2003 WL 24087855 (Trial Pleading) Answer (Nov. 17, 2003)
• 7:03cv00304 (Docket) (Oct. 06, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 3116135 (E.D.Ky.)  
(Cite as: --- F.Supp.2d ----)

Page 15

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.