*LAW OFFICE OF*
**VICENTE T. SALAS**
ATTORNEY AT LAW
2nd Floor, UIU Building
P.O. BOX 501309
SAIPAN, MP 96950-1309
Tel:   (670) 234-37455/234-7427
Fax:   (670) 234-7256

F I L E D
Clerk
District Court

DEC 2 9 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

*Attorney for:* Defendants
  Commonwealth Development Authority
  and Maria Lourdes S. Ada

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG. KUMAGAI,<br><br>Plaintiff,<br><br>vs.<br><br>PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; FERMIN M. ATALIG, personally and in his official capacity as the Secretary of Finance; COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS; MARIA LOURDES SEMAN ADA, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority; COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM; and JOHN DOES ONE through TEN,<br><br>Defendants. | Civil Action No. 05-00037<br><br><br><br>**DEFENDANTS CDA AND ADA'S MEMORANDUM OF POINTS AND AUTHORITIES / EXHIBIT 1 / CERTIFICATE OF SERVICE**<br><br><br>Date:   Feb. 09  , 2006<br>Time:   9:00     a.m.<br>Judge: Hon. Alex R. Munson |

### DEFENDANTS CDA AND ADA'S MOTIONS TO DISMISS COUNTS I, II, III, VII, VIII, X AND XI

**I.   INTRODUCTION**

Plaintiff, Rosario DLG. Kumagai, filed her complaint against the Commonwealth Development Authority (hereinafter "CDA") and Maria Lourdes S. Ada, (hereinafter "Ada"), in her personal and official capacity as the Executive Director of CDA, alleging seven different causes of action. In Count I, plaintiff alleged that CDA and Ada, as well as other

**ORIGINAL**   42

named and unnamed defendants, violated her civil rights under 42 U.S.C. § 1983. In Count II, plaintiff alleged a violation of 42 U.S.C. 1985(3) in that CDA and Ada, as well as other named and unnamed defendants, conspired to deprive her of her rights or privileges, i.e., the rights to due process and the equal protection of the laws. Count III alleged that CDA and Ada, as well as other named and unnamed defendants, conspired to deprive plaintiff of her rights under the constitution and laws of the CNMI and the United States.

CDA and Ada are not named as defendants in Counts IV, V and VI. The complaint named them as defendants again in Count VII (Intentional Interference with Contractual Rights), Count VIII (Intentional Interference with Economic Relations), Count X (Intentional Infliction of Emotional Distress) and Count XI (Negligent Infliction of Emotional Distress).

In all the foregoing causes of action, the plaintiff has failed to state a claim for which relief can be granted and each of them must be summarily dismissed under applicable law and rules.

## II.  APPLICABLE STANDARDS FOR MOTIONS TO DISMISS

The standards for motions to dismiss as prescribed by this Court are as follows:

Should the Court decide pursuant to Rule 12(b), Fed. R. Civ. P., that this motion should be treated as a motion for summary judgment, the standards for summary judgment should apply. A party is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c) Fed. R. Civ. P. The movant bears the initial burden of "identifying... those portions of the material on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

III.  ARGUMENT

    A.    **As to Count I, Neither CDA Nor Ada (In Her Official Capacity) Are Suable Persons under 42 U.S.C. § 1983**

Count I of the complaint seeks monetary relief against CDA and Ada pursuant to 42 U.S.C. § 1983. The U.S. Supreme Court has held that territories, like states, are immune from suits under § 1983. *Ngiraingas v. Sanchez,* 495 U.S. 182 (1990). The Ninth Circuit has held that it is appropriate to treat the CNMI as if it were a state. *CNMI v. United States,* 279 F. 3d 1070 (9th Cir. 2002). This court has previously held that the Northern Marianas College (NMC) is an "arm of the state" for liability purposes. *Oden v. Northern Marianas College,* Civil Action No. 98-0020, Order Granting Summary Judgment (Oct. 1999). Similarly, CDA, an autonomous agency of the CNMI Government, should be deemed an "arm of the state" for liability purposes.

Ada is being sued in her individual and official capacity. To the extent that she is being sued in her official capacity for money damages she should enjoy the same immunity as CDA. *Ngiraingas, supra* at 192.

    B.    **Plaintiff's Due Process Rights Have Not Been Violated**

In order to raise a valid due process argument, plaintiff must leap two hurdles: 1) establish that a property interest existed; 2) demonstrate that due process was violated in the deprivation of that property interest. *Atochem North America, Inc., et al. v. Uniteds States EPA,* 759 F. Supp. 861 (1992).

        1.    **Plaintiff Has No Cognizable Property Interest In The Bond Project Fund Held In Trust By Bank of Guam**

Plaintiff has failed to adequately demonstrate that she has a cognizable property interest in the Bond Project Fund held in trust by the Bank of Guam (hereinafter "Bank"), the Trustee under the Indenture of Trust Agreement (hereinafter "Indenture") between CDA and the bondholders. Attached hereto and made a part hereof by reference as

3

1  Exhibit "1" is a true and correct copy of such Indenture. Plaintiff's allegations state that she
2  has been deprived of her land compensation money, an entitlement derived from Article II of
3  the Land Compensation Agreement with MPLA (Exhibit D to the complaint), because CDA
4  and Ada acted in a manner which prevented the release of money under Requisition FY 05-
5  011 (Exhibit N to the complaint). However, she does not state how she claims a proprietary
6  interest in the Project Fund held in trust by the Bank.
7             It is not specifically stated anywhere in the Land Compensation
8  Agreement that plaintiff's land compensation was to be paid out of the MPLA Account of the
9  Project Funds held in trust by the Bank. More importantly, the Indenture does not give the
10 plaintiff (nor MPLA) any proprietary interest in the funds held in trust by the Bank.[1] Before
11 any payment can be paid out of the Project Fund, certain procedures mandated by the relevant
12 Indenture provisions must be followed. The requisition procedure, found in Section 3.02 of
13 the Indenture, is reprinted in relevant part below:

14       SECTION 3.02       Project Fund.

15       Moneys set aside in the MPLA Account shall be applied to the payment of costs of the portion of the Project consisting of acquisition of various parcels of real property through funding the retirement of land compensation claims against the Commonwealth, as hereinafter provided. Before any payment is made from the MPLA Account by the Trustee, the Authority shall cause to be filed with the Trustee a written requisition of the MPLA, with the concurrence of the Secretary of Finance of the Commonwealth, in the form attached hereto as <u>Appendix B-1</u>, showing with respect to each payment to be made (A) the item number of the payment; (B) the name of the person or firm to whom payment is due; (C) the amount to be paid; and (D) the purpose for which the obligation to be paid was incurred.

22       Unfortunately, the agreement between plaintiff and MPLA (Exhibit D) does
23 not contain any provision that mentions the foregoing requisition procedure. Both under that
24 agreement and the Indenture, CDA had no duty or obligation to either plaintiff or MPLA to

---

[1] Section (1)(c) of NMI Public Law No. 14-29, signed into law on September 21, 2004, amended Section 3(d) of Public Law No. 13-39 and mandated that all of the bond proceeds not be held in a separate account of MPLA, but rather, that it be held in trust by a CDA-appointed trustee that is charged with securing the bond issue funds and only releasing such funds for the purpose of land compensation claims and reasonable administrative costs made by request of MPLA.

4

file a written requisition with the Bank in order for plaintiff to be paid its land compensation. The Indenture is a contract between CDA, on behalf of the CNMI Government, and the bond holders. See Section 1.02 of Exhibit 1 at pages 10 and 11. Plaintiff does not and cannot have a proprietary interest in the funds held in trust by the Bank until such funds are released by the Bank. Section 10.02 of Exhibit 1 at page 35 states that "[n]othing in this Indenture, expressed or implied, is intended to give to any person other than the Commonwealth, the Authority [CDA], the Trustee, the Paying Agent and the Owners any right, remedy or claim under or by reason of this Indenture." Further under the terms of the Indenture, all amounts held in trust by the Bank, including the Land Compensation Fund, are held in the Bond Payment Fund as additional security for the purpose of paying the principal of and interest on the Bonds. See Sections 4.02 and 4.04 of Exhibit 1 at page 19. In other words, under the specific terms and provisions of the Indenture, payments to the bond holders take precedence over all other obligations with the exception of the Rebate Fund established under Section 5.11(b). All money in the Rebate Fund are held in trust for payment solely to the United States Government pursuant to Section 148 of the Internal Revenue Code of 1986, as amended.

Additionally, under Sections 5.05, 5.07 and 5.09 of the Indenture, at page 24, CDA pledged to preserve and protect the security of the bonds and the rights of the owners. More specifically, CDA is obligated to warrant and defend the rights of the bond holders "..against all claims and demands of all persons." Clearly, under the foregoing provisions of the Indenture, the plaintiff has no right, remedy, or claim against any money held by the Bank unless and until CDA files the written requisition of MPLA and a check is issued from the MPLA Account naming plaintiff as payee. Plaintiff had no more of a proprietary interest in the trust funds deposited in the Bank as the plaintiff in *Town of Castle Rock v. Gonzales*, 125 S.Ct. 2796, 162 L.Ed.2d 658, 2005 U.S. LEXIS 5214 (June, 2005) did in the police enforcement of a restraining order against the father of her children. The plaintiff herein may argue that its claimed interest does have a monetary value, unlike the

plaintiff in *Gonzales, supra*, and is of the type of property sought to be protected in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972). However, the nature and intent of the Indenture is so plainly restrictive that the plaintiff, herein, cannot point to any language, general or specific, that gives her a legitimate claim of interest in the funds held in trust by the Bank.

### 2.   Plaintiff Has Not Demonstrated That There Has Been A Deprivation of A Property Interest

Even if plaintiff can establish that she has a cognizable property interest in the Bond Project Fund, she has failed to demonstrate that defendants' conduct has deprived her of a constitutionally protected interest in property. Under Article II of the Land Compensation Agreement (Exhibit D to the complaint) the amount to be paid is clearly stated, but nothing else. In fact, plaintiff can point to no written document that unequivocally states when she is to receive payment for her land compensation. Consequently, the complaint is also devoid of any allegation as to when MPLA was supposed to pay plaintiff.[2] Plaintiff's own array of supporting exhibits attached to her complaint demonstrate that MPLA knew that it had no control over the disbursement of funds from the Bank. It is noteworthy, for example, that Requisition No. FY 05-011 (dated May 5, 2005) was first forwarded to the Secretary of Finance under cover of letter dated May 6, 2005. See Exhibit K to the complaint. Three days later, on May 9th, the Acting Attorney General, Mr. Clyde Lemons, wrote to the Secretary advising him that certain draw downs were being reviewed and "..we are contemplating taking action against MPLA with respect to such draw downs. As such, I ask that you do not process any land compensation payments until further

---

[2]   Plaintiff executed a Warranty Deed in favor of MPLA for the land taken by the government on May 2, 2005 and such deed was filed on May 5, 2005 at the Commonwealth Recorder. See Exhibit E to the Complaint. The recited consideration in the deed for the amount of plaintiff's land compensation should have been paid by MPLA on or about the same time. Presumably, MPLA's failure to pay such consideration gave rise to plaintiff's claim for unlawful deprivation of property. Note, however, that the date of the deed's execution preceded the August 8th date when Requisition FY 05-011 was forwarded to CDA by MPLA.

6

notice..."[3] See Exhibit L to the complaint. On July 21, 2005, the MPLA Commissioner, Mr. Edward Leon Guerrero, wrote to the Secretary of Finance complaining that the Department of Finance had **routinely withheld** concurrence of land compensation draw down and disbursement requests. (Emphases added.) See Exhibit M to the complaint. His letter listed the requisitions pending before the Secretary of Finance in chronological order beginning with FY 05-010 dated April 29, 2005. In addition, the Commissioner's letter demanded an explanation as to why the Department had **continually failed** to meets its obligations under the Agreement on Land Compensation Drawdown and Disbursement Procedures dated January 20, 2004. (Emphases added.) See Exhibit C to the complaint. In such agreement, between MPLA, the Department of Finance and the Office of the Attorney General, the Department of Finance agreed to review and concur with draw down and disbursement requests within three (3) days of its receipt.[4]

CDA clearly has the final approval under the terms of the Indenture to instruct the Bank to release funds from the MPLA Account of the Project Fund. See, also, FN#3, herein. In the instant case, such approval by CDA was initially issued and then retracted because the Attorney General's office had informed CDA that serious legal issues may require the filing of a lawsuit by August 15, 2005. See Exhibit P to the complaint. Such a lawsuit was filed with the concurrence of CDA (see Exhibit S to the complaint) to determine the legality of the land compensation payment to plaintiff. A decision by the CNMI Superior Court in *CNMI, et al. v. MPLA, et al.,* Civil Action No. 05-332E, ultimately cleared the way for the payment to plaintiff. See Exhibit U to the complaint. Clearly, the

---

[3] The CNMI Government, as the issuer of the $40,000,000 General Obligation Bonds, Series 2003A, pledged the full faith and credit of the Commonwealth for the repayment of the bonds pursuant to NMI Public Law 11-3 (codified in 4 CMC §§ 10451, *et seq.*), the GO Bond Law, and together with CDA are mandated to preserve and protect the security of the bonds and the rights of the owners. See Sections 5.05 and 5.09 of the Indenture.

[4] Note, however, that such concurrence by the Secretary of Finance would still not release the funds from the Bond Project Fund. The signed requisition would be returned to MPLA and then forwarded to CDA for filing with the Bank.

Plaintiff cannot point to any authority that supports her claim that she had been unlawfully deprived of her property. Plaintiff's land compensation payment was simply delayed as it made its way through the normal processing of such claims.[5]

### C.  Suit Against Ada for Individual Liability Is Barred by Qualified Immunity

Ada is entitled to qualified immunity protection. Qualified immunity protects "government officials performing discretionary functions ...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S.800, 818 (1982). The qualified immunity doctrine allows a public official to make decisions "with independence and without fear of consequences." *Id.* at 819.

It was precisely under such climate of warranties and obligations mandated by the Indenture (See B, above) that Ada, when advised by the Office of the CNMI Attorney General of the questionable nature of the requisition, acted to withhold Requisition No. FY 05-011 and instructed the Bank of Guam not to release the land compensation payment until the lawsuit was resolved. Based on the unequivocal language of the Indenture, it cannot be said that Ada was violating any clearly established statutory or constitutional right of the plaintiff.

### D.  Count II Fails to State a Claim Upon Which Relief Can Be Granted And Must Be Dismissed

A motion to dismiss for failure to state a claim upon which relief can be granted will succeed only if from the complaint it appears beyond doubt that plaintiff can prove no set of facts in support of their claim that would entitle them to relief. *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir. 1999). To state a claim under 42 U.S.C. 1985(3), one

---

[5] In paragraph 44a of the complaint, plaintiff admits that the defendants' actions, as they pertained to Requisition FY 05-01, "..resulted in the delay of releasing the funds necessary to compensate plaintiff..."

8

must demonstrate "..some racial or perhaps otherwise class-based invidiously discriminatory animus behind conspirator's action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1970). In the years since *Griffin,* courts have struggled to determine whether and when § 1985(3) applies in contexts not involving race. *Sever v. Alaska Pulp* Corporation, 978 F.2d 1529, 1536 (9th Cir. 1992). To obtain protection under § 1985 (3), the Ninth Circuit requires "either that the courts have designated the class in question as a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection. *Id.* (quoting *Gerristen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518-19 (9th Cir. 1987). Plaintiff failed to allege that she is a member of any suspect class. Therefore, the second cause of action must be dismissed for failure to state a claim upon which relief can be granted. *See Wilson v. Moss,* 537 F. Supp. 281 (S.D. Ohio 1982) (Conspiracy count alleged under 42 U.S.C. 1985 (3) dismissed where complaint devoid of allegations that Plaintiff is a member of any particular class or group.)

**E.  Count III Fails to State a Cause of Action Upon Which Relief Can Be Granted And Must Be Dismissed**

Count III is a cause of action based on civil conspiracy. There is no written law in the Commonwealth recognizing the tort of civil conspiracy. *I.G.I. General Contractor & Dev., Inc. v. PSS, et al.* 5 N. Mar. Is. 250, 252 (1999).

In addition, even if the CNMI recognized such a legal theory plaintiff has failed to allege any facts in support of her claim of conspiracy between any two of the named defendants. The facts before this court are that CDA withheld filing Requisition No. FY 05-011 with the Bank of Guam on August 10, 2005 because the CNMI Office of the Attorney General questioned the legality of such requisition and informed CDA (on August 10, 2005) that they needed until August 15, 2005 to investigate whether or not to bring a lawsuit. See Exhibits P and Q to the complaint. CDA, acting through Ada, withheld the requisition and continued to do so until the Superior Court ruled on the lawsuit. See Exhibit U to the complaint. These facts do not support a conspiracy theory. Moreover, such acts by CDA

were not in furtherance of a conspiracy in light of CDA's and the CNMI's greater obligation to protect the bond funds pursuant to the Indenture. "A party may not cry 'conspiracy' and throw himself on the jury's mercy...There must be a genuine issue of material fact..." *Mershon v. Beasley*, 994 F.2d 449, 452 citing *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 at 436.

### F. Counts VII and VIII Fail to State a Claim Upon Which Relief Can Be Granted

As discussed in B, above, plaintiff has no legitimate claim of interest in the Bond Project Fund administered by CDA and held in trust by the Bank of Guam pursuant to the Indenture. In Counts VII and VIII, plaintiff alleged a harm resulting from defendants' intentional interference with contractual rights and economic relations. Because plaintiff has failed to show a prima facie case of her proprietary interest being unlawfully deprived as a result of defendants' actions, these counts must also fail for the reasons proferred above.

Further, the plaintiff has failed to allege that CDA and Ada acted without justification in withholding the release of the funds held in trust by the Bank. See 4 Restatement of Torts 2d § 766, comment s, (1979).

And finally, CDA and Ada are immune from suit for "interference with contract rights" under 7 CMC § 2204(b).

Accordingly, Counts VII and VIII must be dismissed.

### G. Counts X and XI Fail to State a Claim Upon Which Relief Can Be Granted

Again, CDA and Ada, in her official capacity, are protected by sovereign immunity from these counts. See 7 CMC § 2204 (b). Because the plaintiff's emotional distress claims allegedly arose from the defendants' actions in withholding the release of the funds held in trust by the Bank, these two causes of action are premised on the alleged interference by defendants in plaintiff's contract rights. As previously shown, defendants' actions did not violate plaintiff's civil, statutory or contractual rights.

Moreover, defendants have previously shown, with ample authority, that their actions in withholding the release of the funds held in trust by the Bank were reasonable under the terms and conditions set forth under the Indenture. Liability for emotional distress cannot be found where the conduct of the actors is not extreme and outrageous in character. 1 Restatement of Torts 2d § 46, comment d, (1979). Plaintiff has simply failed to show how CDA and Ada have acted "..beyond any and all possible bounds of decency..." which were "...utterly intolerable in a civilized community.

## IV. CONCLUSION

Wherefore, based on the foregoing reasons, the counts against CDA and Ada should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Dated this 29th day of December, 2005.

Respectfully Submitted By:

**LAW OFFICES OF VICENTE T. SALAS**

VICENTE T. SALAS, CNMI Bar #F0126
Attorney for the Defendants Commonwealth Development Authority and Maria Lourdes S. Ada, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority