ORIGINAL

FILED
Clerk
District Court

JAN - 3 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Benjamin L. DeMoux
Assistant Attorney General
Office of the Attorney General-Civil Division
2nd Floor, Juan A. Sablan Memorial Bldg.
Caller Box 10007
Saipan, MP 96950
Telephone: 664-2341
Fax: 664-2349
bendemoux@gmail.com
Attorney for Fermin M. Atalig personally
and in his official capacity.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI | CIVIL ACTION NO. 05-0037 |
| Plaintiff, | |
| v. | |
| PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; FERMIN M. ATALIG, personally and in his official capacity as Secretary of Finance; COMMONWEALTH OF THE NOTHERN MARIANA ISLANDS; MARIA LOUDES SEMAN ADA, personally and in her official capacity as Executive Director for the Commonwealth Development Authority, COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM; and JOHN DOES ONE thru TEN. | MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT OF FERMIN M. ATALIG'S MOTION TO DISMISS<br><br>Date: FEB - 9 2006<br>Time: 9:00 AM<br>Judge: Hon. Alex R. Munson |
| Defendants. | |

NOW COMES defendant Fermin H. Atalig, personally and in his official capacity as the Secretary of Finance for the Commonwealth of the Northern Mariana Islands and moves this Court to dismiss all portions of plaintiff's complaint that are directed at him in this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim

upon which relief may be granted. The following memorandum of points and authorities is submitted in support of the motion.

## FACTUAL ALLEGATIONS

Plaintiff's complaint in this case contains factual allegations with regard to certain wetland property allegedly owned by plaintiff. This property was allegedly taken by the Commonwealth of the Northern Mariana Islands (hereinafter "Commonwealth") to protect the endangered Marianas Moorhen "Pulattat" and plaintiff alleges she was never compensated for this "taking." Complaint at ¶¶ 14-15. The next portion of the plaintiff's complaint sets out in detail the passage and subsequent amendment of the "Land Compensation Act of 2002" and the procedures later established for disbursement of compensation under the Act. *Id* at ¶¶ 16-21. The plaintiff then details her dealings with the Marianas Public Lands Authority ("MPLA"), and later with the Department of Public Health and the Attorney General's Office relative to compensation for her allegedly taken wetlands, with an aside about her poor health. *Id* at ¶¶ 22-27. None of these factual allegations mention Secretary Atalig in any way.[1]

Secretary of Commerce Atalig, (hereinafter "Secretary Atalig" or "the Secretary"), finally appears in plaintiff's complaint in paragraph 28. In this paragraph, it is alleged that Secretary Atalig, on May 6, 2005, received from MPLA Requisition No. FY 05-11. The requisition, attached to plaintiff's complaint as Exhibit K, consists of a two-sentence letter from Edward M. Deleon Guerrero, Commissioner of MPLA, to Secretary Atalig notifying him that certain documents are attached. Complaint, Exhibit K. These documents consist of a copy of a letter directed to the Bank of Guam requesting it to disburse money and a form stating that $159,408.19 is to be disbursed, with roughly half going to Ms. Kumagai and half to the CNMI Treasury. *Id*. In paragraph 29, Secretary Atalig is described as having been "instructed" not to

---

[1] The factual allegations in the complaint are set forth in detail in the "Memorandum of Points and Authorities in Support of Commonwealth of the Northern Mariana Islands and Pamela Brown's Motion to Dismiss," which was filed with the Court on December 29, 2005. The movant hereby incorporate by reference Section II "Facts Alleged in the Complaint" of Attorney General Brown's memorandum.

process Requisition FY 05-11 via a letter sent by Clyde Lemons Jr., who is described in the letter as "Acting Attorney General." Plaintiff alleges that this letter was sent on the instruction of Attorney General Brown. She then alleges that Secretary Atalig, among others, refused to allow Requisition FY 05-11 to be released to MPLA for further processing for a period commencing May 6, 2005 and continuing till August 15, 2005, when an action naming Ms. Kumagai as a defendant was filed by the Attorney General in the Commonwealth Superior Court. *CNMI ex rel Pamela Brown, Attorney General, v. MPLA, Victoria S. Nicholas and Rosario DLG Kumagai,* Civ. Act. 05-0332.

In the following paragraph, paragraph 31, plaintiff then baldly contradicts the allegation of paragraph 30 that Secretary Atalig refused to release the requisition "up to and including…August 15, 2005." *Id* at ¶ 30. Specifically, plaintiff now alleges that Secretary Atalig did release the requisition a full week earlier, on August 8, 2005. At this point, the Secretary drops out of the plaintiff's narrative again as the plaintiff details acts allegedly committed by other defendants, relating to and culminating with the civil action mentioned above. *Id* at ¶¶ 32-38. (Plaintiff does not allege that the Secretary was in any involved in the decision to file that lawsuit). Finally, Secretary Atalig appears again at the end of the factual allegations section, with the allegation in paragraphs 39 and 40 that the Secretary and the other defendants knew that others in a similar situation to that of Ms. Kumagai had received compensation. Despite, having appeared in a grand total of 6 of the plaintiff's 29 paragraphs in the "Factual Allegations" section of her Complaint and in spite of having only a tangential role in much of the conduct described therein, the Secretary now finds himself a target of 7 of the plaintiff's 11 "counts." It is to these baseless causes of action that movant now turns.

## LEGAL ARGUMENTS

FRCP 12(b)(6) authorizes dismissal for the failure to state a claim upon which relief can be granted. On a motion to dismiss, the complaint is construed in favor of the plaintiff, but the

court should not assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the…laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983).

I.  Plaintiff's First Cause of Action, Violation of 42 U.S.C. § 1983, Must be Dismissed Because Secretary Atalig is Entitled to Qualified Immunity

    A.  *Section 1983 Claims are Barred against CNMI Officers in their Official Capacity*

Plaintiff alleges a claim against Secretary Atalig in his official capacity as Secretary of Finance. This is entirely improper, as "Neither the [Commonwealth] nor its officers acting in their official capacity can be sued under § 1983." *De Nieva v. Reyes*, 966 F. 2d 480, 484 (9th Cir. 1992). Therefore, plaintiff has failed to state a claim under § 1983 for which relief may be granted against Secretary Atalig in his official capacity and this claim must be dismissed.

    B.  *Secretary Atalig is Entitled to Qualified Immunity in his Personal Capacity*

        **1.  Qualified Immunity is Presumed and Broad in Scope**

The U.S. Supreme Court created the doctrine of qualified immunity to reduce the burden of civil rights litigation on public officials and the federal court system. *See, Harlow v. Fitzgerald*, 457 U.S. 800, 816-817, 102 S. Ct. 2727, 2737-2738 (1982). It was designed to weed out frivolous lawsuit, such as this one, at an early stage. *See id*. Under *Harlow*, a government official like Secretary Atalig is shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*, 457 U.S. at 818, 102 S. Ct. at 2738. Furthermore, the state actor need not be perfect to be protected. "Qualified immunity gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 537 (1991). In fact, "Actions and

decisions by officials that are merely inept, erroneous, ineffective, or negligent…do not divest the official of qualified immunity." *Doe v. Dallas Independent School District*, 153 F 3d. 211, 219 (5th Cir. 1998). Given the broad reach of the grant of immunity, what should this Court make of the actions of Secretary Atalig, who broke no law, but instead wisely complied with the request of the Acting Attorney General not to release a requisition of dubious legality until the underlying facts had been investigated and the legal basis tested? Simply put, the Court should enforce the immunity the United States Supreme Court has given the Secretary and dismiss the cause of action.

### 2. Plaintiff Must Show Violation of a Clearly Established Right

In determining whether a plaintiff may overcome qualified immunity and pursue a § 1983 cause of action against a government official in his personal capacity, the initial, threshold inquiry is two-fold: whether the facts show that a constitutional right was violated and, if so, whether that right was clearly established. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). The first part of this inquiry is important because a finding in favor of the defendant on it cuts-off further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If plaintiff has not alleged the violation of a constitutional right, her § 1983 claim cannot stand.

Unfortunately, plaintiff's first cause of action is heavy on legal generalizations and very light on specifics. Plaintiff alleges that Secretary Atalig and others violated a laundry list of her rights by refusing to release Requisition FY 05-11 even though others similarly situated had received or later did receive compensation from MPLA. Complaint at ¶¶ 42-44.[2] Plaintiff describes this as a violation of "due process" and equal protection," but the complaint is not clear as to how Secretary Atalig's conduct breached the plaintiff's right to either one. As was

---

[2] Paragraph 44(c) also alleges that defendants filed a "frivolous lawsuit" against her. Leaving aside whether the lawsuit was truly frivolous, (it clearly was not), plaintiff does not allege anywhere in her complaint that Secretary Atalig had any role in deciding to file this litigation and he is not a party to it. Therefore, this allegation simply does not apply to the Secretary.

noted above, plaintiff's entire allegation against Secretary Atalig is that he agreed to a request by the Attorney General's office to hold off on releasing a Requisition so that the propriety of it could be investigated, when he knew that other people similarly situated would receive or had received compensation. Plaintiff does not even attempt to demonstrate how this conduct constitutes a violation of any constitutional right. All we have is the vague descriptions of "due process" and "equal protection." Fortunately, plaintiff's case against Secretary Atalig is so weak that this description is enough.

### 3. Plaintiff has not Shown Violation of Her Right to Due Process

Where, as here, the plaintiff has alleged a violation of her right to procedural due process, a court should perform a two-step evaluation of the claim. First, a court must determine whether a liberty or property interests exists that was interfered with by the defendant. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989). If such and interest is found, then a court must consider whether constitutionally sufficient procedures were used. *Id.* In this case, plaintiff alleges merely that Mr. Atalig held up her paperwork for a short period while the legitimacy of her claim was investigated. Plaintiff has not alleged with any specificity how this violated her rights and has not stated what process the Secretary should have given her before performing this action. In this case, where defendant has shown neither that a protected interest was interfered with nor that she was due some process that was not provided, she simply cannot meet her burden of showing that Secretary Atalig violated a clearly established right. Therefore, Secretary Atalig is protected by qualified immunity from plaintiff's § 1983 claim against him and this claim must be dismissed.[3]

---

[3] It is also possible that plaintiff is allegedly a taking of her property. This theory must fail against Secretary Atalig for the simple reason that plaintiff does not allege that the Secretary had any role in the taking of her property. That said, Attorney General Brown's motion to dismiss addresses this issue admirably and the Secretary hereby adopts the relevant portion, Section III(b)(1)(b)(ii), and incorporates it herein by reference.

### 4. Plaintiff has not Shown Violation of Her Right to Equal Protection

Plaintiff also brings a claim for equal protection. This apparently arises from her contention that the government officials in this case, particularly the Attorney General's office, appear to have decided that payment of plaintiff's land claim was illegal and moved to stop it, even though they were supposedly aware that others similarly situated had already been compensated.

If this differential treatment were based on some suspect classification, it might require close scrutiny. However, because plaintiff has not alleged discrimination based on any suspect classification, her equal protection claim is subject only to rational basis scrutiny. *See Nelson v. City of Selma*, 881 F. 2d 836, 838-839 (9th Cir. 1989). Plaintiff also "bears the burden of proving that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Thornton v. City of St. Helens*, 425 F. 3d 1158, 1167 (9th Cir. 2005). In meeting this burden, the plaintiff must "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F. 2d 452, 460 (7th Cir. 1992). In this case, all plaintiff has alleged is that she (and another person, who was apparently also "singled-out," but who goes unmentioned in the complaint), was denied for a time compensation when others received it. This is simply insufficient.

In fact, this is a classic example of someone seeking to have the law go unenforced against her because it has gone unenforced against others. Unfortunately for her, this is not something plaintiff has any right to because,

> "There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere…"

*Futernick v. Sumptner Township*, 78 F. 3d 1051, 1056, (6th Cir. 1996). In sum, plaintiff has entirely failed to meeting the pleading requirements for a claim under 42 U.S.C. § 1983 and her claim should therefore be dismissed.

II.  <u>Plaintiff's Second Cause of Action Must be Dismissed as no Conspiracy has been Proved</u>

Plaintiff's second cause of action arises under 42 U.S.C. § 1985(3), which allows a claim "against those who *conspire* to obstruct justice, or to deprive any person of equal protection or the privileges and immunities provided by the Constitution." *Jaco v. Bloechle*, 739 F. 2d 239, 245 (6th Cir. 1984) (emphasis in original). To prevail on such a claim, a plaintiff must show, among other things, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action…" *Bray v. Alexander Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753, 758 (1993). As was noted, above, plaintiff is this case has made no such allegation. Therefore, her claim fails and must be dismissed.

III.  <u>All of Plaintiff's Commonwealth Law Claims Against Secretary Atalig Must be Dismissed</u>

A.  *Secretary Atalig is Protected by Sovereign Immunity in his Official Capacity*

Plaintiff alleges tort claims against Secretary Atalig in his official capacity for conspiracy, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional distress, and negligent infliction of emotional distress. Each of these claims is governed by the CNMI's Government Liability Act, 7 CMC § 2201 et. seq. This act operates as a partial waiver of sovereign immunity as to the government's liability in tort. The waiver of immunity is found in § 2202, but a significant exception is found in § 2204. Specifically, the government cannot be liable for any claim

"based upon an act or omission…based upon the exercise or performance…[of] a discretionary function…whether or not the discretion is abused" 7 CMC § 2204(a).

In this case, Secretary Atalig is accused of delaying his concurrence in a requisition of funds from the Land Compensation Fund to pay the plaintiff. His concurrence is necessary under P.L 14-29(1)(c) before the Trustee (the Bank of Guam) can release funds to an individual whom MPLA has determined should be compensated. Unfortunately for plaintiff, there is no requirement in the law that the Secretary approve a requisition simply because someone else wants him to. It is a discretionary function and the government, including the Secretary in his official capacity, cannot be sued for the way Secretary exercises this discretion. Secretary Atalig, in his official capacity, is therefore protected by sovereign immunity against all the Commonwealth law claims in this action and all such claims against him in his official capacity must be dismissed.

      B.    *Secretary Atalig is Protected by Absolute Immunity in his Personal Capacity*

All of the Commonwealth law claims asserted against Secretary Atalig in his personal capacity are tort law claims. In the Restatement of Torts, which is law in the Commonwealth under 7 CMC § 3401, "a public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if…he is immune because engaged in the exercise of a discretionary function." RESTATEMENT (SECOND) OF TORTS § 895D(3) & (3)(a). As was mentioned above, the entire behavior that is alleged against Secretary Atalig and that forms the basis for the tort claims against Secretary Atalig occurred as part of the Secretary's exercise of a discretionary function. As such, Secretary Atalig is immune from tort liability for those acts and all tort claims against him must be dismissed.

IV. **Plaintiff's Claim of Common Law Conspiracy Must be Dismissed as this Cause of Action is not Recognized in the Commonwealth**

In addition to being defective as a group, each of plaintiff's tort claims is individually defective. Plaintiff's first tort cause of action against Secretary Atalig is "Common Law Conspiracy." This claim may not be brought against Secretary Atalig because the CNMI Supreme Court has held that the "the common law as generally understood and applied in the United States does not provide relief for the tort of attempted extortion or the tort of conspiracy. Thus, we have no basis for recognizing the alleged torts." *I.G.I. Gen. Contractor & Dev., Inc., v. Public School System*, 1999 MP 12, ¶ 12, 5 N.M.I. 250, 252 (N.M.I. 1999). Because the tort of conspiracy is not recognized in the Commonwealth and this tort claim is governed by Commonwealth law, it must be dismissed.

IV. **Plaintiff's Claims for Intentional Interference with a Contract and with Economic Relations Must be Dismissed**

The next two tort causes of action against Secretary Atalig are for intentional interference with a contract and intentional interference with economic relations. Both causes of action concern the relationship created between plaintiff and MPLA when they settled plaintiff's land compensation claim. These are delineated as separate claims, but are more properly viewed as alternate theories of recovery for the same harm, because the "economic relation" referred to is the contract. This claim, however termed, is fatally flawed.

   A. *Secretary Atalig in his Official Capacity is Protected by Sovereign Immunity*

In addition to the general sovereign immunity defense noted above, Secretary Atalig in his official capacity also has a separate sovereign immunity defense to these contract claims. Specifically, 7 CMC § 2204(b) explicitly exempts the government from liability for any tort claim involving "interference with contract rights." As interference with contract rights is the core of both of the intentional interference claims, recovery from Secretary Atalig in his official

-10-

capacity on both these claims is clearly barred by Commonwealth law and these claims must be dismissed.

      B.   *These Claims against Secretary Atalig in his Personal Capacity must be Dismissed for Failure to Allege Improper Interference*

In addition to the general absolute immunity against all tort claims noted above, Secretary Atalig is also entitled to have the intentional interference claims dismissed because they are improperly pled. An essential element of these torts is both "intentional" and "improper" interference. RESTATEMENT (SECOND) OF TORTS § 766. In this case, plaintiff has failed to plead that the interference was improper. Instead, she has called it intentional and malicious. Complaint at ¶¶ 77, 82. An assertion of malice, without an allegation of lack of justification, is insufficient to support a claim of intentional interference with contract rights or economic relations. *See, North American Energy Systems v. New England Energy Management*, 269 F. Supp 2d 12, 19 (D. Conn. 2002). In sum, plaintiff's intentional interference claims against Secretary Atalig must be dismissed because they are improperly pled, and because, even if properly pled, are subject to the Secretary's immunity defense.

V.   <u>Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress Must be Dismissed</u>

The last two tort claims aimed at Secretary Atalig are for intentional and negligent infliction of emotional distress. As with the other tort claims, Secretary Atalig is entitled to have these claims dismissed because he has sovereign immunity against them in his official capacity and he has absolute immunity against them in his personal capacity. In addition both of the emotional distress claims are fatally flawed as pled.

A. *The Negligent Infliction of Emotional Distress Claim must be Dismissed because Plaintiff fails to Allege Bodily Harm and because Secretary Atalig's Behavior was Reasonable*

Section 313 of the Restatement covers claims for emotion distress. It makes a person liable for "illness or bodily harm" resulting from emotional distress if he "should have realized his conduct created an unreasonable risk of causing the distress" and if he knew that his conduct was likely to lead to emotional distress that in turn would cause such illness or bodily harm. RESTATEMENT (SECOND) OF TORTS § 313(1)(a) & (b). The instant claim is defective under this standard in two ways. First, it fails to allege that the plaintiff suffered any actual illness or bodily harm. This is relevant, because, "there is no liability where the actor's negligent conduct inflicts only emotional distress..." *Id* at cmt. 1(a). Second, it fails because it does not allege that Secretary Atalig's conduct was unreasonable. In fact, all the Secretary did was exercise his discretion under the statute to delay concurrence with a requisition. This is not unreasonable and so cannot give rise to tort liability.

B. *The Intentional Infliction of Emotional Distress Claim must be Dismissed because Secretary Atalig's Conduct was not Extreme and Outrageous*

To prevail on a claim of intentional infliction of emotional distress, plaintiff must prove "(1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless...(3) [that it caused] emotional distress; and (4) [that] the distress [was] severe." *Charfauros v. Bd. of Elections*, App. 5 N.M.I 188, 1998 M.P. 16, ¶ 62 (1998). In *Charfauros*, the CNMI Supreme Court emphasized the important role the court plays as guardian of the gateway to an action for intentional infliction of emotional distress. *Id* at ¶ 63. This is in part because of courts' "justifiable reluctance...to become embroiled in petty disputes that nonetheless cause someone to feel emotionally disturbed and distressed." *Id.* Therefore, a trial

court has a duty to "judge the sufficiency of the conduct alleged to have caused the emotional distress before allowing the case to proceed to a full trial." *Id.*

In performing its gatekeeping function in this case, the Court must first consider whether Secretary Atalig's conduct was "outrageous." To be considered sufficiently outrageous, the conduct alleged must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of human decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hawks v. State Dept. of Public Safety,* 908 P.2d 1013, 1015-1016 (Alaska 1995), *accord*, RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. In this case, all that Secretary Atalig did was exercise his discretion to delay his concurrence in a requisition that was of dubious legality. This behavior simply is not outrageous by any standard and it cannot support a claim for intentional infliction of emotional distress. This claim should be dismissed.

## CONCLUSION

For the foregoing reasons, plaintiff's Federal and Commonwealth claims against Secretary of Commerce Fermin M Atalig should be dismissed under FRCP 12(b)(6).

Date: January 3, 2005.

Respectfully submitted,
OFFICE OF THE ATTORNEY GENERAL

By: _____
Benjamin L. DeMoux
Assistant Attorney General