ORIGINAL

BRIEN SERS NICHOLAS
Attorney at Law
UIU Bldg., 1st Floor
P.O. Box 502876
Saipan, MP 96950

Telephone Nos.:   (670) 235-7190/91
Facsimile No.:    (670) 235-7192

Attorney for Plaintiff
   Rosario DLG Kumagai

F I L E D
Clerk
District Court

JAN 17 2006

For The Northern Mariana Islands
By_____
             (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR
THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI, <br><br> Plaintiff, <br><br> vs. <br><br> PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; FERMIN M. ATALIG, personally and in his official capacity as the Secretary of Finance, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; MARIA LOURDES SEMAN ADA, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority; COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM; and JOHN DOES ONE thru TEN, <br><br> Defendants. | CIVIL ACTION NO. 05-0037 <br><br><br><br><br><br><br><br> PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS CDA AND MARIA LOURDES S. ADA <br><br><br><br> Dated:   February 9th, 2006 <br> Time:    9:00 a.m. <br> Judge:   Hon. Alex R. Munson <br>              Chief Judge |

COMES NOW ROSARIO DLG KUMAGAI, as Plaintiff herein, by and through her Counsel, Brien Sers Nicholas, Attorney at Law, and oppose the motion to dismiss having been filed in this case by Defendants Commonwealth Development Authority ["CDA"] and Maria Lourdes S. Ada ["Ada"]. In support of the foregoing opposition,

Plaintiff states and argues the following:

**STANDARD FOR A RULE 12(b)(6) and 56 MOTIONS:**

Rule 12(b) of the Federal Rules of Civil Procedure, in relevant parts, states the following:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.] . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]

See Fed. R. Civ. Pro. 12(b)(6).

Rule 56(c) of the Federal Rules of Civil Procedure, on the other hand, states the following:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

See Fed. R. Civ. Pro. 56(c).

This Honorable Court, in considering a Rule 12(b)(6) motion, is required to accept all allegations of material facts as true and construe them in the light most favorable to Plaintiff. See Argabright v. United States, 35 F.3d 474 (474) (9th Cir. 1994). However, if matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. See Fed. R. Civ. Pro. 12(b)(6). Pursuant to Rule

56(c), summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. <u>See Id.</u>; <u>see</u> also <u>Chung v. World Corporation</u>, Case No. CV-04-0001-ARM, Order on Cross-Motions for Summary Judgment (NMI Dist. Ct. June 22nd, 2005); <u>citing</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court must take the responding party's evidence as true and all inferences are to be drawn in its favor. <u>See</u> <u>Chung</u> at 3; <u>citing</u> <u>Eisenberg v. Insurance Co. of North America</u>, 815 F.2nd 1285, 1288 (9th Cir. 1987). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts . . ." <u>See</u> <u>Chung</u> at 3; <u>citing</u> <u>Hollingsworth Solderless Terminal Co. v. Turley</u>, 622 F.2nd 1324, 1335 (9th Cir. 1980).

As would be seen below, based on the relevant laws and the facts of this case, Defendants CDA and Ada are not entitled to have a dismissal of Plaintiff's complaint against them nor is summary judgment warranted as well. Accordingly, their motion herein must be denied.

**STATEMENT OF FACTS:**

Plaintiff, in her complaint, asserts seven (7) causes of actions against Defendants CDA and Ada, i.e., Count I (violation of her due process and equal protection rights under 42 U.S.C. § 1983), Count II (conspiracy in violation of 42 U.S.C. § 1983), Count III (common law conspiracy), Count VII (intentional interference with contractual rights--MPLA settlement agreement), Count VIII (intentional interference with economic relations–MPLA settlement agreement), Count X (intentional infliction of emotional distress) and Count XI (negligent infliction of emotional distress). In support of the foregoing causes of actions against Defendants CDA and Ada, Plaintiff alleged specific facts (including exhibits) in her complaint as follows:

      a. **Count I (violation of her due process and equal protection rights under 42 U.S.C. § 1983):**

In her complaint, Plaintiff alleges that she had rights, privileges, and immunities under the due process and equal protection clauses of the Federal and NMI constitutions, including her right not be deprived of her constitutionally protected interest in her property, i.e., U.S. Const. Amend. 5 & 14; NMI Const. Art. 1, §§ 5 & 6. See Plaintiff's Complaint, ¶ 42.[1] Plaintiff also alleged that Defendants CDA and ADA, at all times, were state actors and that their conducts were subject to 42 U.S.C. §§ 1983. See Plaintiff's Complaint, ¶ 43.

Plaintiff, in further support of her claim, alleged that acting under the color of law, Defendants CDA and ADA denied her rights, privileges, or immunities secured to her by the Constitutions of the United States and the Northern Mariana Islands and also by Federal and NMI laws as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article 1, §§ 5 and 6 of the NMI Constitution. Specifically, Defendants CDA and Ada (a) refused and prevented the release of Plaintiff's Requisition No. FY 05-11 that would have resulted in Plaintiff getting her land compensation;[2] (b) refused and continued to prevent the release of the funds to compensate Plaintiff, in light of their knowledge and actions in having allowed certain wetland Owners similarly situated as that of Plaintiff to be fully compensated for the taking of their wetland properties no different then that of Plaintiff;[3] (c) by allowing and permitting another wetland Owner similarly situated as that of Plaintiff to be again fully compensated for the taking of her wetland property no different then that of Plaintiff while the lawsuit against Plaintiff was still pending

---

[1] The "property" in question in this case is Plaintiff's land compensation as evidenced by her settlement agreement with the Marianas Public Lands Authority ["MPLA"] and also with Defendant CNMI in <u>CNMI, DPHES v. Rosario DLG Kumagai</u>, Civil Action No. 05-0149C ["CHC Lawsuit"]. See Plaintiff's Complaint, Exhibits "D" & "I."

[2] See Plaintiff's Complaint, ¶¶ 32 through 34; see also Exhibits "O," "P"& "Q."

[3] See Plaintiff's Complaint, ¶ 39; see also Exhibits "V" through "CC."

- 4 -

1 with the CNMI Superior Court.[4]  See Plaintiff's Complaint, ¶ 44.

2 Clearly, by the foregoing allegations, Plaintiff has stated a claim under 42 U.S.C. § 1983 as against Defendants CDA and Ada.

### b.   Count II (conspiracy in violation of 42 U.S.C. § 1985(3)):

Plaintiff, based on the actions taken against her by Defendants Pamela Brown ["Brown"] and Fermin M. Atalig ["Atalig"], and Bank of Guam ["BOG"] also alleged conspiracy against Defendants CDA and Ada pursuant to 42 U.S.C. § 1985(3). In support of the foregoing claim, Plaintiff sets forth in her complaint the following:

The conspiratorial purpose by Defendants CDA and Ada, along with Defendants Brown, Atalig, and BOG was to deny Plaintiff her land compensation, i.e., her property. See Plaintiff's Complaint, ¶ 48.  In further support of the foregoing claim, Plaintiff alleged that the overt acts taken against her were (1) Defendant Brown instructing Defendant Atalig not to concur with Plaintiff's requisition [i.e., FY 05-11], (2) Defendant Brown instructing Lemons to sign-off and forward a letter to Defendant Atalig telling him not to concur with Plaintiff's requisition;[5] (3) Defendant Brown filing of an otherwise frivolous lawsuit before the CNMI Superior Court caption as CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al., Civil Action No. 05-0332E [the "MPLA Lawsuit"];[6] (4) Defendant Brown instructing and Defendants CDA and Ada agreeing with Defendant Brown not to process Plaintiff's land compensation, i.e., Requisition No. FY 05-11.[7]  See Plaintiff's Complaint, ¶ 49. As for Defendants CDA and Ada, they joined in and became part of the conspiracy when they agreed to and consented to stop the processing of Plaintiff's Requisition No. FY 05-11 that would have resulted in Plaintiff finally receiving her long-overdue land compensation in this

---

[4]   See Plaintiff's Complaint, ¶ 40; see also Exhibit "DD."

[5]   See Plaintiff's Complaint, ¶ 29; see also Exhibit "L."

[6]   See Plaintiff's Complaint, ¶¶ 30 and 38; see also Exhibit "U."

[7]   See Plaintiff's Complaint, ¶ 34 ; see also Exhibit "P."

1  case for the taking of her property.[8]  See Plaintiff's Complaint, ¶ 50.

2  Plaintiff, in further support of the foregoing claim, also alleged that she was, at all times relevant herein, a part of a class of persons entitled to have the taking of her property compensated by Defendant CNMI as provided for under the Federal and CNMI constitutions, as well as under the CNMI PL 13-17, as amended by CNMI PL 14-29.  See Plaintiff's Complaint, ¶ 51.

Once again, Plaintiff has alleged facts in her complaint to support her § 1985(3) claim in this case.

### c.    Count III (common law conspiracy):

In her complaint, Plaintiff alleges that Defendants CDA and Ada (along with Defendants Brown, Atalig and BOG), based on the facts of this case, (a) all had an object to be accomplished; (b) had an agreement to the object or course of action, to wit: to deprive Plaintiff of her rights under the constitutions and laws of the United States and the CNMI; (c) performed one or more unlawful overt acts; and (d) caused Plaintiff damages that were a direct result of those acts, all herein alleged.  See Plaintiff's Complaint, ¶ 54.  In furtherance of their object, Plaintiff alleges that all the conspirators (including Defendants CDA and Ada) did two or more overt acts against Plaintiff.  These overt acts included, but were not limited to, the facts outlined in Count II, supra, conspiracy under § 1985(3).  See Plaintiff's Complaint, ¶ 55.

The same facts herein-discussed and alleged by Plaintiff in support of her § 1985(3) are the same facts which supports Plaintiff's claim for common law conspiracy in this case.  Again, this facts are more than sufficient to support Plaintiff's common law conspiracy in this case.

### d.    Count VII (intentional interference with contractual rights--MPLA settlement agreement):

Plaintiff, in support of this particular claim, alleged that Defendants CDA and

---

[8]    See Plaintiff's Complaint, ¶ 34; see also Exhibit "Q."

- 6 -

ADA knew or should have known that Plaintiff and MPLA had between them a legally binding and enforceable contract in the form of a settlement agreement, to wit: the MPLA Settlement Agreement.[9] See Plaintiff's Complaint, ¶ 76. Plaintiff further alleged that, in light of the foregoing knowledge by Defendants CDA and Ada, said Defendants (by their actions) intentionally and maliciously took actions alleged herein that interfered with said MPLA Settlement Agreement and aimed at further denying Plaintiff her rights under said settlement agreement to the receipt of her land compensation. See Plaintiff's Complaint, ¶ 77. The actions taken by Defendants CDA and Ada have already been discussed herein vis a vis by agreeing and consenting to the stoppage of Plaintiff's land compensation from being processed. Id. What is most disturbing is the fact that Defendants CDA and Ada knew or should have known that their actions in this regards were illegal. See Plaintiff's Complaint, ¶¶ 36 & 78.

Once again, Plaintiff in this case has alleged sufficient facts to support her claim of contractual interference by Defendants CDA and Ada in this case. As would be seen below, these facts are undisputed and, therefore, as a matter of law, Plaintiff is entitled to judgment against Defendants CDA and Ada in this case as to this particular claim.

    e.    **Count VIII (intentional interference with economic relations–MPLA settlement agreement):**

Similar to her claim for contractual interference, Plaintiff also alleged against Defendant CDA and Ada a claim for interference of an economic relations as between Plaintiff and MPLA. As a result of the MPLA settlement agreement, said Defendants

---

[9] See Plaintiff's Complaint, Exhibit "D." It is also worth noting that, given the involvement of Defendants CDA and Ada in the disbursement process and, further, given that Plaintiff's Requisition No. 05-11 is not the first requisition that MPLA had forwarded to Defendants CDA and Ada, said Defendants cannot now claim not to have known about the settlement agreement between MPLA and Plaintiff in this case. In other words, but for the withholding and the subsequent lawsuit against Plaintiff by Defendants CNMI and Brown, Plaintiff's Requisition No. 05-11 followed the same disbursement process that other similarly situated wetland owners had followed earlier then Plaintiff and which resulted in them getting their compensation process accordingly by Defendants CDA and Ada.

- 7 -

CDA and Ada knew or should have known that Plaintiff and MPLA had between themselves an economic relation protected by law. See Plaintiff's Complaint, ¶ 81. In light of this knowledge, Defendants CDA and Ada (by their actions) intentionally and maliciously took actions that interfered with said economic relations between Plaintiff and MPLA. See Plaintiff's Complaint, ¶ 82. Again, as already discussed herein, the actions taken by Defendants CDA and Ada resulted in Plaintiff not receiving her land compensation as agreed to in this case. Id.

    f.    **Count X (intentional infliction of emotional distress):**

Plaintiff, in support of the foregoing claim alleged that Defendants CDA and Ada took actions intentionally and deliberately which inflicted emotional distress on Plaintiff. These actions included but were not limited to interfering with her civil, statutory and contractual rights as herein alleged. See Plaintiff's Complaint, ¶ 91. As already discussed above, Plaintiff had a right to her property, i.e., her land compensation, which was denied her by said Defendants CDA and Ada. Id. The actions and conducts of said Defendants CDA and Ada were extreme and outrageous, beyond any and all possible bounds of decency and utterly intolerable in a civilized community. See Plaintiff's Complaint, ¶ 92. The foregoing is particularly so given that said Defendants CDA and Ada had previously allowed similarly situated wetland owners to be fully compensated without any actions taken against them to deny them their land compensation, i.e., their properties. See Plaintiff's Complaint, ¶ 39. To further show just how "extreme and outrageous" the actions and conducts of Defendants CDA and Ada in this case were, Plaintiff also alleged that while defending her rights in the MPLA Lawsuit before the CNMI Superior Court [which was still pending at the time], Defendants CDA and Ada permitted and allowed another similarly situated wetland owner no different then Plaintiff to be fully compensated without any interference from said Defendants. See Plaintiff's Complaint, ¶ 40.

g. **Count XI (negligent infliction of emotional distress):**

Plaintiff, for its last claim against Defendants CDA and Ada, alleged that said Defendants had an affirmative duty to perform their duties and responsibilities in this case towards Plaintiff in such manners as not to inflict emotional distress on Plaintiff. See Plaintiff's Complaint, ¶ 96. Plaintiff further alleged that Defendants CDA and Ada breached their duties in this case towards Plaintiff. See Plaintiff's Complaint, ¶ 97.

The basis of this claim are the very actions and conducts that Plaintiff has alleged against Defendants CDA and Ada in support of her other claims herein-discuss. Id. Again, no different then her other claims against Defendants CDA and Ada in this case, Plaintiff has put forth a viable claim for negligent infliction of emotional distress.

## ARGUMENTS:

Plaintiff, having discussed the factual basis in support of her claims against Defendants CDA and Ada above, will now turn to the legal arguments put forth by said Defendants in their motion to dismiss in this case.

**A.   As to Count I, Neither CDA Nor Ada (In Her Official Capacity) Are Suable Persons under 42 U.S.C. § 1983:**

It is the law of this jurisdiction that the Commonwealth of the Northern Mariana Islands ["CNMI"], its governmental entities, and officials sued in their official capacities are not "persons" with the meaning of § 1983 and cannot be held liable under the statue. See DeNieva v. Reyes, 966 F.2d 480, 483 (9th Cir. 1992); see also Magana v. CNMI, 107 F.3d 1436, 1447 (9th Cir. 1997). Defendant CDA does not fit the foregoing. Unlike the Northern Marianas College ["NMC"], Defendant CDA is not an "arm of the state" for purposes of liability. See Oden v. Northern Marianas College, Civil Action No. 98-0020, Order Granting Summary Judgment (Oct. 29th, 1999).

In Oden, this Honorable Court held that NMC was an "arm of the state" after reviewing the CNMI constitutional and statutory provisions affecting NMC in light of the traditional "arm of the state" analysis. Id. at 7 (citations omitted). Of the factors applicable, this Honorable Court noted that "[s]tate liability for money judgment is the

single most important factor in determining whether an entity is an arm of the state." Citing Doe v. Lawrence Livermore Nat. Laboratory, 65 F.3d 771, 774-76 (9th Cir. 1995), *rev. on other grounds*, Regents of the University of California v. Doe, ___ U.S. ___, 117 S. Ct. 900, 904 (1997). In concluding that NMC was not an arm of the state, this Honorable Court noted the fact that NMC relies on the CNMI for its budget, not to mention also that NMC is often represented in its legal affairs by the Commonwealth Attorney General's Office. See Oden at 8. Defendant CDA, on the other hand, does not rely on any appropriations of the general funds from the CNMI legislature for its budget. See 4 CMC § 10401. In fact, on budgetary issues, Defendant CDA is only required to submit its annual budget to the CNMI Governor and the Legislature "for informational purposes" only. See 4 CMC § 10402(f). On the issue of legal representation, Defendant CDA is represented in its legal affairs by its own legal counsels and not the CNMI Attorney General's Office.

In all, Defendant CDA [unlike NMC] is not an "arm of the state" for purposes of liability and, therefore, it can be sued for the same under § 1983. Defendant Ada, as an employee and an agent of Defendant CDA, is therefore open to monetary damages in her official capacity as well. Given that Defendant CDA has its own funds separate and apart from the funds of the CNMI, any potential monetary damages in this case will clearly be paid out of Defendant CDA's own funds. This is not the case with NMC. As indicated in Oden, whatever monetary damages that could have been awarded in that case against NMC would have clearly been paid out of funds appropriated to NMC by the CNMI. Such is not the case here with Defendant CDA.

B.   **Plaintiff's Due Process Rights Have Not Been Violated:**[10]

Defendant CDA and Ada argues that Plaintiff has no property interest in

---

[10]   Defendants CDA and Ada only addressed Plaintiff's due process claim under § 1983 in their motion to dismiss but not Plaintiff's claim of equal protection. Accordingly, Plaintiff will only address said Defendants arguments seeking dismissal of her due process claim in the foregoing opposition.

- 10 -

1  the "bond project fund" and, therefore, has failed to demonstrate that there has been
2  a deprivation of the same by said Defendants. See Motion to Dismiss, pgs. 3 to 8.[11]
3  As would be seen below, Plaintiff has alleged a "property interest" in the
4  "bond project fund" and has demonstrated that Defendants CDA and Ada deprived her
5  of the same in violation of her due process rights.

      **1.**     **Plaintiff Has No Cognizable Property Interest in The Bond Project Fund Held in Trust by Bank of Guam.**

First and foremost, the so-called "bond project fund" is none other then the very same "funds" which were raised through the sale of bonds pursuant to CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. See Attachments "A" & "B," respectively;[12] see also §§ 3.01(c) & 3.02, Exhibit "1," Motion to Dismiss. Under CNMI P.L. 13-17, this so-called "bond project fund" is referred to as the "Land Compensation Fund ['Fund']." See CNMI P.L. 13-17, § 4(a). Said public law made it very clear that "[t]he purpose of the Fund shall be to pay principal and interest on any financing entered into by the Marianas Public Lands Authority for the financing of the retirement of land compensation claims against the Commonwealth as authorized by this Act." See CNMI P.L. 13-17, § 4(b). Plaintiff's claim in this case is for land compensation as a result of her property having been taken by the CNMI. CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, were passed to addressed this very issue by making available funds to be used to compensate a land owner such as Plaintiff herein. Given, again, that the so-called "bond project fund" is the same as that of the "Land Compensation Fund" provided for under CNMI P.L. 13-17, Plaintiff has an interest in said funds. In fact, all land compensation claims that Defendants CDA and Ada had authorized prior to and after Plaintiff's claim, were all paid out of this so-called "bond

---

[11]  The motion to dismiss referred to herein is the motion to dismiss filed by Defendants CDA and Ada in this case on December 29th, 2005.

[12]  For ease of reference, copies of said CNMI P.L. 13-17 and P.L. 14-29 are attached hereto as Attachments "A" & "B."

- 11 -

project fund," i.e., "Land Compensation Fund," being held by BOG in trust. See Plaintiff's Complaint, Exhibits "V" through "DD-6."

In all, the undisputed facts of this case clearly shows that Plaintiff had entered into a settlement agreement [i.e., MPLA Settlement Agreement] with MPLA for her to finally receive her land compensation as a result of the taking of her property by the CNMI. See Plaintiff's Complaint, Exhibit "D." In said settlement agreement, it is specifically noted that Plaintiff's land compensation was to be paid pursuant to CNMI P.L. 13-17, as amended. Id. Accordingly, Plaintiff has alleged a "property interest" in this case. To the extent that Defendants CDA and Ada are now attempting to argue that the Indenture Agreement with BOG is superior to CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, this argument must be rejected. The fact of the matter is that Plaintiff's claim is based, among others, on CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. Thus, again, to the extent that the Indenture Agreement is contrary to said CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, the Indenture Agreement must fail.

Furthermore, as would be discussed below, Defendants CDA and Ada cannot incorporate into the Indenture Agreement additional powers that were not granted to them by CNMI P.L. 13-17, as amended by CNMI P.L. 14-29.

### 2. Plaintiff Has Not Demonstrated That There Has Been a Deprivation of a Property Interest:

This argument is premised on the previous argument by Defendants CDA and Ada that Plaintiff has no "property interest" in the "bond project funds" above discussed. Given the above-discussion, Plaintiff has clearly established that she does have a legally protected "property interest" in this case.

Defendants CDA and Ada, in further support of this particularly argument, state that Plaintiff cannot point to any written document that unequivocally states when she is to receive payment for her land compensation. As such, Defendants CDA and Ada further argue that "the complaint is also devoid of any

allegation as to when MPLA was supposed to pay Plaintiff." See Motion to Dismiss, pg. 6, Lines 12-14. The foregoing arguments, respectfully, side-step the real issue in this case. The real issue is not when Plaintiff was going to be paid by MPLA but, rather, what Defendants CDA and Ada did when so instructed by MPLA to inform BOG to release the funds necessary to compensated Plaintiff in this case. See Plaintiff's Complaint, Exhibit "N." It is the actions of Defendants CDA and Ada in refusing to process her land compensation claim when so instructed by MPLA that Plaintiff is alleging deprived her of the same.

Defendants CDA and Ada knew very well that, at all times relevant herein and contrary to the Indenture Agreement, they and each of them had no right to interfere with the processing and disbursement of Plaintiff's land compensation as a matter of law. See CNMI P.L. 13-17; see also CNMI P.L. 14-29. Section 4(c) of CNMI P.L. 13-17 specifically states that "[t]he Commissioner of the Marianas Public Lands Authority shall have expenditure authority over the Fund, subject to approval of claims by the Board." See CNMI P.L. 13-17, § 4(c); see also CNMI P.L. 14-29, § 1(c) ("The Commissioner of MPLA shall have expenditure authority over the funds in the account[13] subject to approval of claims by the Board." CNMI P.L. 14-29 goes on to further state that "[s]uch funds shall be drawn down from the trustee based upon procedures established by the MPLA Board and upon the concurrence of the Secretary of Finance." See CNMI P.L. 14-29, § 1(c). No where in the foregoing sections of CNMI P.L. 13-17 or P.L.14-29 was Defendant CDA and/or Ada given any legal authority to do what they did in this case, much less be part of the expenditure and disbursement process. Consistent with CNMI P.L. 14-29, above cited, MPLA did entered into a "disbursement procedures" with the Secretary of Finance, i.e., Defendant Fermin M. Atalig [Defendant Atalig]. See Plaintiff's Complaint, Exhibit

---

[13] The account referred to as the trust account being held by BOG.

"C."[14] Again, no where in the disbursement procedures was Defendants CDA and/or Ada made a part of the process. Given the foregoing, the attempt in the Indenture Agreement to have Defendants CDA and/or Ada play a role in the disbursement process must give way to the clear mandate of CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, herein cited.

Defendants CDA and Ada goes on to note a letter from CNMI Assistant Attorney General Clyde Lemons, Jr. to Defendant Atalig on May 9th, 2005 which instructed Secretary Atalig not to process Plaintiff's requisition. See Motion to Dismiss, pg. 6, Lines 19 to 22, and pg. 7. Line 1; see also Plaintiff's Complaint, Exhibit "L." In said letter, the CNMI Office of Attorney General talks about taking legal actions against Plaintiff and another landowner, namely Mrs. Victoria S. Nicholas ["Mrs. Nicholas"][15] About three (3) months later, the CNMI Office of the Attorney General did file a lawsuit in the CNMI Superior Court against Plaintiff and Mrs. Nicholas wherein the only claim made was that the land compensation claims for Plaintiff and Mrs. Nicholas were void because their properties were not taken in connection with any right of ways. See Plaintiff's Complaint, ¶ 35 (Exhibit "R").[16] The CNMI Office of the Attorney General made this frivolous claim knowing full well that, as mentioned earlier, it had allowed similar compensation to go through prior to that of Plaintiffs and

---

[14] It is again worthy to note that Exhibit "C" [Agreement on Land Compensation Drawdown and Disbursement Procedures"] was negotiated with Defendant Atalig who was being represented by the CNMI Office of the Attorney General and was signed-off by Defendant Pamela Brown as the Attorney General.

[15] The letter was written all the while the Office of the Attorney General and Defendant Atalig knew very well that they had previously allowed similarly situated wetland owners as that of Plaintiff to be fully compensated. Defendant CDA and Ada participated in the foregoing by allowing the processing of these wetland owners' compensation from the very same funds that are being held by BOG in trust pursuant to CNMI P.L. 13-17, as amended by CNMI P.L. 14-29.

[16] In her letter to Defendants CDA and Ada, Defendant Brown further supported her actions in this case by making a claim that the wetland properties for Plaintiff and Mrs. Nicholas were worthless. See Plaintiff's Complaint, ¶ 34 (Exhibit "P").

- 14 -

1  Mrs. Nicholas are being sued.  Additionally and as further evidence of the wrong-
2  doings committed in this case against Plaintiff, the same CNMI Office of the Attorney
3  General allowed another wetland owner, again, similarly situated as that of Plaintiff
4  and Mrs. Nicholas, to be compensated without any interference or lawsuits being filed
5  against said wetland owner to prevent her compensation.  This occurred during the
6  pendency of the lawsuit against Plaintiff and Mrs. Nicholas before the CNMI Superior
7  Court.  See Plaintiff's Complaint, ¶ 40 (Exhibits "DD").  Defendants CDA and Ada
8  were part of each of the foregoing disbursements and compensations except that,
9  when it came to Plaintiff and Mrs. Nicholas, said Defendants decided otherwise.

10  Plaintiff, to sustain her § 1983 claim in this case, must show "(1) that the
11  conduct complained of was committed by a person acting under color of state law;
12  and (2) that [such] conduct deprived the plaintiff of a federal constitutional or statutory
13  right."  See Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989), cert. denied, 498
14  U.S. 938 (1990).  Here, it is undisputed that Defendant CDA and Ada acted "under
15  color of state law" vis a vis the Indenture Agreement that came about as a result of
16  CNMI P.L. 13-17, as amended by CNMI P.L. 14-29.  Further, as discussed above,
17  Plaintiff does have a federally protected constitutional right in this case vis a vis her
18  land compensation claim that came about as a result of her property being taken by
19  CNMI.  See U.S. Const. Amend. V; see also U.S. Const. Amend. IV.

20  The Fourteenth Amendment provides , in part, that no State shall
21  "deprive any person of life, liberty, or property, without due process of law."  See U.S.
22  Const. Amend. XIV.  The United States Supreme Court has made it clear that "[t]he
23  touchstone of due process is protection of the individual against arbitrary action of
24  government."  See Daniels v. Williams, 474 U.S. 327, 331 (1986); see also Logan v.
25  Zimmerman Brush Co., 455 U.S. 422 (1981) (a federal interest remains in "protecting
26  the individual citizen from state action that is wholly arbitrary or irrational.").

27  In the present case, Plaintiff has alleged specific facts to support
28  her claim that the conducts of Defendants CDA and Ada in denying her land

compensation claim were wholly arbitrary and irrational, particularly in light of having allowed payments of other similarly situated wetland owners to go through.

**C.  Suit Against Ada for Individual Liability is Barred by Qualified Immunity:**

Defendant Ada, in her motion, correctly states the general rule on qualified immunity. That is, in order to be entitled to qualified immunity, a public official must show that his or her discretionary conduct did not violate any clearly established rights of which a reasonable person should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, a public official is not entitled to qualified immunity when the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. See Anderson v. Creighton, 483 U.S. 635 (1987); see also Allen v. Sakai, 48 F.3rd 1082, 1087 (9th Cir. 1994).

As already alluded above, Defendant Ada had no discretion to interfere with the disbursement process in this case as a matter of law. See CNMI P.L. 13-17; see also CNMI P.L. 14-29. It is also beyond any dispute that the contours of Plaintiff's due process right, in light of the facts of this case, should have been reasonably clear to Defendant Ada at the time she stopped the processing of Plaintiff's requisition in this case. This could not be more evident given that she had earlier processed similar claims, not to mention processing a similar claim while the lawsuit against Plaintiff was still pending before the CNMI Superior Court, as herein mentioned. To justify her actions, Defendant Ada again relies on the Indenture Agreement. However, as above discussed, this Indenture Agreement cannot transcend CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. More importantly, Defendant Ada's reliance on the Indenture Agreement to immunize her conducts in this case cannot thwart § 1983 remedies available to Plaintiff. See e.g., Howlett v. Rose, 496 U.S. 356, 376-77 (1990) & Felder v. Casey, 487 U.S. 131, 139 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted . . . because the application of the state law would thwart the congressional remedy

. . . which of course already provides certain immunities for state officials."). This is also the rule laid-out by the Ninth Circuit. See e.g., Sosa v. Hiraoka, 920 F.2nd 1451, 1460 n. 3 (9th Cir. 1990) (noting that the Supreme Court has "held that state law immunities have no force against § 1983 suits where the state law immunity purports to provide immunity 'over and above those already provided in § 1983'[.]").

Accordingly, Defendant Ada is not entitled to qualified immunity in this case.

### D. Count II Fails to State a Claim Upon Which Relief Can be Granted and Must be Dismissed.

Count II accuses Defendants CDA and Ada of conspiracy pursuant to § 1985(3). In her complaint, Plaintiff alleges that she was a part of a class of persons entitled to be compensated under the Federal and the CNMI constitutions, as well as CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. See Plaintiff's Complaint, ¶ 51. Citing Griffin v. Breckenridge, 4-3 U.S. 88 (1970) and Sever v. Alaska Pulp Corporation, 978 F.2d 1529 (9th Cir. 1992), Defendants CDA and Ada argues that Plaintiff has failed to allege that she is a member of any suspect class and, therefore, her claim must be dismissed.

Plaintiff's complaint clearly alleges that Plaintiff is a member of a class of persons created by CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. Further, Plaintiff's complaint alleges that Defendants CDA and Ada joined in and became part of a conspiracy in this case when they, by their own actions, agreed and consented to stop Plaintiff's requisition from being processed in this case. See Plaintiff's Complaint, ¶50. The conspiracy in this case, as alleged by Plaintiff, commenced with Defendants Brown and Atalig. See Plaintiff's Complaint, ¶ 49. What motivated Defendant Brown, principally, to have done what she did in this case remains to be seen at trial. It is the actions of Defendant Brown, which Defendants CDA and Ada agreed to join in, that is the focus of the conspiracy.

Thus, given the specific allegations by Plaintiff in this regard, Plaintiff's

complaint viewed in the light most favorable to Plaintiff does state a claim under § 1985(3).

  **E. Count III Fails to State a Cause of Action Upon Which Relief Can be Granted and Must be Dismissed.**

  Count III of Plaintiff's Complaint alleges civil conspiracy against Defendants CDA and Ada, along with the other named-defendants. Similar to her allegations under Count II, Plaintiff has alleged specific facts to support her civil conspiracy claim in this case. See Plaintiff's Complaint, ¶¶ 54 and 55. Defendants CDA and Ada seeks dismissal of this count based on their reliance of I.G.I. General Contractor & Dev., Ins. v. PSS, et. al., 5 N.M.I. 250 (1999), that there is no written law in the Commonwealth recognizing the tort of civil conspiracy. While a civil conspiracy may not be a recognized tort in the Commonwealth, it is recognized under § 1983.

  In Adickes v. S.H. Kress & Co., 398 U.S. 144, the Supreme Court stated that in order to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding between civilian and officers to deprive plaintiff of her rights. Id. 152. There is no questions that Plaintiff's Complaint contains specific allegations that there was indeed an understanding between Defendants CDA and Ada, along with Defendants Brown, Atalig, and BOG, to deprive Plaintiff of her right to her property, i.e., her land compensation. See Plaintiff's Complaint, ¶¶ 33 & 34.

  Accordingly and when viewed in light most favorable to Plaintiff, Plaintiff's Complaint does state a claim for civil conspiracy against Defendants CDA and Ada in this case.

  **F. Counts VII and VIII Fail to State a Claim Upon Which Relief Can be Granted:**

  Counts VII and VIII of Plaintiff's Complaint charges Defendants CDA and Ada with "intentional interference with contractual rights" and also "intentional interference with economic relations" in this case respectively. See Plaintiffs

Complaint, ¶¶ 75 through 84.  These claims are based on Plaintiff's settlement agreement with MPLA, i.e., the MPLA Settlement Agreement.  See Plaintiff's Complaint, Exhibit "D."  Defendants CDA and Ada seeks a dismissal of the foregoing based on their earlier claim that Plaintiff has no legitimate claim of interest in the Bond Project Fund [i.e., the "Land Compensation Fund"] being held by BOG in trust.  Again, as earlier discussed, this argument must fail in light of CNMI P.L. 13-17, as amended by CNMI P.L. 14-29.  See Attachments "A" & "B," *respectively*.

Defendants CDA and Ada further argue that Plaintiff has not alleged that said Defendants acted without justification in withholding the release of her land compensation.  Plaintiff need not allege issues of justification as the same is not an element of either of the claims herein alleged against Defendants CDA and Ada.  See Hofschneider v. Demapan-Castro, et. al., Civil Action No. 04-523B (CNMI Superior Court); citing Faulkner v. Ark. Children's Hosp., 347 Ark. 941 (Ark. 2002) (intentional interference of contractual rights) and Westside Center Associates v. Safeway Stores, 42 Cal. App. 4th 507 (Cal. Ct. App. 1996) (intentional interference of economic relations).  Be that as it may, in her complaint, Plaintiff does allege that the actions of Defendant CDA and Ada were "improper and were all illegal."  See Plaintiff's Complaint, ¶¶ 78 & 83.

Lastly, Defendants CDA and Ada claim immunity from suit for Plaintiff's claim of "interference with contract rights" pursuant to 7 CMC § 2204(b).  Again, as earlier discussed, neither Defendant CDA nor Defendant Ada can be considered an "arm of the state" for purposes of liability.  Additionally, given that at the time of their conduct alleged herein, the law on "interference with contract rights" was well-established, no immunity can be bestowed on either of said Defendants to shield them from potential liability.

Again, contrary to the arguments presented by Defendants CDA and Ada, Plaintiff's Complaint does state a claim for intentional interference with contractual rights as well as economic relations.

**G.  Counts X and XI Fail to State a Claim Upon which Relief Can be Granted.**

Counts X and XI allege "intentional infliction of emotional distress" and also "negligent infliction of emotional distress" against Defendants CDA and Ada. Again, given the above discuss relative to whether or not Defendants CDA and Ada are "arm of the state" for purposes of liability and the conclusion that they are not, neither of them cannot claim an sort of immunity (sovereign or otherwise) in this lawsuit.

Moreover, by specific facts alleged in her complaint, Plaintiff has shown that the actions and conducts of Defendants CDA and Ada in denying what was legally hers on one hand and allowing similarly situated wetland owners to receive their compensation, on the other, cannot be tolerated in a civilized community. Simply put, the actions and conducts of Defendants CDA and Ada towards Plaintiff in this case, in view of their actions and conducts towards others similarly situated as that of Plaintiff, could very well be viewed by the trier of facts to be well beyond any form of decency in a civilized community.

CONCLUSION:

For all the foregoing reasons herein stated, Plaintiff respectfully ask that this Honorable Court denies the motion to dismiss in this case by Defendants CDA and Ada.

Dated this the ___16th___ day of January, 2006.

Respectfully Submitted:

Brien Sers Nicholas, Esq.
Attorney for Plaintiff