BRIEN SERS NICHOLAS
Attorney at Law
UIU Bldg., 1st Floor
P.O. Box 502876
Saipan, MP 96950

Telephone Nos.:   (670) 235-7190/91
Facsimile No.:    (670) 235-7192

Attorney for Plaintiff
   Rosario DLG Kumagai

FILED
Clerk
District Court

JAN 19 2006

For The Northern Mariana Islands
By_____
   (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR
THE NORTHERN MARIANA ISLANDS

ROSARIO DLG KUMAGAI,

   Plaintiff,

vs.

PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands;
FERMIN M. ATALIG, personally and in his official capacity as the Secretary of Finance,
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS;
MARIA LOURDES SEMAN ADA, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority;
COMMONWEALTH DEVELOPMENT AUTHORITY;
BANK OF GUAM;
and JOHN DOES ONE thru TEN,

   Defendants.

CIVIL ACTION NO. 05-0037

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY DEFENDANT FERMIN M. ATALIG

Dated:  February 9th, 2006
Time:   9:00 a.m.
Judge:  Hon. Alex R. Munson
       Chief Judge

COMES NOW ROSARIO DLG KUMAGAI, as Plaintiff herein, by and through her Counsel, Brien Sers Nicholas, Attorney at Law, and opposes the motion to dismiss having been filed in this case by Defendant Fermin M. Atalig ["Defendant Atalig"]. In support of the foregoing opposition, Plaintiff states and argues the following:

**STANDARD FOR A RULE 12(b)(6) and 56 MOTIONS:**

Rule 12(b) of the Federal Rules of Civil Procedure, in relevant parts, states the following:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.] . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]

See Fed. R. Civ. Pro. 12(b)(6).

This Honorable Court, in considering a Rule 12(b)(6) motion, is required to accept all allegations of material facts as true and construe them in the light most favorable to Plaintiff. See Argabright v. United States, 35 F.3d 474 (474) (9th Cir. 1994). A Rule 12(b)(6) motion is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory. See DOE I, et al. v. THE GAP, INC., et al., Case No. CV-01-0031, Order Re: Motion to Dismiss Plaintiffs' First Amended Complaint (NMI Dist. Ct. Oct. 29th, 2001); citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

As would be seen below, based on the relevant laws and the facts of this case, Defendant Atalig is not entitled to have Plaintiff's complaint against him dismissed. Accordingly, his motion herein must be denied.

**STATEMENT OF FACTS:**

Plaintiff, in her complaint, asserts seven (7) causes of actions against Defendant Atalig, i.e., Count I (violation of her due process and equal protection rights under 42 U.S.C. § 1983), Count II (conspiracy in violation of 42 U.S.C. § 1985(3)), Count III (common law conspiracy), Count VII (intentional interference with contractual rights--

MPLA settlement agreement), Count VIII (intentional interference with economic relations–MPLA settlement agreement), Count X (intentional infliction of emotional distress) and Count XI (negligent infliction of emotional distress). The foregoing claims against Defendant Atalig arose out of the following undisputed facts, to wit:

On or about May 6th, 2005, Defendant Atalig received from the Marianas Public Lands Authority ["MPLA"] Plaintiff's Requisition FY 05-11. See Plaintiff's Complaint, ¶ 28, Exhibit "K." From May 6th, 2005 to August 8th, 2005, a period of some three (3) months, Defendant Atalig refused to allow the release of Plaintiff's requisition for further processing that would eventually have Plaintiff compensated in this case. See Plaintiff's Complaint, ¶ 31, Exhibit "N." Defendant Atalig withheld Plaintiff's requisition all the while knowing full well that he had previously released requisitions belonging to similarly situated wetland owners as that of Plaintiff which eventually had these wetland owners paid. See Plaintiff's Complaint, ¶ 39, Exhibit "V" through "CC." To further compromise himself in this case, Defendant Atalig agreed to and did release another requisition belonging to another similarly situated wetland owner as that of Plaintiff resulting in said wetland owner being paid. This happened while Plaintiff was still before the CNMI Superior Court defending her property claim in the MPLA Lawsuit, i.e., CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al., Civil Action No. 05-0332E. See Plaintiff's Complaint, ¶ 40, Exhibit "DD-1" through "DD-6."

Based on the foregoing facts and in further support of her claims against Defendant Atalig, Plaintiff then alleged further as follows:

    a.    **Count I (violation of her due process and equal protection rights under 42 U.S.C. § 1983):**

In her complaint, Plaintiff alleges that she had rights, privileges, and immunities under the due process and equal protection clauses of the Federal and NMI constitutions, including her right not be deprived of her constitutionally protected

interest in her property, i.e., U.S. Const. Amend. 5 & 14; NMI Const. Art. 1, §§ 5 & 6. See Plaintiff's Complaint, ¶ 42.[1] Plaintiff also alleged that Defendant Atalig, at all times, was a state actor and that his conducts were subject to 42 U.S.C. §§ 1983. See Plaintiff's Complaint, ¶ 43.

Plaintiff, in further support of her claim, alleged that acting under the color of law, Defendant Atalig denied Plaintiff her rights, privileges, or immunities secured to her by the Constitutions of the United States and the Northern Mariana Islands and also by Federal and NMI laws as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article 1, §§ 5 and 6 of the NMI Constitution. Specifically, Defendant Atalig (a) refused and prevented the release of Plaintiff's Requisition No. FY 05-11 that would have resulted in Plaintiff getting her land compensation;[2] (b) refused and continued to prevent the release of Plaintiff's requisition in light of his knowledge and actions in having allowed certain wetland owners similarly situated as that of Plaintiff to be fully compensated for the taking of their wetland properties no different then that of Plaintiff;[3] (c) by allowing and permitting another wetland owner, again, similarly situated as that of Plaintiff to be again fully compensated for the taking of her wetland property no different then that of Plaintiff while the lawsuit against Plaintiff was still pending with the CNMI Superior Court.[4] See Plaintiff's Complaint, ¶ 44.

Clearly, by the foregoing allegations, Plaintiff has stated a claim under 42 U.S.C. § 1983 as against Defendant Atalig.

---

[1] The "property" in question in this case is Plaintiff's land compensation as evidenced by her settlement agreement with the Marianas Public Lands Authority ["MPLA"] and also with Defendant CNMI in CNMI, DPHES v. Rosario DLG Kumagai, Civil Action No. 05-0149C ["CHC Lawsuit"]. See Plaintiff's Complaint, Exhibits "D" & "I."

[2] See Plaintiff's Complaint, ¶¶ 32 through 34; see also Exhibits "O," "P"& "Q."

[3] See Plaintiff's Complaint, ¶ 39; see also Exhibits "V" through "CC."

[4] See Plaintiff's Complaint, ¶ 40; see also Exhibit "DD."

**b.     Count II (conspiracy in violation of 42 U.S.C. § 1985(3)):**

Plaintiff, based on the actions taken against her by Defendants Pamela Brown ["Brown"] and others, also alleged conspiracy against Defendants Atalig pursuant to 42 U.S.C. § 1985(3). In support of the foregoing claim, Plaintiff sets forth in her complaint the following:

The conspiratorial purpose by Defendants Atalig, along with Defendants Brown, CDA, Ada, and BOG was to deny Plaintiff her land compensation, i.e., her property. See Plaintiff's Complaint, ¶ 48. In further support of the foregoing claim, Plaintiff alleged that the overt acts taken against her were (1) Defendant Brown instructing said Defendant Atalig not to concur with Plaintiff's requisition [i.e., FY 05-11], (2) Defendant Brown instructing CNMI Assistant Attorney General Clyde Lemons, Jr., to sign-off and forward a letter to said Defendant Atalig telling him not to concur with Plaintiff's requisition;[5] (3) Defendant Brown filing of an otherwise frivolous lawsuit before the CNMI Superior Court caption as <u>CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al.</u>, Civil Action No. 05-0332E [the "MPLA Lawsuit"];[6] (4) Defendant Brown instructing and Defendants CDA and Ada agreeing with Defendant Brown not to process Plaintiff's land compensation, i.e., Requisition No. FY 05-11.[7] See Plaintiff's Complaint, ¶ 49.

Plaintiff, in further support of the foregoing claim, also alleged that she was, at all times relevant herein, a part of a class of persons entitled to have the taking of her property compensated by Defendant CNMI as provided for under the Federal and CNMI constitutions, as well as under the CNMI PL 13-17, as amended by CNMI PL 14-29. See Plaintiff's Complaint, ¶ 51.[8]

---

[5]   See Plaintiff's Complaint, ¶ 29; see also Exhibit "L."

[6]   See Plaintiff's Complaint, ¶¶ 30 and 38; see also Exhibit "U."

[7]   See Plaintiff's Complaint, ¶ 34 ; see also Exhibit "P."

[8]   For ease of reference, copies of CNMI P.L. 13-17 and CNMI P.L. 14-29 are

Once again, Plaintiff has alleged facts in her complaint to support her § 1985(3) claim in this case against Defendant Atalig.

    c.    **Count III (common law conspiracy):**

In her complaint, Plaintiff alleges that Defendant Atalig along with Defendants Brown, CDA, Ada, and BOG, based on the facts of this case, (a) all had an object to be accomplished; (b) had an agreement to the object or course of action, to wit: to deprive Plaintiff of her rights under the constitutions and laws of the United States and the CNMI; (c) performed one or more unlawful overt acts; and (d) caused Plaintiff damages that were a direct result of those acts, all herein alleged. See Plaintiff's Complaint, ¶ 54. In furtherance of their object, Plaintiff alleges that all the conspirators (including Defendant Atalig) did two or more overt acts against Plaintiff. These overt acts included, but were not limited to, the facts outlined in Count II, supra, conspiracy under § 1985(3). See Plaintiff's Complaint, ¶ 55.

The same facts herein-discussed and alleged by Plaintiff in support of her § 1985(3) are the same facts which also supports Plaintiff's claim for common law conspiracy in this case. Again, this facts are more than sufficient to support Plaintiff's common law conspiracy claim in this case.

    d.    **Count VII (intentional interference with contractual rights--MPLA settlement agreement):**

Plaintiff, in support of this particular claim, alleged that Defendant Atalig knew or should have known that Plaintiff and MPLA had between them a legally binding and enforceable contract in the form of a settlement agreement, to wit: the MPLA Settlement Agreement.[9] See Plaintiff's Complaint, ¶ 76. Plaintiff further alleged that,

---

attached hereto and made a part hereof as Attachments "A" & "B," respectively.

[9]    See Plaintiff's Complaint, Exhibit "D."

in light of the foregoing knowledge by Defendant Atalig, said Defendant intentionally and maliciously took actions alleged herein that interfered with said MPLA Settlement Agreement and aimed at further denying Plaintiff her rights under said settlement agreement for the receipt of her land compensation. See Plaintiff's Complaint, ¶ 77. The actions taken by said Defendant Atalig have already been discussed herein vis a vis by agreeing and consenting to the withholding of Plaintiff's land compensation from being processed. Id. What is most disturbing is the fact that Defendant Atalig knew or should have known that his actions in this regards were improper and illegal. See Plaintiff's Complaint, ¶ 78.

Once again, Plaintiff in this case has alleged sufficient facts to support her claim of contractual interference by Defendant Atalig in this case.

   e.   **Count VIII (intentional interference with economic relations–MPLA settlement agreement):**

Similar to her claim for contractual interference, Plaintiff also alleged against Defendant Atalig a claim for interference of an economic relations as between Plaintiff and MPLA. As a result of the MPLA settlement agreement, said Defendant Atalig knew or should have known that Plaintiff and MPLA had between themselves an economic relation protected by law. See Plaintiff's Complaint, ¶ 81. In light of this knowledge, Defendant Atalig intentionally and maliciously took actions that interfered with said economic relations between Plaintiff and MPLA. See Plaintiff's Complaint, ¶ 82. Again, as already discussed herein, the actions taken by Defendant Atalig resulted in Plaintiff not receiving her land compensation as agreed to in this case. Id.

   f.   **Count X (intentional infliction of emotional distress):**

Plaintiff, in support of the foregoing claim, alleged that Defendants Atalig took actions intentionally and deliberately which inflicted emotional distress on Plaintiff. These actions included but were not limited to interfering with her civil, statutory and

contractual rights as herein alleged. See Plaintiff's Complaint, ¶ 91. As already discussed above, Plaintiff had a right to her property, i.e., her land compensation, which was denied her by Defendant Atalig. Id. The actions and conducts of said Defendants Atalig were extreme and outrageous, beyond any and all possible bounds of decency and utterly intolerable in a civilized community. See Plaintiff's Complaint, ¶ 92. The foregoing is particularly so given that said Defendant Atalig had previously allowed similarly situated wetland owners to be fully compensated without any actions taken against them to deny them their land compensation, i.e., their properties. See Plaintiff's Complaint, ¶ 39. To further show just how "extreme and outrageous" the actions and conducts of Defendant Atalig in this case were, Plaintiff also alleged that while defending her rights in the MPLA Lawsuit before the CNMI Superior Court [which was still pending at the time], Defendants Atalig permitted and allowed another similarly situated wetland owner no different then Plaintiff to be fully compensated without any interference from said Defendants. See Plaintiff's Complaint, ¶ 40.

### g. Count XI (negligent infliction of emotional distress):

Plaintiff, for its last claim against Defendant Atalig, alleged that said Defendant had an affirmative duty to perform his duties and responsibilities in this case towards Plaintiff in such manners as not to inflict emotional distress on Plaintiff. See Plaintiff's Complaint, ¶ 96. Plaintiff further alleged that Defendant Atalig breached his duties in this case towards Plaintiff. See Plaintiff's Complaint, ¶ 97.

The basis of this claim are the very actions and conducts that Plaintiff has alleged against said Defendant Atalig in support of her other claims herein-discuss. Id. Again, no different then her other claims against said Defendant Atalig in this case, Plaintiff has put forth a viable claim for negligent infliction of emotional distress in this case.

**ARGUMENTS:**

Plaintiff, having discussed the factual basis in support of her claims against Defendant Atalig, will now turn to the legal arguments put forth by said Defendant in his motion to dismiss in this case.

**I.   Plaintiff's First Cause of Action, Violation of 42 U.S.C. § 1983, Must be Dismissed Because Secretary Atalig is entitled to Qualified Immunity:**

**A.   Section 1983 Claims are Barred Against CNMI Officers in Their Official Capacity.**

Plaintiff could not agree more with Defendant Atalig.  In fact, this is so legally obvious that when Plaintiff drafted her complaint, she purposely did not include Defendant Commonwealth of the Northern Mariana Islands ["Defendant CNMI"] in her claims relative to § 1983.  See Plaintiff's Complaint, Counts I & II.  This Honorable Court has made the foregoing very clear.   See DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992); see also Magana v. CNMI, 107 F.3d 1436 (9th Cir. 1997).

Plaintiff, having stated the above, would respectfully note that Defendant Atalig is being sued in his personal capacity in this case.  Plaintiff's complaint makes this point very obvious and Defendant Atalig knows this as well.  Otherwise, why would Defendant Atalig be asserting a defense of "qualified immunity" in this case?

**B.   Secretary Atalig is Entitled to Qualified Immunity in his Personal Capacity:**

**1.   Qualified Immunity is Presumed and Broad in Scope:**

Qualified immunity protects a public official from personal liability if that public official can show that his or her discretionary conduct did not violate any clearly established rights of which a reasonable person should have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  If a public official "could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." Id. at 819.  Moreover, a public official is not

entitled to qualified immunity when the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. See Anderson v. Creighton, 483 U.S. 635 (1987); see also Allen v. Sakai, 48 F.3rd 1082, 1087 (9th Cir. 1994).

As would be discussed below, given the facts of this case, Plaintiff's rights to "due process" and "equal protection" relative to her wetland compensation [i.e, her "property"] should have been sufficiently clear to Defendant Atalig for him not to have done what he did in this case. Regretfully, in his motion to dismiss, Defendant attempts to justify his actions by saying that "[he] wisely complied with the request of the Acting Attorney General not to release a requisition of dubious legality until the underlying facts had been investigated and the legal basis tested[.]" See Motion to Dismiss, pg. 5, lines 4 through 6.

A reasonable person in Defendant Atalig's shoes would have, at minimum, questioned the "dubious" nature of the instruction coming down from the CNMI Office of the Attorney General for him not to process Plaintiff's requisition in this case. That is, given that the same CNMI Office of the Attorney General had previously allowed similarly situated wetland owners to be fully compensated prior to receiving Plaintiff's requisition, Defendant Atalig should have inquired as to why Plaintiff was being treated differently in this case compared to the previous wetland owners herein mentioned. See Plaintiff's Complaint, ¶ 39, Exhibits "V" through "CC." To further damage himself, Defendant Atalig participated in the releasing of another requisition to another similarly situated wetland owner during the very time that Plaintiff was before the CNMI Superior Court defending her rights to her property in against Defendants CNMI and Brown, not to mention the CNMI Office of the Attorney General. See Plaintiff's Complaint, ¶ 40, Exhibits "DD-1" through "DD-6."

There was noting "dubious" about the legality of Plaintiff's requisition nor was there any basis to investigate and test the legal basis of Plaintiff's requisition. The foregoing could not be more apparent given that, after refusing to

- 10 -

release Plaintiff's requisition for over three (3) months, the best that the CNMI Office of the Attorney General could do is file a complaint with the CNMI Superior Court wherein a "frivolous" argument is made that only wetlands associated with right of ways were compensable under CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. See Plaintiff's Complaint, ¶ 35, Exhibit "R." The same CNMI Office of the Attorney General then attempted to amend the complaint by raising another "frivolous" argument as well. See Plaintiff's Complaint, ¶ 37, Exhibit "T." Suffice to say, not only was the amended complaint stricken by the CNMI Superior Court but the original complaint was dismissed as well. See Plaintiff's Complaint, ¶ 38, Exhibit "U." This decision by the CNMI Superior Court was never appealed by the CNMI Office of the Attorney General, as Counsel for Defendants CNMI and Brown in that case, and, therefore, it is now final. The foregoing would lead a reasonable man to conclude that, if anything, the actions taken against Plaintiff as herein discussed were "dubious" at all times.

### 2. Plaintiff Must Show Violation of a Clearly Established Right:

Defendant Atalig argues that Plaintiff's complaint is not clear as to how his conduct breached Plaintiff's rights to "due process" and "equal protection" of laws. See Motion to Dismiss, pg. 5, lines 21 & 22. Defendant Atalig further argues that Plaintiff does not even attempt to demonstrate how this conduct, i.e., withholding of her requisition, constitutes a violation of any constitutional right. See Motion to Dismiss, pg. 6, lines 4 & 5. The foregoing arguments are sad and only goes further to prove just how legally wrong Defendant Atalig was in his conducts and actions towards Plaintiff in this case.

Plaintiff, in her complaint, alleges that she "[a]t all times relevant herein, . . . had rights, privileges, and immunities under the due process and equal protection clauses of the Federal and NMI constitutions, including her right not be deprived of her constitutionally protected interest in her property. U.S. Const.Amend.

5 & 14; NMI Const. Art. 1, §§ 5 & 6." <u>See</u> Plaintiff's Complaint, ¶ 42. Amendments IV and XIV to the United States Constitution, in relevant parts, state the following respectively, to wit:

> No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

<u>See</u> U.S. Const. Amend. V.

> No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws.

<u>See</u> U.S. Const. Amend. XIV.[10]

Clearly, by the foregoing constitutional provisions and as alleged in her complaint, Plaintiff has established her rights to "due process" and "equal protection" of laws in this case. In fact, to sustain her § 1983 claim in this case, Plaintiff only need to show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that [such] conduct deprived the plaintiff of a federal constitutional or statutory right." <u>See</u> <u>Wood v. Ostrander</u>, 879 F.2d 583, 587 (9th Cir. 1989), *cert. denied*, 498 U.S. 938 (1990). Here, it is undisputed that Defendant Atalig acted "under color of state law" vis a vis CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. Furthermore, in light of the above, it is also undisputed that Plaintiff does have a federally protected constitutional right in this case vis a vis her land compensation claim that came about as a result of her property having been taken by Defendant CNMI.

### 3. Plaintiff has not Shown Violation of Her Right to Due Process:

Defendant Atalig, in making the foregoing argument, appears to be

---

[10] Article I, § 5 of the CNMI Constitution states that "[n]o person shall be deprived of life, liberty or property without due process of law. Similarly, Art. I, § 6 states that "[n]o person shall be denied the equal protection of the laws. No person shall be denied the enjoyment of civil rights[.]" <u>See</u> CNMI Const. Art. I, §§ 5 & 6.