1   confusing "substantive" and "procedural" due process in this case. See e.g., Motion

2   to Dismiss, pg. 6, lines 13 & 14 [i.e., "If such and interest is found, then a court must

3   consider whether constitutionally sufficient procedures were used."]. To be clear,

4   Plaintiff's claim in this case is for "substantive" due process.

5                           The United States Supreme Court has made it clear that "[t]he

6   touchstone of due process is protection of the individual against arbitrary action of

7   government." See Daniels v. Williams, 474 U.S. 327, 331 (1986); see also Logan v.

8   Zimmerman Brush Co., 455 U.S. 422 (1981) (a federal interest remains in "protecting

9   the individual citizen from state action that is wholly arbitrary or irrational.").

10                          In the present case, Plaintiff has alleged specific facts to support

11  her claim that the conducts of Defendant Atalig in withholding her requisition that

12  would have resulted in Plaintiff finally receiving her land compensation claim were

13  wholly arbitrary and irrational. The foregoing is particularly so in light of said

14  Defendant Atalig having allowed the release of other requisitions that resulted in

15  similarly situated wetland owners getting compensated as required by law to the

16  exclusion of Plaintiff.

17                          Defendant Atalig appears to anchor or justify his actions based on

18  the actions of the CNMI Office of the Attorney General and Defendant Brown.

19  However, as made blatantly clear in Plaintiff's complaint and in this opposition, the

20  actions and conducts of the CNMI Office of the Attorney General and Defendant

21  Brown are in and off-themselves wholly arbitrary and irrational as well. Thus,

22  Defendant Atalig cannot rely on the same in trying to argue otherwise. Two "wrongs"

23  do not make a "right."

24

25          **4.     Plaintiff has not Shown Violation of Her Right to Equal Protection:**

26                          Plaintiff is at lose as to how is it possible that Defendant Atalig

27  makes the foregoing argument knowing full well the undisputed facts of this case vis

28  a vis his role in allowing similarly situated wetland owners as that of Plaintiff to be

- 13 -

compensated and, at the same time, denying Plaintiff the same privilege and protection. Given these facts, would a reasonable person in Defendant Atalig's shoes have done what he did in this case to Plaintiff? Additionally, would a reasonable person allowed another similarly situated wetland owner to be compensated knowing fully well that the Office of the Attorney General and Defendants CNMI/Brown were in the Superior Court questioning the legality of Plaintiff's wetland compensation under CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. The simple answer to the foregoing questions is "no."

It is undisputed that Plaintiff is a part of a class of people who were intended by CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, to be compensated for the taking of their properties. Further, it is also undisputed that within this class of "land claim beneficiaries," Plaintiff is a member of a limited class of landowners who owned wetlands taken by Defendant CNMI. To state a § 1983 claim for violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); see also Freeman v. City of Santa Anna, 68 F.3d 1180, 1187 (9th Cir. 1995) ("The first step in equal protection analysis is to identify the classification of groups."). Given that Plaintiff has show beyond any doubt that she was a member of an identifiable class of persons entitled to be compensated for the taking of their wetland properties but that she was treated differently then the other class members similarly situated, she has met her burden in this case. Additionally, she has met her burden of showing by her allegations that Defendant Atalig's discriminatory treatment towards her had no rational basis. See SeaRiver Mar. Fin. Holding, Inc. v. Mineta, 309 F.3d 662 (9th Cir. 2002).

In his motion to dismiss, Defendant Atalig makes the argument that Plaintiff has failed to allege facts to overcome the presumption of rationality that applies to government classification. See Motion to Dismiss, pg. 7, lines 13

- 14 -

through18. To the contrary, Plaintiff has alleged specific facts in her complaint to over such a presumption. It is Defendant Atalig who has failed in his motion to present any evidence to this Honorable Court to show that their existed a rationale basis for him and others to discriminate against Plaintiff. The burden is on Defendant Atalig to put forth evidence of rationality, not Plaintiff.

In all, Plaintiff has stated a claim in this case against Defendant Atalig for violation of her right to equal protection of laws under both the U.S. and the CNMI constitutions.

**II.     Plaintiff's Second Cause of Action Must be Dismissed as no Conspiracy has been Proved:**

Count II accuses Defendant Atalig of conspiracy pursuant to § 1985(3). In her complaint and as discussed above, Plaintiff alleges that she was a part of a class of persons entitled to be compensated under the Federal and the CNMI constitutions, as well as CNMI P.L. 13-17, as amended by CNMI P.L. 14-29. See Plaintiff's Complaint, ¶ 51. Further, in her complaint, Plaintiff further alleged the conspiratorial purpose and the various over acts committed against her in which Defendant Atalig was a part of. See Plaintiff's Complaint, ¶¶ 48 & 49. The undisputed facts of this case fully supports the foregoing allegations, facts that came about because of the actions and conducts of Defendant Atalig and others.

Now, on the question of what motivated Defendant Atalig and Defendant Brown, principally, to have done what they did in this case to Plaintiff's, the same remains to be seen. At minimum, however, Plaintiff has alleged conspiracy under § 1983. See Juyel Ashmed et al. v. Robert Goldberg, Civil Action Nos. 00-0005 & 99-0046 (consolidated), Order Granting In Part and Denying In Part Defendant Goldberg's Motion to Dismiss (NMI Dist. Ct. Nov. 14, 2000); citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) (To establish a conspiracy under § 1983, plaintiff must show "the defendant conspired with others to deprive him or her of a constitutional right;

- 15 -

1  that at least one of the co-conspirators engaged in an overt act in furtherance of the

2  conspiracy; and that the overt act injured plaintiff.").[11]

3

4  **III.    All of Plaintiff's Commonwealth Law Claim Against Secretary Atalig Must be Dismissed:**

5

6  **A.    Secretary Atalig is Protected by Sovereign Immunity in his Official Capacity:**

7  Defendant Atalig is not the CNMI government and, therefore,

8  sovereign immunity does not apply to him in his personal capacity.  In fact, Defendant

9  Atalig admits the foregoing when, in his motion to dismiss, he notes that

10 "[s]pecifically, the government  cannot be liable for any claim based upon an act or

11 omission . . . based upon the exercise or performance . . . [of] a discretionary function

12 . . . whether or not the discretion is abused."  See Motion to Dismiss, pg. 8, line 24,

13 and pg. 9, lines 1 & 2; citing 7 CMC § 2204(a); see also He, Guo Quiong v. CNMI, et

14 al., Civil Action No. 99-268B, Order Denying Defendants' Motion to Dismiss (CNMI

15 Superior Court, Oct. 25th, 2000).

16 Plaintiff, having stated the above, would argue to this Honorable

17 Court that, to the extent that sovereign immunity is an issue in this case vis a vis

18 Defendant Atalig in his official capacity with respect to the tort claims against him,

19 then the same has been waived pursuant to 7 CMC § 2202(a).  In other words, in his

20 official capacity, Defendant Atalig can be held liable up to $100,000.00 on all of

21 Plaintiff's tort claims against him.  Id.  Given that Defendant Atalig was fully aware

22 of the disbursement agreement in this case and chose to violate the same by his

23 conduct, he can be found liable in this case.  See Plaintiff's Complaint, ¶ 21, Exhibit

24 "C."  By said disbursement agreement, any discretion that Defendant Atalig had was

25

26 [11]    See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (in

27 order to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding between civilian and officers

28 to deprive plaintiff of her rights).

- 16 -

1  confined to issues relative to whether or not Plaintiff in this case owed money to the

2  CNMI government.  As it turned out, Plaintiff did owe money for her medical bills as

3  a kidney dialysis patient at the Commonwealth Health Center ["CHC"] and, therefore,

4  a lawsuit was filed against her to collect the same by Defendant CNMI.  See Plaintiff's

5  Complaint, ¶ 24, Exhibit "F."  This lawsuit was eventually settled and, as such, there

6  existed no reason, legal or otherwise, for Defendant Atalig to further withhold the

7  release of Plaintiff's requisition in this case.

8

9         **B.    Secretary Atalig is Protected by Absolute Immunity in his Personal
              Capacity:**

10

11              Defendant Atalig, in this argument, admits that "[a]ll of the

      Commonwealth law claims asserted against Secretary Atalig in his personal capacity
12
      are tort law claims."  See Motion to Dismiss, pg. 9, lines 14 & 15.[12]  Defendant Atalig,
13
      relying on § 895D(3) & (3)(a) of Restatement (Second) of Torts, argues to this
14
      Honorable Court that he is somehow entitled to absolute immunity in this case in his
15
      personal capacity.  See Motion to Dismiss, pg. 9, lines 15 through 22.  Other then
16
      mentioning that Defendant Atalig was performing a "discretionary function," said
17
      Defendants fails utterly to put anything more to support his claim of absolute
18
      immunity.   In fact, a careful review of § 895D as a whole and the comments
19
      thereafter clearly shows that Defendant Atalig is not entitled to absolute immunity.
20
              Section 895D(3)(a) states that "[a] public official acting within the
21
      general scope of his authority is not subject to tort liability for an administrative act
22
      or omission if (a) he is immune because engaged in the exercise of a discretionary
23
      function[.]"  See Restatement (Second) of Torts, § 895D(3)(a).  Comment g (Scope
24
      of official authority) states, in relevant parts, the following:
25

26              [12]     This admission is highly relevant in light of Defendant Atalig's argument that he

27      is entitled to sovereign immunity. As previously discuss, given 7 CMC § 2202(a), Defendant
        Atalig may be held liable to Plaintiff in this case to the tune of $100,000.00 for each of the
28      tort claims by Plaintiff against him.

1

2

3

4

"An immunity protects an officer only to the extent that he is acting in the general scope of his official authority. When he goes entirely beyond it and does an act that is not permitted at all by that duty, he is not acting in his capacity as a public officer or employee and he has no more immunity than a private citizen."

5

6

7

8

9

10

11

12

See Restatement (Second) of Torts, § 895D(3)(a), Comment g. The comments goes on to further state that "[t]he scope of an officer's liability in tort may be broadened or restricted by legislative action." See Restatement (Second) of Torts, § 895D(3)(a), Comment i (Legislative modifications). In fact, as an example, 42 U.S.C. § 1983 (1970) is cited. Id. Given the undisputed facts of this case that Defendant Atalig clearly acted outside the scope of his official authority and given further that § 1983 renders said Defendant's § 895D(3)(a) argument baseless, it is necessary now to turn to case laws on this issue.

13

14

15

16

17

18

19

20

21

22

23

24

25

Although state officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." See Burns v. Reed, 500 U.S. 478, 486-87 (1991). "[A]n official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs." See Anderson v. Boyd, 714 F.2d 906, 908 (9th Cir. 1983); see also Kalina v. Fletcher, 522 U.S. 118, 127 (quoting Forrester v. White, 484 U.S. 219, 229 (1988) (courts looks at "the nature of the function performed, not the identity of the actor who performed it."). In line with the foregoing is the legal requirement that the official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question. See Buckely v. Fitzsimmons, 509 U.S. 259, 269 (1993); see also Burns, 500 U.S. at 486-87.[13]

26

27

28

[13]     It is submitted that Defendant Atalig is neither a prosecutor, a judge, much less a public official performing any function intimately associated with the judicial process. The function he was legally required to perform in this case was an administrative one vis a vis concur with Plaintiff's requisition after ensuring that Defendant CNMI is paid for what Plaintiff

1               As mentioned above, other then stating that Defendant Atalig

2  performed discretionary function, said Defendant does not put forth anything more to

3  support his claim for absolute immunity. The reason being, none exist. As a matter

4  of law, said Defendant is not entitled to the same. At minimum, he is entitled to

5  assert qualified immunity for his actions and conducts in this case. But, again, as

6  already discussed herein, said Defendant Atalig is not even entitled to qualified

7  immunity given the facts of this case and the laws.

8               In all, Defendant Atalig reliance on Restatement (Second) of Torts

9  § 895D(3) & (3)(a) cannot save the day for him because the same cannot be used to

10  thwart § 1983 remedies available to Plaintiff in this case. See e.g., Howlett v. Rose,

11  496 U.S. 356, 376-77 (1990) & Felder v. Casey, 487 U.S. 131, 139 (1988) ("[W]e

12  have held that a state law that immunizes government conduct otherwise subject to

13  suit under § 1983 is preempted . . . because the application of the state law would

14  thwart the congressional remedy . . . which of course already provides certain

15  immunities for state officials."). This is also the rule laid-out by the Ninth Circuit. See

16  e.g., Sosa v. Hiraoka, 920 F.2nd 1451, 1460 n. 3 (9th Cir. 1990) (noting that the

17  Supreme Court has "held that state law immunities have no force against § 1983 suits

18  where the state law immunity purports to provide immunity 'over and above those

19  already provided in § 1983'[.]").[14]

20

21  **IV.**    **Plaintiff's Claim of Common law Conspiracy Must be Dismissed as this Cause of Action is not Recognized in the Commonwealth:**

22

23               Plaintiff, in the interest of judicial economy, would respectfully ask that

    this Honorable Court to refer to her arguments above-state in Part II of the foregoing

24

25

26  owed for her medical bills as a kidney dialysis patient at CHC.

27       [14]   Pursuant to 7 CMC § 3401, Defendant Atalig relies on Restatement (Second)

28  of Torts § 895D(3) & (3)(a). Accordingly and for purposes of the immunity discussion herein, said § 895D(3) & (3)(a) is a CNMI law, i.e., a state law.

1    opposition. As state therein, at minimum, Plaintiff has alleged conspiracy under §

2    1983. See Juyel Ashmed et al. v. Robert Goldberg, Civil Action Nos. 00-0005 & 99-

3    0046 (consolidated), Order Granting In Part and Denying In Part Defendant Goldberg's

4    Motion to Dismiss (NMI Dist. Ct. Nov. 14, 2000); citing Askew v. Millerd, 191 F.3d

5    953, 957 (8th Cir. 1999) (To establish a conspiracy under § 1983, plaintiff must show

6    "the defendant conspired with others to deprive him or her of a constitutional right;

7    that at least one of the co-conspirators engaged in an overt act in furtherance of the

8    conspiracy; and that the overt act injured plaintiff."); see also Adickes v. S.H. Kress

9    & Co., 398 U.S. 144, 152 (1970) (in order to satisfy color of state law requirement

10    under civil conspiracy theory, plaintiff need only have shown that there was an

11    understanding between civilian and officers to deprive plaintiff of her rights). So,

12    while civil conspiracy may not be recognized in the Commonwealth, it is recognized

13    under the federal system and by § 1983.

15    **V.    Plaintiff's Claims for Intentional Interference with a Contract and with Economic Relations Must be Dismissed:**

16

17        Defendant Atalig argues that Plaintiff's claim for intentional interference

18    with her settlement agreement with MPLA (Count VII) and with her economic

19    relationship with MPLA (Count VIII) are fatally flawed. See Motion to Dismiss, pg. 10,

20    lines 14 through 19. The reasons put forth by said Defendant are his unfounded

21    claims of sovereign immunity and also [disturbingly] his assertion that Plaintiff failed

22    to allege improper interference. For the following reasons, the foregoing argument

    must fail.

23

24

25    **A.    Secretary Atalig in his Official Capacity is Protected by Sovereign Immunity:**

26        Again, respectfully, Plaintiff would ask this Honorable Court to

27    refer to her arguments herein with respect to this issue of sovereign immunity as set

28    forth in Part III(A) above. Based on said arguments, it is clear that Defendant Atalig

1
2
3
is not entitled to sovereign immunity pursuant to 7 CMC § 2202(a), at least to the tune of $100,000.00 for each tort claim being made by Plaintiff against him in this case.

4
5
6

**B.    These Claims Against Secretary Atalig in his Personal Capacity Must be Dismissed for Failure to Allege Improper Interference.**

7
8
9
10
11
Defendant Atalig, aside from asserting that Plaintiff's claims herein are not properly pled, also asserts again the issue of absolute immunity.  Again, for reasons of judicial economy, Plaintiff would again respectfully ask that this Honorable Court refer to her arguments on the issue of absolute immunity as set forth in Part IIIB above.

12
13
14
15
16
17
18
19
20
21
Now, turning to the argument that Plaintiff did not properly plea her claims herein, Plaintiff would respectfully brings to the attention of this Honorable Court ¶¶ 78 (Count VII) and 83 (Count VIII) of her complaint.  Therein, it is specifically stated that Defendant Atalig's interference was not only "improper" but were also "illegal."  It is also worth noting that the actions of Defendants Brown as well as CDA, Ada, and BOG are all attributable to Defendant Atalig as a co-conspirator in this case.  By her allegations in her complaint, Plaintiff has put Defendant Atalig on notice as to the "impropriety" and the "illegality" of his actions and conducts in this case towards Plaintiff.  For Defendant Atalig to argue otherwise is disturbing in light of the specific allegations by Plaintiff in her complaint against him.

22
23

**VI.    Plaintiff's Claim for Intentional and Negligent Infliction of Emotional Distress Must be Dismissed:**

24
25

**A.    The Negligent Infliction of Emotional Distress Claim must be Dismissed Because Plaintiff Fails to Allege Bodily Harm and Because Secretary Atalig Behavior was Reasonable:**

26
27
28
Defendant Atalig, citing Restatement (Second) of Torts § 313(1)(a) & (b), argues that this claim by Plaintiff is defective as it fails to allege that Plaintiff suffered any actual illness or bodily harm.  See Motion to Dismiss, pg. 12, lines 4

1 through 10.

2          In her complaint, Plaintiff alleged that "[a]s a direct and proximate
3 cause of the negligent conducts and actions of said Defendants [which includes
4 Defendant Atalig], Plaintiff has suffered and will continue to suffer emotional distress
5 such as severe, continuous headaches, pain, anguish, emotional trauma,
6 embarrassment, and humiliation." See Plaintiff' Complaint, ¶ 98. In light of the
7 specific facts alleged by Plaintiff in her complaint, to wit: Defendant Atalig allowing
8 other similarly situated wetland owners to be compensated but not Plaintiff, Defendant
9 Atalig continuing to deny Plaintiff her property, Plaintiff being a kidney-dialysis patient
10 awaiting a kidney transplant to save her life, Plaintiff being on a waiting-list for a
11 kidney transplant which requires substantial financial need, Plaintiff's debt to CHC,
12 Plaintiff being sued in the CNMI Superior Court, and Defendant Atalig again allowing
13 another similarly situated wetland owner to be compensated while Plaintiff is before
14 the CNMI Superior Court fight for her right to her property, to list a few, can it be said
15 that Plaintiff [at trial] will not be able to prove that Defendant Atalig's conducts and
16 actions caused her bodily harm. That is, does "it appear beyond doubt that plaintiff
17 can prove no set of facts in support of [her] claim which would entitled [her] to
18 relief[?]" See Parks Sch. Of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.
19 1995). There is no question that, based on the facts of this case, Plaintiff at trial will
20 be able to prove that Defendant Atalig caused her severe and continuous headaches,
21 pain, anguish, and emotional trauma.

22          Defendant Atalig further argues that Plaintiff does not allege that
23 his conduct was unreasonable. See Motion to Dismiss, pg. 12, lines 11 through 13.
24 In response to the foregoing argument, Plaintiff would simply say that the facts of this
25 case relative to Defendant Atalig's conducts and actions, as specifically alleged by
26 Plaintiff in her complaint, say otherwise. For said Defendant to argue that what he did
27 to Plaintiff in this case is not unreasonable only further prove and support all of
28 Plaintiff's claims against him in this case in that it shows just how ill-will Defendant

1  Atalig was against Plaintiff.

2

3        **B.**      **The Intentional Infliction of Emotional Distress Claim must be Dismissed Because Secretary Atalig's Conduct was not Extreme and Outrageous:**

4

5        Defendant Atalig argues that his conducts and actions in this case

6 were not extreme and outrageous. In other words, what he did was exercise his

7 discretion to delay his concurrence in a requisition that was of dubious legality. See

8 Motion to Dismiss, pg. 13, lines 9 & 10. Again, the only things "dubious" in this case

9 are the actions and conducts of all the Defendants being sued herein and that of the

10 CNMI Office of the Attorney General.

11        The undisputed facts of this case speak for themselves. Defendant

12 Atalig cannot attempt to hide from these facts by only arguing about his own illegal

13 conduct and actions. Aside from having to atone to his own conducts and actions in

14 this case towards Plaintiff, Defendant Atalig must also atone to having consented and

15 agreed to join in on the illegal conducts and actions of the other co-conspirators

16 specifically named in this case. The fact of the matter is that Plaintiff has alleged

17 specific facts against Defendant Atalig that should and must not be accepted or

18 tolerated in a civilized society. One does not enter into a settlement agreement as a

19 result of a court action only to turn around and, by a lawsuit, claim that the subject-

20 matter of the same settlement agreement is void as a matter of law in a futile attempt

21 to deny one's right to her property pursuant to laws and by a settlement agreement.

22 One does not withhold a person's property, under color of law, without any legal basis

23 only to turn around and allow other similarly situated wetland owners to be fully

24 compensated all the while still refusing the same privilege and right to the same person

25 whose property is being withheld. In other words, one must not abuse his official

26 position at the expense of another person in a civilized society. Defendant Atalig is

27 guilty in all respect in this case for having done what he did to Plaintiff and for having

28 consented and agreed with others to further harm Plaintiff in this case.

1    Plaintiff will, at trial, be able to prove just out outrageous and extreme
2   Defendant Atalig's conduct in this were towards Plaintiff.   And, as a result of the
3   same, Plaintiff suffered.   See Parks Sch. Of Business, Inc. v. Symington, 51 F.3d
4   1480, 1484 (9th Cir. 1995).

5

6                                    CONCLUSION:

7    For all the foregoing reasons herein stated, Plaintiff respectfully ask that this
8   Honorable Court denies the motion to dismiss in this case by Defendant Atalig.

9

10    Dated this the _____ day of January, 2006.

11

12                                                    Respectfully Submitted:

13

14

15                                                    Brien Sers Nicholas, Esq.
16                                                    Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28