LAW OFFICE OF
**VICENTE T. SALAS**
ATTORNEY AT LAW
2nd Floor, UIU Building
P.O. BOX 501309
SAIPAN, MP 96950-1309
Tel:    (670) 234-37455/234-7427
Fax:   (670) 234-7256

F I L E D
Clerk
District Court

JAN 2 6 2006

For The Northern Mariana Islands
By_____
       (Deputy Clerk)

*Attorney for:* Defendants
      Commonwealth Development Authority
      and Maria Lourdes S. Ada

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ROSARIO DLG. KUMAGAI,<br><br>Plaintiff,<br><br>vs.<br><br>**PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN,** personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; **FERMIN M. ATALIG,** personally and in his official capacity as the Secretary of Finance; **COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS; MARIA LOURDES SEMAN ADA,** personally and in her official capacity as the Executive Director for the Commonwealth Development Authority; **COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM;** and **JOHN DOES ONE through TEN,**<br><br>Defendants. | Civil Action No. 05-00037<br><br>**COMMONWEALTH DEVELOPMENT AUTHORITY AND MARIA LOURDES S. ADA'S REPLY TO PLAINTIFF'S OPPOSITION / CERTIFICATE OF SERVICE**<br><br>Date:   February 09, 2006<br>Time:  9:00 a.m.<br>Judge: Hon. Alex R. Munson |

Come Now the defendants, Commonwealth Development Authority (CDA) and Maria Lourdes S. Ada (Ada), by and through their counsel, and hereby file their reply to the opposition memorandum filed by plaintiff herein.

  I.    **BOND PROJECT FUNDS NOT MPLA'S FUNDS UNTIL RELEASED FROM BANK OF GUAM (BOG) TRUST FUND**

         A.    Land Compensation Fund is not the same as the Bond Project Fund held in trust by BOG pursuant to Indenture of Trust.

**ORIGINAL**

      Public Law 13-17, enacted by the Commonwealth on July 23, 2002, was amended by P.L. 13-25, 13-39, 13-56 and 14-29. Attachment "A" of plaintiff's opposition memorandum (hereinafter "opposition"). Collectively, these laws formed the "Bond Authorization Act" within the meaning of the General Obligation Bond Act (G.O. Bond Act), Public Law No. 11-3, as codified in 4 CMC §§10451-10466. The combination of these two Acts authorized CDA "..for and in the name and on behalf of the Commonwealth, at the request and after consultation with the Mariana Public Lands Authority (MPLA) to issue in one or more series up to $40,000,000.00 in principal amount of general obligation bonds of the Commonwealth for the purpose of completing the acquisition of various parcels of real property through funding the retirement of land compensation claims against the Commonwealth for land taking by eminent domain or other legal process." § 2 of P.L. 13-39, repealing and reenacting § 3 of P.L. 13-17, as amended by PL 13-25. The bonds were issued and "..are backed by the full faith and credit of the Commonwealth and are a debt of the Commonwealth. § 4 (e), P.L. 13-17.

      One of the major misconceptions in the facts surrounding this lawsuit is plaintiff's misunderstanding of § 4 (a) of Public Law 13-17. Because of this misunderstanding, plaintiff reasons in her opposition that she has an interest in the bond project fund because "..the 'so-called bond project fund' is the same as that of the 'Land Compensation Fund' provided for under CNMI P.L. 13-17..." This is clearly wrong, of course. The Land Compensation Fund is not the "bond project fund." It is a fund established within the Department of Finance "..to pay principal and interest on any financing entered into by the Marianas Public Lands Authority for the financing of the retirement of land compensation claims against the Commonwealth as authorized by this Act." § 4 (b), P.L. 13-17. In this case, the MPLA financing is the CDA issued $40,000,000.00 General Obligation Bonds, Series 2003A.

      The funds to be paid into the Land Compensation Fund are derived from CNMI liquid fuel taxes and aviation taxes. See § 5, P.L. 13-17, which amended Subsection

(e) of 4 CMC § 1803. Notwithstanding this payment of specific taxes into the Land Compensation Fund, the payment of principal and interest on the bonds by the Commonwealth, because the bonds are backed by the full faith and credit of the Commonwealth, are payable from all general fund revenues. See 4 CMC § 1803 (e)(ii).

B. Pursuant to Indenture of Trust, MPLA has no right to funds in MPLA Account except as permitted by Indenture.

Pursuant to § 3.02 of the Indenture (Attachment "A" to Motion to Dismiss), all funds in the "project fund" are held in trust by BOG and applied as required or permitted by the terms of such instrument. CDA and Ada have previously argued in their initial memorandum that pursuant to § 3.02, "before any payment is made from the MPLA Account by the Trustee, the Authority (CDA) shall cause to be filed with the Trustee a written requisition of the MPLA..." The conditions for release to MPLA of any requisitioned funds from the MPLA Account of the Project Fund must be as specifically adhered to for the following reasons:

a. the bonds are general obligation bonds which are secured by the full faith and credit of the Commonwealth and therefore payable from all general fund revenues of the Commonwealth (See § 4.01 of Indenture)

b. CDA has contracted, on behalf of the Commonwealth, with all owners of bonds to secure the full and final payment of the interest on and principal of all bonds authorized, executed, issued and delivered hereunder (See § 1.02 of Indenture)

c. any funds left over in the Project Fund Account after the projects are certified complete shall be transferred to the Bond Payment Fund (for the benefit of the bondholders) (See § 3.02 last ¶)

d. moneys in the Project Fund, among others, shall be invested by BOG in Permitted Investments and any interest, income or profits from such investments shall be deposited in the Bond Payment Fund (See ¶ 4.06 of the Indenture)

e. the Commonwealth is obligated to punctually pay the interest and principal of the Bonds in strict conformity with the terms of the Bonds and of the Indenture (See § 5.01 of Indenture)

f. CDA will preserve and protect the security of the Bonds and the rights of the Owners, and will warrant and defend their

           rights against all claims and demands of all persons (See § 5.05 of Indenture)

    g.    CDA on behalf of the Commonwealth will use its best efforts to preserve the benefits of the law to the bondholders (See § 5.07 of Indenture)

    h.    the Commonwealth and CDA will comply with the law so as to not adversely affect the security for the payment of the Bonds (See § 5.09 of the Indenture)

    I.    the Commonwealth and CDA will adopt, make, execute and deliver any and all such further instruments and assurances as may be reasonably necessary or proper to carry out the intention or to facilitate the performance of this Indenture, and for better assuring and confirming unto the Owners of the Bonds of the rights and benefits provided in this Indenture (See § 5.10 of the Indenture)

    j.    in the event of a declaration of default for nonpayment of interest and principal on any bonds all money in the funds and accounts provided for in this Indenture shall be applied by the Trustee first to the payment of costs and expenses of Trustee in the default proceedings and then to the redemption for bondholders (See §§ 8.01 and 8.02 of the Indenture)

Finally, in addition to the foregoing, § 10.02 of the Indenture specifically excludes MPLA under the Indenture. Such section is reprinted below in its entirety:

    Section 10.02  <u>Benefits of Indenture Limited to Parties</u>.

    Nothing in this Indenture, expressed or implied, is intended to give to any person other than the Commonwealth, the Authority, the Trustee, the Paying Agent and the Owners any right, remedy or claim under or by reason of this Indenture. Any covenants, stipulations, promises or agreements in this Indenture contained by and on behalf of the Authority, the Commonwealth or any legislator, official (elected or appointed), member, officer, or employee thereof shall be for the sole and exclusive benefit of the Trustee and the Owners.

In *Proskauer Rose Goetz & Mendelsohn v. National Westminster Bank*, 179 A.D. 2d 611, (N.Y. App. Div., 1st Div. 1992) a similar indenture of trust provision was upheld for fees sought by plaintiff against Westminster, the trustee bank. Citing, the relevant provision, the court held that even if the fees being sought were authorized by the city council, plaintiff has no rights or standing to assert any claim to proceeds directly against

1  Bank.  MPLA, in this case, clearly has no standing to assert any claim or right pursuant to
2  the Indenture against CDA, Ada, BOG or the Commonwealth.

## II. DUTY OF CDA, ADA AND CNMI TO PROTECT BOND FUNDS

### A. The Nature of Municipal Tax-exempt General Obligation Bonds; First Charge on General Fund and Waiver of Sovereign Immunity.

As shown by the listing herein of relevant provisions from the Indenture, CDA, Ada and the Commonwealth are obligated to protect the rights and interests of bondholders pursuant to the Indenture. This is clearly emphasized in the key provisions found in the G.O. Bond Act, 4 CMC §§ 10451 through 10466. In § 10460, for example, the full faith and credit of the Commonwealth is pledged along with an explicit waiver of sovereign immunity allowing any bond holder to sue the Commonwealth for payment of principal and interest from any moneys in the General Fund (or any specific revenues pledged therefor) and, if such moneys are insufficient, to compel the Commonwealth to raise funds sufficient therefor by any means not prohibited by the Constitution of the Commonwealth. The language of such provision and the fact that CDA (and Ada) are authorized pursuant to § 10459 of the same Act to enter into any contracts, subject only to certain specific limitations, for and on behalf of the Commonwealth in connection with, or incidental to the issuance of such bonds amply demonstrate CDA's involvement and authority over funds held in trust by BOG. More specifically, CDA is authorized to invest in securities or obligations described as permissible in the Indenture, without limitation by § 10459 (a), "..proceeds of bonds and any moneys set aside and pledged to secure payment of the bonds or any of the contracts entered into pursuant to this section..." § 10459©.

The foregoing dispels plaintiff's argument that CDA and Ada had no authority over the funds in the trust accounts held by BOG pursuant to the Indenture. Interestingly, although plaintiff has steadfastly alleged in its pleadings and argued in its opposition to defendants' motion that CDA and Ada had no authority over the funds in BOG, a key component of their allegations of violations of due process and equal protection

is that CDA and Ada have approved disbursements from BOG for similarly situated wetland property owners. Plaintiff cannot have it both ways. If CDA and Ada had no authority then they were not acting under color of law.

It is also important to point out at this juncture that plaintiff has not properly plead a violation of equal protection. In all her pleadings, plaintiff has alleged that she is a member of a class of wetland property owners.[1] However, nowhere in her pleadings has she alleged that it is because of this suspect classification that she is being deprived of her constitutional rights. Therefore, she cannot point to any fact that shows that she belongs to a suspect class that needs to be protected under the U. S. and CNMI constitutions and applicable laws.

The foregoing also amply demonstrates that plaintiff is absolutely incorrect in asserting that CDA is not an "arm of the state" for purposes of 42 U.S.C. § 1983 liability. Pursuant to P.L. 11-3, the G.O. Bond Act, and P.L. 13-17, as amended, the Bond Authorization Act, CDA has issued bonds and has obligated the Commonwealth and the General Fund to phenomenally severe potential state liability. Moreover, it has, through the G.O. Bond Act, pledged the full faith and credit of the CNMI and waived the CNMI's sovereign immunity.

B. <u>According to undisputed facts, CDA, Ada and the Commonwealth have acted properly in withdrawing the MPLA requisition.</u>

CDA and Ada, when notified by the CNMI Attorney General's Office that a lawsuit to prevent the disbursements to plaintiff and Victoria Nicolas would be filed by the CNMI, acted properly pursuant to their duties and obligations under the Indenture to withdraw the filing of the requisition with BOG. In order to avoid being sued as a defendant in the lawsuit, CDA and Ada agreed in writing with the AG's Office to not submit the requisition to BOG until the lawsuit was resolved. This approach by CDA, Ada and the

---

[1] It is not clear whether plaintiff is alleging that the suspect class that she belongs to is all property owners in the CNMI who have been deprived of their lands or just those who are wetland property owners.

Commonwealth was lawful and had been previously utilized in *CNMI, Ex Rel. Pamela Brown, Attorney General v. MPLA, et al.,* CSC, Civil Action No. 04-0563C. Such a lawsuit to prevent any improper disbursement from the trust account which may jeopardize repayment to the bondholders is a foreseeable part of the process. It is extremely noteworthy to point out at this time that the original language of P.L. 13-17, § 4 © which stated that the Commissioner of MPLA shall have expenditure authority over the Fund (the Land Compensation Fund) was subsequently amended by P.L. 13-39 by deleting said provision and adding language to allow for CDA to issue general obligation bonds. Included in that amendment was language under § 4 (d) which allowed for the transfer of bond proceeds to MPLA for the purpose of paying out land compensation claims. In that particular amendment, the Commissioner of MPLA had expenditure authority over the funds in the MPLA account established for the bond proceeds. See P.L. 13-39. Public Law 13-56, however, changed this entire landscape when it amended § 4 (d) and required the bond proceeds, after all fees, commissions, credit enhancement and other expenses have been paid, to be retained by BOG in the trust accounts subject to disbursements pursuant to the terms of the Indenture. See § 3.02 of the Indenture. While the Commissioner of MPLA, subject to approval of claims by the Board, still had expenditure authority over such trust funds, these funds were additionally subject to the terms contained in § 3.02 of the Indenture.

### III.   MPLA SETTLEMENT AGREEMENT

Under the foregoing agreement (Exhibit D to the complaint), there was no mention of the requisition process which MPLA had to undergo prior to paying the land compensation to the claimant. However, the facts show that MPLA knew of this requisition process and consciously did not make it a pertinent part of the agreement.[2] In addition,

---

[2] It is not clear whether or not plaintiff knew of this process and how it could involve time delays before she could receive payment on her land compensation. However, the facts show that she did not receive her money in May, 2005, at the time the settlement was executed and she transferred title to the CNMI Government. This delay may have been perfectly acceptable to plaintiff given that she had been waiting for her land compensation since November, 1993 when the government first condemned her land. Exhibit A to the complaint.

1  MPLA knew and acquiesced to the process which included a requirement that the requisition
2  be routed through CDA and that under the Indenture only CDA can instruct BOG to release
3  the money from the trust account.
4       CDA and Ada, in believing that nothing was amiss, initially routed the
5  requisition to BOG.  However, when notified in writing of the potential legal problems by
6  the AG's Office, it notified BOG immediately that it was withdrawing its submission of the
7  requisition due to the AG's concerns raised in their letter. This action was not impermissible
8  under any law and was within the authority of CDA and Ada.  In addition, the fact that the
9  AG's office was involved hoisted a giant flag on the matter because issues involving the
10 CNMI's full faith and credit and its waiver of sovereign immunity were pushed to the
11 forefront. CDA and Ada chose to withdraw its filing of the requisition only temporarily. In
12 its agreement with the AG, it specifically stated that it would not approve of the filing of the
13 requisitions until the final resolution of the lawsuit being filed by the CNMI. Exhibit S to the
14 complaint. Such actions certainly belay the point that there was no evil motive or reckless
15 and grossly negligent behavior.
16      Kumagai was paid after her part of the lawsuit was resolved thereby
17 showing that CDA and Ada were keeping their part of the bargain.
18      Wherefore, for the foregoing reasons, the defendants motion to
19 dismiss should be granted and the plaintiff should not be granted any relief pursuant to their
20 complaint.

Dated this 26th day of January, 2006.

                              Respectfully Submitted By:

                              **LAW OFFICES OF VICENTE T. SALAS**

_/s/ Vicente T. Salas_
VICENTE T. SALAS, CNMI Bar #F0126
Attorney for the Defendants Commonwealth
Development Authority and Maria Lourdes
S. Ada, personally and in her official capacity
as the Executive Director for the
Commonwealth Development Authority

9

## CERTIFICATE OF SERVICE

I, VICENTE T. SALAS, hereby certify that on this 26th day of January, 2006, I have caused true and correct copies of the foregoing ***Commonwealth Development Authority and Maria Lourdes S. Ada's Reply to Plaintiff's Opposition and Certificate of Service*** to be served upon the following counsel via personal delivery:

Victorino DLG. Torres, Esq.
3rd Floor, Bank of Guam Bldg.
Garapan Village
Saipan, MP 96950
*Counsel for defendant Bank of Guam*

G. Patrick Civille, Esq.
Civille and Tang
Cabrera Center, Chalan LauLau
Saipan, MP 96950
*Counsel for defendants the
Commonwealth and Pamela Brown*

Kevin A. Lynch, Assistant Attorney General
CNMI Attorney General's Office
Department of Labor, Afetnas Square Bldg.
Saipan, MP 96950
*Counsel for defendant Fermin M. Atalig*

Brien Sers Nicholas Esq.
Attorneys At Law
1st Floor, UIU Building
P.O. Box 502876
San Jose, Saipan, MP 96950
*Counsel for Plaintiff Rosario DLG. Kumagai*

Dated: January 26, 2006.

VICENTE T. SALAS, CNMI Bar #F0126