Benjamin L. DeMoux
Assistant Attorney General
Office of the Attorney General-Civil Division
2nd Floor, Juan A. Sablan Memorial Bldg.
Caller Box 10007
Saipan, MP 96950
Telephone: 664-2341
Fax: 664-2349
bendemoux@gmail.com
Attorney for Fermin M. Atalig personally and in his official capacity.

F I L E D
Clerk
District Court

JAN 2 6 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI,<br><br>Plaintiff,<br><br>v.<br><br>PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; FERMIN M. ATALIG, personally and in his official capacity as Secretary of Finance; COMMONWEALTH OF THE NOTHERN MARIANA ISLANDS; MARIA LOURDES SEMAN ADA, personally and in her official capacity as Executive Director for the Commonwealth Development Authority, COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM; and JOHN DOES ONE thru TEN.<br><br>Defendants. | CIVIL ACTION NO. 05-0037<br><br>**REPLY TO OPPOSITION TO MOTION TO DISMISS**<br><br>Date: February 9, 2006<br>Time: 9 a.m.<br>Judge: Hon. Alex R. Munson |

NOW COMES defendant Fermin H. Atalig, (hereinafter "Secretary Atalig" or "the Secretary"), personally and in his official capacity as the Secretary of Finance for the Commonwealth of the Northern Mariana Islands and replies to plaintiff's opposition to his motion to dismiss all portions of plaintiff's complaint that are directed at him in this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I. <u>Plaintiff's First Cause of Action, Violation of 42 U.S.C. § 1983, Must be Dismissed</u>

    A. *Section 1983 Claims are Barred against CNMI Officers in their Official Capacity*

Plaintiff admits in her opposition that Secretary Atalig may not be sued in his official capacity as Secretary of Finance for violation of 42 U.S.C. § 1983 and alleges that it was never her intention to do so. Unfortunately, as the complaint named Secretary Atalig both personally and in his official capacity and the individual causes of action in the complaint do not specify whether they apply only to the Secretary personally, or in his official capacity, or both, the Secretary was forced to raise this issue out of an abundance of caution. The Secretary appreciates plaintiff's clarification of the complaint.

    B. *The Plaintiff's Right to Substantive Due Process was not Violated*

Substantive due process, as a cause of action, is narrow in scope. In the Ninth Circuit, a substantive due process claim can be sustained only if the plaintiff can show that the government's behavior deprived them "of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles,* 173 F. 3d 867, 871, (9th Cir. 1998), *citing, U.S. v. Salerno,* 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). Therefore, to establish such a claim "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Id.* However, simply meeting this threshold is not enough, as, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id* at 871 n.4, *quoting, Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Indeed, the Ninth Circuit has held that "the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited." *Squaw Valley Development Corp. v. Goldberg,* 375 F. 3d 936, 949 (9th Cir. 2004), *quoting, Armendariz v. Penman,* 75 F.3d 1311, 1318-19 (9th Cir. 1996). In

addition, the Ninth Circuit has held that "there is no general liberty interest in being free from capricious government action." *Id, quoing, Nunez*, 147 F.3d. at 873.

The initial step in consideration of a substantive due process claim is a determination what specific right is being asserted. *Reno v. Flores*, 507 U.S. 292, 301-302, 113 S. Ct. 1439, 1447 (1993). In this case, all that is alleged against the Secretary is that he delayed his approval of a payment in satisfaction of a takings claim while the propriety of that claim and the law under which it was paid were investigated, even though the Secretary allegedly knew or should have known that other people similarly situated had not had their claims so delayed.[1] (Notably, the documentation provided by MPLA to Secretary Atalig did not state that Ms. Kumagai's land compensation was for wetlands and did not state that it did not involve a right of way. See plaintiff's Complaint at Exhibit K). There is nothing "shocking" in these prudent actions.

Formulated one way, plaintiff's claim could be regarded as a deprivation of property or other economic claim and under Ninth Circuit precedent, such claims are not usually regarded as implicating substantive due process. *Squaw Valley*, 375 F. 3d at 949. Of course, such claims are routinely brought as violations of the right to *procedural* due process, but plaintiff stated clearly in her opposition that: "Defendant Atalig, in making the foregoing argument [this apparently refers to the section of the Secretary's opening memorandum concerning procedural due process], appears to be confusing 'substantive' and 'procedural' due process in this case....To be clear, Plaintiff's claim in this case is for 'substantive' due process." *Opposition* at pg. 13. Unfortunately for plaintiff, her "substantive" due process claim simply is not cognizable under a deprivation of property right theory.

Considered another way, plaintiff may be asserting that the Secretary acted arbitrarily and capriciously in delaying her claim, when he had allowed others to go forward. Unfortunately for plaintiff, this theory also does not fit under the rubric of substantive due

---

[1] Plaintiff was eventually paid, and she does not claim that the compensation she received was inadequate.

process because, "there is no general liberty interest in being free from capricious government action." *Squaw Valley,* 375 F. 3d at 949 *Id, quoting, Nunez,* 147 F.3d. at 873.

Finally, plaintiff might be arguing that it was unfair to single her out and that the Secretary and others acted maliciously in doing so. This is analogous to a claim of malicious prosecution. Unfortunately again for plaintiff: "Both the Supreme Court and the First Circuit have held that there is no substantive due process right to be free from malicious prosecution." *Esteras v. Diaz,* 266 F. Supp. 2d 270, 280, *citing, Albright v. Oliver,* 510 U.S. 266, 275, 114 S. Ct, 807, (1994) and *Meehan v. Town of Plymouth,* 167 F.3d 85, 88. *Accord, Awabdy v. City of Adelanto,* 368 F. 3d 1062, 1069 (9th Cir. 1994). However framed, plaintiff has failed to allege conduct that would constitute a violation of her right to substantive due process and the portion of her first cause of action based on this principle should be dismissed.

C. *Plaintiff's Right to Equal Protection was not Violated*

Plaintiff also describes her first cause of action as a claim for violation of her right to equal protection. This apparently arises from her contention that the government officials in this case, particularly the Attorney General's office, appear to have decided that payment of plaintiff's land claim was illegal and moved to stop it, even though they were supposedly aware that others similarly situated had already been compensated.

If this differential treatment were based on some suspect classification, it might require close scrutiny. However, because plaintiff has not alleged discrimination based on any suspect classification, (like race, gender, ethnicity, etc.) her equal protection claim is subject only to rational basis scrutiny. *See Nelson v. City of Selma,* 881 F. 2d 836, 838-839 (9th Cir. 1989). Plaintiff also "bears the burden of proving that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Thornton v. City of St. Helens,* 425 F. 3d 1158, 1167 (9th Cir. 2005).

### 1. Pursuit of a Test Case is not Irrational

Plaintiff first attempts to meet her burden of showing irrationality by arguing that it is inherently irrational for the Secretary to delay her compensation when he knew that others similarly situated had not had their compensation so delayed. This is a rather odd proposition, because it certainly *does* seem rational that a public official, faced with numerous instances of potential lawbreaking, might opt to select one or two individuals to test the validity and scope of the law in question rather than taking on the burden of prosecuting them all. Should the official prevail, then he or she could move to wider enforcement. On the other hand, should the official prove to be overreaching, at least he or she will have only involved a few people, and not every person who might potentially be involved, thereby reducing the burden on the citizenry. In short, it is not irrational to elect to pursue a test case.[2]

Furthermore, it is not a violation of equal protection that plaintiff became the subject of a test case. "The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Bock Associates v. Chronister*, 951 F. Supp. 969 (D. Kan. 1996), *quoting, Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Indeed, "[s]elective enforcement without malicious intent may be justified when a test case is needed to clarify a doubtful law." *Id, citing, Mackay Telegraph Co. v. Little Rock,* 250 U.S. 94, 100, 39 S.Ct. 428, 430-31, 63 L.Ed. 863 (1919). That Ms. Kumagai was the subject of a test case is unfortunate for her, but it is not a violation of her right to equal protection.

Rather plaintiff is a classic example of someone seeking to have the law go unenforced against her because it has gone unenforced against others. Unfortunately for her, this is not something she has any right to because:

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you

---

[2] It should be noted that the Secretary is not a party to the "test case," *CNMI ex rel Pamela Brown, Attorney General, v. MPLA, Victoria S. Nicholas and Rosario DLG Kumagai,* Civ. Act. 05-0332, and is not named as a defendant in the "malicious prosecution" claim in the instant matter.

think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere…

*Futernick v. Sumptner Township*, 78 F. 3d 1051, 1056, (6th Cir. 1996). In sum, plaintiff has entirely failed to meet the pleading requirements for a claim under 42 U.S.C. § 1983 and her claim should therefore be dismissed.

### 2. Pursuit of the Litigation Against Plaintiff was not Irrational

Plaintiff also attempts to prove irrationality by arguing that the attempt to apply the relevant law to her in the first place was irrational, because she was clearly entitled to compensation under the law.[3] The law in question is referred to as the "Land Compensation Act" and consists primarily of Commonwealth Public Law 13-17, as amended by PL 14-29.

Under PL 13-17, the Land Compensation Act of 2002, MPLA was directed to first compensate those with claims arising from the acquisition of private lands for right of way purposes. After those claims had been paid, MPLA was then directed to compensate for those claims involving the acquisition of private land for the purpose of constructing public ponding basins. Finally, after both of the other kinds of claims were paid, PL 13-17 directed MPLA to pay for wetland and other claims.

The enactment of PL 14-29 removed the priority scheme established in PL 13-17. Specifically, PL 14-29 §(1) amended PL 13-17 §4(e) to read as follows:

> In implementing this Act, the Marianas Public Land Authority shall compensate the acquisition of private lands for right of way purposes, including but not limited to public road construction, construction of ponding basins, wetland, and other claims involving private land acquisition permitted by applicable laws.

---

[3] Despite plaintiff's claim that "[i]t is undisputed that Plaintiff is in the class of people who were intended by CNMI P.L. 13-17, as amended by CNMI P.L. 14-29," this fact is disputed *Opposition* at 14. In fact, the complaint that was filed in *CNMI ex rel Pamela Brown, Attorney General, v. MPLA, Victoria S. Nicholas and Rosario DLG Kumagai*, Civ. Act. 05-0332, stated that: "The properties of Nicholas and Kumagai are 100% wetland properties…Neither property was taken for the purpose of the right of way…Land Compensation Act Funds cannot be used to compensate the landowners for properties taken unrelated to right of ways…The authorizations…issued for these landowners are void." Exhibit R to plaintiff's Complaint at ¶¶ 23-25, 27.

1  The Attorney General has argued in the CNMI Superior Court case that this law should be read to limit payment of claims out of the Land Compensation Fund ("the Fund") to those arising from construction of rights of way, but to put all such claims on equal footing. Ms. Kumagai, on the other hand, wanted to read a semi-colon, (that does not exist), into the statute between the phrases "including but not limited to public road construction" and "construction of ponding basins, wetland, and other claims...," thereby creating a right to compensation out of the Fund for all takings regardless of its purpose. Of course, the question of which side is right is not before this Court, but, given the language of the law, it certainly is rational to think that a wetland claim not arising from a right-of-way might not be compensable from the Fund and that a challenge to payment of such a claim might be warranted. Plaintiff has failed to allege irrational conduct that would constitute a violation of her right to equal protection and has failed to allege any conduct that would violate her right to substantive due process. Therefore, her first cause of action should be dismissed in its entirety.

D.  *Secretary Atalig is Entitled to Qualified Immunity in his Personal Capacity*

That said, even if the Court were to find that the Secretary did violate some constitutional right of the plaintiff, plaintiff may still not recover from the Secretary under Section 1983 because he is entitled to qualified immunity. In determining whether a plaintiff may overcome qualified immunity and pursue a Section 1983 cause of action against a government official in his personal capacity, the initial, threshold inquiry is two-fold: whether the facts show that a constitutional right was violated and, if so, whether that right was clearly established. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). The Secretary has already demonstrated that no constitutional right was violated, and a finding in favor of the defendant on that question cuts-off further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

In addition, the plaintiff has not proven that the right she seeks to enforce was clearly established. A right is clearly established, "when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Camarillo v. McCarthy*, 998 F. 2d 638, 640 (9th Cir. 1993), *citing, Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted).

Unfortunately, the plaintiff has not only not proven that the right she is asserting is clearly established, she has not even specifically stated what the right is. Instead, she has relied on quoting the applicable portions of the Fifth and Fourteenth Amendment, as if this were enough. Apparently, plaintiff believes that the mere existence of these clauses puts every government official in the country on notice of every behavior that would implicate them. If she were right, we could just do away with qualified immunity altogether, because the general right to due process and equal protection is well established, and qualified immunity only applies where such a right is violated, but the right is not clearly established. Then courts could simply impose liability wherever the conduct complained of is determined to be a violation of those rights. Fortunately, our law requires more. Plaintiff has not demonstrated that the right she's asserting is clearly established and so, even if she were to prove that this right, (whatever it might be), were violated, the Secretary would still be entitled to qualified immunity.

II.     Plaintiff's Second Cause of Action Must be Dismissed

Plaintiff's second cause of action arises under 42 U.S.C. § 1985(3), which allows a claim "against those who *conspire* to obstruct justice, or to deprive any person of equal protection or the privileges and immunities provided by the Constitution." *Jaco v. Bloechle*, 739 F. 2d 239, 245 (6th Cir. 1984) (emphasis in original). To prevail on such a claim, a plaintiff must show, among other things, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action..." *Bray v. Alexander Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753, 758 (1993). Plaintiff in this case

has made no such allegation. Recognizing this, plaintiff now seeks a backdoor amendment of her complaint, by arguing that she has made a case for conspiracy under Section 1983. Unfortunately for her, a court should not assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the…laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983). This claim is inadequate as pleaded and must be dismissed.

III.   All of Plaintiff's Tort Claims Against Secretary Atalig Must be Dismissed

    A.   *Secretary Atalig is Protected by Sovereign Immunity in his Official Capacity*

In his opening memorandum, the Secretary argued that he was entitled to sovereign immunity for all of the tort claims brought against him in his official capacity because the government cannot be liable for any claim "based upon an act or omission…based upon the exercise or performance…[of] a discretionary function…whether or not the discretion is abused." 7 CMC § 2204(a). The concurrence of the Secretary of Finance is necessary under P.L. 14-29(1)(c) before the Trustee (the Bank of Guam) can release funds to an individual whom MPLA has determined should be compensated. This is clearly a discretionary function and plaintiff does not argue otherwise in her opposition. As all the tort claims in this case are based on the exercise of a discretionary function, Secretary Atalig, in his official capacity, is immune from tort liability on these claims.

    B.   *Secretary Atalig is Protected by Absolute Immunity in his Personal Capacity*

In his opening memorandum, the Secretary also argued that he was immune from all the tort law claims in his personal capacity, because, "a public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if…he is immune because engaged in the exercise of a discretionary function." RESTATEMENT (SECOND) OF TORTS § 895D(3) & (3)(a). Plaintiff attempts to rebut this argument by citing a

number of authorities on the separate and irrelevant-in-this-context question of Section 1983 immunity and by arguing that the Secretary was not acting within the scope of his authority. Given the undisputed facts that Secretary Atalig was the Secretary of Finance at the relevant time, that as Secretary of Finance he was charged under P.L. 14-29 with reviewing requisitions for payment from the Land Compensation Fund, and that plaintiff's lawsuit concerns in part the supposed improper delay by the Secretary in performing this function, plaintiff's argument that the Secretary was acting outside his official capacity is baseless.

IV.   The Rest of Plaintiff's Tort Claims should be Dismissed

The Secretary has reviewed the remainder of plaintiff's opposition and finds it, to put it mildly, unconvincing. Therefore, on these claims, the Secretary will simply refer the Court to his opening memorandum.

CONCLUSION

For the reasons foregoing, and for the reasons set forth in Secretary Atalig's opening memorandum, plaintiff's claims against Secretary of Finance Fermin M Atalig should be dismissed under FRCP 12(b)(6).

Date: January 26, 2005.

Respectfully submitted,
OFFICE OF THE ATTORNEY GENERAL

By: _____
Benjamin L. DeMoux
Assistant Attorney General