*ORIGINAL*

FILED
Clerk
District Court

FEB 2 1 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  BRIEN SERS NICHOLAS
   Attorney at Law
2  UIU Bldg., 1st Floor
   P.O. Box 502876
3  Saipan, MP 96950

4  Telephone Nos.:    (670) 235-7190/91
   Facsimile No.:      (670) 235-7192
5
   Attorney for Plaintiff
6      Rosario DLG Kumagai

7                    IN THE UNITED STATES DISTRICT COURT
                                        FOR
8                        THE NORTHERN MARIANA ISLANDS

9
   ROSARIO DLG KUMAGAI,                    ]    CIVIL ACTION NO. 05-0037
10                                          ]
                Plaintiff,                  ]
11                                          ]
        vs.                                 ]
12                                          ]
   PAMELA BROWN, a.k.a. PAMELA             ]
13 BROWN BLACKBURN, personally            ]
   and in her official capacity as the    ]
14 Attorney General for the               ]
   Commonwealth of the Northern           ]
15 Mariana Islands;                       ]    PLAINTIFF'S OPPOSITION TO MOTION
   FERMIN M. ATALIG, personally           ]    TO DISMISS BY DEFENDANTS CNMI
16 and in his official capacity as the    ]    AND BROWN
   Secretary of Finance,                  ]
17 COMMONWEALTH OF THE                    ]
   NORTHERN MARIANA ISLANDS;              ]
18 MARIA LOURDES SEMAN ADA,               ]
   personally and in her official capacity]
19 as the Executive Director for the      ]
   Commonwealth Development               ]
20 Authority;                             ]    Dated:    March 6th, 2006
   COMMONWEALTH DEVELOPMENT               ]    Time:     9:00 a.m.
21 AUTHORITY;                             ]    Judge:    Hon. Alex R. Munson
   BANK OF GUAM;                          ]              Chief Judge
22 and JOHN DOES ONE thru TEN,            ]
                                           ]
23                Defendants.              ]
                                           ]
24 _____           ]

25        COMES NOW ROSARIO DLG KUMAGAI, as Plaintiff herein, by and through her

26 Counsel, Brien Sers Nicholas, Attorney at Law, and opposes the motion to dismiss

27 having been filed in this case by Defendants Commonwealth of the Northern Mariana

28 Islands ["Defendant CNMI"] and Pamela Brown ["Defendant Brown"].  In support of

1  the foregoing opposition, Plaintiff states and argues the following:

2

3                    **STANDARD FOR A RULE 12(b)(6):**

4      Rule 12(b) of the Federal Rules of Civil Procedure, in relevant parts, states the

5  following:

6              Every defense, in law or fact, to a claim for relief in any
               pleading, whether a claim, counterclaim, cross-claim, or
7              third-party claim, shall be asserted in the responsive
               pleading thereto if one is required, except that the following
8              defenses may at the option of the pleader be made by
               motion[.]

9

10  See Fed. R. Civ. Pro. 12(b)(6).

11      This Honorable Court, in considering a Rule 12(b)(6) motion, is required to

12  accept all allegations of material facts as true and construe them in the light most

13  favorable to Plaintiff. See Argabright v. United States, 35 F.3d 474 (474) (9th Cir.

14  1994). A Rule 12(b)(6) motion is proper only where there is either a "lack of a

15  cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

16  legal theory. See DOE I, et al. v. THE GAP, INC., et al., Case No. CV-01-0031, Order

17  Re: Motion to Dismiss Plaintiffs' First Amended Complaint (NMI Dist. Ct. Oct. 29th,

18  2001); citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988);

19  see also Parks Sch. Of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.

20  1995) ( Rule 12(b)(6) motion proper if "it appear beyond doubt that plaintiff can prove

21  no set of facts in support of [her] claim which would entitled [her] to relief[.]")

22      As would be seen below, based on the relevant laws and the facts of this case,

23  Plaintiff's complaint does state claims against both Defendants CNMI and Brown.

24  Accordingly, their motion herein must be denied.

25

26                        **STATEMENT OF FACTS:**

27      Plaintiff, in her complaint, asserts several causes of action against Defendants

28  CNMI and Brown separately and jointly. Specifically, Plaintiff's claims are as follows:

A.    With respect to Defendant CNMI, they are for "abuse of process" (Count IV), for "malicious prosecution" (Count V),[1] for "breach of duty of good faith and fair dealing" (Count VI); for "intentional infliction of emotional distress" (Count X); and for "negligent infliction of emotional distress" (Count XI); and

B.    With respect to Defendant Brown, they are for "violation of 42 U.S.C. § 1983 vis a vis Plaintiff's due process and equal protection" (Count I), for "violation of 42 U.S.C. § 1985(3) vis a vis conspiracy" (Count II), for "common law conspiracy"(Count III), "abuse of process" (Count IV), for "malicious prosecution" (Count V),[2] for "intentional interference with contractual rights (MPLA Settlement Agreement)" (Count VII), for "intentional interference with economic relations (MPLA Settlement Agreement)" (Count VIII), for "intentional infliction of emotional distress" (Count X); and for "negligent infliction of emotional distress" (Count XI).

The foregoing claims against Defendants CNMI and Brown arose out of the following undisputed facts as alleged in Plaintiff's complaint in this matter, to wit:

On or about May 6th, 2005, Defendant Fermin M. Atalig ["Defendant Atalig"] received from the Marianas Public Lands Authority ["MPLA"] Plaintiff's Requisition FY 05-11.[3] See Plaintiff's Complaint, ¶ 28, Exhibit "K." From May 6th, 2005 to August 8th, 2005, a period of some three (3) months, Defendant Atalig refused to allow the

---

[1]    Plaintiff stands corrected. It is true that the lawsuit herein-mentioned against Plaintiff, i.e., CNMI ex rel Pamela Brown, Attorney General, v. MPLA, et. al., Civil Action No. 05-0332E, was not a criminal one but rather a civil case. Be that as it may, given the facts of this case as alleged by Plaintiff and the relevant laws, Plaintiff has stated a claim for "wrongful use of civil proceeding." Plaintiff stands ready to amend her complaint to correctly state the corrected label of her claim.

[2]    See fn. 1 above.

[3]    Plaintiff's Requisition No. FY 05-11 came about as a result of her having entered into a settlement agreement with MPLA for the acquisition of her wetland property. See Plaintiff's Complaint, ¶ 22, Exhibit "D." Defendant Atalig received Plaintiff's requisition pursuant to the draw-down and disbursement procedure established pursuant to CNMI PL 13-17, as amended by CNMI PL 14-29, by and between MPLA and Defendant CNMI through the Department of Finance. See Plaintiff's Complaint, ¶ 21, Exhibit "C." This procedure was approved by Defendants Brown and Atalig.

- 3 -

release of Plaintiff's requisition for further processing. Defendant Atalig's refusal resulted in Plaintiff not receiving her compensation in a timely manner as set forth in the disbursement procedure herein mentioned. See Plaintiff's Complaint, ¶ 31, Exhibit "N." Based on information and belief, Defendant Atalig's refusal to release Plaintiff's requisition was because Defendant Brown had instructed him not to release the same. Coupled with this instruction to Defendant Atalig was also Defendant Brown's further instruction to Clyde Lemons, Jr., an Assistant Attorney General, for him to instruct Defendant Atalig not to release Plaintiff's requisition in this case. See Plaintiff's Complaint, ¶ 29, Exhibit "L."

Defendant Brown did all of the above knowing full well (1) that Defendant CNMI had earlier sued Plaintiff for her unpaid medical bills at the Department of Public Health and Environmental Services [i.e., CHC Lawsuit], (2) that said lawsuit had been settled with Defendant CNMI agreeing to have Plaintiff receive one-half (½) of her land compensation, (3) that Defendant Brown herself signed the settlement agreement to that effect. See Plaintiff's Complaint, ¶ 24 (Exhibit "F"); see also ¶ 26 (Exhibit "I").[4]

Moreover, Defendants CNMI and Brown withheld Plaintiff's requisition all the while knowing full well that they had previously released requisitions belonging to similarly situated wetland owners as that of Plaintiff which eventually had these wetland owners paid. See Plaintiff's Complaint, ¶ 39, Exhibit "V" through "CC." To further compromise themselves in this case, said Defendants CNMI and Brown further

---

[4]    To further show just how outrageous the conducts of Defendants CNMI and Brown towards Plaintiff were in this case, said Defendants acknowledged in the settlement agreement [i.e., CHC Settlement Agreement] the following:

(i)    "[T]he parties have conducted an investigation into the facts and the law underlying the claims asserted in the Action and have concluded that a settlement of such claims according to the terms set forth below is in their respective best interests."

(ii)    "[They] further agree not to object, obstruct, or in any way hinder the disbursement of the remaining funds of approximately $79,704.10 held by MPLA to Defendant [i.e., Mrs. Kumagai]." Id.

Defendants CNMI and Brown did just the opposite when they sued Plaintiff for the second (2nd) time in the CNMI Superior Court [the MPLA Lawsuit]. See Plaintiff's Complaint, Exhibit "R."

1  agreed to and did release another requisition belonging to another similarly situated

2  wetland owner as that of Plaintiff resulting in said wetland owner being paid.  This

3  happened while Plaintiff was still before the CNMI Superior Court defending her

4  property claim in the MPLA Lawsuit, i.e., <u>CNMI ex rel Pamela Brown, Attorney</u>

5  <u>General, v. MPLA, et. al.</u>, Civil Action No. 05-0332E. <u>See</u> Plaintiff's Complaint, ¶ 40,

6  Exhibit "DD-1" through "DD-6."

7        In light of the foregoing facts, Defendant CNMI and Brown now seek to having

8  Plaintiff's claims based on said facts dismiss pursuant Rule 12(b)(6).

9

10                          **ARGUMENTS:**

11     **A.    Federal Claims:**

12            **1.    42 U.S.C. § 1983:**

13                    **a.    Claim barred against CNMI officers in their official capacity:**

14            A review of Plaintiff's § 1983 claim [Count I] clearly shows that

15  Defendant CNMI was not named therein.  Consequently, said claim does not cover

16  Defendant Brown in her official capacity.  Much the same as Defendant Atalig,

17  Defendant Brown is being sued in her personal capacity under § 1983 by Plaintiff. <u>See</u>

18  <u>DeNieva v. Reyes</u>, 966 F.2nd 480 (9th Cir. 1992); <u>see also</u> <u>Magana v. CNMI</u>, 107 F.3d

19  1436 (9th Cir. 1997).

20                    **b.    Failure to allege a constitutional violation:**

21            Defendants CNMI and Brown claim that Plaintiff has failed to allege any

22  constitutional violations in this case.  In support of their argument, said Defendants

23  basically state that, at most, Plaintiff's claim is for breach or interference with her

24  contractual right to compensation under the Settlement Agreement with MPLA. <u>See</u>

25  Motion to Dismiss, pg. 5, lines 4 to 14.  The foregoing clearly ignores other relevant

26  allegations made by Plaintiff in her complaint in support of her claim.  As will be

27  discussed below, the facts alleged by Plaintiff clearly showed that there were indeed

28  constitutional violations committed against Plaintiff in this case vis a vis the handling

1 and treatment of her claim by Defendants CNMI and Brown as compared to the other

2 similarly-situated wetland owners who got compensated without any lawsuit being

3 filed against each of them.    Interestingly enough, it is worth noting that both

4 Defendants CNMI and Brown appear to concede that Plaintiff's does have a "property

5 interest" under her Settlement Agreement with MPLA in this case.[5]

6                      i.      **No Due Process Violation:**

7             Defendants CNMI and Brown, consistent with their limited view of

8 Plaintiff's claim vis a vis § 1983, argue that said claim should be dismissed because

9 it is one for a breach of contract, citing Gannett Fleming West, Inc. v. Village of Angel

10 Fire, 375 F. Supp. 2d 1104 (D.N.M. 2004).

11             Plaintiff, with all due respect, will not belabor the point above-alluded to.

12 That is, Plaintiff's § 1983 claim involves more then just a breach of her Settlement

13 Agreement with MPLA.  Said claim focuses more on how said claim was handled and

14 treated by Defendants CNMI and Brown in light of their handling and treatment of land

15 compensation claims by other similarly-situated wetland owners.  To be clear, it is the

16 handling and the treatment of her claim by both Defendant CNMI and Brown that gave

17 rise to Plaintiff's § 1983.

18             As alleged and made very clear, by law, Plaintiff had a right to "due

19 process" in the handling of her wetland compensation claim.  That is, her claim should

20 not have been subjected to "wholly arbitrary and irrational actions" by both Defendant

21 CNMI and Brown.  See Daniels v. Williams, 474 U.S. 327 (1986); see also Logan v.

22 Zimmerman Brush Co., 455 U.S. 422 (1981).  Plaintiff, in support of her § 1983

23 claim, has allege sufficient facts to support the same in that her claim was subjected

24 to "wholly arbitrary and irrational actions" of both Defendants CNMI and Brown.  See

25 Plaintiff's Complaint, ¶¶ 39, 40 & 44.  Plaintiff has met her burden.

26

27             [5]       It need not be mentioned that, aside from her Settlement Agreement with
28 MPLA, Plaintiff also had a settlement agreement with Defendant CNMI as a result of the CHC
Lawsuit.  See Plaintiff's Complaint, ¶ 26, Exhibit "I."

1

**ii.    Taking Claim not Actionable:**

2        Again, consistent with this line of argument, Defendants CNMI and Brown

3    further argues that Plaintiff's wetland claim is not only time-barred but is also

4    premature, citing Jama Const. v. City of Los Angeles, 938 F.2d 1045 (9th Cir. 1991).

5    See Motion to Dismiss, pg. 6. The foregoing argument, again, completely ignores

6    other undisputed facts alleged by Plaintiff in this case as well as the relevant laws in

7    place, i.e., CNMI Public Law 13-17, as amended by CNMI Public Law 14-29.[6]

8        First, Plaintiff's § 1983 claim came about as a result of the Settlement

9    Agreement with MPLA. The Settlement Agreement was entered into on May 5th,

10   2006. See Plaintiff's Complaint, Exhibit "D." Plaintiff filed her complaint with this

11   Honorable Court on November 9th, 2006. Therefore, how can it be said that Plaintiff's

12   claim is time barred? Additionally, there is no assumption of any sort that the 1993

13   letter from then Governor Lorenzo I. Deleon Guerrero was other then a "taking" in the

14   constitutional sense. CNMI Public Law 13-17, as amended by CNMI Public Law 14-

15   29, specially states the following:

16            For purposes of this Act, land owners shall receive just
             compensation based on the fair market value of the land at
17            the time of taking by the Commonwealth which is the dated
             when the Governor or other authorized government official
18            certifies in writing the need for the acquisition of the private
             land. (Emphasis added).
19
     See CNMI Public Law 14-29, § 1(b). As the Attorney General charged and duty-bound
20
     (under oath) to uphold CNMI's laws, Defendant Brown knew of the foregoing. In fact,
21
     this Honorable Court need not look any further then to examine the settlement
22
     agreements attached to Plaintiff's complaint herein to note that this argument by
23
     Defendants CNMI and Brown has no basis. In all, there is no statute of limitation issue
24
     in this case.
25
             Second, and again, Plaintiff's § 1983 claim in this case arose out of the
26

27
             6    For ease of reference, copies of said CNMI Public Laws 13-17 and 14-29 are
28   attached hereto as Attachments "A" & "B," respectively.

1  handling and the treatment she received relative to her Settlement Agreement with
2  MPLA in light of the other similarly-situated wetland owners.  In light of said
3  Settlement Agreement, Plaintiff did not need to avail herself of having to go through
4  any "administrative hearings" in this case.  See CNMI Public Law 13-25, § 3.[7]  In
5  other words, Plaintiff did not have to exhaust any state remedies in this case and,
6  therefore, the reliance by Defendants CNMI and Brown on Jama Const. v. City of Los
7  Angeles, 938 F.2d 1045 (9th Cir. 1991) is not warranted in this case.

8          Third, citing Article III (Full Settlement and Release) of the Settlement
9  Agreement with MPLA, Defendants CNMI and Brown argues that Plaintiff's claim is
10 barred by the same. See Motion to Dismiss, pg. 7. In response, the obvious need not
11 be stated.   Neither Defendants CNMI or Brown are parties to said Settlement
12 Agreement with MPLA. Further, Plaintiff's § 1983 claim is not against MPLA to begin
13 with but, rather, it is against Defendant Brown in her personal capacity.  Again,
14 Plaintiff has met her burden in this case.

15          **iii.    No equal protection violation:**

16          Plaintiff, in response to this argument by Defendants CNMI and Brown,
17 would respectfully incorporates her arguments in response to the same argument by
18 Defendant Atalig in his motion to dismiss. That is, the undisputed facts alleged by
19 Plaintiff in this case is that she was a part of a class of people who were intended by
20 CNMI P.L. 13-17, as amended by CNMI P.L. 14-29, to be compensated for the taking
21 of their properties by Defendant CNMI. Further, it is also undisputed that within this
22 general class of "land claim beneficiaries," Plaintiff was a member of a limited class
23 of landowners who owned wetlands taken by Defendant CNMI. To state a § 1983
24 claim for violation of the Equal Protection Clause, "a plaintiff must show that the
25 defendants acted with an intent or purpose to discriminate against the plaintiff based

26

27

28     [7]     For ease of reference, a copy of CNMI Public Law 13-25 is attached hereto as
       Attachment "C."

- 8 -

1    upon membership in a protected class." See Lee v. City of Los Angeles, 250 F.3d

2    668, 686 (9th Cir. 2001); see also Freeman v. City of Santa Anna, 68 F.3d 1180,

3    1187 (9th Cir. 1995) ("The first step in equal protection analysis is to identify the

4    classification of groups."). Given that Plaintiff has show beyond any doubt that she

5    was a member of an identifiable class of persons entitled to be compensated for the

6    taking of her wetland property and that she was treated differently then the other class

7    members  similarly situated, she has met her burden in this case.

8         Further, given that this is a motion to dismiss, this Honorable Court can make

9    a safe inference that there was no rationale basis to discriminate against Plaintiff in

10   this case.  Aside from compensating similarly situated wetland owners prior to

11   Plaintiff's compensation claim coming to their attention, Defendants CNMI and Brown

12   had earlier also compensated another similarly situated wetland owners. See Plaintiff's

13   Complaint, ¶ 39.  Thereafter, when Plaintiff's claim came to their attention, said

14   Defendants refused to allow the same to go through and, instead, sued her in the

15   MPLA Lawsuit.  To further complicate matters for them, while Plaintiff was fighting

16   for her compensation in the CNMI courts, Defendants CNMI and Brown allowed

17   another similarly-situated wetland owner to be fully compensated with any interference

18   for them. See Plaintiff's Complaint, ¶ 40. In light of the foregoing, can it be said that

19   there was a rational basis for Defendants CNMI and Brown to have done what they did

20   to Plaintiff in this case?  Plaintiff thinks not.  As such, Plaintiff has again met her

21   burden of showing by her allegations that the discriminatory treatments that she

22   received at the hand of Defendants CNMI and Brown had no rational basis whatsoever.

23   See Sea River Mar. Fin. Holding, Inc. v. Mineta, 309 F.3d 662 (9th Cir. 2002).

24              **c.    Section 1983 claim is barred by qualified immunity:**

25              Defendant Brown argues that she is entitled to qualified immunity in this

26   case.  To the contrary, the facts and the relevant laws say otherwise.

27              Qualified immunity protects a public official from personal liability if that

28   public official can show that his or her discretionary conduct did not violate any clearly

1  established rights of which a reasonable person should have known.  See Harlow v.

2  Fitzgerald, 457 U.S. 800, 818 (1982). If a public official "could be expected to know

3  that certain conduct would violate statutory or constitutional rights, he should be made

4  to hesitate; and a person who suffers injury caused by such conduct may have a cause

5  of action." Id. at 819. Moreover, a public official is not entitled to qualified immunity

6  when the contours of the right are sufficiently clear that a reasonable official would

7  understand that what he or she is doing violates that right.    See Anderson v.

8  Creighton, 483 U.S. 635 (1987); see also Allen v. Sakai, 48 F.3rd 1082, 1087 (9th

9  Cir. 1994).

10       As would be discussed below, given the facts of this case, Plaintiff's

11  rights to "due process" and "equal protection" relative to her wetland compensation

12  [i.e, her "property"] should have been sufficiently clear to Defendant Brown for her not

13  to have done what she did in this case. Specifically, in her complaint, Plaintiff alleges

14  that she "[a]t all times relevant herein, . . . had rights, privileges, and immunities under

15  the due process and equal protection clauses of the Federal and NMI constitutions,

16  including her right not be deprived of her constitutionally protected interest in her

17  property. U.S. Const. Amend. 5 & 14; NMI Const. Art. 1, §§ 5 & 6." See Plaintiff's

18  Complaint, ¶ 42. Amendments IV and XIV to the United States Constitution, in

19  relevant parts, state the following respectively, to wit:

20           No person shall . . . be deprived of life, liberty, or property,
             without due process of law; nor shall private property be
21           taken for public use, without just compensation.

22  See U.S. Const. Amend. V.

23           No State shall . . . deprive any person of life, liberty, or
             property, without due process of law; nor deny to any
24           person within its jurisdiction the equal protection of laws.

25  See U.S. Const. Amend. XIV.[8]

26  _____

27       [8]    Article I, § 5 of the CNMI Constitution states that "[n]o person shall be deprived
    of life, liberty or property without due process of law. Similarly, Art. I, § 6 states that "[n]o
28  person shall be denied the equal protection of the laws. No person shall be denied the

1
2
3
4
5
6
7
8
9
10
11

Defendant Brown, as the Attorney General, cannot claim not to have known of the foregoing rights in favor of Plaintiff. A reasonable person in Defendant Brown's shoes would have known that her actions towards Plaintiff in this case were legally wrong. That is, in light of having previously allowed similarly situated wetland owners to be compensated before Plaintiff, not to mention further allowing another wetland owner to be compensated after Plaintiff but all the while denying Plaintiff her "property," Defendant Brown cannot now attempt to escape from her own wrong doings in this case. The undisputed facts of this case and legal authorities clearly shows that Defendant Brown is not entitled to qualified immunity. Simply put, Defendant Brown did not have the "discretion" to violate Plaintiff's rights in this case.

12

**d. Section 1983 claim barred by absolute immunity:**

13
14
15
16
17
18
19
20
21
22
23

Defendant Brown, relying cases from both the 2nd and the 9th Circuits, claims absolute immunity in this case for her actions against Plaintiff. These cases are clearly distinguishable from this present case and, therefore, have no relevance. Further, without any specificity from her that can be deemed to meet her burden, vis a vis what functions she performed, Defendant Brown makes her claim to absolute immunity solely on the basis that "[the allegations in the Complaint relate to [her] actions undertaken in her official capacity as the Attorney General of the Commonwealth. . . . [and] . . . [her] actions during litigation of the case filed by the CNMI against Plaintiff in the Commonwealth Superior Court, Civil Action No. 05-332E[.]" See Motion to Dismiss, pg. 10, lines 15 to 18. The foregoing is not legally sufficient to warrant absolute immunity in this case on the part of Defendant Brown.

24
25
26

Although state officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in

27
28

enjoyment of civil rights[.]" See CNMI Const. Art. I, §§ 5 & 6.

1   the exercise of their duties." See Burns v. Reed, 500 U.S. 478, 486-87 (1991). "[A]n

2   official derives the appropriate degree of immunity not from his or her administrative

3   designation but by the function he or she performs." See Anderson v. Boyd, 714 F.2d

4   906, 908 (9th Cir. 1983); see also Kalina v. Fletcher, 522 U.S. 118, 127 (quoting

5   Forrester v. White, 484 U.S. 219, 229 (1988) (courts looks at "the nature of the

6   function performed, not the identity of the actor who performed it."). In line with the

7   foregoing is the legal requirement that the official seeking absolute immunity bears the

8   burden of demonstrating that absolute immunity is justified for the function in

9   question. See Buckely v. Fitzsimmons, 509 U.S. 259, 269 (1993); see also Burns,

10  500 U.S. at 486-87.

11              In the present case, the mere fact that Defendant Brown was the

12  Attorney General at the time she violated Plaintiff's rights does not entitle her to

13  absolute immunity as a matter of law in this case. A review of her functions relative

14  to Plaintiff's claim also leads to the same conclusion. That is, by law, she was

15  charged to collect money owed by Plaintiff to Defendant CNMI, which she did by filing

16  the CHC Lawsuit. See Plaintiff's Complaint, ¶¶ 24 to 26. Thereafter, Defendant

17  Brown withheld Plaintiff's compensation for no legal reason or justification in light of

18  her actions in allowing other similarly situated wetland owners to be compensated,

19  again, all the while knowing the she had personally approved the settlement agreement

20  in that CHC Lawsuit. And, to further complicate matters for herself, Defendant Brown

21  then brought the MPLA Lawsuit against Plaintiff, not as an attorney in the case, but

22  rather as a party. See Plaintiff's Complaint, ¶ 35. Through out all of this and unlike

23  the functions performed by the various parties in Fry v. Melarango, 939 F.2d 832 (9th

24  Cir. 1991), Bly-Magee v. California, 236 F.3d 1014 (9th Cir. 2001), and Spear v. Town

25  of West Hartford, 954 F.2d 63 (9th Cir. 1992), Defendant Brown never did perform

26  any functions that could be deemed to warrant absolute immunity in her favor in this

27  case.

28              In Fry, several IRS attorneys were granted absolute immunity for the

1   conducts[9] in representing the government in a litigation before the Tax Court.  The

2   conducts all occurred during the adjudication of Frys' tax liabilities and as part of the

3   government's presentation of evidence against the Frys in the Tax Court.  The Ninth

4   Circuit found the foregoing to be "intimately associated with the judicial phases" of a

5   tax litigation and, therefore, upheld the IRS attorney defendants' claim of absolute

6   immunity. Id. at 838; citing Butz v. Economou, 438 U.S. 478, 516-17 (1978); Flood

7   v. Harrington, 532 F.2d 1248, 1251 (9th Cir. 1976).  In the present case, except for

8   being named a party in the MPLA Lawsuit, Defendant Brown never performed any

9   "functions" that could be viewed as intimately associated with the judicial process.

10   To the contrary, she abused the judicial process.  Interestingly enough, Defendant

11   Brown, at no time, did she ever showed up in the CNMI Superior Court to perform any

12   "function" intimately associated with said lawsuit.

13             In Bly-Magee, the Ninth Circuit upheld the granting of absolute immunity

14   to a former attorney general and attorneys in the office of the attorney general for their

15   conducts relating to litigation duties.  Interestingly enough, the appellate court refused

16   to grant such immunity for any actions that are wholly unrelated to our outside of their

17   official duties. Id. at 1018.  Again, in the present case, to the extent that Defendant

18   Brown will argue that, in her former capacity as the Attorney Genera, she had a duty

19   to represent Defendant CNMI, any such duty did not and cannot include a violation of

20   § 1983.  Furthermore, Plaintiff's § 1983 claims arose out of Defendant Brown's

21   conducts committed out side of any litigations.  In fact, it is these conducts that

22   brought about the litigations.

23             In Spear, the Second Circuit upheld the granting of absolute immunity to

24   a corporate counsel and a city manager for their role in authorizing a civil lawsuit

25   pursuant to a town council's resolution authorizing the same to prevent illegal protest

26

27

---

28        [9]     The alleged wrongful acts included statements about and repeated activities in various papers filed with the tax Court. See Fry, 939 F.2d at 837.

1    activities. The illegal protest activities were associated with an anti-abortion protest

2    being conducted. The foregoing was done in reliance of <u>Butz v. Economou</u>, 438 U.S.

3    478, 516-17 (1978), wherein the Supreme Court noted the following:

4
5
6
7
8
9
> "[A]gency official performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. . . . The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete."

See <u>Butz</u>, 438 U.S. at 515.

10
11    In the present case, Defendant Brown has failed to inform this Honorable

12    Court as to who authorized her to sue Plaintiff in the MPLA Lawsuit. All indications

13    appear to suggest that she herself authorized the MPLA Lawsuit, i.e., the MPLA

14    Lawsuit is an "ex rel." one. Further, there was nothing illegal about Plaintiff's land

15    compensation claim as subsequently confirmed by the CNMI Superior Court. See

16    Plaintiff's Complaint, Exhibit "U." In fact, this Honorable Court need not look any

17    further then the settlement agreement that Plaintiff had entered into with Defendant

18    CNMI in the CHC Lawsuit, said settlement agreement being signed by none-other then

19    Defendant Brown herself. See Plaintiff's Complaint, Exhibit "I." In all, Defendant

20    Brown never did perform any functions in this case that could be deemed analogous

21    to those of a prosecutor. Therefore, she has no right to claim any protection in this

22    case based on absolute immunity.

23    **2.    42 U.S.C. § 1985(3):**

24    Defendant Brown, in this argument, claims that Plaintiff has failed to allege a

25    class-based, indiviously discriminatory animus in her complaint against her, citing

26    notably <u>Griffin v. Breckenridge</u>, 403 U.S. 88 (1971) and <u>Bry v. Alexandria Women's</u>

27    <u>Health Clinic</u>, 506 U.S. 263 (1993).

28    There is no question that Plaintiff has alleged sufficient facts to show that she

1    was a part of a class of people entitled to be compensated by Defendant CNMI for the

2    taking of her property pursuant to CNMI Public Law 13-17, as amended by CNMI

3    Public Law 14-29. See Plaintiff's Complaint, ¶ 51. On the limited issue of "animus"

4    on the part of Defendant Brown towards Plaintiff, the same can be infer from the facts

5    already alleged by Plaintiff in this case. That is, given that other similarly-situated

6    wetland owners were paid prior to Plaintiff as well as during the pendency of the

7    MPLA Lawsuit against Plaintiff in the CNMI Superior Court, this Honorable Court can

8    safely infer that Defendant Brown had an "animus" towards Plaintiff in this case. Why

9    else would she specifically point out Plaintiff to be the subject of her actions and

10   denials all the while allowing similarly-situated wetland owners to receive their land

11   compensations in this case?

12       Be that as it may, at minimum, Plaintiff has alleged conspiracy under § 1983.

13   See Juyel Ashmed et al. v. Robert Goldberg, Civil Action Nos. 00-0005 & 99-0046

14   (consolidated), Order Granting In Part and Denying In Part Defendant Goldberg's

15   Motion to Dismiss (NMI Dist. Ct. Nov. 14, 2000); citing Askew v. Millerd, 191 F.3d

16   953, 957 (8th Cir. 1999) (To establish a conspiracy under § 1983, plaintiff must show

17   "the defendant conspired with others to deprive him or her of a constitutional right;

18   that at least one of the co-conspirators engaged in an overt act in furtherance of the

19   conspiracy; and that the overt act injured plaintiff.").[10]

20       **B.    State Claims:**

21           **1.    Sovereign Immunity--CNMI and Defendant Brown in her Official
                 Capacity:**

22

23       Defendant CNMI and Brown seek a blanket dismissal of Plaintiff's so-

24   called "state claims" based on sovereign immunity pursuant to 7 CMC § 2204. As

25   cited by said Defendants, § 2204, in relevant parts, states the following:

26

27       [10]    See e.g. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (in order to
     satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have
28   shown that there was an understanding between civilian and officers to deprive plaintiff of
     her rights).

- 15 -

1          The government is not liable for the following claims:

2              (a) Any claim based upon an act or omission of an employee
               of the government, **exercising due care**, in the execution of
3              a statute or regulation, whether or not the statute or
               regulation is valid or based upon the exercise or
4              performance or the failure to exercise or perform a
               discretionary function or duty on the part of the
5              Commonwealth agency or an employee of the government,
               whether or not the discretion is abused;

6
               (b) any claim arising out of assault, battery, false
7              imprisonment, false arrest, malicious prosecution, abuse of
               process, libel, slander, misrepresentation, deceit, or
8              interference with contract rights[.] (Emphasis added).

9    See 7 CMC § 2204 (a) & (b).

10         First, with respect to Defendant CNMI, except for the specifically

11   enumerated causes of actions contained in § 2204(b), sovereign immunity will only

12   apply if Defendant Brown is found to have not exercised due care in her official

13   capacity in this case. See 7 CMC § 2204 (a). Regretfully, based on the facts herein

14   discussed and alleged by Plaintiff in her complaint, no such finding of "due care" is

15   warranted. Accordingly, pursuant to § 2204 (b), Plaintiff submits that sovereign

16   immunity lies in favor of Defendant CNMI with respect to her claim for "abuse of

17   process [Count IV]" and for "interference of contractual rights [Count VII]" as these

18   claims are specifically mentioned therein. However, given that § 2204 (b) does not

19   specifically mention "wrongful use of civil proceeding,"[11] "breach of duty of good faith

20   and fair dealings [Count VI]," "intentional interference with economic relations [Count

21   VIII]," "intentional infliction of emotional distress [Count X]," and "negligent infliction

22   of emotional distress [Count XI]," sovereign immunity does not lie in favor of

23   Defendant CNMI as to these claims. See 7 CMC § 2204 (b). Accordingly, Defendant

24

25

26   _____

27         [11]    As correctly pointed out by Defendants CNMI and Brown, Plaintiff's claim for
     abuse of process [Count IV] should be correctly labeled as "wrongful use of civil proceeding,"
28   which is not specifically identified as being subject to sovereign immunity.

1 CNMI may be found liable to Plaintiff to the extent permitted by 7 CMC 2202(a).[12]

2 Now, with respect to Defendant Brown in her official capacity, she is not

3 a sovereign and therefore has no such claim for sovereign immunity in this case. See

4 He, Guo Quiong v. CNMI, et al., Civil Action No. 99-268B, Order Denying Defendants'

5 Motion to Dismiss (CNMI Superior Court, Oct. 25th, 2000).

6 **2. Absolute Immunity–Defendant Brown in her Personal Capacity:**

7 Plaintiff, with respect to the foregoing argument by Defendant Brown, would

8 respectfully incorporates her arguments herein-stated as the same relates to said

9 Defendant's claim of absolute immunity for Plaintiff's § 1983 claim above. In addition,

10 Plaintiff believes that a bit more discussion on Restatement (Second) Torts § 895D is

11 warranted given that Defendant Brown does not specify which provision of said §

12 895D applies to her in this case. Given that Defendant Brown neither performed any

13 judicial or legislative functions in this case, the only relevant provision of said § 895D

14 that arguably applies in this case would be § 895D(3).

15 Section 895D(3)(a) states that "[a] public official acting within the general scope

16 of his authority is not subject to tort liability for an administrative act or omission if:

17 (a) he is immune because engaged in the exercise of a discretionary function,

18 (b) he is privileged and does not exceed or abuse the privilege, or

19 (c) his conduct was not tortious because he was not negligent in the

20 performance of his responsibility."

21 See Restatement (Second) of Torts, § 895D(3)(a) to (c). Comment g (Scope of official

22 authority) states, in relevant parts, the following:

23

---

24 [12] 7 CMC § 2202. Limitation of Tort Liability.

The Commonwealth government shall be liable in tort for damages arising from the

25 negligent acts of employees of the Commonwealth acting within the scope of their office or employment; provided, that:

26 (a) The Commonwealth and any employees engaged in the performance of services on behalf of the Commonwealth shall not be liable in a suit based on the performance of

27 those services for more than $50,000 in an action for wrongful death and $100,000 in any other tort action.

28

- 17 -

1

2

3

4

> "An immunity protects an officer only to the extent that he is acting in the general scope of his official authority. When he goes entirely beyond it and does an act that is not permitted at all by that duty, he is not acting in his capacity as a public officer or employee and he has no more immunity than a private citizen."

See Restatement (Second) of Torts, § 895D(3)(a), Comment g. The comments goes

5

6

7

8

9

10

11

on to further state that "[t]he scope of an officer's liability in tort may be broadened or restricted by legislative action." See Restatement (Second) of Torts, § 895D(3)(a), Comment i (Legislative modifications). In fact, as an example, 42 U.S.C. § 1983 (1970) is cited. Id. Further, given the undisputed facts of this case that Defendant Brown clearly acted outside the scope of her official authority and as well as the previous discussion relative to Defendant Brown's conducts [i.e., functions], she is not entitled to absolute immunity in this case.

12

13

14

15

16

17

18

19

20

21

22

23

In all, Defendant Brown's reliance on Restatement (Second) of Torts § 895D cannot be used to thwart § 1983 remedies available to Plaintiff in this case. See e.g., Howlett v. Rose, 496 U.S. 356, 376-77 (1990) & Felder v. Casey, 487 U.S. 131, 139 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted . . . because the application of the state law would thwart the congressional remedy . . . which of course already provides certain immunities for state officials."). This is also the rule laid-out by the Ninth Circuit. See e.g., Sosa v. Hiraoka, 920 F.2nd 1451, 1460 n. 3 (9th Cir. 1990) (noting that the Supreme Court has "held that state law immunities have no force against § 1983 suits where the state law immunity purports to provide immunity 'over and above those already provided in § 1983'[.]").[13]

24

25

**3.    Common Law Conspiracy:**

Plaintiff would respectfully refer this Honorable Court to her arguments above

26

27

28

[13]      Pursuant to 7 CMC § 3401, Defendant Atalig relies on Restatement (Second) of Torts § 895D. Accordingly and for purposes of the immunity discussion herein, said § 895D is a CNMI law, i.e., a state law.

- 18 -

1 relative to § 1985(3) conspiracy. As state therein, at minimum, Plaintiff has alleged

2 conspiracy under § 1983. See Juyel Ashmed et al. v. Robert Goldberg, Civil Action

3 Nos. 00-0005 & 99-0046 (consolidated), Order Granting In Part and Denying In Part

4 Defendant Goldberg's Motion to Dismiss (NMI Dist. Ct. Nov. 14, 2000); citing Askew

5 v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) (To establish a conspiracy under § 1983,

6 plaintiff must show "the defendant conspired with others to deprive him or her of a

7 constitutional right; that at least one of the co-conspirators engaged in an overt act in

8 furtherance of the conspiracy; and that the overt act injured plaintiff."); see also

9 Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (in order to satisfy color of

10 state law requirement under civil conspiracy theory, plaintiff need only have shown

11 that there was an understanding between civilian and officers to deprive plaintiff of her

12 rights). So, while civil conspiracy may not be recognized in the Commonwealth, it is

13 recognized under the federal system and by § 1983.

14 **4.** **Abuse of Process:**

15 Defendants CNMI and Brown seeks dismissal of Plaintiff's claim for "abuse of

16 process" based on an additional ground that Plaintiff has failed to alleged any facts to

17 support such a claim, citing Restatement (Second) of Torts, § 682 (1977) and Hiraga

18 v. House, C.N.M.I. Super. Ct. Civ. No. 98-100A (July 29th, 1999). To the contrary,

19 Plaintiff has alleged more than sufficient facts to support her claim in this case.

20 Plaintiff, in support of said claim alleged the following in her complaint, to wit:

21 59. Defendants CNMI and Brown willfully and intentionally abused the process
in this case by filing a frivolous lawsuit against Plaintiff in the CNMI Superior Court,
22 the MPLA Lawsuit, as alleged in ¶ 35, supra.

23 60. Defendants CNMI and Brown willful and intentional filing of the MPLA
Lawsuit in this case against Plaintiff was done for the ulterior motives or purposes of
24 continuing to deprive Plaintiff's of her rights in this case and further delaying Plaintiff
from receiving what is otherwise her property in this case, to wit; her land
25 compensation.

26 61. The motives or purposes by Defendants CNMI and Brown in filing the
MPLA Lawsuit against Plaintiff in this case were not proper or lawful in the use of such
27 process in light of the PL 13-17, as amended by PL 14-29, and, in particular, their own
actions herein alleged in allowing other similarly situated "wetland" Owners to be fully
28 compensated for the taking of their wetland properties no different then Plaintiff herein

- 19 -

1    and yet continuing to deny Plaintiff her land compensation.

2    See Plaintiff's Complaint, ¶¶ 59 to 61.

3         As made very clear by the above, the filing of the MPLA lawsuit, a frivolous

4    lawsuit at best, against Plaintiff was for said Defendants to continue to deprive

5    Plaintiff of what was legally and morally her property.  The lawsuit was not filed for

6    any legitimate purposes.  Otherwise, if such were the case, one would have expected

7    said Defendants to pursue an appeal of the decision of the dismissing the case against

8    Plaintiff.  See Plaintiff's Compliant, Exhibit "U."  This was never done, which only

9    further supports Plaintiff's claim that said Defendants were abusing the process of the

10   CNMI court to the detriment of Plaintiff.

11        **5.    Malicious Prosecution:**

12        Defendants CNMI and Brown, similar to their argument in seeking dismissal of

13   Plaintiff's claim for abuse of process, also seeks the dismissal of Plaintiff's claim for

14   malicious prosecution for Plaintiff's failure to allege the necessary elements of the

15   same, citing Restatement (Second) of Torts, § 653 at 406 (1976) and Mitchell v.

16   Estate of Hillblom, 1997 MP 30 ¶ 2.

17        Plaintiff, in her complaint, alleged the following in support of her claim for

18   malicious prosecution, to wit:

19        64. On August 15th, 2005, Defendants CNMI and Brown cause to be filed the
     MPLA Lawsuit against Plaintiff in the CNMI Superior Court seeking declaratory and
20   injunctive reliefs, as alleged in ¶ 35, supra.

21        65. Defendants CNMI and Brown, in said MPLA Lawsuit, alleged that the land
     compensation payable to Plaintiff for the taking of her 'wetland' property was void
22   under CNMI PL 13-49, as amended by CNMI PL 14-29.

23        66. On August 30th, 2005 and in response to Plaintiff's motion to dismiss their
     complaint, set to be heard before the CNMI Superior Court the following day (August
24   31st, 2005) at 9:00 a.m., Defendants CNMI and Brown again caused to be filed an
     amended complaint and cited to a non-existing public law to the CNMI Superior Court
25   in support of the same.  Plaintiff, in response, moved to strike said amended
     complaint.
26

27        67. Defendants CNMI and Brown, at all times relevant herein, knew or should
     have known that their allegations made against Plaintiff in their complaint and
28   amended complaint in the MPLA Lawsuit all lacked any factual or legal basis and,
     therefore, were frivolous.

1    68.    Defendants CNMI and Brown, in light of the facts of this case and
2  applicable laws, instituted and continue to prosecute the MPLA Lawsuit against
   Plaintiff without probable cause and for an improper purpose of continuing to deny
   Plaintiff her land compensation.

3

4    69.    On September 27th, Associate Judge Wiseman granted Plaintiff's motion
   to dismiss and to strike the complaint, including the amended complaint, filed by
   Defendants CNMI and Brown in said MPLA Lawsuit.

5

6  See Plaintiff's Complaint, ¶¶ 64 to 69.

7    The foregoing clearly supports a claim for "wrongful use of civil proceedings"

8  as set forth in Restatement (Second) of Torts, § 653 at 406 (1976) and Mitchell v.

9  Estate of Hillblom, 1997 MP 30 ¶ 2.  That is, Defendants CNMI and Brown instituted

10  the MPLA Lawsuit against Plaintiff, a lawsuit that was frivolous and lacking any

11  probable or proper purpose.  After all, other similarly-situated wetland owners had

12  received their wetland compensation without any lawsuit being filed against them.

13  The MPLA Lawsuit was terminated in favor of Plaintiff and said Defendants never

14  sought any appeal.  Thus, it is obvious that the lawsuit was never instituted for a

15  proper purpose other then a futile attempt to continue to deny Plaintiff her property.

16  Without belaboring the point, Plaintiff has stated a cause of action for "wrongful use

17  of civil proceeding" and will gladly amend her complaint to reflect the corrected label

18  instead of the same being labeled as a "malicious prosecution" claim.

19    **6.    Breach of Duty of Good Faith and Fair Dealing:**

20    This particular argument by Defendants CNMI and Brown appears to be one

21  questioning this Honorable Court's "subject matter" jurisdiction because of 7 CMC §

22  2251.  However, as made very clear by said law, there is no legal requirement that the

23  Commonwealth Trial Court be the only venue to litigate such claim.  See 7 CMC §

24  2251 ("[A]ction upon the following claims **may be** brought against the Commonwealth

25  in the Commonwealth Trial Court[.] (Emphasis added).  In light of the foregoing, 48

26  U.S.C. § 1822(b), Fed. R. Civ. Pro. 18(a), and United States Mine Workers v. Gibbs,

27  383 U.S. 715 (1966), Plaintiff's claim for "breach of duty of good faith and fair

28  dealings" against Defendant CNMI is properly before this Honorable Court.

- 21 -

1

    **7.**    **Intentional Interference with Contractual Rights and Intentional Interference with Economic Relations:**

2

Plaintiff has previously addressed the arguments by Defendants CNMI and

3

Brown that the foregoing should be dismiss based on sovereign and absolute

4

immunities and, therefore, will only address said Defendants' additional basis for

5

dismissal based on the "allegation of malice" and "justification." See Motion to

6

Dismiss, pg. 21.

7

Plaintiff, in support of her claims for intentional interference of her contractual

8

rights and her economic relations, alleged the following:

9

    **a.**    **Intentional interference with contractual rights:**

10

11

    75.  Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 above with the same force and effect as if herein set forth below.

12

13

14

    76.  At all times relevant herein, Defendants Brown, Atalig, CDA, Ada, and BOG knew or should have known that Plaintiff and MPLA had between them a legally binding and enforceable contract in the form of a settlement agreement, to wit: the MPLA Settlement Agreement.

15

16

17

    77.  In light of the foregoing knowledge on the part of said Defendants Brown, Atalig, CDA, Ada, and BOG, said Defendants and each of them intentionally and maliciously took actions alleged herein that interfered with said MPLA Settlement Agreement and aimed at further denying Plaintiff her rights under said settlement agreement to the receipt of her land compensation.

18

    78.  Defendants Brown, Atalig, CDA, Ada, and BOG, furthermore, knew or should have known that their actions in this case were improper and were all illegal.

19

    **b.**    **Intentional interference with economic relations:**

20

21

    80.  Plaintiff repeats and realleges and incorporates by reference the allegations in ¶¶ 1 through 40 and ¶¶ 76 through 79 above with the same force and effect as if herein set forth below.

22

23

24

    81.  At all times relevant herein, Defendants Brown, Atalig, CDA, Ada, and BOG knew or should have known that Plaintiff and MPLA had between themselves an economic relation as a result of a settlement agreement, to wit:  the MPLA Settlement Agreement.

25

26

    82.  In light of the foregoing knowledge on the parts of said Defendants Brown, Atalig, CDA, Ada, and BOG, said Defendants and each of them intentionally and maliciously took actions, as alleged ¶ 49, supra, that interfered with Plaintiff's economic relations with MPLA.

27

28

    83.  Defendants Brown, Atalig, CDA, Ada, and BOG, furthermore, knew or should have known that their actions in this case were improper and were all illegal.

In both of these claims, the actions alleged to have been taken by Defendants CNMI and Brown included Defendant Brown instructing Defendant Atalig not to release Plaintiff's land compensation requisition which result in Plaintiff not receiving her land compensation for a period of over three (3) months, Defendant Brown instructing Defendants CDA and Ada not to process Plaintiff's land compensation, and the eventual filing of an otherwise "frivolous" lawsuit against Plaintiff aimed at further denying her property from the MPLA Settlement Agreement. See Plaintiff's Complaint, ¶¶ 29 to 37. There is no question that Plaintiff has alleged sufficient facts to support claim that Defendants CNMI and Brown did "engaged" in intentional acts in this case. Additionally, as previously discussed, there was no "justification" for such actions by said Defendants CNMI and Brown in light of having allowed other similarly situated wetland owners to be compensated all the while denying Plaintiff her compensation. See Plaintiff's Complaint, ¶¶ 39 & 40. Based on the facts alleged by Plaintiff, this Honorable Court can "infer" that the actions of Defendants CNMI and Brown were intentional and without any "justification."

**8.    Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress:**

Again, Plaintiff has addressed the dismissal of the foregoing claims by Defendants CNMI and Brown based on sovereign immunity and, therefore, will not repeat the same.    Plaintiff, however, will address the main argument by said Defendants that the foregoing claims should be dismissed because Plaintiff as not alleged "conducts has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Motion to Dismiss, pg. 24, citing Restatement (Second) of Torts § 46, cmt. d (1965).

Plaintiff, in response to the foregoing argument by said Defendants CNMI and Brown, will note that said Defendants are careful and cautious enough not to even discuss their own conducts in having allowed similarly-situated wetland owners to be

1  paid while denying Plaintiff her land compensation, including abusing the judicial
2  process of the Commonwealth to further deny Plaintiff her land compensation. The
3  reason being, when one views the actions taken against Plaintiff in this case by
4  Defendants CNMI and Brown, in light of their own actions towards these other
5  similarly-situated wetland owners, the "extremely egregious" nature of their actions
6  towards Plaintiff comes to light. Plaintiff has alleged the foregoing in her complaint
7  and, therefore, has met her burden of stating claims for intentional and negligent
8  inflictions of emotional distress against said Defendants CNMI and Brown.

9                                  **CONCLUSION:**

10      For all the foregoing reasons herein stated, Plaintiff respectfully ask that this
11  Honorable Court denies the motion to dismiss in this case by Defendants CNMI and
12  Brown.

13      Dated this the ____21____ day of February, 2006.

14

15                                          Respectfully Submitted:

16

17

18                                          Brien Sers Nicholas, Esq.
                                            Attorney for Plaintiff
19

20

21

22

23

24

25

26

27

28

- 24 -