1

**CIVILLE & TANG**
2nd Floor, Cabrera Center
PMB 86, P.O. Box 10003
Saipan, MP 96950-8908
Telephone: 670/235-1725
Facsimile: 670/235-1726

*Attorneys for Defendants*
*Commonwealth of the Northern Mariana Islands,*
*and Pamela Brown, personally and in her*
*official capacity as the Attorney General for the*
*Commonwealth of the Northern Mariana Islands*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI, )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>PAMELA BROWN, a.k.a. PAMELA BROWN )<br>BLACKBURN, personally and in her official )<br>capacity as the Attorney General for the )<br>Commonwealth of the Northern Mariana Islands; )<br>FERMIN M. ATALIG, personally and in his )<br>official capacity as the Secretary of Finance; )<br>COMMONWEALTH OF THE NORTHERN )<br>MARIANA ISLANDS; MARIA LOURDES )<br>SEMAN ADA, personally and in her official )<br>capacity as the Executive Director for the )<br>Commonwealth Development Authority; )<br>COMMONWEALTH DEVELOPMENT )<br>AUTHORITY; BANK OF GUAM; and JOHN )<br>DOES ONE thru TEN, )<br>)<br>Defendants. )<br>————————————————————— ) | CIVIL ACTION NO. 05-0037<br><br>**REPLY OF DEFENDANTS PAMELA BROWN AND THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS TO OPPOSITION TO THEIR MOTION TO DISMISS**<br><br>Hearing Date:   March 6, 2006<br>Hearing Time:   1:30 p.m.<br>Judge:   Hon. Alex R. Munson |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ORIGINAL

1

**TABLE OF CONTENTS**

2

Page

3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6

A. FEDERAL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7

1.  42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
8           a)    Claim barred against CNMI officers in their official capacity . . . . . . . . . 1
            b)    Failure to allege a constitutional violation . . . . . . . . . . . . . . . . . . . . . . . . 1
9                 i)    No Due Process Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
                  ii)   Taking claim not actionable . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10                iii)  No equal protection violation . . . . . . . . . . . . . . . . . . . . . . . . . 3
            c)    Section 1983 claim barred by qualified immunity . . . . . . . . . . . . . . . . . 4
11          d)    Section 1983 claim barred by absolute immunity . . . . . . . . . . . . . . . . . . 4

12

2.  No Claim Stated Under 42 U.S.C. § 1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

B.    COMMONWEALTH (STATE) LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14

1.  Sovereign Immunity - CNMI and Defendant Brown
15      in her Official Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
2.  Absolute Immunity - Defendant Brown in her Personal Capacity . . . . . . . . . . . 7
3.  Common Law Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
16  4.  Abuse of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5.  Malicious Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
17  6.  Breach of Duty of Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . 9
7.  Intentional Interference with Contractual Rights and
18      Intentional Interference with  Economic Relations . . . . . . . . . . . . . . . . . . . . 9

19

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2
Page

3    **Cases**

4    *Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5    *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . 7

6    *Commonwealth of the Northern Mariana Islands ex rel. Pamela Brown,*
     *Attorney General v. Ana Demapan-Castro, et al.*,
7    Civil Action No. 04-0563 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8    *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9    *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

10   *Dillon v. City of New York*, 704 N.Y.S.2d 1 (N.Y. App. Div. 1999) . . . . . . . . . . . . . . . . . . . . . 10

11   *He Guo Quiong v. CNMI, et al.*, Civil Action No. 99-268B . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12   *I.G.I. Gen. Contractor & Dev.m Inc. v. Public School Sys.*,
     1999 MP 12 ¶ 12, 5 N.M.I. 250, 252 (N.M.I. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
13
     *Fry v. Melaragno*, 939 F. 2d 832 (9 th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
14
     *Minnesota ex rel. Hatch v. Am. Family Mut. Ins.*,
15   609 N.W.2d 1 (Minn. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16   *Mitchell v. Estate of Hillblom*, 1997 MO 30 ¶ 2,
     5 N.M.I. 136, 137 (N.M.I. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17
     *Montgomery v. Stefaniak*, 410 F.3d 933 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
18
     *O'Connor v. Pierson*, 426 F.3d 187 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
19
     *See Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 3
20
     *Spears v. Town of West Hartford*, 954 F.2d 63 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 5
21
     *Squaw Valley Development Co. v. Goldberg*,
22   375 F.3d 936 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

23   *The Fishing Company of Alaska v. U.S.*,
     195 F.Supp.2d 1239 (W.D. Wash. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
24
     *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 4
25

26

27

28

1

<u>Page</u>

2  **<u>Statutes</u>**

3  7 CMC § 2204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   7 CMC § 2204(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
4  7 CMC § 2251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5
   42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4-5, 7-8
6  42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   42 U.S.C. § 1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7
7

8  **<u>Rules</u>**

9  FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9-10

10

11  **<u>Secondary Authority</u>**

    RESTATEMENT (SECOND) OF TORTS § 895D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

This is the reply of Defendants, Commonwealth of the Northern Mariana Islands ("CNMI") and Pamela Brown ("Brown"), Attorney General of the CNMI, in her official and individual capacities, to Plaintiff's Opposition to Motion to Dismiss filed on March 2, 2006 ("Opp. Mem.").[1]

## II. ARGUMENT

### A. FEDERAL CLAIMS

#### 1. 42 U.S.C. § 1983.

##### a) Claim barred against CNMI officers in their official capacity.

Plaintiff concedes the federal claims cannot and are not being brought against the Commonwealth of Northern Mariana Islands and Pamela Brown, in her official capacity. *See* Opp. Mem. at 1.

##### b) Failure to allege a constitutional violation.

##### i) No Due Process Violation.

In response to Defendants' argument she failed to state a constitutional violation under § 1983 because her claim is, at most, a breach of contract claim not cognizable under § 1983, *see* Def. Mem. at 4-6, Plaintiff contends her "§ 1983 claim involves more than just a breach of her Settlement Agreement with MPLA." Opp. Mem. at 6. Plaintiff characterizes her due process as arising out of "how [her] claim was handled and treated by Defendants CNMI and Brown in light of their handling and treatment of land compensation claims by other similarly-situated wetland owners." *Ibid*. "To be clear, it is the handling and the treatment of her claim by both Defendant CNMI and Brown that gave rise to Plaintiff's § 1983 [sic]." *Ibid*. She then distills her right by stating "her claim was subjected to 'wholly arbitrary and irrational actions' of both Defendants CNMI and Brown." *Ibid*.

Clearly, however, Plaintiff's "claim" is based on the delay of payment under the Settlement Agreement. *See* Def. Mem. at 4-6; *id.* at 7 (release in Settlement Agreement precludes claim for property and indicates Plaintiff's right to compensation clearly arose out of the Settlement Agreement and are not based on any other theory of compensation). As Plaintiff argues with respect to the statute

---

[1]    References to Defendant's Memorandum in Support of Motion to Dismiss, filed on December 29, 2005, will be abbreviated hereinafter as follows: "Def. Mem."

of limitations, "Plaintiff's § 1983 claim came about as a result of the Settlement Agreement with MPLA." Opp. Mem. at 7.  According to Plaintiff, her "§ 1983 claim in this case arose out of the handling and treatment she received relative to her Settlement Agreement in light of the other similarly-situated wetland owners." Opp. Mem. at 7-8.

Plaintiff further contends she "had a right to 'due process' in the handling of her wetland compensation claim.  That is, her claim should not have been subjected to 'wholly arbitrary and irrational actions' by both Defendant CNMI and Brown." Opp. Mem. at 6.[2]  She states that "Plaintiff, in support of her § 1983 claim, has allege [sic] sufficient facts to support the same in that her claim was subjected to 'wholly arbitrary and irrational actions' of both Defendants CNMI and Brown." *Ibid*. This is simply insufficient.

First, "'[t]here is no general liberty interest in being free from capricious government action.'" *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 949 (9th Cir. 2004) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir.1998)).

Second, to establish a substantive due process claim, a plaintiff must allege arbitrary acts that "shock the conscience" of the court.  "'[T]he touchstone of due process is protection of the individual against arbitrary action of the government,' whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. . . ." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citations omitted).  With respect to abusive executive action, the Supreme Court cases "have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense. . . .'" *Id.* at 846.  Thus, the standard has been set, as observed by the Court: "To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Ibid*.  The "substantive component of the Due Process Clause is violated by executive action only when 'it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'  While the measure of what is conscience shocking is no calibrated

---

[2]     In her opposition, Plaintiff continues to allege violations by the CNMI with respect to the federal claims.  This is inconsistent with her recognition that the CNMI is not being sued under § 1983 or § 1985.

1   yard stick, it does, as Judge Friendly put it, 'poin[t] the way.'" *Ibid.* (citations omitted).  As recently

2   summarized by the Second Circuit:

3

4               To prevail when challenging executive action that infringes a protected right,
                a plaintiff must show not just that the action was literally arbitrary, but that it
5               was "arbitrary in the constitutional sense," *Collins v. City of Harker Heights,*
                503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Mere irrationality
6               is not enough: "only the most egregious official conduct," conduct that "shocks
                the conscience," will subject the government to liability for a substantive due
7               process violation based on executive action. *County of Sacramento*, 523 U.S.
                at 846, 118 S.Ct. 1708.

8   *O'Connor v. Pierson*, 426 F.3d 187, 203 (2nd Cir. 2005); *see also Montgomery v. Stefaniak*, 410 F.3d

9   933, 939 (7th Cir. 2005) ("The scope of substantive due process is very limited and protects plaintiffs

10  only against arbitrary government action that 'shocks the conscience.'") (citation omitted).

11          The bringing of the CHC lawsuit to collect monies owing the Commonwealth Health Center

12  and MPLA lawsuit to challenge payments of public monies alleged to be unauthorized by the law

13  hardly rise to conduct that is arbitrary or irrational, much less conduct that "shocks the conscience."

14  Plaintiff has failed to make out a claim for violation of her due process rights.

15                              **ii) Taking claim not actionable.**

16          In response to Defendants' argument that a taking claim was not actionable, *see* Def. Mem. at

17  6-7,  Plaintiff, as noted previously, refines her claim to one based on the MPLA Settlement Agreement

18  and the delay in payments under that agreement.  *See* Def. Mem. at 7-8.  As such, there is simply no

19  taking claim.

20                              **iii) No equal protection violation.**

21          Plaintiff's response to Defendants' argument that there was no equal protection violation, *see*

22  Def. Mem. at 7-9, is first that she was in a limited class of landowners who owned wetlands taken by

23  Defendant CNMI.  Opp. Mem. at 8.  She then inappositely recites the standard applicable to suits

24  alleging violations of the Equal Protection Clause based upon intentional or purposeful discrimination

25  against a plaintiff "'based upon membership in a protected class.'"  Opp. Mem. at 8-9 (quoting *See Lee*

26  *v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)).  She concludes, somewhat inconsistently

27  with her prior assertion, that she was a "member of an identifiable class of persons entitled to be

28  compensated for the taking of her wetland property and that she was treated differently then the other

3

1   class members similarly situated. . . ." Opp. Mem. at 9. Obviously, her claim is not a multi-member

2   class discrimination claim, but is, rather based on a "class of one." *See* Def. Mem. at 7. With respect

3   to a "class of one," the plaintiff "still bears the burden of proving that she 'has been intentionally

4   treated differently from others similarly situated and that there is no rational basis for the difference

5   in treatment.'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting *Sea River*

6   *Maritime Financial Holding, Inc. v.* 309 F.3d 662, 679 (9th Cir. 2002)). *See* Def. Mem. at 7.

7       The rational basis test applies to her equal protection claim. The essence, in fact the sole basis,

8   of Plaintiff's claim is that only the Plaintiff and one other person, a wetland owner, were subject to the

9   MPLA suit to enjoin the payment of monies that were alleged to be in violation of Commonwealth law,

10  not only with respect to the compensability of wetland takings but also with respect to the valuation

11  of the properties . *See* Def. Mem. at  8-9 & n.2. Plaintiff cannot assume, as she does, that "disparate

12  is always irrational or motivated by discrimination." *The Fishing Company of Alaska v. U.S.*, 195

13  F.Supp.2d 1239, 1254 (W.D. Wash. 2002).

14      Because Plaintiff's Complaint lacks any factual allegations to support a claim that Defendants

15  did not have a rational basis, Plaintiff's equal protection claim under § 1983 fails and must be

16  dismissed under FRCP 12(b)(6).

17                  **c) Section 1983 claim barred by qualified immunity.**

18      At this stage, Defendant Brown's claim to qualified immunity is based on Plaintiff's failure to

19  allege a violation of a constitutional right. *See* Def. Mem. at 9. Plaintiff's response launches into a

20  broad discussion of qualified immunity. *See* Opp. Mem. at 9-11.

21                  **d) Section 1983 claim barred by absolute immunity.**

22      Plaintiff's response to Defendant Brown's argument that the § 1983 claim cannot be maintained

23  against her in her personal capacity under the doctrine of absolute immunity as announced in *Fry v.*

24  *Melaragno*, 939 F. 2d 832, 837 (9 th Cir. 1991), *see* Def. Mem. at 10, does not distinguish the cases

25  on which Defendant Brown relied or otherwise detract from the absolute immunity she has for actions

26  during and in furtherance of the litigation in the Commonwealth Superior Court. For example, Plaintiff

27  states Defendant Brown never performed any functions that could be intimately associated with the

28  judicial process, noting the irrelevant fact that "at no time, did she ever showed [sic] up in the CNMI

4

Superior Court to perform any 'function' intimately associated with said lawsuit." Opp. Mem. at 13. This statement belies Plaintiff's entire concept that Defendant Brown was responsible for the bringing of the lawsuit, which, in itself, is sufficient to invoke absolute immunity. *See Spears v. Town of West Hartford*, 954 F.2d 63, 66 (2nd Cir. 1992) (high executive official authorizing civil lawsuit entitled to absolute immunity). Plaintiff attempts to distinguish *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001), a suit against a former attorney general, on the ground that Defendant Brown's duty to represent the Commonwealth "did not and cannot include a violation of § 1983." Opp. Mem. at 13. This proposition would, of course, eviscerate the doctrine of absolute immunity, since an official charged with violating § 1983 would never have absolute immunity - which is clearly not the law.

Here, and elsewhere in her Opposition, Plaintiff does challenge Defendant Brown's authority to bring the MPLA lawsuit. *See* Opp. Mem. at 14. The issue of the authority of the Commonwealth Attorney General to bring lawsuits on behalf of the Commonwealth, an "ex rel. one" as Plaintiff characterizes it, *see ibid.*, was addressed by the Superior Court in *Commonwealth of the Northern Mariana Islands ex rel. Pamela Brown, Attorney General v. Ana Demapan-Castro, et al.*, Civil Action No. 04-0563, Order Denying Various Motions to Dismiss, With Some Treated As Motions For Summary Judgment ("Order") (N.M.I. Super. Ct. March 25, 2005) (Lizama, J.).

In this case land had been judicially condemned in 1978 with an award of $3,682.30 which was to be deposited in a bank account was not disbursed and had apparently been lost. In June of 2004 a former owner of the condemned land made a presentation to the MPLA asking for $3,450,000 for the land based on a value of $500.00 per square meter as of 1991. There were substantial questions about the appraisal (e.g. why the an appraisal date of 1991 was selected), but the MPLA voted to approve the claim. A requisition was issued, and a meeting held at the Office of the Governor at which it was decided, with the MPLA and CDA concurring and the Attorney General objecting, that the $3,450,000 be disbursed. The Attorney General sued to enjoin the disbursement of the funds.

The defendants moved to dismiss arguing, *inter alia*, that the Attorney General lacked authority to bring the suit because it was not approved by the Governor. Order at 15. The court held that "the Attorney General has the power, both at common law and under N.M.I. Const. art. III, § 11, to bring suit as a relator on behalf of the Commonwealth. In other words, her power is not solely derivative

1    of the Governor's executive authority." Order, at 15.

2        Adverting to 7 CMC § 3401 regarding the rules of the common law as rules of decision in the

3    courts of the Commonwealth, the court noted that "[i]n the United States, the common law has

4    provided authority for attorneys general to bring actions on behalf of the sovereign." Order, at 15. The

5    court held that "[i]n the Commonwealth, there is no specific constitutional provision or legislative

6    enactment limiting the scope of the attorney general's power." Order at 16.  In language equally

7    applicable to our case, the court held that "the instant suit, directed as it is at preventing an act by

8    MPLA that the plaintiff alleges is an illegal expenditure of public funds, is well within the ordinary

9    power of an attorney general to bring, with or without the permission of some other Commonwealth

10    'department or officer.'" Order at 16 (citing *Minnesota ex rel. Hatch v. Am. Family Mut. Ins.*, 609

11    N.W.2d 1, 3 (Minn. Ct. App. 2000)).

12        The court further held that the Attorney General had sufficient power under the Constitution

13    to bring the lawsuit. Order at 16-17.  The court noted that "[t]he office of Attorney General is one of

14    the few executive branch offices mentioned by name in our Commonwealth Constitution," Order at

15    16, and that "[t]he Constitution specifically makes the attorney general responsible for 'prosecuting

16    violations of Commonwealth law.'" Order at 16 (citing N.M.I. Const. art. III, § 11).  This term, the

17    court held, "includes not only criminal but also civil violations of the law." *Ibid.*  "Thus, the

18    Constitution grants the attorney general independent power to initiate criminal and civil lawsuits to

19    uphold Commonwealth law, as the plaintiff alleges is being done in this case."  *Ibid.*  The court

20    concluded by holding "that the attorney general does not need the permission of the governor, or any

21    other cabinet officer, to prosecute violations of the law, and need not cease such prosecutions if the

22    governor disapproves." *Ibid.*

23        In the light of common sense and *Demapan-Castro*, the authority and duty of the Attorney

24    General to bring the MPLA lawsuit is beyond peradventure, and the Attorney General in preparing,

25    deciding to bring, and in prosecuting such lawsuits should have and does have absolute immunity.

26    **2. No Claim Stated Under 42 U.S.C. § 1985(3).**

27        Plaintiff as much as concedes she has not stated a claim under 42 U.S.C. § 1985(3) by arguing

28

1   only a general animus is to or "can" be inferred from the acts alleged.[3]  Opp. Mem. at 14-15.   This

2   simply does not satisfy the requirement that a plaintiff under § 1985(3) must show "that 'some racial,

3   or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators'

4   action . . . .'"  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quoting

5   *Breckenridge*, 403 U.S. at 102); *see also* Def. Mem. at 11-12.

6           As an alternative, she argues that at a minimum she has alleged a conspiracy under § 1983.

7   Opp. Mem. at 15.   However, Plaintiff has not alleged a conspiracy under § 1983, and any motion

8   dealing with a § 1983 conspiracy would have to wait her motion for leave to amend, if any.  Under the

9   present Complaint, Plaintiff has failed to state a claim for conspiracy under § 1985(3).

10          For the reasons stated above and in Defendants' Memorandum in support of their motion to

11  dismiss, Plaintiff's federal claims against Defendant Brown must be dismissed pursuant to FRCP

12  12(b)(6).

13  **B.  COMMONWEALTH (STATE) LAW CLAIMS.**

14          **1.  Sovereign Immunity - CNMI and Defendant Brown in her Official Capacity.**

15          The Commonwealth and Defendant Brown are immune under 7 CMC § 2204(b) from

16  Plaintiff's claims for abuse of process and  malicious prosecution.  In her official capacity Defendant

17  Brown is also immune under § 2204 from Plaintiff's claims for intentional interference with

18  contractual rights and intentional interference with economic relations.   Plaintiff does not address

19  Defendants' argument concerning the applicability of 2204(b) to these claims except for a rather

20  crabbed textual argument, *see* Opp. Mem. at 16-17, which is dealt with in Defendants' opening

21  memorandum.  *See* Def. Mem. at 13-14.  Her citation to *He Guo Quiong v. CNMI, et al.*, with respect

22  to Defendant Brown's immunity in her official capacity, *see* Opp. Mem. at 17, is inapposite as that case

23  dealt with a defendant sued in her personal capacity.

24          **2.  Absolute Immunity - Defendant Brown in her Personal Capacity.**

25          Defendant Brown has common law absolute immunity from Plaintiff's Commonwealth law

26  claims.  *See* Def. mem. at 14-15.  Plaintiff's argument in this respect, as does Defendants', to a degree,

27  _____

28          [3]   Defendant Brown does not concede that any animus can be inferred from the alleged acts,
    but this is irrelevant to the question of whether Plaintiff has stated a claim under § 1985(3).

1    reverts back to the prior argument of absolute immunity under § 1983, *see* Opp, Mem. at 17, but does

2    not vitiate the common law basis for Defendant Brown's absolute immunity.    Plaintiff also reasserts

3    her argument that Brown clearly acted outside the scope of her official authority. *See* Opp. Mem. at

4    18.  However, as discussed previously in this Memorandum, the Attorney General had the authority

5    to bring the MPLA lawsuit to enforce the laws of the Commonwealth as part of her official duties.

6    Thus, as Attorney General acting within the scope of her authority, Defendant Brown is entitled to

7    absolute immunity in this case under the common law and the RESTATEMENT (SECOND) OF TORTS

8    § 895D.

9        **3. Common Law Conspiracy**.

10       In arguing that common law conspiracy is available under Commonwealth law, Plaintiff does

11   not attempt to distinguish *I.G.I. Gen. Contractor & Dev.m Inc. v. Public School Sys.*, 1999 MP 12 ¶

12   12, 5 N.M.I. 250, 252 (N.M.I. 1999), cited and discussed at page 16 of Defendants' Memorandum in

13   Support of Motion to Dismiss for the proposition that the tort of conspiracy is not recognized in the

14   Commonwealth.  Plaintiff, rather, reverts to her arguments regarding the federal conspiracy claims,

15   *see* Opp. Mem. at 18-19, which are irrelevant to the question of whether the tort of conspiracy is

16   recognized under Commonwealth law.

17       **4. Abuse of Process.**

18       Plaintiff entirely misses the point in contending she stated a claim for abuse of process.

19   *See* Opp. Mem. at 19-20.  To reiterate the argument at pages 16-17 of Defendants' Memorandum, for

20   an abuse of process claim to lie, there must be use of the process for an immediate purpose other than

21   that for which it was designed and intended. *See* Def. Mem. at 16-17.  There is simply no allegation

22   that Brown's or the CNMI's actions in bringing the lawsuits to enjoin payment to Plaintiff under the

23   Settlement Agreement were brought for any other purpose than to enjoin payment. *See* Def. Mem. at

24   17.

25       **5. Malicious Prosecution.**

26       Plaintiff has failed to state a claim for wrongful use of civil proceedings, inaccurately cast in

27   terms of malicious prosecution in the Complaint. *See* Def. Mem. at 17; Opp. Mem. at 21. Plaintiff

28   repeats her allegations that the MPLA lawsuit was filed for the purpose of continuing to deny Plaintiff

1    her land compensation. Opp. Mem. at 21. As pointed out in Defendants' motion, these allegations

2    amount to a claim that the lawsuit was initiated for the purpose of enjoining payment under the

3    Settlement Agreement, which it was, and fall short of alleging, as required under *Mitchell v. Estate of*

4    *Hillblom*, 1997 MO 30 ¶ 2, 5 N.M.I. 136, 137 (N.M.I. 1997), that the suit against Plaintiff was for "a

5    purpose other than securing the proper adjudication of the claim in which the proceedings were based."

6    Def. Mem. at 18.

7         With respect to Defendants' argument the claim is not ripe, Defendants note that on February

8    10, 2006, the Superior Court in Civil Action No. 05-0332E granted co-defendant Nicholas' motion for

9    summary judgment or ordered the CDA to pay her compensation under the Land Compensation Act.

10         **6. Breach of Duty of Good Faith and Fair Dealing.**

11         In opposition to Defendants' argument that exclusive jurisdiction over the breach of the duty

12    of good faith and fair dealing claims is in the Commonwealth Superior Court, Plaintiff argues textually

13    that 7 CMC § 2251 does not require "that the Commonwealth Trial Court be the only venue to litigate

14    such claim." Opp. Mem. at 21. Plaintiff refers the Court to 7 CMC § 2251 parenthetically quoting the

15    statute as follows: "'[A]n action upon the following claims **may be** brought against the Commonwealth

16    in the Commonwealth Trial Court.'" Opp. Mem. at 21 (quoting 7 CMC § 2251) (emphasis added by

17    Plaintiff). However, the full quotation of this portion of § 2251, as set forth in Defendants'

18    Memorandum is as follows:

19
20           Except as provided in article 1 of this chapter (commencing with 7 CMC § 2201), action upon the following claims may be brought against the Commonwealth in the Commonwealth Trial Court <u>which shall have exclusive jurisdiction thereof</u>.

21
22    7 CMC § 2251 (emphasis added).

23         Contrary to Plaintiff's argument, § 2251 vests exclusive jurisdiction over contract claims

   against the CNMI in the Superior Court.

24
25         **7. Intentional Interference with Contractual Rights and Intentional Interference with Economic Relations**.

26         Plaintiff does not dispute the standards for claims for intentional and negligent infliction of

27    emotional distress set forth at pages 23-25 of Defendants' Memorandum. In a nutshell, to survive the

28    motion to dismiss under Rule 12(b)(6) "a plaintiff must allege behavior that is extremely outrageous."

1  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). Although Defendants thought they

2  detailed the acts alleged by Plaintiff, *see* Def. Mem. at 24-25, Plaintiff asserts the "Defendants are

3  careful and cautious enough not to even discuss their own conducts [sic] in having allowed similarly-

4  situated wetland owners to be paid while denying Plaintiff her land compensation, including abusing

5  the judicial process of the Commonwealth to further deny Plaintiff her land compensation." Opp.

6  Mem. at 23-24. Plaintiff says the reason for this omission, *see* Opp. Mem. at 24 ("The reason being.

7  . . ."), is that "when one views the actions taken against Plaintiff in this case by Defendants CNMI and

8  Brown, in light of their own actions towards these other similarly-situated wetland owners, the

9  'extremely egregious' nature of their actions towards Plaintiff comes to light." Opp. Mem. at 24.

10  Plaintiff's observation simply does not evidence "extremely outrageous" acts, *Coors Brewing Co. v.*

11  *Floyd*, 978 P.2d at 665, or conduct "so outrageous in character, and so extreme in degree, as to go

12  beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

13  civilized community," *Dillon v. City of New York*, 704 N.Y.S.2d 1, 7-8 (N.Y. App. Div. 1999) (internal

14  quotation marks omitted); *see generally* Def. Mem. at 23-24, on the part of Defendants, as is required

15  to state a claim for intentional or negligent infliction of emotional distress

### III. CONCLUSION

17  For the reasons set forth in Defendants' Memorandum in support of their motion to dismiss and

18  the reasons discussed above, Plaintiff's federal and state claims against Defendants CNMI and Brown

19  should be dismissed under FRCP 12(b)(6).

20  Respectfully submitted,

21  **CIVILLE & TANG**

24  Date: March 1, 2006                    By

**G. PATRICK CIVILLE**
*Attorney for Defendants*
*Commonwealth of the Northern Mariana Islands,*
*and Pamela Brown, personally and in her*
*official capacity as the Attorney General for the*
*Commonwealth of the Northern Mariana Islands*