Benjamin L. DeMoux
Assistant Attorney General
Office of the Attorney General-Civil Division
2nd Floor, Juan A. Sablan Memorial Bldg.
Caller Box 10007
Saipan, MP 96950
Telephone: 664-2341
Fax: 664-2349
bendemoux@gmail.com
Attorney for the Office of the Attorney General as amicus curiae.

F I L E D
Clerk
District Court

MAR 22 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI<br><br>Plaintiff,<br><br>v.<br><br>PAMELA BROWN, a.k.a. PAMELA BROWN BLACKBURN, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; FERMIN M. ATALIG, personally and in his official capacity as Secretary of Finance; COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; MARIA LOURDES SEMAN ADA, personally and in her official capacity as Executive Director for the Commonwealth Development Authority, COMMONWEALTH DEVELOPMENT AUTHORITY; BANK OF GUAM; and JOHN DOES ONE thru TEN.<br><br>Defendants. | CIVIL ACTION NO. 05-0037<br><br>AMICUS BRIEF ON THE STATUS OF THE COMMONWEALTH DEVELOPMENT AUTHORITY.<br><br>Date: May 18, 2006<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

NOW COMES the Office of the Attorney General, in the capacity of amicus curiae, and files the following brief pursuant to the Court's order of March 1, 2006. In that order the Court asked the Office of the Attorney General to prepare a brief describing its position on the question of whether the Commonwealth Development Authority ("CDA") is an arm of the

government. While not stated explicitly in the Court's order, the Office of the Attorney General has assumed that the context for the Court's question is whether CDA is entitled to sovereign immunity against the § 1983 claims in this case. For the reasons set out in detail below, it is the opinion of the Office of the Attorney General that CDA is an arm of the CNMI government for the purpose of § 1983 immunity.

## LEGAL STANDARD

To determine whether a CNMI agency is an arm of the government for the purpose of § 1983 immunity, the Ninth Circuit has applied a five-factor test:

> (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state and (5) the corporate status of the entity.

*Aguon v. Commonwealth Ports Authority*, 316 F.3d 899, 901 (9th Cir. 2003) (citing *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (internal quotation marks omitted.) The *Aguon* case is particularly instructive because it concerned another agency of the CNMI government, the Commonwealth Ports Authority. In that case, the Ninth Circuit applied all five factors, but gave particular weight to the first two. *Id* at 901-904. After going through a thorough analysis, the court concluded that the Ports Authority was an arm of the Commonwealth government for the purpose of § 1983 immunity. *See id.*

I. <u>A Judgment Against CDA would Impact Central Government Functions</u>

In determining whether CDA is an arm of the CNMI government for the purpose of § 1983 immunity, the first and most important factor is whether a money judgment against CDA would "impact" the CNMI treasury. *Aguon*, 316 F.3d at 202. The "impact" is not limited to direct liability, but instead also applies anywhere the CNMI is a "real, substantial party in interest." *Id*. In particular, the treasury is impacted when a large money judgment against the

agency in question would prevent it from performing "central government functions," without additional and extraordinary appropriations from the legislature. *Id.*

In this case, CDA performs essential government functions relating to the economic development of the Commonwealth. More specifically, its "Development Banking Division" is charged with, among other things, achieving "the greatest possible return, in terms of economic development on the funds made available to the Commonwealth by the United States…and [serving] as the Northern Marianas development bank identified in N.M.I. Const. art. XI § 6(c)." 4 N. Mar I. Code § 10102(a)(3) & (a)(5) (1999). The other half of CDA, its "Development Corporation Division," is charged with identifying and assisting business and commercial enterprises of value to the Commonwealth and with serving "as the economic development loan fund agency for qualified private sector enterprises." *Id* at § 10102(b)(1)-(3). To go along with this serious responsibility to promote the economic development of the CNMI, CDA has the power to borrow money, including issuing bonds, and to "pledge the full faith and credit of the Commonwealth," in the process. *Id* at 10203(a)(18).

Given the serious and vital nature of CDA's work, if CDA were "faced with a large money judgment which it could not pay, the Commonwealth would be compelled to protect its island economy by responding with an appropriation to provide the citizens of the Commonwealth with essential…services." *Aguon*, 316 F.3d at 903. As such, the CNMI is a real in interest here and the first two factors set forth in *Aguon*, weigh heavily in favor of finding that CDA is an arm of the CNMI government for the purposes of § 1983 immunity.

II.     <u>CDA is an Entity that can Sue and be Sued, but this Factor is Less Important</u>

The third factor is the power to sue or be sued. CDA is empowered both to sue and be sued in its own name under the enabling act. 4 N. Mar. I. Code § 10203(a)(4) (1999). This weighs against a finding that CDA is an arm of the government for the purpose of § 1983

immunity, but [t]his factor…is entitled to less weight than the first two." *Aguon*, 316 F.3d at 903 (citation omitted).

III.   <u>CDA is Allowed to Hold Property in its Own Name, but also to Pledge the Credit of the Government</u>

The fourth factor is whether the agency can hold property in its own name. In this case, CDA is so empowered. 4 N. Mar. I. Code § 10203(a)(5) (1999). However, as mentioned above, CDA also has the power to pledge the full faith and credit of the entire government. *Id* at § 10203(a)(18). Because there is a balance between CDA's power to take property in its own name (a power not usually held by non-autonomous government agencies), but does have the power to bind the entire Commonwealth government (a power that is usually held by such agencies). Therefore, this factor does not weigh heavily on either side. *See Aguon*, 316 F.3d at 903. (Holding that Commonwealth Ports Authority's power to hold property in its own name was balanced out by its power to take property by eminent domain).

IV.   <u>CDA is a Public Corporation Subject to Some Oversight from the Legislature</u>

The fifth and final factor is the corporate status of the entity. In this case, CDA is a public corporation created with the general purpose of stimulating economic development for the benefit of the people of the Commonwealth. *See* 4 N. Mar. I. Code § 10201(a). Its activities are controlled by a Board of Directors, who are appointed by the Governor, subject to the advice and consent of the Senate. *Id* at § 10301(b). The Directors serve a term of four years and can be removed only for cause. *Id* at §§ 10301(b) and 10304.

CDA has significant limitations on its expenditures and other activities. CDA is empowered to draw up its own budget and to pay its own administrative expenses out of its own funds, but these expenditures are limited to 2% of CDA's total assets and must conform to the budget it is required to submit to the Governor and the legislature. *Id* at § 10402(f). (Note that this budget submission is for the information of the recipients only and does not require their

approval). *Id.* In addition, the CDA must "adopt, and update as necessary, a statement of development objectives and priorities," and these are subject to the approval of the Governor and the legislature. *Id* at § 10402(b). Finally, the issuance of bonds or other obligations exceeding $5 million requires the consent of the legislature. *Id* at § 10204(b)(4).

The work of the *Aguon* court is instructive in determining how these facts should be weighed. In that case, the Ports Authority's board was appointed by the Governor, subject to advice and consent by the Senate and the board had a duty to report to the legislature and the governor. *Aguon*, 316 F.3d at 903-904. In addition, the court noted that "none of the far-reaching powers vested in the board is subject to prior government approval." *Id* at 904. Despite this "far-reaching" power, the *Aguon* court found that "the fifth factor weighs neither for nor against [the Ports Authority's] status as an arm of the Commonwealth" because the "Commonwealth's power over the make-up of the board" balanced out "the board's authority to exercise its wide-ranging powers without prior government approval. *Id*.

Contrast this with the situation of CDA. Like the Ports Authority, CDA's board is filled through appointment by the Governor and confirmation by the Senate. Unlike the Ports Authority, some of CDA's powers are subject to "prior government approval," including certain expenditures, and, more importantly, its "objectives and priorities." Taken together, these facts lean in favor of a finding on the fifth factor, the corporate status element, that CDA is an arm of the government for the purpose of § 1983 immunity.

V. <u>CDA is an Arm of the Government for the Purpose of § 1983 Immunity</u>

Based on the analysis above, the first two, most important factors point toward a finding that CDA is an arm of the government and fifth factor does as well. The fourth factor does not point in either direction. Only the third factor points against. Therefore, it is the position of the Office of the Attorney General that the Commonwealth Development Authority is an arm of the Commonwealth Government for the purposes of extending § 1983 sovereign immunity.

Date:  March 22, 2006.

Respectfully submitted,
OFFICE OF THE ATTORNEY GENERAL

By: _____
Benjamin L. DeMoux
Assistant Attorney General