FILED
Clerk
District Court

MAR 29 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

LAW OFFICE OF
**VICENTE T. SALAS**
ATTORNEY AT LAW
2nd Floor, UIU Building
P.O. BOX 501309
SAIPAN, MP 96950-1309
Tel:   (670) 234-7455/234-7427
Fax:   (670) 234-7256

*Attorney for:* Defendants
   Commonwealth Development Authority
   and Maria Lourdes S. Ada

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG. KUMAGAI,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>**PAMELA BROWN**, a.k.a. **PAMELA BROWN BLACKBURN**, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; **FERMIN M. ATALIG**, personally and in his official capacity as the Secretary of Finance; **COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS**; **MARIA LOURDES SEMAN ADA**, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority; **COMMONWEALTH DEVELOPMENT AUTHORITY**; **BANK OF GUAM**; and **JOHN DOES ONE through TEN**,<br><br>　　　　　Defendants. | Civil Action No. 05-00037<br><br>COMMONWEALTH DEVELOPMENT AUTHORITY AND MARIA LOURDES S. ADA'S OPENING BRIEF ON THE STATUS OF THE COMMONWEALTH DEVELOPMENT AUTHORITY / EXHIBIT A / CERTIFICATE OF SERVICE<br><br><br>Date:   May 18, 2006<br>Time:  9:00 a.m.<br>Judge: Hon. Alex R. Munson |

NOW COMES the Commonwealth Development Authority ("CDA") and Maria Lourdes S. Ada ("Ada") and hereby files the following brief pursuant to the Court's order of March 1, 2006. In that order the Court asked CDA and Ada to brief the question of whether or not CDA is an "arm of the state" for purposes of determining whether CDA is entitled to sovereign immunity against the § 1983 claims in this case.

*ORIGINAL*

CDA and Ada adopt the arguments and conclusion contained in the brief filed by the Office of the Attorney General on behalf of the Commonwealth on March 22, 2006 and, further, submit the following supplemental points and authorities. Like the Commonwealth Ports Authority in *Aguon v. Commonwealth Ports Authority*, 316 F.3d 899 (9th Cir. 2003), CDA is an arm of the Commonwealth government for the purpose of § 1983 immunity from suit.

**I.     The Commonwealth Government is the Real, Substantial Party in Interest**

In *Aguon, supra,* the Ninth Circuit gave particular weight to the first two factors in applying the five-factor test set forth in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198 (9th Cir. 1988). These same two factors, to wit: 1) whether a money judgment against CDA would be satisfied out of the CNMI treasury, and 2) whether CDA performs essential central governmental functions must be applied to determine whether CDA is an arm of the Commonwealth for § 1983 immunity. In determining that the Commonwealth is the "real, substantial party in interest", the Ninth Circuit combined the two factors and found that a large money judgment against the Ports Authority would require an appropriation from the legislature otherwise essential government functions would be impacted. *Aguon*, 316 F. 3d at 902. In the case of CDA, this is especially true.

CDA's annual budget for administrative expenses is taken from funds available to the authority pursuant to 4 CMC § 10401(b)(1) and (3) and shall not exceed two percent of the authority's assets including accounts receivable. See 4 CMC § 10402(f). "Administrative expenses means the cost of reimbursements to board members, officers and staff for wages, salaries and other compensation authorized in this division, and also means rent, office expenses, professional fees and other necessary administrative costs of implementing this division." 4 CMC § 10103(a).

CDA's annual budget for administration for fiscal year 2004 was a maximum ceiling of $1,846,421.46 with an actual cash expenditure of $1,385,966.16. See Attachment to

1  Exhibit "A" Affidavit of Oscar Camacho, attached hereto and made a part hereof. In 2005,
2  its approved budget was $1,400,288.00 with an actual cash expenditure of $1,303,109.14.
3  See Attachment to Exhibit "A". For 2006, it has an approved budget of $1,510,041.00
4  with actual expenses expected to be significantly less because of a foreseeable and
5  substantial reduction in cash receipts by the end of the fiscal year. *Id.* In addition, CDA is
6  restricted from borrowing for administrative expenses. 4 CMC § 10405(c).
7      In comparison, the budget for administration of the Commonwealth Ports Authority
8  is derived from its fund which is "all monies received by the authority from whatever source
9  ..." See 2 CMC § 2174 (b) and (c). "All expenditures, except as otherwise provided by law,
10 shall be made from said Commonwealth Ports Authority Fund. *Id.* at (e). In spite of the fact
11 that the Ports Authority conceded that it could theoretically pay for any judgment levied
12 against it from its substantial funds, the Ninth Circuit found that any judgment in excess of
13 Port Authority funds may still impact the Commonwealth treasury. *Aguon*, 316 F.3d at 903.
14     As pointed out in the Commonwealth's memorandum on page 3, CDA's statutory
15 mandate is serious and vital in nature to the central functions of the CNMI government. Like
16 the Ports Authority it is charged with receiving United States Government funds for the
17 CNMI.. In the case of CDA, they are for economic development and capital improvement
18 projects. 4 CMC § 10401(a). Pursuant to subpart (5)of the same provision, CDA is to
19 receive any other monies granted, donated, or appropriated to the CNMI by the federal
20 government.
21     More importantly, as previously pointed out by the government, part of CDA's
22 functions is to serve as the Northern Marianas development bank as identified in Article X,
23 § 6(c) of the N.M.I. Constitution. 4 CMC § 10102(a)(5). Therefore, part of CDA's functions
24 on behalf of the central government is constitutionally mandated making it a more vital part
25 of such government.
26     Finally, CDA is a vital part of the central functions of the government because it
27 plays a very critical role in any public borrowing by the Commonwealth. 4 CMC §
28

10203(a)(27) is reprinted in its entirety below:

> "To act as a financial advisor and coordinator with respect to any public borrowing by the Commonwealth, its departments, autonomous public agencies, municipalities and public corporations. Notwithstanding any other provision of law, no bonds or other debentures, may be issued or other public indebtedness incurred, by the Commonwealth or any of its departments, autonomous public agencies, municipalities or corporations including the Marianas Housing Authority and the Commonwealth Ports Authority without the approval of the Commonwealth Development Authority. The requirements by this chapter shall not apply to bonds or other debentures authorized prior to July 1, 1985."

Of crucial importance in the above provision is the fact that after July 1, 1985, even the Commonwealth, including the Ports Authority, is required to obtain CDA approval in order to borrow or issue a bond. Consequently, all bond issues including general obligation bonds are subject to CDA approval. Of special note is the fact that general obligation bonds when issued by CDA require the pledging of the Commonwealth's full faith and credit and, more importantly, the waiving of the Commonwealth's sovereign immunity. 4 CMC § 10460(a) and (c).

## II. CDA's Right to Hold Real Property is Limited by Law and Only in Connection with its Activities

Pursuant to 4 CMC § 10203(5), CDA is empowered to acquire and hold any interest allowed by law in any real property. The phrase "..any interest allowed by law..." is not defined by any provision in the statute and may be subject to different interpretations based on current case law. Unlike the Ports Authority and the Commonwealth, however, it does not have the power of eminent domain because it does not require ownership of properties for its operations. In addition, the powers and duties of the Ports Authority specifically authorize it to purchase, lease and sell real property incident to its operations. See 2 CMC § 2122(c). CDA only obtains title to real property at mortgage foreclosure proceedings dealing with its defaulted economic development loans where it is or may be the sole highest bidder.

Because of significant limitations, both in the language of its statutory power

4

to hold an interest in real property and the practical applications of such power, CDA is not like the Ports Authority and the fourth *Mitchell* factor weighs more in favor of CDA's status as an arm of the Commonwealth.

### III. On the Fifth Factor, the Balance Tips in Favor of CDA's Status as an Arm of the Commonwealth

In *Aguon,* the Ninth Circuit felt that the fifth factor of *Mitchell* did not weigh neither for nor against the Ports Authority's status as an arm of the Commonwealth and leaves the balance in equipoise. *Id.* at 904. The foregoing arguments which show that the Commonwealth has granted its power to pledge the full faith and credit of the Commonwealth to CDA, to waive its sovereign immunity in the issuance of general obligation bonds and, in the case of public borrowing, exclusively reserved the power of approval even for borrowing by the Commonwealth to CDA are strong arguments tipping the balance in favor of a finding that CDA, notwithstanding its autonomous public corporation status, is an arm of the Commonwealth for the purpose of § 1983 immunity.

In the Commonwealth government structure, there are no other situations that even come close to the relationship between CDA and the Commonwealth. It is, in a nutshell, inconceivable for the Commonwealth to relinquish its powers to an entity that it does not have any authority or control over in the form of an instrumentality or agency of the Commonwealth.

### IV. CDA is an Arm of the Commonwealth Government

From the arguments above, only the third *Mitchell* factor does not favor a finding that CDA is an arm of the Commonwealth for purposes of establishing sovereign immunity against federal § 1983 claims. Hence, it is logical to conclude that if the Ports Authority in the *Aguon* case has been determined by the Ninth Circuit court to be an arm of the Commonwealth government, then CDA also has the same status.

1 | Dated this 29th day of March, 2006.

Respectfully Submitted By:

**LAW OFFICES OF VICENTE T. SALAS**

_____
VICENTE T. SALAS, CNMI Bar #F0126
Attorney for the Defendants Commonwealth Development Authority and Maria Lourdes S. Ada, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority

# CERTIFICATE OF SERVICE

I, VICENTE T. SALAS, hereby certify that on this ___ day of March, 2006, I have caused true and correct copies of the foregoing *Commonwealth Development Authority and Maria Lourdes S. Ada's Opening Brief on the Status of the Commonwealth Development Authority, Exhibit A and Certificate of Service* to be served upon the following counsel via personal delivery:

Victorino DLG. Torres, Esq.
3rd Floor, Bank of Guam Bldg.
Garapan Village
Saipan, MP 96950
*Counsel for defendant Bank of Guam*

G. Patrick Civille, Esq.
Civille and Tang
Cabrera Center, Chalan LauLau
Saipan, MP 96950
*Counsel for defendants the
Commonwealth and Pamela Brown*

Benjamin L. DeMoux, Assistant Attorney General
CNMI Attorney General's Office - Civil Division
2nd Floor, Juan A. Sablan Memorial Bldg.
Saipan, MP 96950
*Counsel for the Office of the Attorney General
as amicus curiae*

Brien Sers Nicholas Esq.
Attorneys At Law
1st Floor, UIU Building
P.O. Box 502876
San Jose, Saipan, MP 96950
*Counsel for Plaintiff Rosario DLG. Kumagai*

Dated: March ___, 2006.

_____
VICENTE T. SALAS, CNMI Bar #F0126

|   |   |
|---|---|
| *LAW OFFICE OF*<br>**VICENTE T. SALAS**<br>ATTORNEY AT LAW<br>2nd Floor, UIU Building<br>P.O. BOX 501309<br>SAIPAN, MP 96950-1309<br>Tel:   (670) 234-7455/234-7427<br>Fax:   (670) 234-7256 |   |

*Attorney for:* Defendants
Commonwealth Development Authority
and Maria Lourdes S. Ada

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG. KUMAGAI,<br><br>Plaintiff,<br><br>vs.<br><br>**PAMELA BROWN**, a.k.a. **PAMELA BROWN BLACKBURN**, personally and in her official capacity as the Attorney General for the Commonwealth of the Northern Mariana Islands; **FERMIN M. ATALIG**, personally and in his official capacity as the Secretary of Finance; **COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS**; **MARIA LOURDES SEMAN ADA**, personally and in her official capacity as the Executive Director for the Commonwealth Development Authority; **COMMONWEALTH DEVELOPMENT AUTHORITY**; **BANK OF GUAM**; and **JOHN DOES ONE through TEN**,<br><br>Defendants. | Civil Action No. 05-00037<br><br>**AFFIDAVIT OF OSCAR C. CAMACHO WITH ATTACHMENTS** |

Oscar C. Camacho, after having been duly sworn upon oath, states as follows:

1. That he is over the age of eighteen years and is competent to testify under oath in matters stated herein based on his own personal knowledge.

2. That he is the Acting Chief Executive Officer of the Commonwealth Development Authority and is the highest administrative person in charge of the operations and activities of the Authority.

EXHIBIT A

# COMMONWEALTH DEVELOPMENT AUTHORITY
## APPROVED FY2005 & FY2006 BUDGETS

|  | **FY2004**<br>Total Assets<br>FY2002 Audited | **FY2005**<br>Total Assets<br>FY2003 Audited | **FY2006**<br>Total Assets<br>FY2004 Audited |
|---|---:|---:|---:|
| Total Assets DBD | 20,210,772.00 | 16,491,363.00 | 15,972,080.00 |
| Total Assets DCD | 37,110,301.00 | 37,217,057.00 | 34,535,942.00 |
| Projected Stock Equity from CUC MOA | 35,000,000.00 | 35,000,000.00 | 35,000,000.00 |
| **TOTAL ASSETS W/CUC:** | 92,321,073.00 | 88,708,420.00 | 85,508,022.00 |
| 2% budget w/ CUC: | 1,846,421.46 | 1,774,168.40 | 1,710,160.44 |
| **TOTAL ASSETS LESS CUC:** | 57,321,073.00 | 53,708,420.00 | 50,508,022.00 |
| 2% budget less CUC: | 1,146,421.46 | 1,074,168.40 | 1,010,160.44 |
| **CDA Approved Budget:** | **1,366,794.00** | **1,400,288.00** | **1,510,041.00** |
| Actual: | 1,385,966.16 | 1,303,109.14 | |

*note:  budgets are approved one year prior to fiscal year.*