FILED
Clerk
District Court

APR 13 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

*ORIGINAL*

1  BRIEN SERS NICHOLAS
   Attorney at Law
2  UIU Bldg., 1st Floor
   P.O. Box 502876
3  Saipan, MP 96950

4  Telephone Nos.:    (670) 235-7190/91
   Facsimile No.:     (670) 235-7192

5
   Attorney for Plaintiff
6     Rosario DLG Kumagai

7
               IN THE UNITED STATES DISTRICT COURT
8                            FOR
                  THE NORTHERN MARIANA ISLANDS
9

   ROSARIO DLG KUMAGAI,            ]    CIVIL ACTION NO. 05-0037
10                                 ]
               Plaintiff,          ]
11                                 ]
        vs.                        ]
12                                 ]
   PAMELA BROWN, a.k.a. PAMELA     ]
13 BROWN BLACKBURN, personally     ]
   and in her official capacity as the ]
14 Attorney General for the        ]
   Commonwealth of the Northern    ]
15 Mariana Islands;                ]    PLAINTIFF'S OPPOSITION BRIEF RE:
   FERMIN M. ATALIG, personally    ]    DEFENDANT CDA AS ARM OF THE
16 and in his official capacity as the ] STATE (CNMI)
   Secretary of Finance,           ]
17 COMMONWEALTH OF THE             ]
   NORTHERN MARIANA ISLANDS;       ]
18 MARIA LOURDES SEMAN ADA,        ]
   personally and in her official capacity ]
19 as the Executive Director for the ]
   Commonwealth                    ]
20 Development Authority;          ]    Dated:   May 18th, 2006
   COMMONWEALTH DEVELOPMENT        ]    Time:    9:00 a.m.
21 AUTHORITY;                      ]    Judge:   Hon. Alex R. Munson
   BANK OF GUAM;                   ]             Chief Judge
22 and JOHN DOES ONE thru TEN,     ]
                                   ]
23             Defendants.         ]
                                   ]
24 _____  ]

25         COMES NOW ROSARIO DLG KUMAGAI, as Plaintiff herein, by and through her

26 Counsel, Brien Sers Nicholas, Attorney at Law, and file her opposition in this matter

27 in response to this Honorable Court's Order requiring additional briefing on the status

28 of Defendant Commonwealth Development Authority ["Defendant CDA"] as an arm

1    of the Commonwealth of the Northern Mariana Islands ["CNMI"].

2

3                              **Introduction:**

4         Defendant CDA and the Office of the Attorney General ["AG"], relying

5    particularly on the first two (2) of the five (5) factor test guides laid out in <u>Mitchell v.</u>

6    <u>Los Angeles Community College Dist.</u>, 861 F.2d 198 and as applied in <u>Aguon v.</u>

7    <u>Commonwealth Ports Authority</u>, 316 F.3d 899 (9th Cir. 2003), argue that said

8    Defendant CDA is an "arm of the CNMI" and therefore it cannot be held liable under

9    42 U.S.C. § 1983.[1]

10        The *Mitchell* five-factor test guides are as follows: (1) "whether a money

11   judgment would be satisfied out of state funds,"(2) "whether the entity performs

12   central governmental functions," (3) "whether the entity may sue or be sued," (4)

13   "whether the entity has the power to take property in its own name or only in the

14   name of the state" and (5) "the corporate status of the entity."  <u>See</u> <u>Mitchell</u>, 861

15   F.2d at 201.

16        As would be seen below, contrary to the arguments presented by Defendant

17   CDA and the AG, applying the above-enumerated factors to the facts of this case and

18   in light of Defendant CDA's enabling statute clearly shows that Defendant CDA could

19   not and can not be deemed to be an arm of the CNMI for purposes of § 1983

20   liabilities.

21

22        **(1)    Defendant CDA Can Satisfy Any Monetary Judgment On Its Own:**

23        There is no question whatsoever that Defendant CDA is legally an "autonomous

24   public agency" with all "the rights and privileges of a corporation."  <u>See</u> 4 CMC  §

25   _____

26        [1]    The AG is quite wrong in its assumption that this Honorable Court's question
     is "whether CDA is entitled to sovereign immunity against the § 1983[.]" <u>See</u> AG's Brief, pg.
27   2, lines 1 thru 3.  As a matter of law, the CNMI does not have sovereign immunity against
     a claim based on federal laws.  <u>See</u> <u>Fleming v. Dep't of Public Safety</u>, 837 F.2nd 401 (9th Cir.
28   1988); <u>see also</u> <u>Norita v. CNMI</u>, 331 F.3d 690 (9th Cir. 2003).

1   10201(a) and (d). It has its own assets and its own funds. For budgetary purposes,
2   Defendant CNMI does not derived any of its fundings from the CNMI government
3   treasury per se. See 4 CMC § 10401 et seq. From all of these funds and assets,
4   Defendant CDA is only permitted to use no more then two percent (2%) for its
5   administrative expenses. See 4 CMC § 10402(f). As such, Defendant CDA has for
6   purposes of paying on any judgment rendered against it in this case some ninety-eight
7   percent (98%) of its funds and assets available for such purposes. Based on the
8   affidavit of Mr. Oscar Camacho, it is quite evident that Defendant CDA does have the
9   means and the ability to pay whatever judgment that may be entered against it in this
10  case. Therefore, it does not need any financial assistance from the CNMI government
11  to do so. Similarly, any such judgment so entered can not and could not be deemed
12  to warrant Defendant CDA filing for bankruptcy. As a side issue, Defendant CDA does
13  and will have more than sufficient time, i.e., 20 years, to make good on such a
14  judgment. See 7 CMC § 2501.

15     Equally supportive of the fact that Defendant CDA does have the financial
16  means to pay a judgment on its own is the fact that, by law, it is authorized to not
17  only give out loans but also guarantee legal obligations of the CNMI and its entities as
18  well as private individuals and businesses. See 4 CMC § 10203(a) et seq. In fact, it
19  can also make loans for its own benefits as well. Id. In all, Defendant CDA does have
20  the resources and the means to pay any judgment against it in this case without the
21  need for the CNMI treasury to be affected.

22

23     **(2)    Defendant CDA Does Not Perform Any Central Government Functions:**

24     This is where Defendant CDA and the AG base their principal argument that said
25  Defendant CDA is an arm of the CNMI government. That is, relying on Augon v. CPA,
26  316 F.3d 899 (9th Cir. 2003), both Defendant CDA and the AG argue generally that
27  said Defendant CDA performs "essential government functions relating to the
28  economic development of the Commonwealth." See AG's Brief, pg. 3; see also

1   Defendant CDA's Brief, pg. 3. To the contrary, in light of the Aguon case, the role of
2   Defendant CDA in the economic well-being of the CNMI could not be deemed to be
3   affecting the functions of the CNMI to its people, economically speaking. In other
4   words, the role of Defendant CDA is no different then the roles being played by some
5   of the banking entities now in operation in the CNMI, i.e., Bank of Hawaii, Bank of
6   Guam, etc., as far as the economy of the CNMI is concerned.

7       In Aguon, the Ninth Circuit found that CPA (by statue) was established to act
8   on behalf of the CNMI in its dealings with the Untied States vis a vis all rights,
9   obligations and duties of the CNMI under any agreements CNMI may have with any
10   department or agency of the Untied States in connection with the operation of any
11   ports in the Commonwealth. The Ninth Circuit further found that CPA was eligible
12   to act for the CNMI and to do anything necessary to establish eligibility for federal
13   funding. Id. at 902. From the foregoing, the appellate court then concluded that if
14   CPA were to be faced with a large money judgment which it could not pay, the CNMI
15   would be compelled to protect its island economy by responding with an appropriation
16   to provide the citizens of the CNMI with essential seaport and airport services. Id. at
17   903. Contrast the foregoing with Defendant CDA's statutory roles in the CNMI's
18   economy, it becomes quite clear that Defendant CDA cannot be place in the same
19   status as that of CPA. Aside from seeking investments, Defendant CDA is also
20   charged with guarantying the obligations of and providing loans to private loans to
21   private individuals and businesses. See 4 CMC §§ 10203 (13), (14) & (15). From
22   time to time, Defendant CDA has imposed moratoriums on its loan programs without
23   any disruption being made to the CNMI economy. Again, comparing the foregoing to
24   CPA's inability to operate the CNMI's seaport and airport, one can see that Defendant
25   CDA's role cannot be deemed to be of any real threat to the whole economy of the
26   CNMI if a huge judgment is entered against it in this case.

27       Furthermore, the mere fact that Defendant CDA is a "depository" of federal
28   funds thus not render it as performing functions central to the CNMI government. See

1  4 CMC § 10203(3). The CNMI government does have its own Department of Finance
2  capable of performing the foregoing function. Similarly, the mere fact that Defendant
3  CDA is thinly associate with the financing of capital improvement projects in the CNMI
4  is again of no consequence with respect to the analysis in this case.   That is,
5  Defendant CDA does not make any decision as to how the capital improvement
6  projects are to be financed. All Defendant CDA does is to act as a "depository" of any
7  such funds earmarked for capital improvement projects. Again, Defendant CDA's role
8  as to any "federal funds" is no where near the role played by CPA as set forth in the
9  Aguon case.

10       In all, unlike the need for the CNMI to enter into the picture to protect its people
11  if a large monetary judgment were to have been entered against CPA in the Aguon
12  case, no such need exist in this case with respect to Defendant CDA. Defendant
13  CDA's role in the CNMI economy will not be affected to such a degree if a large
14  judgment is entered against it to warrant the CNMI government to enter into the
15  picture. After all, Defendant CDA is but an "economic advisor." Its failure to give
16  advise, similarly to its decision from time to time to put a moratorium on all of its
17  loans, proves that with or without Defendant CDA, the CNMI's economy is still very
18  much alive.

19       Accordingly, based on the rational of the Aguon case, the opposite is true with
20  respect to Defendant CNMI.

21

22       **(3)   Defendant CDA May Sue And Be Sued:**

23       Defendant CDA, like any corporate entity, can sue or be sued in its own
24  corporate name. See 4 CMC § 10203(4). In fact, Defendant CDA is legally authorized
25  to employ foreclosure proceedings to protect its outstanding loans and investments.
26  See 4 CMC § 10203(16).

27       Interestingly enough, in this case, when it was faced with a threat from
28  Defendants CNMI and Brown of being sued if it were to allow the processing of

1  Plaintiff's land compensation claim, Defendant CDA opted to go along with the illegal
2  demand from Defendants CNMI and Brown and agreed not to process Plaintiff's claim.
3  The reason for Defendant CDA to have done what it did to Plaintiff was that it did not
4  want to be part of the lawsuit filed against Plaintiff in the CNMI Superior Court. <u>See</u>
5  Plaintiff's Complaint, Exhibit "S."

6

7  **(4)     Defendant CDA Has The Power To Take Property In Its Own Name:**

8  Defendant CDA, by law, has the power to acquire and hold interest in any real
9  or personal property of whatever form and is further authorized to sell, mortgage, or
10  otherwise dispose of the same. <u>See</u> 4 CMC § 10203(5). And, as alluded to above,
11  it also has the power to foreclose on the same. <u>See</u> 4 CMC § 10203(16).

12

13  **(5)     Corporate Status Of Defendant CDA:**

14  Defendant CDA, as a corporate entity, has its own Board of Directors legally
15  charged with duties and responsibilities not subject to any constraint from the central
16  government except by law. <u>See</u> 4 CMC § 10301 et seq.; <u>see also</u> 4 CMC 10305 et
17  seq. And, as already mentioned above, Defendant CDA also enjoys very much all the
18  rights and privileges of a corporation. <u>See</u> 4 CMC § 10201(d).

19

20  **Conclusion:**

21  For all the foregoing reasons herein stated, Plaintiff respectfully ask that this
22  Honorable Court denies the motion to dismiss in this case by Defendants CDA and Ada
23  by finding that Defendant CDA is not an arm of the CNMI government.

24  Dated this the ___13th___ day of April, 2006.

25  Respectfully Submitted:

26

27

28  Brien Sers Nicholas, Esq.

- 6 -

**CERTIFICATE OF SERVICE**

    I, BRIEN SERS NICHOLAS, hereby certify that on <u>April 13, 2006</u>, I have caused to be served a true and correct copies of the foregoing **PLAINTIFF'S OPPOSITION BRIEF RE: DEFENDANT CDA AS ARM OF THE STATE (CNMI),** upon the following counsel via personal delivery:

1.    VICENTE T. SALAS, ESQ.
        2nd Floor UIU Building
        San Jose, Saipan
        *Counsel for CDA & Ma. Lourdes S. Ada*

2.    VICTORINO DLG TORRES, ESQ.
        3rd Floor, Bank of Guam Bldg.,
        Garapan, Saipan
        *Counsel for Bank of Guam*

3.    G. PATRICK CIVILLE, ESQ.
        Civille and Tang
        2nd Floor, Cabrera Center
        Chalan Laulau, Siapan
        *Counsel for CNMI & Pamela Brown*

4.    BENJAMINE L. DEMOUX, AAG
        CNMI Attorney General's Office - Civil Div.
        2nd Floor, Juan A. Sablan Memorial Bldg.
        Capitol Hill, Saipan
        *Counsel for the Office of the Attorney General*
        *as Amicus Curiae*

DATED: ___13th___ day of April, 2006.


BRIEN SERS NICHOLAS (Bar # F0163)