1

*LAW OFFICE OF*
**VICENTE T. SALAS**
2  ATTORNEY AT LAW
2nd Floor, UIU Building
3  P.O. BOX 501309
SAIPAN, MP 96950-1309
4  Tel:  (670) 234-7455/234-7427
Fax:  (670) 234-7256

5

6  *Attorney for:* Defendants
Commonwealth Development Authority
7  and Maria Lourdes S. Ada

F I L E D
Clerk
District Court

'APR 19 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

8

## IN THE UNITED STATES DISTRICT COURT
9  ### FOR THE
### NORTHERN MARIANA ISLANDS

10

| | |
|---|---|
| 11  ROSARIO DLG. KUMAGAI, | Civil Action No. 05-00037 |
| 12  Plaintiff, | |
| 13  vs. | |
| 14  **PAMELA BROWN**, a.k.a. **PAMELA BROWN BLACKBURN**, personally and in | **COMMONWEALTH DEVELOPMENT AUTHORITY AND MARIA LOURDES S. ADA'S REPLY TO PLAINTIFF'S OPPOSITION / CERTIFICATE OF SERVICE** |
| 15  her official capacity as the Attorney General for the Commonwealth of the Northern Mariana | |
| 16  Islands; **FERMIN M. ATALIG**, personally and in his official capacity as the Secretary of | |
| 17  Finance; **COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS**; | |
| 18  **MARIA LOURDES SEMAN ADA**, personally and in her official capacity as the | |
| 19  Executive Director for the Commonwealth Development Authority; | |
| 20  **COMMONWEALTH DEVELOPMENT AUTHORITY**; **BANK OF GUAM**; and | Date:  **May 18, 2006** |
| 21  **JOHN DOES ONE through TEN**, | Time:  **9:00 a.m.** |
| | Judge:  **Hon. Alex R. Munson** |
| 22  Defendants. | |

23      NOW COMES the Commonwealth Development Authority ("CDA") and Maria

24  Lourdes S. Ada ("Ada") and hereby files their reply brief to the opposition filed by plaintiff

25  to the question of whether or not CDA is an "arm of the state" for purposes of determining

26  whether CDA is entitled to immunity against the § 1983 claims in this case.

27

28

***ORIGINAL***

**I.    Any Money Judgment Against CDA Would Have To Be Satisfied Out Of CNMI Funds**

Plaintiff's claim that CDA has ninety-eight percent (98%) of its total assets available to pay for any judgment is a gross misconception. The CDA statute is clear that it can only pay its administrative expenses out of funds available under 4 CMC § 10401 (b)(1) and (3). See 4 CMC § 10402(f). All other funds of the authority are not available for administrative expenditure by CDA. More importantly, the majority of the funds which are presently available to the authority for administrative expenses are those found in 4 CMC § 10401(b)(1), which are restricted to "..any earned interest, surplus or net profit from authority operations and activities." Funds available pursuant to subsection (3) of § 10401(b), i.e., any interest or fees due or received from items transferred to CDA from the Economic Development Loan Fund pursuant to 4 CMC § 10407 are, by its very nature, a dwindling source of funds from which CDA can draw down for its administrative expenses. In addition, and contrary to plaintiff's contention, any amount borrowed pursuant to 4 CMC § 10401(b)(2) cannot be used by CDA for its administrative expenses. See 4 CMC § 10402(f).

Unlike the Commonwealth Ports Authority, CDA does not have all of its assets at its disposal for the payment of a judgment rendered against it. With the exception of funds which may be provided by the Marianas Public Land Trust (MPLT) pursuant to N.M.I. Const. Art. XI, § 6(c), all other funds of CDA pursuant to § 10401(a) are federal funds which are restricted under the Covenant (and subsequent United States financial assistance agreements) to capital development and economic development use. Even the funds provided by MPLT under § 10401(a)(2) are to be commingled with federal economic development loan funds and used specifically for economic development loans. N.M.I. Const. Art. XI (6)(c). Because these funds are restricted as to their use, even the CNMI legislature could not appropriate such funds for the payment of a judgment against CDA. Such payment would have to be appropriated from the general treasury of the Commonwealth thereby having the potential to greatly affect the financial status of the entire

2

1  Commonwealth and its people.

2
3  **II.    CDA's Central Government Functions Are Vital To The Economy Of The CNMI**

4  Plaintiff, on pages 4 and 5 of her opposition memorandum, attempts to reduce

5  the importance of CDA's role in the central government of the CNMI.    The plaintiff

6  contends that the CNMI government would not be compelled to protect CDA by

7  appropriating money to pay a judgment against CDA because, unlike CPA, CDA's role in

8  the island's economy is minimal.    In support of its argument, plaintiff cites to 4 CMC §

9  10203(a)(13)(14) and (15) and completely ignores the following important powers of CDA

10  under that section:

11  (7) To make and issue bonds, notes or other obligations in furtherance of the purposes of this division including, but not limited to, funding capital

12  improvement projects of the Commonwealth for sewers, power, water, roads, health facilities, air and sea ports, and parks and recreation facilities;

13
14  (8) To make loans to any autonomous public agency for use in any project that in the judgment of the authority will further the purposes of the division;

15  (9) To guarantee the obligations of the Commonwealth or its autonomous public agencies, incurred to fund any project that in the judgment of the

16  authority to be consistent with this division;

17  ---

18  (18) To pledge the full faith and credit of the Commonwealth.

19  *Id.*

20  In addition to the foregoing, CDA has numerous other powers that it performs

21  for the CNMI government. See *Id.* (19) through (34). Suffice it to say, however, that CDA

22  is the financial and investment arm of the government. It has been previously argued that

23  it approves all borrowing by the Commonwealth government and its agencies and is

24  authorized to pledge the full faith and credit of the Commonwealth and to waive its

25  sovereign immunity.  Presently, there are several outstanding bond issues that CDA has

26  pledged the full faith and credit of the Commonwealth (and waived its sovereign immunity)

27  in order to render such issues marketable.  One such bond issue is the $40M general

28
3

1  obligation bond which raised the proceeds of the MPLA Land Compensation Fund. If a

2  judgment rendered against CDA were  to have a detrimental effect on its viability as the

3  financial and investment arm of the Commonwealth, the CNMI's entire credit rating would

4  be adversely affected.  In addition, all its financial relationships with the private sector

5  through its economic development loans and guarantees would be similarly affected.  This

6  comports with the rationale of the court in *Aguon v. Commonwealth Ports Authority*, 316

7  F.3d 899 (9th Cir. 2003) because the functions of the air and sea ports in the CNMI are also

8  essential to the private sector economy.

9

10  ### III.    Unlike CPA, Only The Third Factor Of The *Mitchell* Case Works Against CDA

11  In CDA's opening brief, CDA and Ada acknowledged that only the

12  third  factor in *Mitchell v. Los Angeles Community College Dist.*, 861 F,2d 198 (9th Cir.

13  1988) did not favor a finding that CDA is an arm of the government.

14  With respect to the fourth factor, CDA is unlike CPA because it does not have the

15  power of eminent domain.  However, as pointed out in the opening brief, CDA only holds

16  interests in real property or personal property in connection with its activities. 4 CMC §

17  10203(a)(5).  Such activities are limited to holding an interest as a mortgagee and

18  subsequently in foreclosure proceedings it can acquire title to the foreclosed property as a last

19  resort, but only to protect its outstanding loans and investments. See 4 CMC § 10203(a)(15).

20  Finally, with the fifth factor, CDA's board of directors are also subject to the same

21  appointment and confirmation procedures by the governor and legislature, respectively, as

22  the CPA board.  What sets out the difference and tips the balance between CPA and CDA

23  are the three points previously pointed out. First, CDA has the power to pledge the full faith

24  and credit of the Commonwealth.  Secondly, CDA can waive the sovereign immunity of the

25  Commonwealth.  And lastly, CDA has the final authority to approve all public borrowing by

26  the Commonwealth and all its instrumentalities and agencies.

27

28

4

1    Dated this ___ day of April, 2006.

2                                 Respectfully Submitted By:

3

4                                 **LAW OFFICES OF VICENTE T. SALAS**

5

6

7

8                                 VICENTE T. SALAS, CNMI Bar #F0126
                                   Attorney for the Defendants Commonwealth
9                                 Development Authority and Maria Lourdes
                                   S. Ada, personally and in her official capacity
10                                as the Executive Director for the
                                   Commonwealth Development Authority
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1

## CERTIFICATE OF SERVICE

2

3        I, VICENTE T. SALAS,  hereby certify that on this 19th day of April, 2006, I have

4   caused true and correct copies of the foregoing *Commonwealth Development Authority and*

5   *Maria Lourdes S. Ada's  Reply to Plaintiff's Opposition and Certificate of Service* to be

6   served  upon the following counsel via personal delivery:

7

8                            Victorino DLG. Torres, Esq.
                            3rd Floor, Bank of Guam Bldg.
9                               Garapan Village
                               Saipan, MP 96950
10                       *Counsel for defendant Bank of Guam*

11

12                            G. Patrick Civille, Esq.
                               Civille and Tang
                           Cabrera Center, Chalan LauLau
13                              Saipan, MP 96950
                          *Counsel for defendants the*
14                      *Commonwealth and Pamela Brown*

15

16          Benjamin L. DeMoux, Assistant Attorney General
            CNMI Attorney General's Office - Civil Division
17              2nd Floor, Juan A. Sablan Memorial Bldg.
                               Saipan, MP 96950
18              *Counsel for the Office of the Attorney General*
                               *as amicus curiae*

19

20                          Brien Sers Nicholas Esq.
                               Attorneys At Law
21                           1st Floor, UIU Building
                               P.O. Box 502876
22                        San Jose, Saipan, MP 96950
                        *Counsel for Plaintiff Rosario DLG. Kumagai*

23

24   Dated:   April  19 , 2006.                    _____
                                                 VICENTE T. SALAS, CNMI Bar #F0126
25

26

27

28