F I L E D
Clerk
District Court

MAY 1 0 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  **JOAQUIN C. ARRIOLA**
2  **MARK E. COWAN**
   **ARRIOLA, COWAN & ARRIOLA**
3  259 Martyr Street, Suite 201
   P.O. Box X, Hagåtña, Guam 96932
4  Telephone: (671) 477-9730/33
   Telecopier: (671) 477-9734
5
   **VICTORINO D.L.G. TORRES**
6  **VINCENT D.L.G. TORRES**
   **TORRES BROTHERS, LLC**
7  P.O. Box 501856
   Saipan, NMI 96950
8  Telephone: (670) 233-5504/6
   Telecopier: (670) 233-5510
9
10 Attorneys for **BANK OF GUAM**

11              IN THE UNITED STATES DISTRICT COURT FOR
                   THE NORTHERN MARIANA ISLANDS
12
   ROSARIO DLG KUMAGAI,                    )  CIVIL ACTION NO. 05-0037
13                                          )
                    Plaintiff,              )
14         vs.                              )
                                            )
15 PAMELA BROWN, a.k.a. PAMELA BROWN        )
   BLACKBURN, personally and in her official)
16 capacity as the Attorney General for the )
   Commonwealth of the Northern Mariana Islands; )
17 FERMIN M. ATALIG, personally and in his  )  **MEMORANDUM OF POINTS**
   official capacity as the Secretary of Finance, )  **AND AUTHORITIES IN SUPPORT**
18 COMMONWEALTH OF THE NORTHERN             )  **OF DEFENDANT BANK OF GUAM'S**
   MARIANA ISLANDS;                         )  **MOTION FOR SUMMARY**
19                                          )  **JUDGMENT**
   MARIA LOURDES SEMAN ADA, personally      )
20 and in her official capacity as the Executive )
   Director for the Commonwealth Development)
21 Authority;                               )  Hearing:   JUN 1 5 2006
   COMMONWEALTH DEVELOPMENT                 )
22 AUTHORITY;                               )  Time:      8:30 a.m.
   BANK OF GUAM;                            )
23 and JOHN DOES ONE thru TEN,              )  Judge:     Hon. Alex R. Munson
                                            )
24                  Defendants.             )
25 _____)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................. iii

**STANDARDS FOR SUMMARY JUDGMENT** ................................................ 1

**BACKGROUND** ............................................................................. 1

I.    THE BANK PROPERLY FOLLOWED CDA's INSTRUCTION NOT TO PROCESS THE REQUISITION ........................................................ 6

    (a)    The Plaintiff Was Not a Beneficiary of the Indenture, and Had No Rights Against Bank of Guam or Interest in Funds in the Bank's Possession under the Indenture ........................................ 6

    (b)    CDA Has Control over Disbursements by Bank of Guam under the Indenture .................................................................. 10

II.    BANK OF GUAM, A PRIVATE BANKING INSTITUTION, WAS NEITHER A "STATE ACTOR" NOR THE PROXIMATE CAUSE OF ANY INJURY TO PLAINTIFF .......................................................................... 11

    (a)    The Bank Is a Private Party and Not a State Actor ........................ 11

    (b)    The Bank Was Not the Proximate Cause of Any Injury to Plaintiff ................................................................... 11

    (c)    The Bank Did Not Perform Any Public Function .......................... 13

    (d)    The Bank Did Not Engage in Any Joint Action or Conspiracy with Public Officials ........................................................ 13

III.    IF THE BANK IS CONSIDERED A "STATE ACTOR," IT IS ENTITLED TO QUALIFIED IMMUNITY OR TO A GOOD FAITH DEFENSE ...................... 15

    (a)    Public Officials Are Entitled to a Qualified Immunity Defense ........... 15

    (b)    Qualified Immunity May Be Applied to the Bank as a Private Party in the Circumstances of this Case ...................................... 18

    (c)    If the Bank as a Private Party Is Not Entitled to Qualified Immunity, the Bank Has a Good Faith Defense ............................ 21

IV.    PLAINTIFF'S §1985(3) CLAIM FAILS TO SHOW DISCRIMINATION BASED UPON RACE OR OTHERWISE CLASS BASED DISCRIMINATORY ANIMUS ........................................................................... 22

V.  PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED .............. 23

    (a)  There Is No Common Law Claim Conspiracy Tort in the CNMI Nor Evidence the Bank Conspired ................................. 23

    (b)  Plaintiff's Claims for Intentional Interference with Contractual Rights and Economic Relations Are Unsupported ..................... 23

    (c)  Plaintiff's Breach of Fiduciary Duties Claim Must Be Dismissed as the Bank Owed No Fiduciary Duty to Plaintiff ..................... 24

    (d)  Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress Must Be Dismissed ............................. 24

CONCLUSION ........................................................... 25

# TABLE OF AUTHORITIES

Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598,
    26 L.Ed.2d 142 (1970) .................................................. 14

Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034,
    97 L.Ed.2d 523 (1987) .................................................. 15

Anderson v. Liberty Lobby, Inc., (1986) 91 L.Ed.2d 202,
    477 U.S. 242, 106 S.Ct. 2505 ............................................ 1

Arnold v. International Business Machines Corporation,
    637 F.2d 1350 (9th Cir. 1981) .......................................... 12

Atlantic Cement Co., Inc. v. South Shore Bank,
    730 F.2d 831 (1st Cir. 1984) ............................................ 9

Ballinger v. North Carolina Agr. Extension Service,
    815 F.2d 1001 (4th Cir. 1987) .......................................... 14

Bartell v. Lohiser, 215 F.3d 550 (6th Cir. 2000) ......................... 19-21

Bescor, Inc. v. Chicago Title & Trust Company,
    446 N.E.2d 1209 (Ill. App. 1 Dist., 1983) ............................... 8

Borough of Brooklawn v. Brooklawn Housing Corp.,
    11 A.2d 83, 85 (NJ 1940) ................................................ 8

Brunette v. Humane of Ventura County, 294 F.3d 1205 (9th Cir. 2002) ... 13, 14

Celotex Corp. v. Catrett, (1986) 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 ... 1

Charfauros v. Board of Elections, 249 F.3d 941 (9th Cir. 2001) ........... 17

Charfauros v. Board of the Elections, 1998 MP 16, 5 N.M.I. 188 (N.M.I. 1998) ... 24

CNMI, ex rel. Pamela Brown, Attorney General v. MPLA, et al.,
    Civil Action No. 05-0332E ............................................... 4

Collins v. Womancare, 878 F.2d 1145 (9th Cir. 1989) ...................... 14

Commonwealth v. Demapan-Castro, Civil Action 04-0563 ..................... 17

Cruz v. U.S.A., (N.D.Cal. 2002) 219 F.Supp.2d 1027 ....................... 9

DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992) ........................... 15

Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1 (N.Y.A.D. 1999) . . . . . . . . . . . . 25

Eaton v. Continental General Ins. Co., 147 F.Supp.2d 829 (N.D. Ohio 2001) . . . . . . . . . . . . . 25

Ellis v. City of San Diego, California, 176 F.3d 1183 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . 19

Finsel v. Cruppenink, 326 F.3d 903 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Franklin v. Fox, 312 F.3d 423 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14, 19, 22

Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727,
    73 L.Ed.2d 396 (S.Ct. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

I.G.I. Gen. Contractor & Dev., Inc. v. Public School Systems,
    1999 MP 12 ¶12, 5 N.M.I. 250, 252 (N.M.I. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3rd Cir. 1994) . . . . . . . . . . . . . 21

King v. Massarweh, 782 F.2d 825 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Knox v. Ball, 191 S.W.2d 17 (Tex. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Koppers Co., Inc. v. Garling & Langlois, 594 F.2d 1094 (6th Cir. 1979) . . . . . . . . . . . . . . . . . 8

Lucky Development Co. Ltd. v. Tokai USA Inc., 3 N.M.I. 379 (N.M.I. 1992) . . . . . . . . . . . . 23

Lugar v. Edmondson Oil Company, Inc., 457 U.S. 922,
    102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Magana v. Commonwealth of the Northern Mariana Islands,
    107 F.3d 1436 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Manistee Town Center v. City of Glendale, 227 F.3d 1090 (9th Cir. 2000) . . . . . . . . . . . . . . 22

Mann v. City of Tucson, 782 F.2d 790 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mathis v. Pacific Gas & Electric Company, 75 F.3d 498 (9th Cir. 1996) . . . . . . . . . . . . . 14, 25

Mitchell v. Kirk, 20 F.3d 936 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Morse v. North Coast Opportunities, 118 F.3d 1338 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . 11

Murphy v. New York Racing Assoc., Inc., 76 F.Supp.2d 489 (S.D.N.Y. 1998) . . . . . . . . . . . 20

National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179,
    109 S.Ct. 454, 102 L.Ed.2d 469 (1988) ................................ 12

Nemo v. City of Portland, 910 F.Supp. 491 (D. Oregon 1995) .................... 22

North American Energy Systems, LLC v. New England Energy Management, Inc.,
    269 F.Supp.2d 12 (D.Conn. 2002) ..................................... 24

Proskauer Rose Goetz & Mendelsonn v. National Westminster Bank,
    579 N.Y.S.2d 361, 179 A.D.2d 611 (N.Y.App.Div., 1st Div. 1992) ........... 8

Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764,
    73 L.Ed.2d 418 (S.Ct. 1982) ......................................... 13

Richardson v. McKnight, 117 S.Ct. 2100, 521 U.S. 399,
    138 L.Ed.2d 540 (1997) .......................................... 18-21

RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th Cir. 2002) ............... 22

Robinson v. City of San Bernardino Police Department,
    992 F.Supp. 1198 (C.D. Ca. 1998) .................................... 22

Romero v. Kitsap County, 931 F.2d 624 (9th Cir. 1991) ......................... 15

Rosewood Services Inc. v. Sunflower Diversified Services, Inc.,
    413 F.3d 1163 (10th Cir. 2005) ....................................... 20

San Francisco Arts & Athletic Association v. U.S. Olympic Committee,
    97 L.Ed.2d 427, 483 U.S. 522, 107 S.Ct. 2971 (1987) ................... 13

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ........... 16

Scott v. United Carolina Bank, 503 S.E.2d 149 (N.C. App., 1998) .................. 8

Sergeson v. Delaware Trust Company, 413 A.2d 880 (S.Ct. Del. 1980) .............. 9

Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992) ...................... 22

Smith v. Bacon, 699 F.2d 434 (8th Cir.1983) (*per curiam*) ..................... 14

Smith v. Kitchen, 156 F.3d 1025 (10th Cir. 1998) .............................. 11

Sutton v. Providence St. Joseph Medical Center,
    192 F.3d 826 (9th Cir. 1999) ...................................... 11, 12

United Steelworkers of America v. Phelps Dodge Corp.,
    865 F.2d 1539 (9th Cir. 1989) (En Banc) ............................ 1, 13

Vector Research, Inc. v. Howard & Howard Attorneys P.C.,
    76 F.3d 692 (6th Cir. 1996) ................................................. 22

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002) .................. 25

Woodring v. Jennings State Bank, 603 F.Supp. 1060 (D. NE 1985) .................. 14

Wyatt v. Cole, 112 S.Ct. 1827, 118 L.Ed.2d 504, 504 U.S. 158 (1992) ........... 18, 19, 21

Wyatt v. Cole, 994 F.2d 1113 (5th Cir. 1993), 112 S.Ct. 1827 ..................... 21

**Statutes**

1 CMC §2151 ............................................................... 18

2 CMC Div. 4, §4741 et. seq. ................................................. 2

2 CMC Div. 4 §4742 ......................................................... 3

2 CMC §4743 ............................................................... 3

4 CMC §10203(a)(17) ........................................................ 3

4 CMC §10203(a)(27) ........................................................ 3

4 CMC §10451 et seq. ...................................................... 2, 3

4 CMC §10452 .......................................................... 2-3, 10

4 CMC §10453(c) ............................................................ 5

4 CMC §10455 ............................................................... 2

4 CMC §10460(c) ............................................................ 3

4 CMC §10461(b) ............................................................ 3

4 CMC §10462 ............................................................... 2

4 CMC §1403 ................................................................ 3

4 CMC §1803(e) ............................................................. 3

4 CMC §4743(d) ............................................................. 2

7 CMC §3401 ................................................................ 8

42 USC §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 15, 20, 22

42 USC §1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Rules**

Rule 56(c) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Authorities**

Article III, §11 of the Constitution of the CNMI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Public Law 15-02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Restatement of Torts 2d, §46, cmt. d (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Restatement of Torts 2d, §766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Restatement of Trusts 2d, (1959) §126, §200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Restatement of Trusts 2d, §126, cmt. (a) (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Restatement of Trusts 3d, §48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Restatement of Trusts, (1935) §126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

On a motion for summary judgment the moving party does not bear the burden of providing evidence negating the elements of plaintiff's claim. Celotex Corp. v. Catrett, (1986) 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548. In opposing a motion for summary judgment the party bearing the burden of proof must show evidence raising a triable issue of fact. The evidence presented in opposition to the motion must be sufficient to meet the relevant standard of proof on the particular claim. Anderson v. Liberty Lobby, Inc., (1986) 91 L.Ed.2d 202, 477 U.S. 242, 106 S.Ct. 2505. In a civil rights case alleging conspiracy, the moving party does not bear the burden of furnishing evidence negating the existence of a conspiracy; the non-moving party bears the burden of showing evidence from which a reasonable jury could conclude that a conspiracy existed. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1541-1543 (9th Cir. 1989) (En Banc). Conclusory statements of discriminatory intent are insufficient to avert summary judgment. Magana v. Commonwealth of the Northern Mariana Islands, 107 F.3d 1436 at 1448 (9th Cir. 1997).

## BACKGROUND

In PL 13-17, the CNMI Legislature found: "that the Commonwealth currently owes to its citizens approximately [$40 million] for land acquired by eminent domain or other legal process," and authorized public debt up to $40 million to settle these claims. (PL 13-17 §2.) PL 13-17 was

1

then amended by PL 13-25, 13-39, and 13-56, in various respects.[1] Originally the Bonds were to be issued by the Marianas Public Lands Authority (MPLA). (PL 13-17 §§2 and 3.) In the final version, the Bonds were to be issued by the Commonwealth Development Authority (CDA) pursuant to PL 11-3 codified at 4 CMC §10451 et seq. (PL 13-39 §2.) Also, the legislation originally provided for the Bond proceeds to be paid to MPLA. (PL 13-39 §3(d), 4 CMC §4743(d).) This was modified by PL 13-56 §5 and 14-29 §1(c), to provide for the net proceeds to be retained by the "CDA appointed trustee, pursuant to PL 11-3," and for concurrence of the Secretary of Finance to draw downs. Complaint, Ex.B, pp2-3. Finally, up to $11 Million of the debt was allocated to fund the construction of a prison, reducing the amount available for land compensation. (PL 13-56 §§3 and 4.)

Under PL 11-3 CDA has a central role concerning issuance of bonds. "The [CDA] shall act as the instrument of the Commonwealth for purposes of issuing the bonds for and in the name and on behalf of the Commonwealth ...", 4 CMC §10452. Virtually everything done by the Commonwealth in the issuance of its bonds under PL 11-3 is done by the CDA. CDA has a variety of substantive powers, including the power to "appoint" and to "authorize and empower" trustees ( 4 CMC §10462), and of "arranging for ... documents and instruments deemed required ..." (4 CMC §10455). Under its enabling legislation CDA also has the power "to act as a financial advisor and coordinator with respect to any public borrowing by the Commonwealth ..." 4 CMC §10203(a)(27). "Notwithstanding any other provision of law, no bonds ... may be issued ... by the Commonwealth ... without the approval of Commonwealth Development Authority." 4 CMC

---

[1] PL 13-17, 13-25, and 13-39 were codified as the Land Compensation Act of 2002, 2 CMC Div. 4 §4741 et. seq., however, the 2004 published Revision of the Commonwealth Code does not reflect the amendments in PL 13-56, or those in PL 14-29 discussed below. Copies of all five laws are included in the appendix.

2

§10203(a)(27). The CDA has the power "to make contracts and execute all instruments necessary or convenient in the exercise of the powers of the authority." 4 CMC §10203(a)(17).

The Bonds were issued by the CDA under an Indenture, which is a contract between the Bank and the CDA "acting for and on behalf of the Commonwealth". Indenture, p.1. Declaration of Amoretta L.P. Carlson ("Carlson Decl."), Ex.A. The MPLA is not itself a party to the Indenture. The Indenture governs the obligations of the Commonwealth to the Bondholders. Section 4.01 of the Indenture provides consistent with CNMI law:[2]

> The Bonds are a debt of the Commonwealth and the full faith and credit of the Commonwealth government pursuant to the Law are pledged to the punctual payment of the principal of and interest on the Bonds as the same shall become due …

The MPLA confirmed the Bonds were obligations of the CNMI not MPLA in a resolution concerning the Bonds. Carlson Decl., Ex.B.

The net proceeds of sale of the Bonds were to be deposited by the Trustee to the extent of $28,000,691.00 "in the MPLA account … and $9,104,694.00 in the Prison account …" Indenture, §3.01. The obligations as to "land compensation claims" to be paid from the MPLA fund are obligations of the Commonwealth and not of the MPLA (PL 13-17 §2; Indenture, §3.02).

By law and the Indenture a portion of fuel tax revenues assessed by and payable to the Commonwealth under 4 CMC §1403 are paid by the Commonwealth to a Land Compensation Fund, and disbursed by the Trustee for the payment of certain expenses as well as payment of the Bonds. See Indenture, Definitions "Land Compensation Fund", Indenture, p.6; Indenture, §4.02; PL 13-17 §4; PL 13-39 §§3 and 4, 4 CMC §1803(e), 2 CMC §4743.

---

[2] See 2 CMC Div. 4 §4742, as amended by PL 13-56 and 14-29, 4 CMC §§10451(a)-(c), 10452, 10460(c) and 10461(b).

3

In sum, the Bonds were issued by the Commonwealth through the CDA, not by MPLA. The CDA on behalf of the Commonwealth, not the MPLA, contracted with the Bank. The property held by the Bank under the Indenture (including in the MPLA account) is property of the Commonwealth not the MPLA. The obligations associated with the Indenture to pay the Bonds and Land Compensation Claims are obligations of the Commonwealth not the MPLA. As discussed in Section I infra the obligations of the Bank under the Indenture are to the Bondholders and the Commonwealth, not the MPLA or specific land claimants.

Each of the other Defendants in this action as well as non-Defendant MPLA is an officer or agency of the Commonwealth. The MPLA no longer exists having been abolished by the Commonwealth on February 22, 2006 by PL 15-02.[3]

The Bonds were issued in late 2003. Under the law then in effect, wetlands were to be compensated from bond proceeds only after lands taken for certain other purposes were compensated. Complaint, ¶18. On September 21, 2004 well after the Bonds were issued, Governor Babauta signed into law PL 14-29. Plaintiff contends that the effect of PL 14-29 was to remove the prioritization so wetlands were compensable on the same basis as other lands. Complaint, ¶19, Ex.B. The Attorney General contended instead that the effect of PL 14-29 was that wetlands could not be compensated at all from bond proceeds unless for rights of way. See, Complaint, CNMI, ex rel. Pamela Brown, Attorney General v. MPLA, et al., Civil Action 05-0332E ("the MPLA Lawsuit"), alleged in the Complaint in this action, ¶35, Ex.R.[4] PL 14-29 §(1)(b) also provided a valuation date

---

[3] It was originally established by PL 12-33 and 12-71.

[4] As alleged in the Complaint herein the Attorney General filed that action on August 15, 2005 against Plaintiff and another landowner, Victoria S. Nicholas. On September 22, 2005, Judge Wiseman dismissed the case as to Kumagai on the basis that Brown was barred by a prior settlement in an earlier case, Civil

4

for purposes of determining compensation. In his message signing PL 14-29 into law, Governor Babauta noted that the effect of using this valuation date was likely to make the Bond proceeds insufficient to pay all compensation claims.[5] Complaint, Ex.B, p.2.

The only specific allegations in the Complaint in this action that even relate to the Bank appear in paragraphs 32 through 34, and in substance are that on August 9, 2005 Defendants CDA and Ada delivered MPLA Requisition No. FY05-11 to the Bank after Defendant Atalig's concurrence therein, but on the same day CDA instructed the Bank not to process the requisition and that the Bank complied with such instructions. The CDA acted based on request of the Attorney General Brown who expressed concern as to legality of the disbursement as authorized by MPLA in the requisition. Complaint, Ex.Q. The Bank believed itself instructed to stop, that the instruction was within CDA's authority and that it was proper to comply. Declaration of Amoretta L.P. Carlson ¶¶7-8 ("Carlson Decl.").

Although not disclosed in the Complaint, on October 3, 2005, CDA again directed the Bank of Guam to process the requisition for payment to Kumagai and to the CNMI Treasury,[6] which the Bank of Guam did. Carlson Decl., ¶11. Accordingly, Plaintiff was paid the sums specified by the requisition.

---

Action No. 05-0149C ("the CHC Lawsuit"). Complaint herein, Ex.F, ¶38, Ex.U. Judge Wiseman allowed the case on the issue of compensability of wetlands to continue against Mrs. Nicholas. In a decision entered on February 10, 2006 after this suit was filed Judge Wiseman held wetlands compensable and dismissed the case as to Mrs. Nicholas. A copy of that decision is included in the Appendix.

[5]The Indenture contemplates amendments to the laws authorizing the bonds. See, Definition, "Bond Act," Indenture, p.2. Under PL 11-3, 4 CMC §10453(c), the use of bond proceeds may be changed by legislation. Section 7.01 of the Indenture provides that it may be amended. It does not appear that anyone challenged the validity of PL 14-29 on the basis that it was enacted after the bonds were actually issued.

[6]This action by CDA apparently followed Judge Wiseman's decision in favor of Kumagai in the MPLA Lawsuit, supra, f/n5.

5

The Complaint alleges a variety of activities on the part of the public defendants but not the Bank in this action over a period of months preceding the August 9, 2005 instruction to the Bank to withhold processing. The Complaint does not allege the participation by the Bank in any manner in these activities, other than through conclusory allegations of conspiracy. Under the Indenture and in practice, the Bank did not have involvement in, responsibility for, or information concerning these matters or the substantive aspects of land compensation settlement. Carlson Decl., ¶¶12-14, 18-19.

Plaintiff has contended that other wetland owners were compensated while she was not. The relevant chronology with respect to the specific payments alleged in paragraphs 39 and 40 of the Complaint as it pertains to the Bank is set out in the Declaration of Amoretta Carlson submitted herewith. None of the requisitions for these payments disclosed the wetland or non-wetland character of any of the property subject thereto. Many covered additional properties not alleged to be wetlands. None of the requisitions were processed during the period between August 9, 2005 when the Bank was instructed not to process Requisition No. FY05-11 for payment to Plaintiff Kumagai, and October 3, 2005 when the CDA again directed Bank of Guam to process Kumagai's requisition; all were processed either well before or subsequent to such period. See, Carlson Decl., ¶¶15-17. Accordingly, the Bank did not even unwittingly process payments to other wetland owners while complying with CDA's instruction as to Plaintiff's requisition.

I.   **THE BANK PROPERLY FOLLOWED CDA's INSTRUCTION NOT TO PROCESS THE REQUISITION.**

   (a)   <u>The Plaintiff Was Not a Beneficiary of the Indenture, and Had No Rights Against Bank of Guam or Interest in Funds in the Bank's Possession under the Indenture</u>.

6

The preamble to the Indenture provides "the Authority does hereby covenant and agree with the Trustee, for the benefit of the respective owners from time to time of the Bonds, as follows ..." Indenture, p.2.

Section 1.02 of the Indenture provides in part:

> ... this Indenture shall be deemed to be and shall constitute a contract between the Authority, on behalf of the Commonwealth, and the Owners from time to time of all Bonds issued hereunder and then Outstanding to secure the full and final payment of the interest on and principal of all Bonds authorized, executed, issued and delivered hereunder, subject to the agreements, conditions, covenants and provisions herein contained.

Accordingly, the contracting parties are the Commonwealth through the CDA, the Bond holders and the Trustee.

Section 10.02 of the Indenture provides:

> Nothing in this Indenture, expressed or implied, is intended to give to any person other than the Commonwealth, the Authority, the Trustee, the Paying Agent and the Owners any right, remedy or claim under or by reason of this Indenture. Any covenants, stipulations, promises or agreements in this Indenture contained by and on behalf of the Authority, the Commonwealth or any legislator, official (elected or appointed), member, officer or employee thereof shall be the sole and exclusive benefit of the Trustee and the Owners.[7]

The Trustee has obligations to the Commonwealth, and the CDA as the Commonwealth's agent under the Indenture, since the property the Bank holds under the Indenture belongs to the Commonwealth, the claims for land acquisition to be paid from the Bonds are obligations of the Commonwealth, and the Commonwealth through the CDA is the issuer of the Bonds and the sole party with the Bank to the Indenture (other than the Bondholders).

---

[7] "Owners" in the foregoing provisions and elsewhere in the Indenture means Owners of the Bonds, not Owners of property taken by the CNMI. The "Authority" is the CDA. See, Definition of "Owner" and "Authority", Indenture, p.2. The "Paying Agent" performs functions related to disbursements to Bondholders and not disbursements to Land Compensation Claimants. Indenture, §4.05, Definitions "Paying Agent", p.7.

7