Section 10.02 recognizes the Commonwealth and the CDA as the only persons other than Bondholders and the Trustee itself who may assert claims under the Indenture. As noted above, these are the sole contracting parties to the Indenture. Persons with claims against the CNMI for acquisition of their property may not assert claims, nor may the MPLA itself.

In Proskauer Rose Goetz & Mendelsonn v. National Westminster Bank, 579 N.Y.S.2d 361, 179 A.D.2d 611 (N.Y.App.Div., 1st Div. 1992), the court held under a provision of an Indenture comparable to §10.02 that a person other than those specified had "no right or standing to assert any claim to those [bond] proceeds directly against the trustee banks", 579 N.Y.S.2d at 362. See, also Borough of Brooklawn v. Brooklawn Housing Corp., 11 A.2d 83, 85 (NJ 1940), Knox v. Ball, 191 S.W.2d 17 (Tex. 1946).

A person who may incidentally benefit from performance of a trust but who is not an intended beneficiary may not assert claims against the trustee. Restatement of Trusts 3d, §48, Restatement of Trusts 2d, (1959) §126, §200, Restatement of Trusts, (1935) §126.[8] Scott v. United Carolina Bank, 503 S.E.2d 149 (N.C. App. 1998), Bescor, Inc. v. Chicago Title & Trust Company, supra, 446 N.E.2d 1209 at 1214 (Ill.App. 1 Dist., 1983), Koppers Co., Inc. v. Garling & Langlois,

---

[8]The restatements are substantial authority as the Indenture provides in Section 10.13 that it is governed by Commonwealth law, and Commonwealth law provides:
> In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth.

7 CMC §3401.

8

594 F.2d 1094 (6th Cir. 1979), <u>Sergeson v. Delaware Trust Company</u>, 413 A.2d 880 (S.Ct. Del. 1980).[9]

The illustrations to <u>Restatement of Trusts 2d</u>, §126, cmt. (a) (1959), a copy of which is furnished in the Appendix, demonstrate that a creditor of a beneficiary or of a Trustor, who may incidentally benefit from performance of the trust because the trust may provide for its claim to be paid, is not a beneficiary of the trust that may assert claims directly against the trustee. The beneficiary is the person whose debts are to paid. Similarly as to bank deposits the fact that a third party payee may benefit from payment or disbursement of funds held by a bank under agreement with the depositor does not mean that the party is a beneficiary of any contract between the bank and its depositor or that the third party may assert claims against the Bank. <u>Cruz v. U.S.A.</u>, (N.D. Cal. 2002) 219 F.Supp.2d 1027, <u>Atlantic Cement Co., Inc. v. South Shore Bank</u>, 730 F.2d 831, 835 (1st Cir. 1984). In <u>Cruz</u>, the court noted:

> Banking agreements are always means to an end rather than an end in themselves. That is, except in extraordinary circumstances, funds deposited in a bank will ultimately benefit a third-party. The courts have understood this unique context and have refused to recognize third-party standing for breach of a typical banking contract.

<u>Cruz</u>, 219 F.Supp.2d at 1038. Here the beneficiaries are the Commonwealth which raised funds to satisfy the claims against it through the sale of the Bonds, and the Bondholders. While claimants for compensation with respect to land acquisition by the Commonwealth may anticipate payment of their claims from proceeds of the Bonds, and while the Commonwealth may intend to satisfy its

---

[9]Neither the Indenture nor the form of requisition contains any language purporting to assign to any land claimant any funds held by the Trustee under the Indenture. The Indenture does not specify any particular lands or classes of lands to be paid. The classes of lands that might be compensated out of the Bond proceeds was altered by legislation after the issuance of the Bonds and execution of the Indenture.

obligations to such persons from the Bond funds, those persons are not beneficiaries of the Bonds such that they may assert a right to payment or a contractual or fiduciary duty against the Trustee under the Indenture.

### (b) CDA Has Control over Disbursements by Bank of Guam under the Indenture.

As shown above (p.2), the CDA ("the Authority") was by statute the "instrument" of the Commonwealth, whose funds were placed with the Trustee under the Indenture. The Indenture provides in Section 3.02:

> Moneys set aside in the MPLA Account shall be applied to the payment of costs of the portion of the Project consisting of acquisition of various parcels of real property through funding the retirement of land compensation claims against the Commonwealth, as hereinafter provided. Before any payment is made from the MPLA Account by the Trustee, <u>the Authority shall cause to be filed with the Trustee a written requisition of the MPLA, with the concurrence of the Secretary of Finance of the Commonwealth</u>, in the form attached hereto as <u>Appendix B-1</u>, showing with respect to each payment to be made (A) the item number of the payment; (B) the name of the person or firm to whom payment is due; (C) the amount to be paid; and (D) the purpose for which the obligation to be paid was incurred. (Emphasis added.)

The foregoing gives CDA, as well as the Secretary of Finance and MPLA control over the disbursements from MPLA fund. While CDA, the Secretary of Finance, and MPLA are each entities or officers of the Commonwealth, the CDA is the entity designated by law, including PL 11-3, as well as by the Indenture, as the instrument through which the Commonwealth acts in the issuance of bonds. 4 CMC §10452. In that capacity the CDA made the Indenture with the Bank. As discussed above, funds held belong to the Commonwealth, and the Indenture permits the Commonwealth and the CDA, but neither the MPLA nor the Secretary of Finance, nor third parties to assert claims against the Bank. In this case the CDA, although it had transmitted the requisition

10

for processing, had instructed the Bank not to process it. The Bank had no obligation to Plaintiff to make the disbursement to her contrary to CDA's instruction.

## II. BANK OF GUAM, A PRIVATE BANKING INSTITUTION, WAS NEITHER A "STATE ACTOR" NOR THE PROXIMATE CAUSE OF ANY INJURY TO PLAINTIFF.

### (a) The Bank Is a Private Party and Not a State Actor.

42 USC §1983 generally applies to public and not private conduct and private parties are normally not liable unless they can be considered a state actor, Lugar v. Edmondson Oil Company, Inc., 457 U.S. 922 at 936-937, 102 S.Ct. 2744 at 2753, 73 L.Ed.2d 482 (1982), Morse v. North Coast Opportunities, 118 F.3d 1338 (9th Cir. 1997). Normally a private party is presumed not to be a state actor, Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826 at 835 (9th Cir. 1999).

The Bank of Guam is a private financial institution (Complaint, ¶11) holding public funds as Trustee under an Indenture between the Bank and the CDA on behalf of the Commonwealth, for the benefit of the Commonwealth and the holders of bonds issued under the Indenture. (Complaint, ¶17). When the Bank withheld disbursement of funds under the requisition on instruction from CDA it was acting as a private party and not a state actor. Banks acting at request or direction of public officials have been held not to be state actors. Mitchell v. Kirk, 20 F.3d 936 (8th Cir. 1994), Smith v. Kitchen, 156 F.3d 1025 (10th Cir. 1998), Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984), Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983).

### (b) The Bank Was Not the Proximate Cause of Any Injury to Plaintiff.

Plaintiff's injuries, if in fact she suffered any, were caused by the decisions and actions taken by the public defendants in this action prior to and culminating in CDA's instruction to the Bank,

11

all taken independently of the Bank. Those decisions and actions, and those officials and not the Bank are the proximate cause of any injuries Plaintiff suffered.

To sustain a 42 USC §1983 claim against a private party as a state actor, the party must have been the proximate cause of the plaintiff's injuries. Franklin v. Fox, 312 F.3d 423 at 445-446 (9th Cir. 2002), King v. Massarweh, 782 F.2d 825 (9th Cir. 1986), Mann v. City of Tucson, 782 F.2d 790 (9th Cir. 1986), Arnold v. International Business Machines Corporation, 637 F.2d 1350 (9th Cir. 1981). In Arnold, the court found the causation requirement related to the language of 42 USC §1983, which "creates liability for any person who 'subjects, or causes to be subjected' particular persons of the deprivation of particular rights." Arnold, 637 F.2d at 1355.[10] The courts in the foregoing cases found the relevant decisions were taken by public officials on their own account acting independently of and not influenced by the private party. "A plaintiff must prove the private individuals exercised control over the decisionmaking," Mann, 782 F.2d at 793.

The Supreme Court has stated:

> In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state-action.

National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, at 192, 109 S.Ct. 454, 102 L.Ed.2d 469 at 484-485 (1988), quoted in Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826 at 838 (9th Cir. 1999), and in Franklin, supra, 312 F.3d at 444. Here, any decisions to delay or to

---

[10]The text of §1983 is as follows:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
   …

12

challenge the award to Plaintiff, notwithstanding the prior CHC settlement, and notwithstanding the allegedly inconsistent treatment of Plaintiff compared to other wetland owners were taken by the public defendants in this action independently and without participation or influence of the Bank, or even knowledge by the Bank of matters other than that CDA had requested the Bank to stop processing the requisition based on concerns of the Attorney General as to the legality of the payment.

**(c)   The Bank Did Not Perform Any Public Function.**

A private party may be held a state actor when it performs a function traditionally the exclusive prerogative of the state, Rendell-Baker v. Kohn, 457 U.S. 83 at 842, 102 S.Ct. 2764 at 2772, 73 L.Ed.2d 418 at 428 (S.Ct. 1982), San Francisco Arts & Athletic Association, 97 L.Ed.2d 427 at 453, 483 U.S. 522 at 544, 107 S.Ct. 2971 (1987), Brunette v. Humane of Ventura County, 294 F.3d 1205 at 1214 (9th Cir. 2002). While the Bank provided services to the CNMI, the fact that a private entity serves the government does not make its acts governmental action. Rendell-Baker v. Kohn, supra. Here, all authority to determine what particular property or classes of property to acquire or to compensate from bond funds, to identify the owners entitled to compensation, and to negotiate or otherwise determine the amounts and terms of compensation, was reserved to the CNMI and its various agencies. The only function engaged in by the Bank was that of holding and disbursing funds, not a function "traditionally the exclusive prerogative of the state."

**(d)   The Bank Did Not Engage in Any Joint Action or Conspiracy with Public Officials.**

A private party may be held a state actor if it engaged in a "conspiracy" or engaged in "joint action" with public officials. Franklin, 312 F.3d at 445.

To prove conspiracy a plaintiff must show an agreement or meeting of the minds between the private party and public officials; the public and private parties must at least share a common objective.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396, 410 (S.Ct. 1982); Woodring v. Jennings State Bank, 603 F.Supp. 1060, 1070 (D. NE 1985); United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1546-47 (9th Cir. 1989) (en banc); Ballinger v. North Carolina Agr. Extension Service, 815 F.2d 1001 (4th Cir. 1987); Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983); Smith v. Bacon, 699 F.2d 434, 436 (8th Cir.1983) (*per curiam*).

Here there are no facts from which a meeting of the minds or common objective involving the Bank to deprive Plaintiff of constitutional rights can be inferred.

For a private party to be held liable on the basis of "joint action," the private party must have been "a willful participant in joint action" with the public officials and its actions must also have been "inextricably intertwined" with those of public officials. Franklin, 312 F.3d at 445, Brunette, 294 F.3d at 1211, Mathis v. Pacific Gas & Electric Company, 75 F.3d 498 at 503-504 (9th Cir. 1996). There must have been a substantial degree of cooperation and interdependence between the acts of the private party and the public officials. Collins v. Womancare, 878 F.2d 1145 at 1154 (9th Cir. 1989).

Here there was no willful participation or joint action on the part of the Bank with the public officials, nor were the actions of the Bank and the CNMI officials intertwined. The actions of the public officials were taken by them independently of and not influenced by the Bank.

There was no involvement or participation by the Bank at all in the matters alleged concerning Plaintiff's claim for land compensation, the settlement thereof, the CHC litigation and

14

settlement, the processing of the requisition for payment, the decision to challenge legality of the payment or any other matters and decisions allegedly preceding receipt of the requisition by the Bank and instruction not to process it, all undertaken by the public defendants without Bank influence and in which the Bank did not participate.

For all the foregoing reasons, the §1983 claims against the Bank must be dismissed as the Bank may not be considered either a state actor, or the proximate cause of Plaintiff's injuries.

### III.  IF THE BANK IS CONSIDERED A "STATE ACTOR," IT IS ENTITLED TO QUALIFIED IMMUNITY OR TO A GOOD FAITH DEFENSE.

#### (a)  Public Officials Are Entitled to a Qualified Immunity Defense.

The Ninth Circuit held in DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992), based on Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) and Romero v. Kitsap County, 931 F.2d 624 (9th Cir. 1991), that qualified immunity in civil rights actions applies to officials of the CNMI government. The qualified immunity defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 at 410 (1982). The United States Supreme Court in Anderson v. Creighton held that qualified immunity applies to an official who could have reasonably believed his conduct comported with the applicable constitutional provision even though later determined it did not. The inquiry turns upon the objective reasonableness of a view that the conduct may be lawful, assessed in the light of legal rules clearly established and not the subjective intent of the official. The issue is not whether a general constitutional principal applies, but contours of the application of the principal to the circumstances of the case. Anderson, 483 U.S. at 639, 107 S.Ct.

3034, 97 L.Ed.2d at 530. The initial, threshold question is whether the official's conduct violated a constitutional right. If a constitutional right is violated, then the Court must determine if that right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 at 2156, 150 L.Ed.2d 272 (2001), Finsel v. Cruppenink, 326 F.3d 903, 906 (7th Cir. 2003).

    (1)    **Kumagai Has Shown No Constitutional Violation**. As shown by Defendants CNMI, Brown, and Atalig in their Motions to Dismiss, Plaintiff has failed to allege a constitutional violation. See, Memorandum of Points and Authorities in Support of the Commonwealth of the Mariana Islands and Pamela Brown's Motion to Dismiss, filed December 29, 2005, pp.5-9, Defendants CDA and Ada's Memorandum of Points and Authorities filed December 29, 2005, pp.6-8, Memorandum of Points and Authorities in Support of Fermin Atalig's Motion to Dismiss filed January 3, 2006, pp.6-8. Those arguments are sound and incorporated herein. Further, while sound in support of a motion to dismiss for failure to state a claim based upon the pleadings, the basis for dismissal is even stronger on a motion for summary judgment in which as here it is demonstrated that Plaintiff was paid. Also, as Defendants Brown and CNMI correctly point out, Plaintiff's claims are essentially contractual. With respect to the Bank in particular, as the Bank was not a party to any contract with Plaintiff, and owed her no contractual obligation, contractual claims do not lie against the Bank.

Further, even if it be concluded that the actions of the other Defendants herein raise an issue of a constitutional violation by those other Defendants in their inducing or taking action to delay the disbursement, they do not demonstrate a constitutional claim as against the Bank, which took no

16

action other than conforming to the instructions of CDA as it reasonably believed appropriate under the Indenture.

**(2)  The Bank Did Not Violate a Clearly Established Right**.  Plaintiff's claims are in substance based upon the contentions that Plaintiff was a beneficiary under the Indenture, that the CDA lacked authority to instruct the Bank to stop processing the requisition, that the Bank had the obligation to Plaintiff to make a disbursement contrary to this instruction, and that the Attorney General lacked capacity to challenge the MPLA award to Plaintiff.  None of these propositions was at the time clearly established in the CNMI.  It is respectfully submitted that they are each unsound contentious that are unlikely to be established even retroactively in this case.

Charfauros v. Board of Elections, 249 F.3d 941 (9th Cir. 2001), held CNMI election officials could not reasonably have believed the procedures they followed proper as prior decisions of the CNMI courts had questioned their validity. Charfauros, 249 F.3d at 954. In contrast as to this case, in Commonwealth v. Demapan-Castro, Civil Action 04-0563, where Pamela Brown as Attorney General sued MPLA and certain landowners to challenge legality of a requisition by MPLA from the same bond proceeds at issue in this case, the Court held she had constitutional and common law powers to bring suit to challenge the award by the MPLA. The Court stated:

> The estate cites the various laws that created MPLA and charged it with compensating those whose land is taken by the government. This argument is wholly without merit. The plaintiff in this case does not seek to decide a land compensation issue, rather it seeks to prevent MPLA from offering compensation to the Malite Estate through a procedure and in an amount that allegedly violates the law. This is well within the Attorney General's power.

17

1  Commonwealth v. Demapan-Castro, Civil Action 04-0563, March 22, 2005, Order, p.15.[11]

2  In Demapan-Castro, the CDA had agreed, as Plaintiff alleges it did here, Complaint, ¶36,

3  Ex.S, not to process the MPLA award pending resolution of Attorney General's claim. The Court

4  stated "CDA approval is necessary for any disbursement of funds for land compensation", Decision

5  and Order, March 22, 2005, p.4. See also pp.20-21 as to the Secretary of Finance and his revocation

6  of concurrence. The Court did not suggest CDA's agreement was improper.[12]

7  The foregoing is consistent rather than inconsistent with the Bank's reasonable view that

8  CDA consent to disbursement was necessary and that it should comply with CDA's direction to

9  withhold disbursement.

**(b)   Qualified Immunity May Be Applied to the Bank as a Private Party in the Circumstances of this Case.**

The Supreme Court has held that as a general rule qualified immunity as applied to public officials does not apply to private persons, Wyatt v. Cole, 112 S.Ct. 1827, 118 L.Ed.2d 504, 504 U.S. 158 (1992). However, in Wyatt and further in Richardson v. McKnight, 117 S.Ct. 2100, 521 U.S. 399, 138 L.Ed.2d 540 (1997), the Supreme Court discussed factors which may allow qualified immunity to private parties notwithstanding this general rule. Based on those factors, in particular

---

[11] Article III, §11 of the Constitution of the CNMI provides for the appointment and qualifications of an Attorney General and that:
   The Attorney General shall be responsible for providing legal advice to the governor and executive departments, representing the Commonwealth in all legal matters, and prosecuting violations of Commonwealth law. (Emphasis added.)
See, also, 1 CMC §2151.

[12] A copy of this Decision is in the Appendix and was also furnished with the Reply filed March 2, 2006 of Defendants Brown and the Commonwealth to their Plaintiff's Motion to Dismiss.

18

as discussed in Richardson, the Bank is entitled to qualified immunity on the basis allowed to public officials.[13]

### (1) The Bank Falls Within the "Close Supervision" Qualification in Richardson.

In Richardson, the Court in denying qualified immunity in the case before it stated:

> ... we have answered the immunity question narrowly, in the context in which it arose. That context is one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms. The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision.

Richardson v. McKnight, 117 S.Ct. at 2108, 521 U.S. at 413, 138 L.Ed.2d 540 (1997).[14]

The Bank falls squarely within this qualification. Its relationship with the CNMI was under a specific contract for a particular purpose with the Bank having limited discretion and functions, the Bank served as a mere adjunct to the government's land compensation process, in which the substantive decisions were all taken by the government and the Bank held and disbursed funds based on those decisions. As the Bank's actions were governed by government instructions, it plainly acted under close supervision. Bartell v. Lohiser, 215 F.3d 550 at 557 (6th Cir. 2000), relying upon Richardson held that social workers under a government contract and close government supervision

---

[13] The Ninth Circuit has stated that qualified immunity is not available to private parties in Franklin, 312 F.3d at 444, and in Ellis v. City of San Diego, California, 176 F.3d 1183 at 1191 (9th Cir. 1999). However, it did so in both cases with no discussion of the issue, other than a citation to Wyatt and without taking into account the Supreme Court's decision in Richardson.

[14] Wyatt involved a private party that utilized a constitutionally defective pre-judgment attachment statute. Richardson was a case against private prison guards working at a privatized prison the operations of which were conducted by, and essentially controlled by a private company under contract with the government. Neither situation is comparable here. The Bank did not in this case use any public statute or remedy for its own purpose. The government did not privatize the land compensation system rather it reserved the land compensation system functions to itself and simply designated the Bank as a depository of funds to make disbursements once the government had made decisions.

19

were entitled to qualified immunity. The supervision and direction by the CNMI of the Bank under the Indenture is far closer than in Bartell. In Rosewood Services Inc. v. Sunflower Diversified Services, Inc., 413 F.3d 1163 at 1167 (10th Cir. 2005), the court recognized the "substantial supervision" qualification in Richardson and applied in Bartell as potentially applicable but found the issue not properly raised in the Trial Court.

**(2)  The Bank Is Entitled to Qualified Immunity Based on Analogous Common Law Immunity.** Under Richardson, qualified immunity may be available where immunity upon analogous tort claims would have existed at common law. The relevant tort comparable to Plaintiff's constitutional claims is Plaintiff's claim for breach of fiduciary duty to Plaintiff. As discussed in Section I, the Bank is not subject to claims from persons who are not beneficiaries of the Trust. The case with respect to the Bank is analogous to an immunity rather than a defense, as instead of the Bank having a good faith or similar defense to Plaintiff's claims, at common law Plaintiff has no claims at all against the Bank. Accordingly, qualified immunity should be held a defense to the Bank in this case. Relying on Richardson qualified immunity was held applicable to a private party based on common law immunity in Murphy v. New York Racing Assoc., Inc., 76 F.Supp.2d 489 at 505-506 (S.D.N.Y. 1998).

**(3)  Public Purpose Criteria in Richardson Warrant Application of Immunity.** Richardson held public purpose criteria may support qualified immunity. Those criteria focused upon the deterrent effect on the private party in the performance of its duties of holding the party liable without a qualified immunity defense to §1983 claims. The ability of the Bank to act, and for the Trust to function as intended would be frustrated if the Bank were to be held accountable for claims based upon §1983 that it would not be subject to at common law. Trust and banking

relationships such as involved in this case logically function because the Trustee is able to act in transactions free from claims of third parties. The transactions typically relate to underlying obligations between third parties and those whose funds the bank holds but as to which the bank is neither involved, informed, or liable. In Richardson, the defendant essentially had control and knowledge of all actions which were the basis of the claim. Here, the Bank did not have and would typically not have similar control or knowledge. If a Trustee could be found a state actor but not have the benefits of a qualified immunity defense, it would risk liability based upon facts unknown to it and over which it had no control or influence so as to be able to evaluate its duties, risks of litigation and determine appropriate action. The court in Bartell noted the potential impact of absence of qualified immunity on the decision making process of the private parties in that case in holding immunity available. Bartell, 215 F.3d at 557.

For all the foregoing reasons, qualified immunity should be held available to the Bank in this case.

**(c)   If the Bank as a Private Party Is Not Entitled to Qualified Immunity, the Bank Has a Good Faith Defense.**

In Wyatt v. Cole, 112 S.Ct. 1827, 118 L.Ed.2d 504, 504 U.S. 158 (1992), the Supreme Court left open the question whether a good faith defense may be available to private parties not entitled to qualified immunity. On remand in that case, the Court of Appeals for the Fifth Circuit held this defense applicable and that private defendants should not be held liable absent a showing by the plaintiff of malice and of evidence that they knew or should have known that the actions taken were unconstitutional. Wyatt v. Cole, 994 F.2d 1113 (5th Cir. 1993), 112 S.Ct. 1827.[15] In Jordan v. Fox,

---

[15] The court noted that five of the Justices in Wyatt had appeared to favor a good faith defense, Wyatt v. Cole, 994 F.2d at 1118.

21

Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3rd Cir. 1994), the court also held, following the decision of the Fifth Circuit on remand in Wyatt, that private parties sued under §1983 have a good faith defense and that "malice" as used in the Fifth Circuit's standard meant a "subjective appreciation" that the private party's action deprived a person of constitutional rights. Jordan, 20 F.3d at 1276. The courts in both cases held the burden upon the plaintiff to show absence of good faith. Jordan, 20 F.3d at 1277-1278, Wyatt, 994 F.2d at 1115. A good faith defense to a private party in a §1983 was also applied in Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692 (6th Cir. 1996). Robinson v. City of San Bernardino Police Department, 992 F.Supp. 1198 (C.D. Ca. 1998), Nemo v. City of Portland, 910 F.Supp. 491 (D. Oregon 1995). The Ninth Circuit in Franklin noted that the Trial Court in that case had concluded that a good faith defense existed but the Court of Appeals did not itself reach this issue, deciding the case on the basis the defendant was neither a state actor nor the proximate cause of plaintiff's injury. Franklin, 312 F.2d at 444.

The facts of this case are sufficient to sustain either a qualified immunity, or good faith defense.

### IV. PLAINTIFF'S §1985(3) CLAIM FAILS TO SHOW DISCRIMINATION BASED UPON RACE OR OTHERWISE CLASS BASED DISCRIMINATORY ANIMUS.

A 42 USC §1985(3) claim must allege some race or otherwise class based discriminatory animus behind the alleged action. Manistee Town Center v. City of Glendale, 227 F.3d 1090 (9th Cir. 2000), Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992), RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th Cir. 2002). The Complaint does not do so and the facts do not suggest even as to the public defendants any such discrimination.

22

V.  **PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED.**

(a) **There Is No Common Law Claim Conspiracy Tort in the CNMI Nor Evidence the Bank Conspired.**

… there is no written law in the Commonwealth recognizing the tort of civil conspiracy. IGI Gen. Contractor & Dev., Inc. v. Public Sch. Sys., et al., No. 94-0647 (N.M.I. Super. Ct. Aug. 24, 1994). The majority view, as acknowledged by the trial court, is there is no substantive tort of civil conspiracy recognized under common law. *Id.* There is no such thing as a tort for civil conspiracy.

I.G.I. Gen. Contractor & Dev., Inc. v. Public School Systems, 1999 MP 12 ¶12, 5 N.M.I. 250, 252 (N.M.I. 1999). Even if it existed, there is no basis to infer the participation of the Bank in a "conspiracy" of any type even if one existed among one or more of the other Defendants.

(b) **Plaintiff's Claims for Intentional Interference with Contractual Rights and Economic Relations Are Unsupported.**

To establish a claim of intentional interference at a minimum the Plaintiff must satisfy the elements enumerated in Restatement of Torts 2d, §766:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or othezwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

See, Lucky Development Co. Ltd. v. Tokai USA Inc., 3 N.M.I. 379 (N.M.I. 1992).

The Bank did not "induce" or "cause" a third person not to perform any contract. The contract ultimately was performed. The decision to withhold disbursement was made by others. The Bank received directions, but did not initiate them or induce any action and in following instruction did not have improper motive.[16]

---

[16] Even as to the public defendants that arguably did induce or cause action resulting in delay of payment to Plaintiff, an interference claim does not logically apply due to the absence of a "third person" as required by the Restatement. In reality there are only two persons, Plaintiff and the CNMI. This is because the party

23

Further, the Complaint fails to allege and the facts fail to show lack of justification on the part of any of the Defendants. See, North American Energy Systems, LLC v. New England Energy Management, Inc., 269 F.Supp.2d 12 (D.Conn. 2002).

### (c) Plaintiff's Breach of Fiduciary Duties Claim Must Be Dismissed as the Bank Owed No Fiduciary Duty to Plaintiff.

For all the reasons discussed in Section I above, Plaintiff is not a beneficiary of the Trust under the Indenture and the Bank owed no fiduciary duties to Plaintiff.

### (d) Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress Must Be Dismissed.

The standards for emotional distress claims in the Commonwealth were discussed in Charfauros v. Board of the Elections, 1998 MP 16, 5 N.M.I. 188 (N.M.I. 1998) as follows:

> In our Commonwealth the common law is drawn from the Restatements. 7 CMC §3401. *Castro v. Hotel Nikko Saipan*, 4 N.M.I. 268, 272, n.5 (1995) ("In the absence of contrary statutory or customary law this Court applies the common law as expressed in the Restatements."), *appeal dismissed*, 96 F.3d 1259 (9th Cir. 1996). The action asserted by Plaintiffs is defined in the RESTATEMENT (SECOND) OF TORTS, §46 (1965) (hereinafter RESTATEMENT) as "Outrageous Conduct Causing Severe Emotional Distress," and is, in relevant part, as follows:
>
> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm. Id.
>
> To maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.

---

Plaintiff alleges she contracted with, MPLA, did so "on behalf of the Government of the Commonwealth of the Northern Mariana Islands," Complaint, Ex.D, Article III. Pamela Brown filed her action as AG challenging the MPLA award also "on behalf of the Commonwealth of the Northern Mariana Islands," Complaint, Ex.R, p.1, the CDA was also "acting for and on behalf of the Commonwealth of the Northern Mariana Islands," Indenture of Trust, p.1.

24

1  See, Mathis v. Pacific Gas & Electric Company, supra, Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002).

A claim for negligent infliction of emotional distress also requires an allegation and showing of "outrageous conduct". Dillon v. City of New York, 261 A.D.2d 34, 41, 704 N.Y.S.2d 1 (N.Y.A.D. 1999), Eaton v. Continental General Ins. Co., 147 F.Supp.2d 829 (N.D. Ohio 2001).

The Bank's compliance with CDA's instruction was proper, rather than improper and based upon its reasonable construction of the Indenture. Even if this Court were somehow to find the Bank's compliance improper, its compliance was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement of Torts 2d, §46, cmt. d (1965).

## CONCLUSION

For all the foregoing reasons summary judgment should be granted to the Bank on all of Plaintiff's claims in this action.

Dated: 5/14/06 .    ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiff **BANK OF GUAM**

By: _____
**MARK E. COWAN**

# APPENDIX

Public Law 13-17 .................................................................. 1

Public Law 13-25 .................................................................. 2

Public Law 13-39 .................................................................. 3

Public Law 13-56 .................................................................. 4

Public Law 14-29 .................................................................. 5

Order Granting Defendant's Motion for Summary Judgment,
    CNMI, ex rel. Pamela Brown, Attorney General v. MPLA, et al.,
    Civil Action No. 05-0332E ................................................. 6

Restatement of Trusts 2d, §126, cmt. (a) (1959) ........................... 7

Order Denying Various Motions to Dismiss, With Some Treated Motions for
    Summary Judgment, Commonwealth v. Demapan-Castro
    Civil Action 04-0563 ....................................................... 8