# APPENDIX - 6

Order Granting Defendant's Motion for Summary Judgment

CNMI, ex rel. Pamela Brown, Attorney General v. MPLA, et al.

Civil Action No. 05-0332E

FOR PUBLICATION

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, EX REL. PAMELA BROWN, ATTORNEY GENERAL,<br><br>Plaintiff<br><br>vs.<br><br>MARIANAS PUBLIC LANDS AUTHORITY, VICTORIA S. NICHOLAS, and ROSARIO DLG KUMAGAI,<br><br>Defendants | Civil Action Nos. 05-0332E<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

THIS MATTER came for hearing on December 7, 2005 at 1:30 pm. Assistant Attorney General James Livingtsone appeared on behalf of Plaintiffs CNMI et al. Counsel Edward Manibusan appeared on behalf of Defendant Victoria S. Nicholas ("Nicholas"). The hearing on the underlying Motion for Summary Judgment was scheduled following the filing of Defendant's brief. After taking the parties written and oral submissions this Court is prepared to render its judgment.

///
///

-1-

## II. BACKGROUND

The following facts are undisputed:

¶1   On July 23, 2003, Governor Juan N. Babauta signed into law the "Land Compensation Act of 2002", Public Law 13-17 (hereinafter "Land Compensation Act").

¶2   Section 4(d) of the Land Compensation Act provided that "In implementing this Act, the Marianas Public Land Authority shall first compensate the acquisition of private lands for right of way purposes, including but not limited to public road construction. After those claims have been compensated, the Authority shall then compensate those claims involving the acquisition of private land for the purpose of constructing public ponding basins. Wetland and other claims shall be entertained only after claims involving right of way and ponding basin acquisitions have been compensated."

¶3   On September 21, 2004, Governor Juan N. Babauta signed into law, Public Law 14-29 (hereinafter "PL 14-29").

¶4   Section 1 of PL 14-29 amended the Land Compensation Act, PL 13-17, Section 4(e) to read as follows: "(e) In implementing this Act, the Marianas Public Land Authority shall compensate the acquisition of private lands for right of way purposes, including but not limited to public road construction, construction of ponding basins, wetland and other claims involving private land acquisition permitted by applicable laws."

¶4   Until conveying her interest, Victoria S. Nicholas was the fee-simple owner of Tract 158-A-R1, containing an area of 9,641 square meters, according to DLS Check No. 2074/00, recorded at the Commonwealth Recorder's Office as File No. 00-2120, dated October 6, 2000 (hereinafter "Property").

¶5   On November 16, 1993, Ms. Nicholas's Property was certified by the Commonwealth as a wetland.

¶6   On April 7, 2005, Ms. Nicholas received a letter from the Marianas Public Lands Authority (hereinafter "MPLA") offering $833,000, plus annual interest from the time of taking at a rate of three percent (3 %) per annum. Ms. Nicholas accepted the MPLA's offer on April 7, 2005.

-2-

1  ¶7   On April 22, 2005, Ms. Nicholas entered and executed a Land Compensation Settlement Agreement (hereinafter "Settlement Agreement") with the MPLA and executed a Warranty Deed which conveyed all of Ms. Nicholas's title, interest and rights to the plot to the MPLA.

¶8   On April 29, 2005, the MPLA prepared a Requisition Number FY 05-10 on Ms. Nicholas's behalf and forwarded the Requisition Number to the Secretary of the Department of Finance (hereinafter "Finance") Fermin M. Atalig (hereinafter "Secretary Atalig") for his approval. The Requisition FY 05-10 was additionally forwarded to Pamela Brown, former Attorney General, CNMI.

¶9   On May 9, 2005, Acting Attorney General Clyde Lemons instructed Secretary Atalig by letter not to process Ms. Nicholas's Requisition Number FY 05-10.

¶10  On August 8, 2005, Secretary Atalig approved Ms. Nicolas's Requisition No. FY 05-10 and directed the Requisition back to the MPLA.

¶11  On August 8, 2005, the MPLA transmitted the Requisition No. FY 05-10 by letter to Maria Lourdes Seman Ada, Executive Director for the Commonwealth Development Authority ("CDA") to execute the requisition.

¶12  On August 9, 2005, the CDA, by letter signed by Executive Director Ada, and with the approval of the CDA Board Chairman, Tom Glen Quitugua, forwarded Ms. Nicholas's Requisition No. FY 05-10 to the Bank of Guam. The letter instructed the Bank of Guam's Trust Department to process Requisition No. FY 05-10, and to issue checks directly to the MPLA office for distribution to the land claimants. The CDA letter was faxed to the Bank of Guam and copies were faxed to the MPLA and Finance Secretary Atalig.

¶13  During the afternoon of August 9, 2005, Plaintiff CNMI, by and through Pamela Brown telephoned CDA and requested that CDA stop the processing of Ms. Nicholas's requisition. After consulting its legal counsel, Vicente Salas, CDA telephoned Bank of Guam's trust department and instructed a Ms. Amoretta Carlson not to process Ms. Nicholas's requisition.

¶14  On August 10, 2005, the CNMI, by and through Pamela Brown delivered a letter to CDA Executive Director, which memorialized the CNMI's request that CDA stop the processing of Ms. Nicholas's requisition.

-3-

¶15 On August 15, 2005, the CNMI, by and through Attorney General Pamela Brown, filed an action for declaratory relief against the MPLA and Defendants Victoria S. Nicholas and Rosario DLG Kumagai, Civil Action No. 05-0332E, in the Superior Court of the Commonwealth of the Northern Marianas Islands, contesting the propriety and legality of requisitions FY 05-10 and FY 0-11 (hereinafter "Action").

¶16 On August 19, 2005, CDA entered into an agreement with the CNMI (hereinafter "CDA-CNMI Agreement"), by and through Pamela Brown, wherein the CNMI promised not to name CDA as a party to the Action in exchange for CDA's promise not to approve requisitions FY 05-10 and FY 05-11 until the matter was resolved.

### III. DISCUSSION

A court may grant summary judgment when there are no issues as to any material fact and the moving party is entitled to judgment as a matter of law. Com. R. Civ. P. 56(c); *Santos v. Santos*, 4 N.M.I. 206, 209 (1994). The moving party bears the initial burden of demonstrating to the court that there is an absence of any genuine issue concerning any material fact and that as a matter of law, the non-moving party cannot prevail. *Id*. To survive a motion for summary judgment, the non-moving party must then show that there is evidence from which a jury might return a verdict in the non-moving party's favor. *Cabrera v. Heirs of De Castro*, 1 N.M.I. 172, 176 (1990).

Here, the facts, as presented above, are undisputed by either party and consequently the matter is ripe for summary judgment. Essentially the single issue in dispute involves varying interpretations of the Land Compensation Act *as amended by* PL 14-29, which, in effect, determine whether MPLA had the authority to disburse funds appropriated to the MPLA by PL 13-27 to Ms. Nicholas to compensate Ms. Nicholas for the November 16, 1993 taking of Ms. Nicholas's Property for wetland purposes.

The CNMI in its complaint and subsequent filings claims that PL 13-27 *as amended* by PL 14-29 limits disbursement of MPLA funds to compensate only CNMI acquisitions of private land for right of way purposes, and because Ms. Nicholas's land was taken only for the purposes of preserving it as a wetland, MPLA is not authorized to compensate Ms. Nicholas using funds

-4-

appropriated by PL 13-27 *as amended by* PL 14-29. By contrast, Ms. Nicholas asserts that the Land Compensation Act *as amended by* PL 14-29 authorizes the MPLA to compensate landowners for private land taken by the CNMI for the sole reason of preserving wetlands, and consequently, Ms. Nicholas is entitled to the benefit of the Settlement Agreement entered into between Ms. Nicholas and the MPLA.

"A basic principle of statutory interpretation is that language must be given its plain meaning." *Estate of Faisao v. Tenorio*, 4 N.M.I. 260 (1995); *see also Nansay Micronesia Corp. v. Govendo*, 3 N.M.I. 12 (1992); *Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270 (1991). A co-equal consideration in interpreting CNMI laws and statutes is to read the statute to ascertain and give effect to the intent of the legislature. *Faisao*, 4 N.M.I. 260; *see also Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 N.M.I. 212 (1991) ("It is assumed that legislative purpose is expressed by the ordinary meaning of the word used."). Furthermore, when discerning the legislative intent behind a statute, the Court must read the statute as a whole, instead of giving special attention to isolated words and phrases. *Id.*

As discussed *supra* the parties's dispute boils down to the parties' diverging interpretations of only one clause of PL 13-27 *as amended by* PL 1429, each one determinative as to whether Ms. Nicholas can be compensated by the MPLA under the Land Compensation Act. However, consistent with *Hakubotan*, the Court must examine the legislation in its entirety to help discern the meaning of one of its parts. The Land Compensation Act of 2002 was prefaced with specific findings, illuminating the purpose behind the Act.

> The Legislature further finds that the current rate of repayment is unacceptable, and the prompt compensation for such land taking serves the Commonwealth's best interest. While in the past land taking claims against the Commonwealth were settled largely through an exchange of public land, the diminishing availability of public land, coupled with other competing land uses, requires the establishment of a compensation program to pay for the taking of private lands for public uses, such as road and ponding basin construction. The purpose of this Act therefore, is to authorize the Marianas Public Land Authority, to incur public debt in an amount for up to $40,000,000, and to use the proceeds to settle and to discharge outstanding land compensation claims against the Commonwealth.

Land Compensation Act of 2002, PL 13-27.

As a preliminary matter, while the legislature offered examples of reasons for taking private lands for public use, e.g. road and ponding basin construction, the legislature failed to explicitly

-5-

1 limit the MPLA's ability to compensate private landowners based on the CNMI's reasons for taking
2 the land. Rather, the fund was created for the broad purpose to monetarily reimburse private
3 landowners for government takings instead of relying on the CNMI's diminishing ability to provide
4 land exchanges as fair compensation for the government takings.

5 Turning to the section in dispute, it is helpful, and indeed necessary, to examine and
6 compare the plain language of Section 4(d) of the Land Compensation Act as articulated in PL 13-
7 27 with the plain language of Section 4(e) of PL 14-29, which amended PL 13-27. PL 13-27,
8 section 4(d) states:

> (d) In implementing this Act, the Marianas Public Land Authority shall *first compensate the acquisition of private lands for right of way purposes, including but not limited to public road construction. After those claims have been compensated*, the Authority shall then compensate those claims involving the acquisition of private land for the purpose of constructing public ponding basins. Wetland and other claims shall be entertained *only after* claims involving right of way and ponding basin acquisitions have been compensated.

13 Land Compensation Act, PL 13-27, section 4(d) (*emphasis added*).

14 A plain reading of section 4(d) reveals that the legislature originally intended to establish a
15 hierarchy, which prioritized compensation of land taking claims under the Land Compensation Act
16 based on the CNMI's various bases for taking the land. Thus, according to its language,
17 acquisitions of private lands for right of way purposes, including those related to public road
18 construction, were directed to receive primary consideration. CNMI takings of private land for the
19 construction of ponding basins received secondary consideration. And CNMI takings of private
20 land for wetland preservation and other claims were directed to receive tertiary consideration.
21 Essentially, wetland claims were only entitled to monies provided to the MPLA under the Land
22 Compensation Act if there was money remaining after settling all outstanding claims related to
23 government takings for the purposes of right of way and ponding basin construction.

24 PL 14-29, section 1(a) amended the Land Compensation Act and replaced section 4(d) (later
25 designated as section 4(e)) with section 4(e). The plain language of section 4(e) reads as follows:

> (e) In implementing this Act, the Marianas Public Land Authority shall compensate the acquisition of private lands for right of way purposes, including but not limited to public road construction, construction of ponding basins, wetland and other claims involving private land acquisition permitted by applicable laws.

28 PL 14-29, section 1(a).

-6-

1   Here, the superseding language of section 1(a) clearly eliminated all language which had
2   previously prioritized compensation of takings of private lands by the CNMI based on the CNMI's
3   purpose for taking the land. However, the CNMI contends that the amendment not only eliminated
4   the prioritization of distribution of Land Compensation Act funds, but it also restricted such funds to
5   compensating only those claims taken for right of way purposes, which according to their
6   interpretation only relates to land taken for the construction of roads and other thruways. Although
7   an initial glance at the statutory language may seem to support the CNMI's theory, this Court finds
8   that such an interpretation is exceedingly narrow given the broad scope of the compensation plan
9   envisioned by the legislative findings and purpose when read in conjunction with the statutory
10  language.

11  "Generally a statute should be so interpreted to give it effect. It is presumed that the
12  legislature intended to enact an effective law; it is not to be presumed that legislation is a vain effort
13  or a nullity." *Faisao* 4 N.M.I. 260. In addition, "[o]ne statutory provision should not be construed
14  to make another provision inconsistent or meaningless." *In re Estate of Rofag*, 2 N.M.I. 18 (1991).
15  Here, the Commonwealth suggests that the Court should interpret PL 14-29 to restrict compensation
16  under the Land Compensation Act to only those private landowners whose land was taken for the
17  purposes of wetland preservation only if it was also used for creating right of ways, narrowly
18  defined by the Commonwealth as land used for roads. But the Commonwealth's strict interpretation
19  of "right of ways" would lead to incompatible results. *See Commonwealth Ports Auth. v.*
20  *Hakubotan Saipan Enters., Inc.*, 2. N.M.I. 212 (1991) ("A court should avoid interpretations of a
21  statutory provision which would defy common sense or lead to absurd results"). If, for example, a
22  plot of land were taken for the listed reason of preserving it as a wetland, its use would naturally be
23  restricted to preserving it as a wetland and not for constructing right of ways, but the
24  Commonwealth's interpretation would permit constructing roadways or ponding basins on lands
25  designated for wetland preservation—uses that would effectively eviscerate the original purpose in
26  taking the land.
27  However a broader interpretation of "right of way" as a government use of private land for
28  public purpose comports more effortlessly with the Land Compensation Act's stated purpose: to

-7-

1  generally compensate the takings of private lands for public purposes. Further, such an
2  interpretation is supported by the plain language of PL 14-27 which *includes* in its definition of
3  "right of ways", "wetland and other claims involving private land acquisition permitted by
4  applicable laws." PL 14-27, section 1(a).
5  Addressing the merits of this case, it is settled that Ms. Nicholas was the fee simple owner of
6  a tract of land, which was designated as a wetland by the CNMI on November 16, 1997. Because
7  wetlands are indeed compensable under the Land Compensation Act *as amended by* PL 14-29, Ms.
8  Nicholas has demonstrated that she is entitled to compensation from the MPLA out of those funds
9  allotted by the Land Compensation Act to reimburse private landowners for public takings as a
10 matter of law.

### III. CONCLUSION

In conclusion, Defendant Nicholas has met her burden to show that she is entitled to compensation for her land pursuant to the Land Compensation Act as a matter of law. For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and the CDA is ordered to proceed with disbursement of Requisition FY 05-10.

So ORDERED this 10 day of February 2006.

David A. Wiseman, Associate Judge

-8-