INDENTURE OF TRUST

between the

COMMONWEALTH DEVELOPMENT AUTHORITY

for and on behalf of the

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

and

BANK OF GUAM,

as Trustee

Dated as of December 1, 2003

$40,000,000
Commonwealth of the Northern Mariana Islands
General Obligation Bonds, Series 2003A

DOCSSF1:681007.9



EXHIBIT A

# TABLE OF CONTENTS

Page

### ARTICLE I DEFINITIONS; EQUAL SECURITY

| | | |
|---|---|---|
| SECTION 1.01 | Definitions | 2 |
| SECTION 1.02 | Equal Security | 10 |

### ARTICLE II THE BONDS; CERTAIN PROVISIONS OF THE BONDS

| | | |
|---|---|---|
| SECTION 2.01 | Authorization of Bonds | 11 |
| SECTION 2.02 | Terms of Bonds | 11 |
| SECTION 2.03 | Redemption of Bonds | 12 |
| SECTION 2.04 | Form and Execution of Bonds | 13 |
| SECTION 2.05 | Transfer and Registration of Bonds | 14 |
| SECTION 2.06 | Exchange of Bonds | 14 |
| SECTION 2.07 | Bond Registration Books | 14 |
| SECTION 2.08 | Mutilated, Destroyed, Stolen or Lost Bonds | 14 |
| SECTION 2.09 | Temporary Bonds | 15 |
| SECTION 2.10 | Validity of Bonds | 15 |
| SECTION 2.11 | Book-Entry Only System | 15 |

### ARTICLE III APPLICATION OF PROCEEDS OF BONDS; PROJECT FUND

| | | |
|---|---|---|
| SECTION 3.01 | Application of Proceeds of Sale of Bonds | 17 |
| SECTION 3.02 | Project Fund | 18 |

### ARTICLE IV SECURITY FOR THE BONDS; CREATION OF FUNDS

| | | |
|---|---|---|
| SECTION 4.01 | Full Faith and Credit | 18 |
| SECTION 4.02 | Land Compensation Fund | 19 |
| SECTION 4.03 | Expense Fund | 19 |
| SECTION 4.04 | Bond Payment Fund | 19 |
| SECTION 4.05 | Application of Moneys in Bond Payment Fund | 20 |
| SECTION 4.06 | Investment of Moneys in Funds and Accounts | 22 |

### ARTICLE V COVENANTS

| | | |
|---|---|---|
| SECTION 5.01 | Punctual Payment | 23 |
| SECTION 5.02 | Against Prior Liens | 23 |
| SECTION 5.03 | Extension or Funding of Claims for Interest | 23 |
| SECTION 5.04 | Books and Accounts; Financial and Project Statements | 23 |
| SECTION 5.05 | Protection of Security and Rights of Owners | 24 |
| SECTION 5.06 | Financing the Project | 24 |

.

## TABLE OF CONTENTS
### (continued)

|  |  | Page |
|---|---|---|
| SECTION 5.07 | Preservation of Benefits | 24 |
| SECTION 5.08 | Continuing Disclosure | 24 |
| SECTION 5.09 | Compliance with the Law | 24 |
| SECTION 5.10 | Further Assurances | 24 |
| SECTION 5.11 | Tax Covenants; Rebate Fund | 24 |

**ARTICLE VI THE TRUSTEE AND THE PAYING AGENT**

| SECTION 6.01 | The Trustee and the Paying Agent | 26 |
|---|---|---|
| SECTION 6.02 | Liability of Trustee and Paying Agent | 27 |
| SECTION 6.03 | Notice to Trustee or Paying Agent | 28 |

**ARTICLE VII AMENDMENT OF THE INDENTURE**

| SECTION 7.01 | Amendment by Consent of Owners | 29 |
|---|---|---|
| SECTION 7.02 | Disqualified Bonds | 30 |
| SECTION 7.03 | Endorsement or Replacement of Bonds After Amendment | 30 |
| SECTION 7.04 | Amendment by Mutual Consent | 30 |
| SECTION 7.05 | Opinion of Bond Counsel | 30 |

**ARTICLE VIII EVENTS OF DEFAULT AND REMEDIES OF OWNERS**

| SECTION 8.01 | Events of Default and Acceleration of Maturities | 31 |
|---|---|---|
| SECTION 8.02 | Application of Funds Upon Acceleration | 31 |
| SECTION 8.03 | Trustee to Represent Bondholders | 32 |
| SECTION 8.04 | Bondholders' Direction of Proceedings | 32 |
| SECTION 8.05 | Limitation on Bondholders' Right to Sue | 33 |
| SECTION 8.06 | Non-Waiver | 33 |
| SECTION 8.07 | Remedies Not Exclusive | 34 |

**ARTICLE IX DEFEASANCE**

| SECTION 9.01 | Discharge of Indebtedness | 34 |
|---|---|---|
| SECTION 9.02 | Unclaimed Moneys | 35 |

**ARTICLE X MISCELLANEOUS**

| SECTION 10.01 | [Reserved.] | 35 |
|---|---|---|
| SECTION 10.02 | Benefits of Indenture Limited to Parties | 35 |
| SECTION 10.03 | Successor Is Deemed Included in All References to Predecessor | 35 |
| SECTION 10.04 | Execution of Documents by Owners | 36 |
| SECTION 10.05 | Waiver of Personal Liability | 36 |

## TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| SECTION 10.06 | Acquisition of Bonds by Commonwealth or the Authority | 36 |
| SECTION 10.07 | Destruction of Cancelled Bonds | 36 |
| SECTION 10.08 | Content of Certificates and Reports | 36 |
| SECTION 10.09 | Funds and Accounts | 37 |
| SECTION 10.10 | Article and Section Headings and References | 37 |
| SECTION 10.11 | Partial Invalidity | 37 |
| SECTION 10.12 | Notices | 38 |
| SECTION 10.13 | Governing Law | 38 |
| SECTION 10.14 | Counterparts | 38 |

Appendix A    FORM OF SERIES 2003A BOND
Appendix B-1  FORM OF REQUISITION-MPLA Account
Appendix B-2  FORM OF REQUISITION-Prison Account

## INDENTURE OF TRUST

THIS INDENTURE OF TRUST (this "Indenture") is made and entered into as of December 1, 2003, by and between BANK OF GUAM, a Guam banking corporation, as trustee (the "Trustee"), and the COMMONWEALTH DEVELOPMENT AUTHORITY (the "Authority"), acting for and on behalf of the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (the "Commonwealth"), a commonwealth public entity, corporate and politic, duly formed and existing pursuant to its constitution and a covenant with the United States of America.

WHEREAS, the Legislature of the Commonwealth has adopted Public Law No. 13-17, as amended (the "Bond Act"), authorizing the issuance of bonds by the Authority pursuant to Public Law 11-3 (the "GO Bond Law"), for and in the name and on behalf of the Commonwealth, in an amount not to exceed $40,000,000 for the purposes provided in the Bond Act (collectively, as more fully described herein, the "Project"), and to retire certain interim financing applied to fund the Project; and

WHEREAS, as contemplated by the Bond Act, the Authority has consulted with the Mariana Public Lands Authority (the "MPLA") and has received a copy of Resolution No. 03-009 adopted by the MPLA on October 20, 2003, requesting the Authority to issue bonds for the purposes provided in the Bond Act and to pledge as additional security for such bonds the Land Compensation Fund on such priority and terms as set forth in this Indenture; and

WHEREAS, the Authority has adopted a resolution (the "Resolution") providing for the issuance of Commonwealth of the Northern Mariana Islands General Obligation Bonds, Series 2003A (the "Bonds") in the aggregate principal amount of $40,000,000 to finance or refinance the Project in accordance with the Bond Act and the GO Bond Law, has transmitted to the presiding officers of the Legislature a certified copy of the Resolution and copies of all documents or drafts authorized by the Resolution, and has published a notice at least four times in the *Saipan Tribune* and the *Marianas Variety News and Views*, each a newspaper of general circulation in the Commonwealth, as required by the GO Bond Law; and

WHEREAS, no action or proceeding has been initiated by any person to contest the validity of the Bonds or any related matters or compliance of the Authority with applicable requirements of the Law, as hereinafter defined; and

WHEREAS, the amount of the Bonds, plus the amount of any other debt of the Commonwealth, does not exceed ten percent (10%) of the aggregate assessed value of the real property within the Commonwealth; and

WHEREAS, all conditions, things and acts required by law to exist, happen and be performed precedent to and in connection with the issuance of the Bonds exist, have happened and have been performed in regular and due time, form and manner as required by law, and the Authority, for and in the name and on behalf of the Commonwealth, is now duly empowered to issue the Bonds;

NOW, THEREFORE, THIS INDENTURE WITNESSETH, that in order to secure the payment of the principal of and interest on all Bonds at any time issued and outstanding under

DOCSSF1:681007.9

this Indenture, according to their tenor, and to secure the performance and observance of all the covenants and conditions therein and herein set forth, and to declare the terms and conditions upon and subject to which the Bonds are to be issued and received, and in consideration of the premises and of the mutual covenants herein contained and of the purchase and acceptance of the Bonds by the owners thereof, and for other valuable considerations, the receipt of which is hereby acknowledged, the Authority does hereby covenant and agree with the Trustee, for the benefit of the respective owners from time to time of the Bonds, as follows:

## ARTICLE I

## DEFINITIONS; EQUAL SECURITY

SECTION 1.01   Definitions. Unless the context otherwise requires, the terms defined in this section shall for all purposes of this Indenture and of the Bonds and of any certificate, opinion, report, request or other document herein or therein mentioned have the meanings herein specified.

Authority

The term "Authority" means the Commonwealth Development Authority or any successor to the functions thereof pursuant to the laws of the Commonwealth.

Bond Act

The term "Bond Act" means Public Law No. 13-17, adopted by the Legislature of the Commonwealth by the affirmative vote of two-thirds of the members of each house, and signed by the Governor on July 23, 2002, as amended by Public Law 13-25, adopted by Legislature of the Commonwealth by the affirmative vote of two-thirds of the members of each house, and signed by the Governor on September 20, 2002, and by Public Law 13-39, adopted by Legislature of the Commonwealth by the affirmative vote of two-thirds of the members of each house, and signed by the Governor on December 13, 2002, and by Public Law 13-56, adopted by Legislature of the Commonwealth by the affirmative vote of two-thirds of the members of each house, and signed by the Governor on July 25, 2003, and as such laws may be further amended from time to time.

Bond Counsel

The term "Bond Counsel" means Orrick, Herrington & Sutcliffe LLP, or any other attorney at law or firm of attorneys, of nationally recognized standing in the United States in matters pertaining to the federal tax exemption of interest on obligations issued by states, territories (including the Commonwealth) and political subdivisions, and duly admitted to practice law before the highest court of any state of the United States.

Bondholder, Owner

The term "Bondholder" or "Owner" whenever employed herein means the person in whose name any Bond shall be registered.

Bond Payment Fund

The term "Bond Payment Fund" means the fund established pursuant to Section 4.04 hereof.

Bond Year

The term "Bond Year" means (1) with respect to the initial Bond Year, the period from December 1, 2003 to and including October 1, 2004, and thereafter, each twelve-month period from October 2 in any calendar year to and including October 1 in the following calendar year.

Bonds

The term "Bonds" means the Commonwealth of the Northern Mariana Islands General Obligation Bonds, Series 2003A.

Book-Entry Bonds

The term "Book-Entry Bonds" means Bonds registered in the name of the Nominee of a Depository as the owner thereof pursuant to the terms and provisions of Section 2.11 of this Indenture.

Business Day

The term "Business Day" means a day of the year on which banks in New York, New York, and any place in which the Principal Office of the Trustee or the Paying Agent is located are not required or authorized to remain closed and on which the New York Stock Exchange is not closed.

Code

The term "Code" means the Internal Revenue Code of 1986, as amended and any regulations of the United States Department of the Treasury issued thereunder.

Commonwealth

The term "Commonwealth" means the Commonwealth of the Northern Mariana Islands, a public entity, corporate and politic, duly organized and existing under and pursuant to the Constitution and the Covenant.

Constitution

The term "Constitution" means the Constitution of the Commonwealth, effective as of January 9, 1978, as amended.

Continuing Disclosure Certificate

The term "Continuing Disclosure Certificate" means that certain Continuing Disclosure Certificate of the Authority dated the date of issuance and delivery of the Bonds, as originally executed and as it may be amended from time to time in accordance with the terms thereof.

Costs of Issuance

The term "Costs of Issuance" means all items of expense directly or indirectly payable by or reimbursable to the Authority or the Commonwealth and related to the authorization, issuance, sale and delivery of the Bonds, including but not limited to publication and printing costs, costs of preparation and reproduction of documents, filing and recording fees, fees and charges of the Trustee or Paying Agent, legal fees and charges, fees and disbursements of consultants and professionals, rating agency fees, bond insurance premiums and related expenses, fees and charges for preparation, execution, transportation and safekeeping of the Bonds, and any other cost, charge or fee in connection with the original issuance of the Bonds.

Covenant

The term "Covenant" means the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, approved by the Congress of the United States by Joint Resolution on March 24, 1976.

Department of Finance

The term "Department of Finance" means the Department of Finance of the Commonwealth of the Northern Mariana Islands.

Depository

The term "Depository" means the securities depository acting as Depository pursuant to Section 2.11 of this Indenture.

Event of Default

The term "Event of Default" means any of the events specified in Section 8.01 hereof.

Federal Securities

The term "Federal Securities" means United States Treasury notes, bonds, bills or certificates of indebtedness (including United States Treasury – State and Local Government Series), or other non-callable direct evidences of indebtedness secured or guaranteed by the full faith and credit of the United States of America.

Fiscal Year

The term "Fiscal Year" means the period commencing on October 1 of each year and terminating on the next succeeding September 30, or any other annual accounting period

hereafter selected and designated by the Commonwealth as its Fiscal Year in accordance with the Constitution and with notice to the Trustee.

General Fund

The term "General Fund" means the General Fund of the Commonwealth.

GO Bond Law

"GO Bond Law" means Public Law 11-3, adopted by the Legislature of the Commonwealth by the affirmative vote of two-thirds of the members in each house, and signed by the Governor on March 10, 1998.

Indenture

The term "Indenture" means this Indenture, as it may be amended or supplemented from time to time in accordance with its terms.

Independent Certified Public Accountant

The term "Independent Certified Public Accountant" means any certified public accountant or firm of such accountants duly licensed and entitled to practice and practicing as such under the laws of any state of the United States of America, appointed and paid by the Commonwealth or the Authority, and who, or each of whom:

(1)  is in fact independent and not under the domination of the Commonwealth or the Authority;

(2)  does not have any substantial interest, direct or indirect, with the Commonwealth or the Authority; and

(3)  is not connected with the Commonwealth or the Authority as a legislator, government official (elected or appointed), officer or employee of the Commonwealth or the Authority, but who may be regularly retained to make annual or other audits of the books of or reports to the Commonwealth or the Authority.

Information Services

The term "Information Services" means Financial Information, Inc.'s "Daily Called Bond Service", 30 Montgomery Street, 10th Floor, Jersey City, New Jersey 07302, Attention: Editor; Kenny Information Services' "Called Bond Service," 66 Broadway, 16th Floor, New York, New York 10006; Moody's Investors Service "Municipal and Government," 99 Church Street, 8th Floor, New York, New York 10007, Attention: Municipal News Reports; Standard & Poor's Corporation "Called Bond Record," 25 Broadway, 3rd Floor, New York, New York 10004; and, in accordance with then current guidelines of the Securities and Exchange Commission, such other addresses and/or such other services providing information with respect to the Bonds as may be designated in a Written Request filed with the Trustee.

Interest Account

The term "Interest Account" means the account maintained within the Bond Payment Fund pursuant to Section 4.05 of this Indenture.

Interest Payment Date

The term "Interest Payment Date" means any April 1 or October 1 on which interest on the Bonds is scheduled to be paid, commencing April 1, 2004.

Interim Financing

The term "Interim Financing" means the internal borrowings and expenditures from the Authority for costs of the prison project authorized by the Bond Act.

Investment Agreement

The term "Investment Agreement" means an investment agreement or guaranteed investment contract by and between the Trustee and a United States or state chartered bank or savings and loan institution, financial or investment institution or insurance company (including the Trustee), which bank, institution or company has outstanding senior debt obligations rated in one of the three highest rating categories of Moody's or S&P, providing for the investment of moneys held in certain funds or accounts established pursuant to this Indenture.

Land Compensation Fund

The term "Land Compensation Fund" means the Land Compensation Fund created by the Bond Act.

Law

The term "Law" means the Constitution of the Commonwealth, the Covenant, the GO Bond Law, the Bond Act, the Open Government Act (Title 1, Division 9, Chapter 9 of the Commonwealth Code), the Commonwealth Development Authority Act (Title 4, Division 10 of the Commonwealth Code) and all laws amendatory thereof or supplemental thereto.

Letter of Representations

The term "Letter of Representations" means the letter of the Authority delivered to and accepted by the Depository on or prior to the issuance of a series of Book-Entry Bonds setting forth the basis on which the Depository serves as depository for such Book-Entry Bonds, as originally executed or as it may be supplemented or revised or replaced by a letter to a substitute depository.

Moody's

The term "Moody's" means Moody's Investors Service, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, and its successors and assigns,

except that if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, then the term "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency selected by the Authority.

MPLA

The term "MPLA" means Mariana Public Lands Authority, an independent public corporation of the Commonwealth, or any successor to its functions as provided by law.

Nominee

The term "Nominee" shall mean the nominee of the Depository, which may be the Depository, as determined from time to time pursuant to Section 2.11 of this Indenture.

Outstanding

The term "Outstanding" when used as of any particular time with reference to Bonds, means (subject to the provisions of Section 7.02) all Bonds except the following:

(1) Bonds theretofore cancelled by the Trustee or surrendered to the Trustee for cancellation;

(2) Bonds paid or deemed to have been paid within the meaning of Section 10.01; and

(3) Bonds in lieu of or in substitution for which other Bonds shall have been authorized, executed, issued and delivered by the Authority pursuant to this Indenture.

Paying Agent

The term "Paying Agent" means U.S. Bank National Association, as paying agent, registrar and transfer agent hereunder, and its successors and assigns, or any other corporation or association which may at any time be substituted in its place, as provided in Section 6.01.

Payment Date

The term "Payment Date" means a scheduled Interest Payment Date or Principal Payment Date.

Permitted Investments

The term "Permitted Investments" means:

(1) Federal Securities;

(2) bonds, debentures, notes or other evidences of indebtedness issued or guaranteed by the Federal Home Loan Bank System, the Federal Home Loan Mortgage Corporation; the Federal National Mortgage Association; the Student Loan Marketing Association; the Resolution Funding Corp. or the Farm Credit System;

(3) money market funds, including funds of the Trustee or any affiliate, registered under the Federal Investment Company Act of 1940, whose shares are registered under the Federal Securities Act of 1933, and having a rating by S&P of "AAAm-G"; or "AAAm"; and if rated by Moody's rated "Aaa";

(4) certificates of deposit secured at all times by collateral described in (1) above valued daily at 102% of par, held by a third party, in which the Trustee on behalf of Owners has a perfected first security interest in the collateral;

(5) certificates of deposit, savings accounts, deposit accounts or money market deposits, including deposits in the Trustee or any affiliate, which are fully insured by the Federal Deposit Insurance Corporation, including BIF and SAIF;

(6) Investment Agreements;

(7) commercial paper rated, at the time of purchase, "Prime-1" by Moody's and "A-1+" or better by S&P and which matures not more than 270 days after the date of purchase;

(8) bonds or notes issued by any state or municipality of the United States which are rated by Moody's and S&P in one of the two highest long-term rating categories assigned by such agencies; and

(9) federal funds or bankers acceptances with a maximum term of one year of any bank which has an unsecured, uninsured and unguaranteed obligation rating of "Prime-1" by Moody's and "A-1" by S&P.

## Principal Account

The term "Principal Account" means the account maintained within the Bond Payment Fund pursuant to Section 4.05 of this Indenture.

## Principal Office

The term "Principal Office" of the Trustee or the Paying Agent means such office of the Trustee or the Paying Agent, respectively, as may be designated from time to time by written notice from the Trustee or the Paying Agent, as applicable, to the Authority, initially being such respective offices located at the respective addresses set forth in Section 11.12 hereof; provided, however, for transfer, registration, exchange, payment and surrender of Bonds, means the Principal Office of the Paying Agent in St. Paul, Minnesota.

## Principal Payment Date

The term "Principal Payment Date" means any October 1 on which principal of the Bonds is scheduled to be paid, commencing on October 1, 2009.

Project

The term "Project" means, collectively, the real property acquisition and construction set forth in the Bond Act, and any other capital improvements authorized by law to be acquired and constructed with proceeds of the Bonds.

Project Fund

The term "Project Fund" means the fund by that name established with the Trustee pursuant to Section 3.01 of this Indenture.

Rating Agency

The term "Rating Agency" means Moody's, S&P and each other rating agency then rating the Bonds at the request of the Authority.

Rebate Fund

The term "Rebate Fund" means the Rebate Fund established pursuant to Section 5.11 hereof.

Rebate Instructions

The term "Rebate Instructions" means those calculations and directions required to be delivered to the Trustee by the Authority pursuant to the Tax Certificate.

Regulations

The term "Regulations" means temporary and permanent regulations promulgated or applicable under Section 103 and all related provisions of the Code.

S&P

The term "S&P" means Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc., and its successors and assigns, except that if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, then the term "S&P" shall be deemed to refer to any other nationally-recognized rating agency selected by the Authority.

Securities Depositories

The term "Securities Depositories" means: The Depository Trust Company, 711 Stewart Avenue, Garden City, New York 11530, Fax-(516) 277-4039 or 4190; Philadelphia Depository Trust Company, Reorganization Division, 1900 Market Street, Philadelphia, Pennsylvania 19103, Attention: Bond Department, Fax-(215) 496-5058; or, in accordance with the then-current guidelines of the Securities and Exchange Commission, such other addresses and/or such other securities depositories as the Authority may designate.

Series

The term "Series" means and refers to all Bonds of like designation authenticated and delivered on original issuance at the same time pursuant to this Indenture and any Bonds thereafter delivered in lieu of or in substitution for any of such Bonds pursuant to this Indenture.

Supplemental Indenture

The term "Supplemental Indenture" means any indenture amending or supplemental to this Indenture, but only if and to the extent that such Supplemental Indenture is specifically authorized hereunder.

Surplus Account

The term "Surplus Account" means the account maintained within the Bond Payment Fund pursuant to Section 4.05 of this Indenture.

Tax Certificate

The term "Tax Certificate" means a certificate or certificates of the Authority and the Secretary of the Department of Finance concerning the calculation of any amount to be paid to the United States of America pursuant to Section 148(f) of the Code and any other matters relating to the exclusion of interest on the Bonds from gross income for federal income tax purposes.

Trustee

The term "Trustee" means Bank of Guam, as trustee hereunder, and its successors and assigns, or any other corporation or association which may at any time be substituted in its place, as provided in Section 6.01.

Written Certificate

The term "Written Certificate" means an instrument in writing signed by the Governor of the Commonwealth, by the Secretary of the Department of Finance, by the Chairman of the Authority or, in the case of Section 3.02, as applicable, by the Commissioner of the MPLA, or by a duly authorized designee of any of the foregoing officials. Such Written Certificate shall comply with the provisions of Section 11.08 hereof to the extent such Section is applicable thereto.

Written Request

The term "Written Request" means an instrument in writing signed by the Governor of the Commonwealth, the Secretary of the Department of Finance, the Chairman of the Authority or a duly authorized designee of any of the foregoing officials.

SECTION 1.02    Equal Security. In consideration of the acceptance of the Bonds by the Owners thereof, this Indenture shall be deemed to be and shall constitute a contract between

the Authority, on behalf of the Commonwealth, and the Owners from time to time of all Bonds issued hereunder and then Outstanding to secure the full and final payment of the interest on and principal of all Bonds authorized, executed, issued and delivered hereunder, subject to the agreements, conditions, covenants and provisions herein contained; and the agreements and covenants herein set forth to be performed on behalf of the Commonwealth and the Authority shall be for the equal and proportionate benefit, security and protection of all Owners of the Bonds without preference, priority or distinction as to security or otherwise of any Bonds over any other Bonds.

## ARTICLE II

## THE BONDS; CERTAIN PROVISIONS OF THE BONDS

SECTION 2.01     Authorization of Bonds.  The Commonwealth and the Authority have reviewed all proceedings heretofore taken relative to the authorization of the Bonds and have found, as a result of such review, and hereby find and determine that all acts, conditions and things required by law to exist, happen or be performed precedent to and in connection with the issuance of the Bonds do exist, have happened and have been performed in due time, form and manner as required by law, and the Authority is now duly authorized, for and in the name and on behalf of the Commonwealth, pursuant to each and every requirement of law, to issue the Bonds in the manner and form provided in this Indenture.  Accordingly, the Authority hereby authorizes the issuance of the Bonds for the purpose of providing funds to aid in the financing of the Project.

SECTION 2.02     Terms of Bonds.  The Bonds authorized to be issued by the Authority under and subject to the terms of this Indenture and the Law shall be designated the "Commonwealth of the Northern Mariana Islands General Obligation Bonds, Series 2003A" and shall be in the aggregate principal amount of forty million dollars ($40,000,000).

The Bonds shall be issued as fully registered Bonds in the denomination of $100,000, or any integral multiple thereof (not exceeding the principal amount of such Bonds maturing at any one time).  The Bonds shall be dated as of the date of issuance and delivery thereof and shall be numbered in consecutive numerical order from 1 upwards.  The Bonds shall bear interest from the Interest Payment Date next preceding the date of authentication thereof, unless such date of authentication is a day during the period from the sixteenth day of the month next preceding any Interest Payment Date to such Interest Payment Date, inclusive, in which event they shall bear interest from such Interest Payment Date, or unless such date of authentication is prior to the first Interest Payment Date, in which event they shall bear interest from their date; provided, however, that if, at the time of authentication of any Bond, interest is then in default on the Bonds, such Bond shall bear interest from the Interest Payment Date to which interest previously has been paid or made available for payment.  Payment of interest on the Bonds shall be made by the Paying Agent to the person whose name appears on the Bond registration books of the Paying Agent as the registered owner thereof, as of the close of business on the fifteenth (15th) day of the calendar month preceding the Interest Payment Date (the "Record Date"), such interest to be paid by check mailed to such registered owner at its address as it appears on such books, or, upon written request of an Owner of at least $1,000,000 in aggregate principal amount

of Bonds, by wire transfer in immediately available funds to an account within the United States designated by such Owner prior to the Record Date. Interest on the Bonds shall be computed on the basis of a 360-day year of twelve 30-day months.

All of the Bonds shall bear interest at the rate of 6.75% per annum and shall mature on October 1, 2033, subject to sinking fund redemption as set forth in Section 2.03(b).

Principal of the Bonds shall be payable by check or wire upon the surrender thereof at maturity thereof at the Principal Office of the Paying Agent. Principal and interest on the Bonds shall be paid in lawful money of the United States of America. Each payment of principal or interest on the Bonds shall include the CUSIP identification number, if any, of the Bond with respect to which such payment is made.

SECTION 2.03  Redemption of Bonds. The Bonds shall be subject to redemption as provided in this Section.

(a) **Optional Redemption.** The Bonds maturing after October 1, 2013 are subject to redemption prior to their respective maturities, at the option of the Commonwealth, from any source of available funds, on any date on or after October 1, 2013, as a whole, or in part by such maturity or maturities as may be specified by Request of the Commonwealth (and by lot within a maturity as selected by the Trustee), at a Redemption Price of one hundred percent (100%) of the principal amount thereof plus accrued interest thereon to the dated fixed for redemption.

(b) **Mandatory Redemption from Sinking Fund Payments.** (1) The Bonds are subject to redemption prior to their stated maturities, in part, by lot, from mandatory sinking fund payments deposited in the Principal Account in the Bond Payment Fund pursuant to Section 4.05 of this Indenture, on each October 1 from and after October 1, 2009, at the principal amount thereof plus accrued interest thereon, if any, to the date of redemption (without premium).

(c) Selection of Bonds for Redemption. Whenever provision is made in this Indenture for the redemption of less than all of the Bonds, the Trustee shall select the Bonds to be redeemed, from the Outstanding Bonds not previously called for redemption, by lot within a maturity and, if from more than one maturity, in the order of such maturities as shall be specified in a Written Request of the Authority.

(d) Notice of Redemption. Notice of redemption shall be given by the Trustee as hereinafter provided to (i) the Authority, (ii) the respective Owners of any Bonds designated for redemption at their addresses appearing on the Bond registration books of the Paying Agent, (iii) the Information Services, (iv) the Securities Depositories, (v) any rating agency then rating the Bonds at the request of the Authority, and (vi) the Municipal Securities Rulemaking Board. Each notice of redemption shall state the date of such notice, the redemption date, the redemption price (including any premium), the place or places of redemption (including the name and appropriate address or addresses of the Paying Agent), the CUSIP number (if any) of the maturity or maturities, and, if less than all the Bonds of any maturity are to be redeemed, the distinctive certificate numbers of the Bonds of such maturity to be redeemed and, in the case of Bonds to be redeemed in part only, the respective portions of the principal amount thereof to be redeemed. Each such notice shall also state that on said date there will become due and payable

on each of said Bonds the redemption price thereof or of said specified portion of the principal amount thereof in the case of a Bond to be redeemed in part only, together with interest accrued thereon to the redemption date, and that from and after such redemption date interest thereon shall cease to accrue, and shall require that such Bonds be then surrendered at the address or addresses of the Paying Agent specified in the redemption notice.

Any notice of redemption shall be mailed by first class mail, postage prepaid, to Bondholders not less than thirty (30) days or more than sixty (60) days prior to the date fixed for redemption. Notices to the Authority, the Information Services and the Securities Depositories shall be mailed by the Trustee by certified, registered or overnight mail at the time of the mailing of notices to Bondholders.

Notice of redemption of Bonds shall be given by the Trustee for and on behalf of the Authority.

Failure by the Trustee to give notice pursuant to this subsection, or the insufficiency of any such notice, shall not affect the sufficiency of the proceedings for redemption of any Bond for which notice was properly given.

(e) **Partial Redemption of Bonds.** Upon surrender of any Bond redeemed in part only, the Paying Agent shall provide a replacement Bond in a principal amount equal to the portion of such Bond not redeemed, and deliver it to the registered owner thereof. The Bond so surrendered shall be cancelled by the Paying Agent as provided herein. The Authority, the Trustee and the Paying Agent shall be fully released and discharged from all liability to the extent of payment of the redemption price for such partial redemption.

(f) **Effect of Redemption.** Moneys for payment of the redemption price of, together with interest accrued to the redemption date on, the Bonds (or portions thereof) so called for redemption being held by the Paying Agent, on the redemption date designated in such notice, shall become due and payable at the redemption price specified in such notice and interest accrued thereon to the redemption date, interest on the Bonds so called for redemption shall cease to accrue from and after the redemption date, said Bonds (or portions thereof) shall cease to be entitled to any benefit or security under this Indenture, and the Holders of said Bonds shall have no rights in respect thereof except to receive payment of said redemption price and accrued interest to the redemption date. Any accrued interest payable upon the redemption of Bonds may be paid from amounts held in the Interest Account for the payment of interest on the next following Interest Payment Date.

All Bonds redeemed pursuant to the provisions of this Article shall be cancelled upon surrender thereof and shall be destroyed by the Paying Agent, who shall thereupon deliver to the Trustee or the Authority a certificate evidencing such destruction if so requested.

SECTION 2.04    Form and Execution of Bonds. The Bonds, the Paying Agent's authentication and registration endorsement, and the assignment to appear thereon shall be substantially in the form attached hereto as Appendix A, with necessary or appropriate variations, omissions and insertions as permitted or required by this Indenture. The Bonds may be typewritten, printed, lithographed or otherwise produced. The Bonds shall be signed by the

manual or facsimile signatures of the Chairman of the Authority and the Executive Director of the Authority. In case any officer whose signature appears on the Bonds shall cease to be such officer before the delivery of any Bonds to the purchaser thereof, such signature shall nevertheless be valid and sufficient for all purposes the same as though such officer had remained in office until such delivery of the Bonds. Any Bond may be signed on behalf of the Authority by such persons who as of the actual date of the execution of such Bond shall be the proper officers of the Authority although at the nominal date of such Bond any such person may not have been such officer of the Authority.

Only such of the Bonds as shall bear thereon a certificate of authentication and registration in the form set forth in Appendix A, executed and dated by the Paying Agent, shall be entitled to any benefits under this Indenture or be valid or obligatory for any purpose, and such certificate of the Paying Agent shall be conclusive evidence that the Bonds so registered have been duly issued and delivered hereunder and are entitled to the benefits of this Indenture.

SECTION 2.05   Transfer and Registration of Bonds. Any Bond may, in accordance with its terms, be transferred, upon the books required to be kept pursuant to the provisions of Section 2.07, by the person in whose name it is registered, in person or by its duly authorized attorney, upon surrender of such Bond at the Principal Office of the Paying Agent for cancellation, accompanied by delivery of a written instrument of transfer in a form acceptable to the Paying Agent, duly executed.

Whenever any Bond or Bonds shall be surrendered for transfer, the Authority shall execute and the Paying Agent shall authenticate and deliver a new Bond or Bonds for a like aggregate principal amount of the same Series, interest rate and maturity date in authorized denominations. The Paying Agent shall require the payment by the Owner requesting such transfer of any tax or other governmental charge required to be paid with respect to such transfer.

SECTION 2.06   Exchange of Bonds. The Bonds may be exchanged at the Principal Office of the Paying Agent for a like aggregate principal amount of Bonds of the same Series, interest rate and maturity date in other authorized denominations. The Paying Agent shall require the payment by the Owner requesting such exchange of any tax or other governmental charge required to be paid with respect to such exchange.

SECTION 2.07   Bond Registration Books. The Paying Agent will keep at its Principal Office sufficient books for the registration and transfer of the Bonds, which shall at all times be open to inspection by the Authority; and, upon presentation for such purpose, the Paying Agent shall, under such reasonable regulations as it may prescribe, register or transfer the Bonds on said books as hereinbefore provided.

SECTION 2.08   Mutilated, Destroyed, Stolen or Lost Bonds. In case any Bond shall become mutilated, or shall be believed by the Authority, the Trustee or the Paying Agent to have been destroyed, stolen or lost, upon proof of ownership satisfactory to the Paying Agent, and upon the surrender of such mutilated Bond at the Principal Office of the Paying Agent or upon the receipt of evidence satisfactory to the Paying Agent of such destruction, theft or loss, and upon receipt also of indemnity satisfactory to the Authority and the Paying Agent, and upon payment by the Owner of all expenses incurred by the Authority and the Paying Agent, the

Authority shall execute and the Paying Agent shall authenticate and deliver at said office a new Bond or Bonds of the same Series, interest rate and maturity and for the same aggregate principal amount, of like tenor and date, bearing the same number or numbers, with such notations as the Paying Agent shall determine, in exchange and substitution for and upon cancellation of the mutilated Bond, or in lieu of and in substitution for the Bond so destroyed, stolen or lost.

If any such destroyed, stolen or lost Bond shall have matured, payment of the amount due thereon may be made by the Commonwealth or the Paying Agent upon receipt of like proof, indemnity and payment of expenses.

Any such replacement Bonds issued pursuant to this section shall be entitled to equal and proportionate benefits with all other Bonds issued hereunder. The Authority and the Paying Agent shall not be required to treat both the original Bond and any replacement Bond as being Outstanding for the purpose of determining the principal amount of Bonds which may be issued hereunder or for the purpose of determining any percentage of Bonds Outstanding hereunder, but both the original and replacement Bond shall be treated as one and the same.

SECTION 2.09 Temporary Bonds. Until definitive Bonds shall be prepared, the Authority may cause to be executed and delivered in lieu of such definitive Bonds and subject to the same provisions, limitations and conditions as are applicable in the case of definitive Bonds, except that they may be in any denominations authorized by the Authority, one or more temporary typed, printed, lithographed or engraved Bonds in fully registered form, as may be authorized by the Authority, substantially of the same tenor and, until exchange for definitive Bonds, entitled and subject to the same benefits and provisions of this Indenture as definitive Bonds. If the Authority issues temporary Bonds it will execute and furnish definitive Bonds without unnecessary delay and thereupon the temporary Bonds shall be surrendered to the Paying Agent at its Principal Office, without expense to the Owner in exchange for such definitive Bonds. All temporary Bonds so surrendered shall be cancelled by the Paying Agent and shall not be reissued.

SECTION 2.10 Validity of Bonds. The Bonds shall not be invalid for any irregularity or defect in the proceedings for the issue or sale thereof except as provided in Section 16 of the GO Bond Law. The Authority hereby represents and certifies that all requirements of the Law have been satisfied in the authorization of the Bonds, and that no action or proceeding has been instituted prior to the delivery of the Bonds to contest the validity of such Bonds, any pledge of additional security, any credit enhancement or hedge agreement, or compliance of the Authority with applicable requirements of the Law. Accordingly, pursuant to Section 16 of the GO Bond Law, the validity of the Bonds is conclusively presumed and no court shall have authority to inquire into such matters.

SECTION 2.11 Book-Entry Only System. (A) Except as otherwise provided in subsections (B) and (C) of this Section 2.11, the Bonds issued hereunder shall be evidenced by one Bond of each Series maturing on each of the maturity dates as set forth in this Indenture in a denomination corresponding to the total principal amount of the Bonds maturing on each maturity date. Each Book-Entry Bond shall be assigned by the Paying Agent a distinctive number or letter or letter and number, and a record of the same shall be maintained by the Paying Agent. Registered ownership of Book-Entry Bonds, or any portion thereof, may not thereafter

be transferred except as set forth in this Section 2.11. Payment of the interest on any Book-Entry Bond shall be made on each Interest Payment Date to the account, in the manner and at the address indicated in or pursuant to the Letter of Representations.

(B)     Upon initial issuance of Book-Entry Bonds, the ownership of all such Book-Entry Bonds shall be registered in the registration records maintained by the Paying Agent pursuant to Section 2.07 in the name of Cede & Co., as nominee of The Depository Trust Company ("DTC"), or such other nominee as DTC shall request pursuant to the Letter of Representations. The Paying Agent and the Authority may treat DTC (or its nominee) as the sole and exclusive owner of Book-Entry Bonds registered in its name for the purposes of payment of the principal of and interest on such Book-Entry Bonds, giving any notice permitted or required to be given to Owners of Book-Entry Bonds under this Indenture, registering the transfer of Book-Entry Bonds, obtaining any consent or other action to be taken by Owners of the Book-Entry Bonds and for all other purposes whatsoever; and neither the Paying Agent nor the Authority shall be affected by any notice to the contrary. None of the Paying Agent nor the Commonwealth nor the Authority shall have any responsibility or obligation to any Participant (which shall mean, for purposes of this Section 2.11, securities brokers and dealers, banks, trust companies, clearing corporations and other entities, some of whom directly or indirectly own DTC), any person claiming a beneficial ownership interest in the Book-Entry Bonds under or through DTC or any Participant, or any other person which is not shown on the registration records as being an Owner of Book-Entry Bonds, with respect to (i) the accuracy of any records maintained by DTC or any Participant, (ii) the payment by DTC or any Participant of any amount in respect of the principal of or interest on the Book-Entry Bonds, (iii) any notice which is permitted or required to be given to Owners of Book-Entry Bonds under this Indenture, or (iv) any consent given or other action taken by DTC as an Owner of Book-Entry Bonds. The Paying Agent shall pay all principal of and interest on the Book-Entry Bonds only at the times, to the accounts, at the addresses and otherwise in accordance with the Representation Letter, and all such payments shall be valid and effective to satisfy fully and discharge the Commonwealth's obligations with respect to the principal of and interest on the Book-Entry Bonds to the extent of the sum or sums so paid. Upon delivery by DTC to the Paying Agent of written notice to the effect that DTC has determined to substitute a new nominee in place of its then existing nominee, the Book-Entry Bonds will be transferable to such new nominee in accordance with subsection (F) of this Section 2.11.

(C)     In the event that the Authority determines to discontinue use of the system of book-entry transfers, the Trustee shall, upon the written instruction of the Authority, so notify DTC of such decision and the availability of Bond certificates. In such event, the Bonds which were previously Book-Entry Bonds will be transferable in accordance with subsection (F) of this Section 2.11. DTC may determine to discontinue providing its services with respect to the Book-Entry Bonds at any time by giving written notice of such discontinuance to the Authority and the Paying Agent and discharging its responsibilities with respect thereto under applicable law. In such event, such Bonds will be transferable in accordance with subsection (F) of this Section 2.11. Whenever DTC requests the Authority and the Paying Agent to do so, the Paying Agent and the Authority will cooperate with DTC in taking appropriate action after reasonable notice to arrange for another securities depository to maintain custody of all certificates evidencing the Book-Entry Bonds then Outstanding. In such event, the Book-Entry Bonds will be transferable to such securities depository in accordance with subsection (F) of this Section