F I L E D
Clerk
District Court

MAY 1 8 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI, ) | Civil Action No. 05-0037 |
| ) | |
| Plaintiff ) | |
| ) | ORDER GRANTING |
| v. ) | MOTIONS TO DISMISS |
| ) | FILED BY COMMONWEALTH |
| PAMELA BROWN, *et al.*, ) | AND FORMER ATTORNEY |
| ) | GENERAL BROWN |
| Defendants ) | |

THIS MATTER came before the court on Monday, March 6, 2006, for hearing of the motions to dismiss the entire complaint, filed by defendants Commonwealth of the Northern Mariana Islands ("CNMI") and former Attorney General ("AG") Pam Brown.[1] Plaintiff appeared by and through her attorney, Brien Sers Nicholas; defendants Commonwealth and former Attorney General Pam Brown

---

[1] Other motions heard that day will be the subject of a separate order.

appeared by and through their attorney, G. Patrick Civille.

THE COURT, having considered the written and oral arguments of counsel, rules as follows.

Defendants CNMI and AG Brown move to dismiss the complaint for failure to state claims upon which relief can be granted. Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule contains "a powerful presumption against rejecting pleadings for failure to state a claim." Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985).

A motion to dismiss for failure to state a claim upon which relief can be granted will succeed only if from the complaint it appears beyond doubt that plaintiff can prove *no* set of facts in support of her claim that would entitle her to relief. Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999) (emphasis added). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998). In reviewing the sufficiency of the complaint, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). "[I]t may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." Id.

The court exercises its discretion and will not treat these motions to dismiss as a motion for summary judgment despite the documents and affidavits filed in support of and opposition to the motion. However, the following facts are either generally undisputed or the court accepts them as true, as it must, for purposes of this motion.

Plaintiff owned wetlands that were taken by the Commonwealth in 1993 pursuant to its eminent domain powers. Plaintiff did not at that time receive compensation for the taking. In 2002, Commonwealth Public Law 13-17 was signed. The law authorized the Marianas Public Lands Authority ("MPLA") to incur a public debt of $40 million for purposes of settling *all* land compensation claims pending against the CNMI. Under P.L. 13-17, the order in which claims were to be paid depended upon the purpose for which the land was taken. Compensation was first to be paid for land taken for rights-of-way, second for land taken for the construction of ponding basins, and third for land taken to preserve wetlands. All other types of claims were to be paid last. In 2004, P.L. 13-17 was amended by P.L. 14-29 to eliminate the priority payment scheme, so that all land claims would be treated identically.

On April 11, 2005, plaintiff was sued in Commonwealth Superior Court by the Commonwealth and the Department of Public Health for payment of outstanding medical bills of $253,095.96 for her dialysis treatments. The next day, the Office of the Attorney General, knowing that plaintiff was soon to receive compensation from

the Commonwealth for the land taken more than a decade before, obtained a writ of prejudgment attachment. On April 28, 2005, the parties entered into a settlement agreement in which plaintiff would retain half of the money she was to receive for land compensation and the remaining $79,704.10 would go to the Commonwealth, which agreed to credit her hospital account the total sum of $159,408.19 "in consideration of the large cash payment." Kumagai was to pay the remaining amount of her medical bills in monthly installments. In the agreement, the Commonwealth agreed "not to object, obstruct, or in any way hinder the disbursement of the remaining funds of approximately $79,704.10 held by MPLA to [plaintiff herein, Kumagai]." The settlement agreement stated that "the parties have conducted an investigation into the facts and the law underlying the claims asserted in the Action and have concluded that a settlement of such claims...is in their respective best interests." The settlement agreement was "approved as to form and legal capacity" and personally signed by defendant Brown in her capacity as Attorney General of the Commonwealth.

On May 5, 2005, plaintiff and MPLA, at that time an autonomous Commonwealth agency, signed another settlement agreement whereby she was to finally receive the $159,408.19 for her wetlands taken in 1993, with half of the payment going immediately to her and the other half to the Commonwealth as partial payment of her medical bills. Plaintiff fulfilled her part of the bargain by executing a

warranty deed to MPLA; all that remained to fully complete the terms of the settlement agreement was for MPLA to issue the checks.

The settlement agreement recited in part that:

> ...all other claims, demands, rights, duties, obligations and liabilities arising between the parties to this Agreement are hereby mutually satisfied, discharged, and released. Each party hereto releases, discharges and forever waives any claims, demands, rights, duties, obligations and liabilities against the other party, their heirs and assigns, past, present, and future, as it related to the Commonwealth's acquisition of E.A. 157-2-1, more particularly described above.

On May 6, 2005, MPLA prepared and transmitted to defendant Secretary of Finance Fermin Atalig Requisition No. FY05-11, requesting that he process the payment for plaintiff Kumagai. Copies of the requisition were also forwarded to the Governor and Office of the Attorney General.

On May 9, 2005, Acting Attorney General Clyde Lemons, Jr. wrote to Secretary Atalig indicating that the Office of the Attorney General was "currently reviewing several drawdowns that have been sent to our office for approval" and was "contemplating taking action against MPLA with respect to such drawdowns." Mr. Lemons asked that the Secretary of Finance "not process any land compensation payments until further notice." The requisitions for plaintiff and another person were identified by number as being "currently before" defendant Atalig, and mention was made that defendant Atalig might "receive others in the immediate future for your approval."

About three months later, on August 8, 2005, defendant Atalig gave his concurrent to the requisition and released it back to MPLA, which transmitted it the same day to defendants Commonwealth Development Authority ("CDA") and its Executive Director, Maria Lourdes Seman Ada, requesting disbursement of plaintiff's money.

On August 9, 2005, CDA and Ada forwarded the requisition to the trustee of the bond funds, defendant Bank of Guam, asking that the Bank "process the attached [two] drawdown requests for land owner's compensation," one of which was plaintiff's.

On August 10, 2005, Attorney General Brown faxed a letter to defendant Ada, requesting CDA not to authorize the two requisitions "prior to the end of the day August 15, 2005." In her letter, the Attorney General indicated that her office was "investigating requisitions FY 05-10 and FY 05-11 because the valuations appear too high for properties that generally have little or no market value," apparently because both were "100% wetland properties." She continued, "We are also investigating these requisitions because MPLA is not authorized to compensate with bond money wetland properties that are not taken for right-of-ways and it does not appear that these properties were taken for that reason." Brown asked CDA to hold off approving release of the money in order to allow the Attorney General's Office "to complete our investigation and either bring court action or not before authorizing

these potentially illegal payments."

That same day, Ada faxed the Attorney General's letter to the Bank and no disbursement was made to plaintiff.

On August 15, 2005, the Commonwealth, through defendant Brown as Attorney General, sued MPLA, plaintiff, and another person seeking declaratory relief; specifically, an interpretation of P.L. 14-29 as to whether money could be used to compensate landowners whose land was taken for reasons other than a right-of-way.

On September 27, 2005, the Superior Court granted Kumagai's motion to dismiss and ordered CDA to proceed with the disbursement to her. In its order, the court stated:

> In the current matter, regarding both Kumagai and Nicholas, the Government is attempting to prevent payment to the Defendants despite MPLA's approval on the basis of an erroneous interpretation of the land compensation statutes. In the case of Kumagai, the Attorney General signed a Court endorsed settlement agreement certifying that the underlying facts and law had been investigated. Since the settlement agreement was predicated on Kumagai's MPLA compensation, the Attorney General's certifying the CHC agreement after stating that the underlying facts and law had been investigated prevents the Attorney General from now claiming that Kumagai's compensation by MPLA is improper. Any other interpretation would imply that the Government did not enter into the settlement agreement with Kumagai in good faith. As such, Kumagai's Motion to Dismiss is granted.

Plaintiff has submitted documentation in support of her assertion that both before and during the time she was being sued in Superior Court, payments to at least

five other wetland owners were made by MPLA, without challenge by the Office of the Attorney General. These payments ranged in amount from more than $2.7 million to a low of $107,000.

Plaintiff has sued the Commonwealth itself under 42 U.S.C. § 1983 (alleging violation of her substantive due process and equal protection rights), 42 U.S.C. § 1985(3) (alleging conspiracy), and common law claims for abuse of process, malicious prosecution, breach of the duty of good faith and fair dealing, and both intentional and negligent infliction of emotional distress.

Claims against Brown are based on 42 U.S.C. § 1983 (alleging violation of her substantive due process and equal protection rights), 42 U.S.C. § 1985(3) (alleging conspiracy), and common law claims for conspiracy, abuse of process, malicious prosecution, intentional interference with contractual rights, intentional interference with economic relations, breach of the duty of good faith and fair dealing, and both intentional and negligent infliction of emotional distress.

### 42 U.S.C. § 1983 (Official Capacity)

Plaintiff recognizes that neither the Commonwealth nor Brown in her official capacity can be sued under 42 U.S.C. § 1983. Those claims are dismissed with prejudice.

AO 72
(Rev. 08/82)

§ 1983 (Brown in Her Personal Capacity)

To state a claim under 42 U.S.C. § 1983, plaintiff must allege that the conduct she complains of was committed by a person acting under color of state law, and that the conduct deprived plaintiff of a right secured by the Constitution and laws of the United States. *See*, West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988); Johnson v. Knowles, 113 F.3d 114, 1117 (9th Cir. 1997).

A person acts under color of state law if the person exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941). There appears to be no serious question that Brown's acts were committed under color of Commonwealth law in her role as Attorney General.

However, Brown argues, first, that plaintiff has failed to plead a violation of her constitutional rights and, second, if the court finds that plaintiff has met her pleading burden, she is still entitled to either absolute or qualified immunity from suit.

Alleged Constitutional Violations

Plaintiff alleges that defendant Brown violated her substantive due process rights and also her right to equal protection under the law.

Substantive Due Process

The United States Supreme Court has "always been reluctant to expand the concept of substantive due process." Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 1069 (1992). However, substantive due process violations are actionable under 42 U.S.C. § 1983. *See, e.g.*, Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983 (1990). The determination that a substantive due process right exists is a judgment that "certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." Moore v. City of East Cleveland, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937 (1977) (*quoting* Poe v. Ullman, 367 U.S. 497, 543, 81 S.Ct. 1752, 1776 (1961) (Harlan, J., dissenting)). Stated differently, can the claim be fairly said to be based on one of the "fundamental interests that previously have been protected by the Constitution"? Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 230, 106 S.Ct. 507, 516 (1985) (Powell, J., concurring).

The court phrases the substantive due process question before it like this: Did plaintiff, through her hospital bills settlement agreement contract---approved personally by the Attorney General of the Commonwealth---acquire a constitutionally-protected property right, such that the subsequent lawsuit against her by the Office of the Attorney General violated her substantive due process rights?

To state a claim under 42 U.S.C. § 1983 for a violation of substantive due process rights, the alleged abuse of power must be one that "shocks the conscience"

and "violates the decencies of civilized conduct." Rochin v. California, 342 U.S. 165, 172-172, 72 S.Ct. 205, 209-210 (1952) (forced pumping of suspect's stomach); *see, also,* United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'…or interferes with the rights 'implicit in the concept of ordered liberty.'"); Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998); Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986); Breithaupt v. Abram, 352 U.S. 432, 435, 77 S.Ct. 408, 410 (1957) (reiterating that conduct would violate substantive due process if it "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency."); Collins v. City of Harker Heights, 503 U.S. at 128, 112 S.Ct. at 1071 (the substantive component of the Due Process Clause is violated when "it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento v. Lewis, 523 U.S. 833, 850, 118 S.Ct. 1708, 1718 (1998). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." Daniels v. Williams, 474 U.S. at 331, 106 S.Ct. at 665 (emphasis in original).

    The court's research has been unable to find a substantive due process

decision with facts similar to the facts alleged here. Court decisions have usually addressed the issue of substantive due process and contract rights in the context of either public employment, *see, e.g.,* San Bernadino Physicians' Servs. Med. Group v. County of San Bernadino, 825 F.2d 1404, 1407-1410 (9th Cir. 1987) (individual employment contracts may create protected property interests, but "the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts"), or contract rights which have been subsequently altered by legislation, *see, e.g.,* Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716 (1978); San Bernadino Physicians' Servs. Med. Group, 825 F.2d at 1407-1410 (there is a claim for violation of substantive due process only if contract right is protected "property.")

However, as stated in Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir. 1996):

> [T]he use of substantive due process to extend constitutional protection to economic and property rights has been generally discredited. Rather, recent jurisprudence restricts the reach of protections of substantive due process primarily to liberties "deeply rooted in the Nation's history and tradition." Thus, the Fourteenth Amendment protects against a State's interference with "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," as well as with an individual's bodily integrity." These areas represent "a realm of personal liberty which the government may not enter." (Internal citations omitted.)

From its extensive reading of the case law, the court has concluded that

plaintiff's claim nudges up against, but does not cross, into substantive due process. That is, plaintiff cannot make out a claim for violation of her constitutional substantive due process rights because the law does not appear to have been extended far enough to cover this kind of alleged government abuse and because the alleged breach of her contract can be remedied by traditional contract remedies. *See,* 7 N.Mar.I. Code § 2251(b) (providing for suit against the Commonwealth based on breach of contract). Further, the court has found no case in which a breached settlement agreement was accorded substantive due process protections. *See, e.g.,* Robbins v. U.S. Bureau of Land Management, 438 F.3d 1074, 2006 WL 417721 (10th Cir. Feb. 23, 2006) (a valid contract may constitute a property interest for procedural due process purposes, but such a contract must provide not simply a unilateral expectation of, but an entitlement to, a substantive right or benefit); Florida Paraplegic Assoc. v. Martinez, 734 F.Supp. 997 (S.D. Fla. 1990) (plaintiff's claim was pure breach of contract, as underlying substance did not concern employment, reputation, or family or privacy issues).

Accordingly, defendants' motion to dismiss for failure to state a claim based on substantive due process is granted, without prejudice.

Equal Protection

Equal protection plaintiffs are usually a class of persons who allege that their constitutional rights have been violated by state legislation.[2] *See, e.g.,* Rotunda & Nowak, Treatise on Constitutional Law (3rd ed. 1999) (unconstitutional legislative classifications based on race or national origin, alienage, illegitimacy, gender, wealth, and laws impinging on the right to privacy, to vote, and to travel). Here, however, plaintiff argues that her equal protection rights were violated---not by the *legislation* which created the favored "class" of wetlands owners in the Commonwealth of which she is a member---but by defendant Brown's decision to sue MPLA and plaintiff and another class member; *i.e.* two people *within* the class of wetlands owners, to stop payments to them under the wetlands law and its amendment. Thus, the court discerns no claim by plaintiff that the "class" created by the wetlands law enacted by the Commonwealth Legislature was constitutionally impermissible, just that she was treated differently *within* the benefitted class. As such, plaintiff's claim is

---

[2] For the reasons stated below, the court does not find that plaintiff is in fact a "class of one." The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000). *See, also,* Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster County, 488 U.S. 336, 109 S.Ct. 633 (1989); Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005)(*quoting* Sea River Maritime Financial Holding, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).

more akin to a routine claim for malicious "prosecution" by defendant Brown in instituting the civil action. Since almost all legislation creates classes, courts generally do not concern themselves with disparate effects caused by defensible, rational "classes" created legislatively, *see*, Rotunda & Nowak, *supra*, let alone the effects of such legislation on persons within the benefitted class.

Absent some independent basis for federal jurisdiction, which the court has not found, "enforcement of a settlement agreement is for state courts,." <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 114 S.Ct. 1673 (1994), and the 42 U.S.C. § 1983 challenge based on alleged violations of substantive due process and equal protection rights is dismissed without prejudice.

42 USC § 1985(3) (Conspiracy)

Plaintiff next alleges that defendant Brown was part of a conspiracy to deprive her of her right to equal protection of the laws, in violation of 42 USC § 1985(3).

A claim under § 1985(3) requires allegations of (1) a conspiracy between two or more persons for the purpose of depriving any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law, and (2) an act by one of the conspirators in furtherance of the conspiracy whereby another person was (a) injured, or (b) deprived of exercising any right or privilege of a citizen of the United States. *See, e.g.,* <u>Gerard v. 94th St. & Fifth Ave. Corp.</u>, 396 F.Supp. 450 (S.D.N.Y. 1975), *aff'd* 530 F.2d 66 (2nd Cir.), *cert. denied*, 96 S.Ct. 2173

(1976). Of special importance here is that plaintiff must allege fully the time and place of the conduct at issue or provide sufficient *factual* allegations to show that the official conspired with anyone. *See, e.g.,* <u>Ashiegbu v. Purviance</u>, 74 F.Supp.2d 740 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied,* 120 S.Ct. 1287 (2000); <u>Salehpoor v. Shahinpoor</u>, 130 Fed.Appx. 268 (10th Cir. 2005). Finally, this statute requires proof of a racial or class-based animus, which is nowhere pleaded. Defendant Brown's motion to dismiss is granted, with leave to amend. Plaintiff is admonished that, if she intends to re-plead this cause of action, she must plead more specifically, according to the requirements of the statute and the case law.

The court, having dismissed the federal claims, exercises its discretion and also dismisses the common law claims without prejudice, finding that the Commonwealth courts are well-positioned to adjudicate plaintiff's common law claims.

IT IS SO ORDERED.

DATED this 18th day of May, 2006.

_____
ALEX R. MUNSON
Judge