FILED
Clerk
District Court

MAY 18 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROSARIO DLG KUMAGAI, ) | Civil Action No. 05-0037 |
| ) | |
| Plaintiff ) | |
| ) | ORDER GRANTING |
| v. ) | MOTION TO DISMISS |
| ) | FILED BY COMMONWEALTH |
| PAMELA BROWN, *et al.*, ) | DEVELOPMENT AUTHORITY |
| ) | AND MARIA LOURDES SEMAN |
| Defendants ) | ADA, IN HER OFFICIAL AND |
| ) | PERSONAL CAPACITIES |

THIS MATTER came before the court on Thursday, May 18, 2006, for hearing of the motion to dismiss filed by defendants Commonwealth Development Authority ("CDA") and Maria Lourdes Seman Ada, in both her official and personal capacities. Plaintiff appeared by and through her attorney, Brien Sers Nicholas; defendants appeared by and through their attorney, Vicente T. Salas. Through its attorney, Assistant Attorney General Benjamin L. DeMoux, the Commonwealth of the Northern Mariana Islands filed a brief on the question of CDA's status as an

"arm of the state." Victorino DLG Torres and Mark A. Cowan appeared on behalf of defendant Bank of Guam.

The court, having considered the written and oral arguments of counsel, finds that CDA is an arm of the government of the Commonwealth of the Northern Mariana Islands ("CNMI") and, as such, is entitled to immunity from suit under 42 U.S.C. § 1983.

The court reaches this conclusion based upon a traditional "arm of the state" analysis: 1) whether a money judgment against CDA would be satisfied out of Commonwealth funds, 2) whether CDA performs central government functions, 3) whether CDA may sue or be sued, 4) whether CDA has the power to take property in its own name or only in the name of the Commonwealth, and 5) the corporate status of CDA. Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1998), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2102 (1989). *See also* Aguon v. Commonwealth Ports Authority, 316 F.3d 899, 901 (9th Cir. 2003). Of these factors, "[s]tate liability for money judgment is the single most important factor in determining whether an entity is an arm of the state." Doe v. Lawrence Livermore Nat. Laboratory, 65 F.3d 771, 774 (9th Cir. 1995), *reversed on other grounds*, Regents of the University of California v. Doe, ___ U.S. ___, 117 S.Ct. 900, 904 (1997).

The Aguon decision provides guidance here because it involved another "autonomous" Commonwealth agency. There, the Ninth Circuit considered all five

AO 72
(Rev. 08/82)

factors, giving particular weight to the first two. <u>Aguon</u>, 316 F.3d at 901-903. As noted above, in determining whether CDA is an arm of the CNMI government for purposes of § 1983 immunity, the most important consideration is whether a judgment against CDA would affect the CNMI treasury. <u>Id.</u> at 902. The impact to be considered is not limited to direct liability, but also applies when the Commonwealth is a "real, substantial party in interest." <u>Id.</u> The Ninth Circuit held that the CNMI treasury is affected when a large money judgment against a CNMI agency would prevent the agency from performing "central government functions," without additional and extraordinary appropriations from the legislature. <u>Id.</u> Here, the court finds that CDA was created to perform essential government functions relating to the economic development of the Commonwealth. <u>See e.g.</u> N.M.I. Const. art. XI § 6(c) (CDA now acts as Commonwealth's "development bank"). Additionally, CDA's Corporation Division was established to identify and assist business and commercial enterprises of value to the Commonwealth and to serve "as the economic development loan fund agency for qualified private sector enterprises." <u>Id.</u> at § 10102(b)(1)-(3). To meet its statutorily-imposed obligations, CDA has the power to borrow money, to issue bonds, and to "pledge the full faith and credit of the Commonwealth." <u>Id.</u> at 10203(a)(18). Like the Commonwealth Ports Authority in <u>Aguon</u>, if CDA were "faced with a large money judgment which it could not pay, the Commonwealth would be compelled to protect its island economy by responding

with an appropriation to provide the citizens of the Commonwealth with essential... services." Aguon, 316 F.3d at 903. Thus, considered generally, and not simply in the context of the allegations presently before the court, the court finds that the first two factors---the effect of a money judgment and whether CDA is tasked with performing essential government functions---weigh in favor of finding that CDA is an arm of the CNMI government for the purposes of § 1983 immunity. Although CDA has certain assets with which to satisfy a judgment, the court can envision a situation where a sufficiently large money judgment against it would compel the Commonwealth government to step in to assist. Given its stated statutory purpose to "stimulate the economic development of the Northern Mariana Islands," 4 N.Mar.I. Code § 10102, there can be little doubt that CDA was intended to perform essential government functions.

CDA is authorized both to sue and be sued in its own corporate name. 4 N.Mar.I. Code § 10203(a)(4). This weighs against a finding that CDA is an arm of the state for purposes of § 1983 immunity, but "this factor...is entitled to less weight than the first two." Aguon, 316 F.3d at 903 (citation omitted). Although CDA is authorized to hold property in its own name, it lacks the power of eminent domain, which CPA possesses. 4 N.Mar.I. Code § 10203(a)(5). Also, CDA has the power to pledge the full faith and credit of the Commonwealth in acquiring property, which further entwines it with, and potentially encumbers, the Commonwealth government.

*Id.* at § 10203(a)(18). Accordingly, the court finds that CPA's independence and power to acquire and hold property is potentially negated by the fact that the full faith and credit of the Commonwealth may be invoked in making such transactions.

CDA is a public corporation created for the purpose of stimulating economic development for the benefit of the people of the Commonwealth. 4 N.Mar.I. Code § 10102. Its activities are governed and controlled by a board of directors, the members of which are appointed by the Governor, subject to the advice and consent of the Senate. *Id.* at § 10301(b). The directors now serve a term of four years and can be removed only for cause. *Id.* at §§ 10301(b) and 10304. There are limitations on CDA's expenditures and other activities. CDA draws up its own annual budget and pays its own administrative expenses out of its own funds, but those expenditures are limited to two percent of CDA's assets, including accounts receivable, and must conform to the budget it is required to submit to the Governor and the Legislature. *Id.* at § 10402(f). CDA must "adopt, and update as necessary, a statement of development objectives and priorities," and these objectives and priorities are subject to the approval of the Governor and the Legislature. *Id.* at § 10402(b). Finally, the issuance of bonds or other obligations exceeding $5 million requires the consent of the Legislature. *Id.* at § 10203(b)(4).

In <u>Aguon</u>, the Ports Authority's board was appointed by the Governor, subject to the advice and consent of the Senate, and the board had a duty to report to the

AO 72
(Rev. 08/82)

legislature and the governor. Aguon, 316 F.3d at 903-904. In addition, the court noted that "none of the far-reaching powers vested in the board is subject to prior government approval." Id. at 904. Despite this "far-reaching" power, the Aguon court found that "the fifth factor weighs neither for nor against [the Ports Authority's] status as an arm of the Commonwealth" because the Commonwealth's power over the make-up of the board balanced out "the board's authority to exercise its wide-ranging powers without prior government approval." Id.

Like the Ports Authority, CDA's board is filled through appointment by the Governor and confirmation by the Senate. Unlike the Ports Authority, some of CDA's powers are subject to "prior government approval," including certain expenditures and, more importantly, its "objectives and priorities." Given the analysis in Aguon, the court concludes that CDA has less autonomy than CPA, and that the fifth factor, the corporate status element, favors a finding that CDA is an arm of the government for the purpose of § 1983 immunity.

Based on the analysis above, the first and second, more important factors, as well as the third and fifth, lead to a conclusion that CDA is an arm of the government. The fourth factor is neutral. Therefore, the court finds that the Commonwealth Development Authority is an arm of the Commonwealth government for the purposes of extending § 1983 sovereign immunity.

Because CDA is an "arm of the state," it is immune from § 1983 liability.

Likewise, the § 1983 claim against Ada in her official capacity must be dismissed, as per Magana v. CNMI, 107 F.3d 1436, 1443 (9th Cir. 1997), and earlier cases.[1] Because this defect cannot be cured by amendment, the claim for relief alleged against Ada on this ground must be, and is, dismissed with prejudice.

FOR THE REASONS stated above, and on the grounds stated in the court's order, entered this date, granting the motion of the Commonwealth and former Attorney General Pam Brown to dismiss the complaint, defendants Commonwealth Development Authority and Maria Lourdes Seman Ada's motion to dismiss is granted. Because plaintiff has failed to make out a violation of federal law against these defendants, the court exercises its discretion and also dismisses the common law claims without prejudice (except as noted), finding that the Commonwealth

---

[1] It is settled law that the Commonwealth of the Northern Mariana Islands, ("CNMI"), its governmental entities, and officials sued in their official capacities are not "persons" within the meaning of § 1983 and cannot be held liable under the statute. See Ngiraingas v. Sanchez, 495 U.S. 182, 191-192 (1990); DeNieva v. Reyes, 966 F.2d 480, 483 (9th Cir. 1992); Magana v. CNMI, 107 F.3d 1436, 1447 (9th Cir. 1997). (There is but one exception to this general rule: an official of a state or territory, when sued for prospective injunctive relief in his or her official capacity, is considered a "person" for § 1983 purposes. Guam Soc. of Obstetricians & Gynecologists v. Ada, 962 F.2d 1366, 1371 (9th Cir.), cert. denied, 506 U.S. 1011 (1992).)

courts are well-positioned to adjudicate plaintiff's common law claims.

IT IS SO ORDERED.

DATED this 18th day of May, 2006.

                                                */s/ Alex R. Munson*
                                                ALEX R. MUNSON
                                                      Judge

AO 72
(Rev. 08/82)