

1  BRIEN SERS NICHOLAS
   Attorney at Law
2  UIU Bldg., 1st Floor
   P.O. Box 502876
3  Saipan, MP 96950

4  Telephone Nos.:    (670) 235-7190/91
   Facsimile No.:     (670) 235-7192
5
   Attorney for Plaintiff
6     Rosario DLG Kumagai

7
                  IN THE UNITED STATES DISTRICT COURT
8                                 FOR
                     THE NORTHERN MARIANA ISLANDS
9
   ROSARIO DLG KUMAGAI,              ]    CIVIL ACTION NO. 05-0037
10                                   ]
                  Plaintiff,         ]
11                                   ]
         vs.                         ]
12                                   ]
   PAMELA BROWN, a.k.a. PAMELA       ]
13 BROWN BLACKBURN, personally       ]
   and in her official capacity as the ]
14 Attorney General for the          ]
   Commonwealth of the Northern      ]
15 Mariana Islands;                  ]    PLAINTIFF'S OPPOSITION TO MOTION
   FERMIN M. ATALIG, personally      ]    FOR SUMMARY JUDGEMENT BY
16 and in his official capacity as the ]   DEFENDANT BOG
   Secretary of Finance,             ]
17 COMMONWEALTH OF THE               ]
   NORTHERN MARIANA ISLANDS;         ]
18 MARIA LOURDES SEMAN ADA,          ]
   personally and in her official capacity ]
19 as the Executive Director for the  ]
   Commonwealth                      ]
20 Development Authority;            ]    Dated:    July 20th, 2006
   COMMONWEALTH DEVELOPMENT          ]    Time:     9:00 a.m.
21 AUTHORITY;                        ]    Judge:    Hon. Alex R. Munson
   BANK OF GUAM;                     ]              Chief Judge
22 and JOHN DOES ONE thru TEN,       ]
                                     ]
23               Defendants.         ]
                                     ]
24 _____  ]

25          COMES NOW ROSARIO DLG KUMAGAI, as Plaintiff herein, by and through her

26 Counsel, Brien Sers Nicholas, Attorney at Law, and oppose the motion for summary

27 judgment by Defendant Bank of Guam ["Defendant BOG's Motion"] in the above-

28 captioned matter as follows:

FILED
Clerk
District Court

JUN 12 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1

## STANDARD FOR RULE 56 SUMMARY JUDGMENT MOTION:

2    Rule 56 of the Federal Rules of Civil Procedure states, in relevant parts, that a
3  judgment "shall be rendered forthwith if the pleadings, depositions, answers to
4  interrogatories, and admissions on file, together with the affidavits, if any, show that
5  there is no genuine issue as to any material fact and that the moving party is entitled
6  to judgment as a matter of law." This rule goes on to further state that "[a] summary
7  judgement, . . . may be rendered on the issue of liability alone although there is a
8  genuine issue as to the amount of damages." See Fed. R. Civ. Pro. 56(c).

9    The moving party seeking a summary judgment motion bears the initial burden
10  of informing the court of the basis for its motion and identifying those portions of the
11  records which it believes demonstrates the absence of a genuine issue of material fact.
12  See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving
13  party meets its initial burden, then the burden shifts to the non-moving party to set
14  forth by affidavit or as otherwise provided in Rule 56 specific facts showing that there
15  is a genuine issue of material fact for trial.  See Kaiser Cement Corp. v. Fischbach &
16  Moore, Inc., 793 F.2nd 1100, 1103-1104 (9th Cir.), cert. denied, 107 S. Ct. 435
17  (1986).  All that is required from the non-moving party is that sufficient evidence
18  supporting the claimed factual dispute be shown to require a jury or a judge to resolve
19  the parties' differing versions of the truth at trial.  See First National Bank v. Cities
20  Service Co., 391 U.S. 253 (1968).  All inferences are drawn in favor of the non-
21  moving party.   See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).
22  Summary judgment is therefore not appropriate "where contradictory inferences may
23  reasonably be drawn from undisputed evidentiary facts . . ."  See Chung v. World
24  Corporation, Case No. CV-04-0001-ARM, Order on Cross-Motions  for Summary
25  Judgment (NMI Dist. Ct. June 22nd, 2005); citing Hollingsworth Solderless Terminal
26  Co. v. Turley, 622 F.2nd 1324, 1335 (9th Cir. 1980).  There is no issue for trial unless
27  there is sufficient evidence favoring the non-moving party for a jury to return a verdict
28  for that party; if the evidence is merely colorable or is not significantly probative,

1  summary judgment may be granted. See Anderson v. Liberty Lobby, 477 U.S. 242
2  (1986).

3       A trial judge may not weigh conflicting versions of fact on a motion for
4  summary judgment. "Rule 56 calls for the judge to determine whether there exists a
5  genuine issue for trial, not to weigh the evidence himself and determine the truth of
6  the matter." See Baxter v. MCA, Inc., 812 F.2nd 421, 424 (9th Cir.), cert. denied,
7  William v. Baxter, 484 U.S. 954 (1987), citing Anderson v. Liberty Lobby, Inc., 477
8  U.S. 242, 250 (1986). "[A] court can only enter a summary judgment if everything
9  in the record–pleadings, depositions, interrogatories, affidavits, etc.,–demonstrates
10  that no genuine issue of material fact exists." See Keiser v. Coliseum Properties, Inc.,
11  614 F.2nd 406, 410 (5th Cir. 1980).

12

13                    **STATEMENT OF RELEVANT MATERIAL FACTS:**

14       Plaintiff, at all times relevant herein, was the fee simple Owner of a real property
15  more particularly identified as Lot E.A. 157-2-1, situated at Susupe Lake, Saipan, NMI,
16  containing an area of 1,292 square meters, more or less. *See Declaration of Plaintiff*
17  *Rosario DLG Kumaga, ¶ 3 [hereinafter referred to as "Plaintiff's Declaration"]*. Plaintiff
18  also, at all times relevant herein, was and still is a kidney dialysis patient at the
19  Commonwealth Health Center. *Id. at ¶ 4.*

20       On November 16th, 1993, Defendant Commonwealth of the Northern Marianas
21  Islands ["Defendant CNMI"] took Plaintiff's property but was not able to compensate
22  her for the same at that time. On July 23rd, 2002, CNMI Public Law 13-17 came into
23  effect. *See Defendant BOG's Motion, Appendix-1 (Public Law 13-17)*. This public law
24  basically authorized the former MPLA, in conjunction with Defendant Commonwealth
25  Development Authority ["Defendant CDA"] to incur a public debt in an amount up to
26  Forty Million Dollars ($40,000,000.00) for the settlement of land compensation claims
27  against Defendant CNMI. Initially, CNMI P.L. 13-17 prioritized the settlement of the
28  land compensation claims with wetlands being subject to compensation only after

1  compensation of private lands for right of way purposes, including but not limited to
2  public road construction, as well as public ponding basins have been made. *See CNMI*
3  *P.L. 13-17(4)(d).* Pursuant to CNMI Public Law 14-29, CNMI P.L. 13-17 was amended
4  by removing this prioritization of claims. *See Defendant BOG's Motion, Appendix-5*
5  *(Public Law 14-29).*

6        In light of the above-mentioned CNMI public laws, Plaintiff was finally able to
7  settle her long standing land compensation claim with Defendant CNMI.  However,
8  before the settlement with MPLA could be finalized, Defendant CNMI brought suit
9  against Plaintiff in the CNMI Superior Court to collect outstanding medical bills owed
10  by Plaintiff. *See Exhibit "F," Plaintiff's Complaint.*[1]  This lawsuit was eventually
11  settled with the settlement agreement being signed by Defendant Pamela Brown
12  [Defendant Brown] as Counsel for Defendant CNMI. *See Exhibit "I," Plaintiff's*
13  *Complaint [i.e., the "CHC Settlement Agreement"].*  Thereafter, Plaintiff was able to
14  finally enter into her settlement agreement with MPLA to settle her long standing land
15  compensation claim against Defendant CNMI. *See Exhibit "D," Plaintiff's Complaint*
16  *[i.e., the "MPLA Settlement Agreement"].*  The foregoing settlement agreements with
17  Defendant CNMI and with the former MPLA were all entered into by Plaintiff in late
18  April, 2005 and early May, 2005.

19        On August 15th, 2005, some three (3) months later and contrary to their
20  representations to Plaintiff in the CHC Settlement Agreement, Defendants CNMI and
21  Brown again brought suit against Plaintiff in the CNMI Superior Court but, this time,
22  in an attempt to prevent Plaintiff from receiving the benefits of her settlement
23  agreement with MPLA, to wit: *CNMI ex rel Pamela Brown v. Rosario DLG Kumagai,*
24  *et. al.,* Civil Action No. 05-0332E. *See Exhibit "R," Plaintiff's Complaint [hereinafter*

25  _____

26        [1]      For purposes of this opposition, Plaintiff respectfully request that this Honorable
   Court takes judicial notice of Exhibits "F," "G," "H," and "R" to Plaintiff's complaint herein
27  pursuant to Fed. R. Evid. 201(d).  These exhibits are true and accurate copies of the
   pleadings filed by Defendant CNMI in two (2) lawsuits against Plaintiff in the CNMI Superior
28  Court as therein noted.

1   *referred to as the "MPLA Lawsuit"].* Prior to the filing of the forgoing lawsuit,
2   however, several things happened that involved Defendant BOG. Specifically, when
3   Defendant Fermin M. Atalig ["Defendant Atalig"] finally certified Plaintiff's requisition,
4   the same was forwarded to the former MPLA for further processing. On the same
5   date MPLA received Plaintiff's requisition from Defendant Atalig, it turned around and
6   forwarded it to Defendant CDA with instructions for Defendant BOG to release
7   Plaintiff's land compensation. In fact, the instruction from the former MPLA was
8   directed specifically to Defendant BOG. *See Declaration of Amoretta L.P. Carlson,*
9   *Exhibit "C" [Requisition No. 05-11]; see also Plaintiff's Complaint, Exhibit "O."*
10   Defendant CDA did forward Plaintiff's requisition to Defendant BOG. After receiving
11   Plaintiff's requisition for processing, Defendant BOG also received a notice from
12   Defendants CDA and Ada to cancel the processing of Plaintiff's requisition because of
13   some concerns by Defendant Brown. Defendant BOG consented to the foregoing and
14   withheld the processing of Plaintiff's requisition. *See Declaration of* Moretta *L.P.*
15   *Carlson,* ¶ 7. Defendant BOG did the foregoing when it knew or should have known
16   that it had previously issued compensation to other individuals similarly situated as
17   that of Plaintiff, including one (1) land owner during the pendency of the second (2nd)
18   lawsuit against Plaintiff. *See Declaration of* Moretta *L.P. Carlson,* ¶ *15 thur 17.*
19   Defendant BOG only paid Plaintiff after she successfully defeated Defendants CNMI
20   and Brown in the MPLA Lawsuit with Defendant CDA being ordered to pay Plaintiff.
21   *See Defendant BOG's Memorandum of Points and Authorities in Support of Motion for*
22   *Summary Judgment, pg. 5, fn. 6; see also Plaintiff's Complaint, Exhibit "U."*

23
24   **ARGUMENTS:**

25   Defendant BOG raises numerous arguments in support of its Motion for
26   Summary Judgment ["Motion"] in this case. Plaintiff will address each of these
27   arguments in the order in which they are presented by Defendant BOG in its motion
28   herein.

I.    **THE BANK PROPERLY FOLLOWED CDA'S INSTRUCTION NOT TO PROCESS THE REQUISITION.**

Defendant BOG, in support of the foregoing argument, argues two (2) points which it claims prevents Plaintiff from maintaining this action against it. First, Plaintiff is not a beneficiary under the "Trust Indenture" and, therefore, has no interest in the funds held by Defendant BOG under the same. Secondly, under the Trust Indenture, Defendant CDA had control of the funds disbursement. As would be seen below, these arguments must fall in light of CNMI P.L. 13-17, *as amended*.

a.    **CNMI P.L. 13-17, as Amended, and not the Indenture Agreement Created the Trust.**

The Trust in this case was not created by the Indenture Agreement but, rather, was created by CNMI P.L. 13-17, *as amended*. Specifically, by its own clear wordings, CNMI P.L. 13-17 authorized the former MPLA, in conjunction with Defendant CDA to incur a $40,000,000 public debt to compensate land-owners like Plaintiff herein whose lands have been taken by Defendant CNMI without "just compensation" being paid to them. This $40,000,000, as seen by the subsequent amendments to the original CNMI P.L. 13-17, was intended to be held in Trust by Defendant BOG as the "Trustee" for payments of land claims to beneficiaries like Plaintiff in this case.

i.    **CNMI P.L. 13-17:**

Pursuant to § 3(c) of CNMI P.L. 13-17, the $40,000,000 public debt was to be used "only for the purpose of financing, by Marianas Public Lands Authority, the retirement of land compensation claims against the Commonwealth[.] *See CNMI P.L. 13-17, § 3(c)*. Originally, this $40,000,000 was to be placed with the CNMI Department of Finance to be known as the "Land Compensation Fund ['Fund']." *See CNMI P.L. 13-17, §§ 4 (a) & (b)*. The former MPLA was designated by CNMI P.L. 13-17 as the "expenditure authority" over the Fund. *See CNMI P.L. 13-17, §§ 4 (c)*. CNMI P.L. 13-17 was subsequently amended by CNMI P.L. 13-39. *See Defendant*

- 6 -

1  *BOG' Motion, Appendix 3.*[2]

2          **ii.    CNMI P.L. 13-39:**

3          CNMI P.L. 13-39 amended CNMI P.L. 13-17, § 4 by adding a new

4  sub-section (d) titled "Transfer of Bond Proceeds to MPLA." *See CNMI P.L. 13-39,*

5  *§ 3.* This new §4(c) mandated that "[a]fter satisfying any commission or fee, costs

6  of issuance, reserves, credit enhancement or other similar expenses, **CDA shall transfer**

7  **the remaining balance of the bond proceeds to MPLA** which shall deposit these funds

8  into an account separate from its operational accounts." *[Emphasis added]* With

9  respect to who will act as the expenditure authority over the funds, CNMI P.L. 13-39

10  was more specific by noting that "[t]he Commissioner of MPLA shall have expenditure

11  authority over the funds in the account subject to approval of claims by the Board."

12  *Id.* Pursuant to CNMI P.L. 13-56, this new §4(d) of CNMI P.L. 13-17, as amended by

13  CNMI P.L. 13-39, was further revised. *See Defendant BOG's Motion, Appendix 4*

14  *(CNMI P.L. 13-56).*

15          **iii.    CNMI P.L. 13-56:**

16          This is the controlling public law as far as the creation of the Trust and

17  Defendant BOG being appointed as a Trustee of the same. That is, in amending §4(d)

18  as above-mentioned, CNMI P.L. 13-56 noted the following, to wit:

19          Section 5. <u>Amendment</u>. Section 4(d) of P.L. 13-17, as
        amended by P.L. 13-39, is revised as follows:

20

21          "(d) Transfer of Bond Proceeds to MPLA. After
        satisfying any commission or fee, costs or issuance,
22        reserves, credit enhancement, interim bond financing or
        other similar expenses and after transferring the requisite
23        amount for the commonwealth prison project to the
        Department of Finance for deposit into an account for the
24        project, **the CDA-appointed trustee, pursuant to Public Law
        11-3, shall retain the remaining balance of the bond
25        proceeds. The trust funds and earnings thereof are hereby**

26  _____

        [2]      Previous to CNMI P.L. 13-39, another public law was passed amending CNMI
27  P.L. 13-17. However, this public law did not make any substantive changes as far as the
    creation of the Trust in this case. *See Defendant BOG's Motion, Appendix 2 (CNMI P.L. 13-*
28  *25).*

1

2

3

4

5

> continuously appropriated solely for the purpose of paying out land compensation claims subject to conditions necessary to maintain tax exemption of the bonds or any financing. The Commissioner of MPLA shall have expenditure authority over the trust funds subject to the approval of claims by the Board. Such funds shall be drawn down from the trustee based upon procedures established by the MPLA Board and upon the concurrence of the Secretary of Finance."

6 See CNMI P.L. 13-39, § 5 (*emphasis added*).

7    The undisputed facts of these case are (1) Defendant BOG is the CDA-appointed

8 Trustee; (2) Defendant BOG retained the remaining balance of the $40,000,000 bond,

9 the same being considered "Trust Funds," (3) Defendant Atalig, as the Secretary of

10 Finance, gave his concurrence to Plaintiff's requisition (i.e., Requisition No. 05-11); (4)

11 Defendant Atalig's concurrence was based on the draw-down procedure established

12 by the former MPLA Board; (5) Mr. Edward DL. Guerrero, as the Commissioner of

13 MPLA and, therefore, the expenditure authority over the trust funds, did instruct

14 Defendant BOG through Ms. Amoretta Carlson to process Plaintiff's requisition; and

15 (6) Defendant BOG did not process Plaintiff's requisition as instructed and, instead,

16 chose to follow the instructions from Defendants Brown, CDA, and Ada.    *See*

17 *Declaration of Amoretta L.P. Carlson*. As would be further discussed below, in light

18 of the same, Defendant BOG violated its fiduciary duties to Plaintiff by improperly

19 delegating the same to Defendants Brown, CDA, and Ada.

20    Having established that Defendant BOG was a Trustee and that the bond

21 proceeds it was holding were considered "Trust Funds," as a matter of law, Plaintiff

22 will now turn to the issue of her being a beneficiary of the same.

23

24    **b.    Plaintiff was a Beneficiary of the Trust Created by CNMI P.L. 13-17, as Amended.**

25

26    Defendant BOG appears to argue that Plaintiff is not a "beneficiary" in

27 this case. That, if any thing, Plaintiff is an "incidental beneficiary," citing *Restatement*

28 *of Trusts 2d, §126, cmt. (a) (1959)*. Defendant BOG further argues that, here, the

- 8 -

beneficiaries are the Commonwealth and the Bondholders. *See Defendant BOG's Motion, pg. 9.*

Plaintiff, contrary to the foregoing arguments by Defendant BOG, is not an "incidental beneficiary" to the Trust Funds in this case but, rather, a "beneficiary" of the same. A review of CNMI P.L. 13-17 and its amendments thereafter, clearly shows that the \$40,000,000 bond proceeds were intended to benefit land claimants such as Plaintiff. In fact, as required by law [i.e., CNMI P.L. 13-39, § 5 & CNMI P.L. 14-29, §1(c)], when the former MPLA was establishing the disbursement procedures with Defendant CNMI vis a vis Department of Finance, a land-owner such as Plaintiff was referred to as a "land compensation beneficiary." *See Plaintiff's Complaint, Exhibit "C" [Agreement on Land Compensation Drawdown and Disbursement Procedures].* Interestingly enough, neither CNMI P.L. 13-39, § 5 nor CNMI P.L. 14-29, § 1(c) required or made Defendant CDA part of the disbursement process, a process mandated by law. Further, it appears by its actions that Defendant BOG may not have been aware of the foregoing disbursement procedures.

As further proof that Plaintiff is a "beneficiary" in this case, this Honorable Court need not look any further then Defendant's own reliance on Restatement of Trust 2d, § 126 (1959). Section 126 of the Restatement of Law 2d states the following:

> "A person is not a beneficiary of a trust if the settlor does not manifest an intention to give him a beneficial interest, although he may incidentally benefit from the performance of the trust."

*See Restatement of Law 2d (1959) (Defendant BOG's Motion, Appendix 7).* Comment (a) to the foregoing further clarifies the same by noting that "[t]he beneficiaries of a trust include only the persons upon whom the settlor manifested an intention to confer a beneficial interest under the trust[.]" *Id*.

A review of CNMI P.L. 13-17, *as amended*, again, shows that Defendant CNMI, is the "Settlor" of the Trust with the \$40,000,000 bond. Through the passage of CNMI P.L. 13-17 and the subsequent amendments thereto, Defendant CNMI

- 9 -

1   manifested and continued to manifest its intention that the proceeds of the

2   $40,000,000 bond were considered "trust funds" to benefit land-owners such as

3   Plaintiff.  The plain-reading of the foregoing public laws makes this point painfully

4   clear. In other words, the intention of Defendant CNMI could not be any more clearer

5   then what these public laws are saying.  Plaintiff is a "Beneficiary" in this case.  So

6   much so that in the disbursement procedure set by the Board of the former MPLA, the

7   following is noted:

8           "NOW THEREFORE, . . . , **it is hereby agreed that once a
            land compensation beneficiary has been identified by MPLA**
9           **and payment has been negotiated with that beneficiary . .**
            **. [.]**" *See Plaintiff's Complaint, Exhibit "C" [Agreement on*
10          *Land Compensation Drawdown and Disbursement*
            *Procedures] (emphasis added).*

11

12      Clearly and as a matter of law, Plaintiff must be considered a "Beneficiary" in

13  this case.

14

15      **c.    CDA Has Control over Disbursement by Bank of Guam Under the
                Indenture.**

16          It need not be mentioned that the Indenture Agreement is an agreement

17  between Defendants CDA and BOG.  As correctly pointed out by Defendant BOG,

18  neither Plaintiff nor the former MPLA were made parties to the Indenture Agreement.

19  Accordingly, said Indenture Agreement has no legal force or effect on Plaintiff or the

20  former MPLA, much less any controlling effect to what transpired in this case.  Thus,

21  to the extent that it contradicts CNMI P.L. 13-17, *as amended*, it must fail as an illegal

22  agreement.  That is, as a matter of law, only the Board of the former MPLA, with the

23  concurrence of the CNMI Secretary of Finance, were legally authorized to establish

24  disbursement procedures to be followed.  As a matter of law, Defendants CDA was

25  excluded from this process.  Again, neither CNMI P.L. 13-39, § 5 nor CNMI P.L. 14-

26  29, § 1(c) required or made Defendant CDA part of the disbursement process, a

27  process mandated by law. *See CNMI P.L. 13-39, § 5; see also CNMI P.L. 14-29, §*

28  *1(c).*  This is undisputed given the disbursement procedures that were agreed to

1   pursuant to the foregoing public laws.    *See Plaintiff's Complaint, Exhibit "C"*

2   *[Agreement on Land Compensation Drawdown and Disbursement Procedures].*

3       Defendant BOG, as a Trustee, was under a duty not to delegate its duties and

4   responsibilities towards Plaintiff in this case. *See Restatement of Trust,* § *171 (1959)*.

5   Although, as a Trustee, Defendant BOG could have consulted with or take advise from

6   Defendants Brown, CDA, or Ada, it was required to make the final decision as far as

7   Plaintiff's requisition was concerned. *See Restatement of Trust,* § *171, cmt. f (1959)*.

8   In this case, Defendant BOG delegated its decision making duty to Defendants Brown,

9   CDA, and Ada. It sought and obtained, upon being informed not to process Plaintiff's

10  requisition, a letter from Defendant Brown not to do so when, in fact, Defendant BOG

11  knew or should have known that neither Defendants Brown, CDA or Ada had any say

12  so as far as the disbursement process went given that Plaintiff's requisition had

13  already gone through such a process. This is particularly so given that, as a matter of

14  law, the disbursement procedure was already in place as set by the Board of the

15  former MPLA with the concurrence of Defendant Atalig. If, on the other hand, the

16  foregoing was unclear to Defendant BOG, then Defendant BOG was under a duty to

17  seek judicial instructions in this case. *See Restatement of Trust,* § *201, cmt. b*

18  *(1959).* In fact, it had all the opportunity to do so in light of the filing of the MPLA

19  Lawsuit, i.e., *CNM ex rel Pamela Brown v. Kumagai, et al., Civil Action No. 05-332E*

20  *(CNMI Superior Court). See Plaintiff's Complaint, Exhibit "R."* In all, Defendant BOG

21  was under a duty to use reasonable care and skill towards Plaintiff in this case. *See*

22  *Restatement of Trust,* § *174, cmt. b (1959).* The fact that Defendant BOG only relied

23  on the Indenture Agreement to the exclusion of the specific legal mandates of CNMI

24  P.L. 13-17, *as amended*, with respect to the disbursement process renders Defendant

25  BOG liable to Plaintiff in this case.

26      Based on the foregoing, it is undisputed that Defendant CDA had no legal

27  authority to involve itself in the disbursement process in this case.

28

- 11 -

1 **II.    BANK OF GUAM, A PRIVATE BANKING INSTITUTION, WAS NEITHER A
2          "STATE ACTOR" NOR THE PROXIMATE CAUSE OF ANY INJURY TO
         PLAINTIFF.**

3         **a.    The Bank is a Private Party and Not a State Actor.**

4         Defendant BOG, in support of this argument, argues that "[w]hen the

5 Bank withheld disbursement of funds under the requisition on instruction from CDA,

6 it was acting as a private party and not a state actor." *See Defendant BOG's Motion,*

7 *pg. 11.* To the contrary, Defendant BOG was acting as a state actor at the time.

8         In a section 1983 action, "color of state law" is synonymous with "state

9 action." *See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)*. A private party may

10 be considered to have acted under color of state law when it engages in a conspiracy

11 or acts in concert with state agents to deprive one's constitutional rights. *See Fonda*

12 *v. Gray, 707 F. 2d 435, 437 (9th Cir. 1983) (citations omitted); see also United*

13 *Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir. 1989)*

14 *(holding that "[p]rivate parties act under color of state law if they willfully participate*

15 *in a joint action with state officials to deprive others of constitutional rights").*  In

16 Carey v. Continental Arilines, Inc., 823 F.2d 1402 (10th Cir. 1987), the Tenth Circuit

17 held that:

18         "When a constitutional claim is asserted against private
          parties, to be classified as state actors under color of law
19        they must be jointly engaged with state officials in the
          conduct allegedly violating the federal right. This concerted
20        action constitutes both the state action essential to
          establish a constitutional violation, and action under color of
21        state law, custom or usage." *Id. at 1404 (footnote and
          citations omitted).*
22
   The Ninth Circuit has adopted the foregoing as the rule of this circuit. *See Sutton v.*
23
   *Providence St. Joseph Medical Center, 192 F.3d 826, 838 (9th Cir. 1999)*.
24
          In this case, there is no question that Defendant BOG is a state actor.
25
   It willfully participated and acted in concert with Defendants Brown, CDA and Ada,
26
   who themselves were state actors, in an attempt to deprive Plaintiff of her right to her
27
   property under both the settlement agreements with Defendant CNMI in the CHC
28

- 12 -

1  lawsuit as well as that with the former MPLA. Defendant BOG's own conducts and
2  actions disclose the foregoing and render the same undisputed.

3

4      **b.    The Bank Was Not The Proximate Cause of Any Injury to Plaintiff:**

5          Defendant BOG, in a nut shell, supports the above argument by
6  attempting to shift the blame onto the other defendants in order to absolve itself of the
7  same. In order to dispel this argument, it is important to note that Defendant BOG is
8  not arguing that it was "compelled" to have acted the way it acted in this case.
9  Therefore, it is undisputed that the Defendant BOG's decision to withhold processing
10 of Plaintiff's requisition was made by Defendant BOG to further assist Defendant
11 Brown, CDA and Ada in depriving Plaintiff of her federal rights in this case.

12         Now, whether the actions of Defendant BOG proximately caused
13 Plaintiff's injury in this case or not, the inquiry is still the same as that of whether or
14 not Defendant BOG acted "under color of law." *See Sutton v. Providence St. Joseph*
15 *Medical Center, 192 F.3d 826, 838 fn. 5 (9th Cir. 1999); citing King v. Massarweh,*
16 *782 F.2d 825 (9th Cir. 1986).* As already discussed above, Defendant BOG acted
17 "under color of law." Stated differently, Defendant BOG's actions were the proximate
18 caused of Plaintiff's injury in this case. It need not be mentioned (although it is terribly
19 important) that the decision made in this case to withhold Plaintiff's compensation was
20 not made to "delay" (contrary to what Defendant BOG is saying) but, rather, to
21 "DENY" Plaintiff her compensation. Plaintiff was only able to receive her land
22 compensation through the aid of the CNMI Superior Court. It is safe to say that, short
23 of the foregoing, neither Defendants Brown, CDA, Ada, or BOG were willing to
24 reconsider their decision in this case.

25

26     **c.    The Bank Did Not Perform Any Public Function.**

27         To the contrary, Defendant BOG did perform a function "traditionally the
28 prerogative of the state." In this case, Plaintiff was due her "just compensation" for

- 13 -

the "constitutional taking" of her property by Defendant CNMI. It is beyond any dispute that, along with the government's power to institute "constitutional taking" of one's property is also the constitutional duty on the part of the government provide "just compensation." The foregoing has been "traditionally the exclusive prerogative of the state." Defendant BOG allowed itself to be part of the compensation process by holding on to the "trust funds" intended for such compensation. Worst of all, Defendant BOG allowed itself to also be part of the "decision-making process" as to whether or not Plaintiff will receive her compensation in this case. Pursuant to CNMI P.L. 13-17, as amended, that decision was reserved for the former MPLA with neither Defendants CDA or BOG playing any role in the same.

When Defendant BOG received Plaintiff's requisition from the former MPLA, all the essential and required disbursement procedures have all been complied with. Defendant BOG chose to ignore the same by refusing to process Plaintiff's requisition that would have allowed her to finally receive her "just compensation." In other words, the decision to process Plaintiff's compensation was already made pursuant to CNMI P.L. 13-17, *as amended*. However, Defendant BOG took it upon itself to decide otherwise. Defendant BOG cannot escape liabilities in this case by attempting to blame others. Defendant BOG must answer to its own conduct, particularly given that it stood in a fiduciary relationship with Plaintiff.

### d. The Bank Did Not Engage in Any Joint Action or Conspiracy With Public Officials.

Defendant BOG, once again, attempts to shift the blame to the public officials in this case in hopes of absolving itself from any potential liabilities to Plaintiff. Defendant BOG claims that "there are no facts from which a meeting of the minds or common objective involving the Bank to deprive Plaintiff of constitutional rights can be inferred." Defendant BOG further claims that "there was no willful participation or joint action on the part of the Bank with the public officials, nor were the actions of

- 14 -

1  the Bank and the CNMI officials intertwined.  The actions of the public officials were

2  taken by them independently of and not influenced by the Bank." *See Defendant*

3  *BOG's Motion, pg. 14.*  The problem with the foregoing claims is that Defendant BOG

4  focuses on the actions of the public officials but fails to also focus on its own actions.

5  By agreeing with the public officials to withhold the processing of Plaintiff's

6  requisition, Defendant BOG acted "jointly and in concert with" said public officials.

7  The undisputed facts of this case supports the foregoing.

8      Further, Plaintiff has presented to this Honorable Court evidence that Defendant

9  BOG did in fact withhold the processing of Plaintiff's requisition consistent with the

10  wishes of the public officials in this case.  At minimum, a jury could infer from

11  Plaintiff's evidence that Defendant BOG acted jointly and in concert with the public

12  officials in this case.  In other words, there was a meeting of the minds to deny

13  Plaintiff her right to her property in this case.

14

15  **III.  IF THE BANK IS CONSIDERED A "STATE ACTOR," IT IS ENTITLED TO QUALIFIED IMMUNITY OR TO A GOOD FAITH DEFENSE.**

16

17      **a.  Public Officials Are Entitled to a Qualified Immunity Defense:**

18      In the CNMI, public officials are not entitled to qualified immunity defense

19  given that they cannot be sued in their "official capacities" under § 1983.  *See*

20  *DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992).*  In their "personal capacities," they

21  can argue for the benefit of such a defense.  *Id.*  Be that as it may and as would be

22  discussed below, as a private party, Defendant BOG is not entitled to such a defense.

23      **1.  Kumagai Has Shown No Constitutional Violation:**

24      Defendant BOG, in support of this argument, incorporates the

25  arguments made by Defendants CNMI, Brown, and Atalig in their Motion to Dismiss

26  Plaintiff's Complaint in this matter.  *See Defendant BOG's Motion, pg. 16.*  Therefore,

27  for the sake of judicial economy, Plaintiff will also incorporate her arguments made in

28  opposition to said Motions to Dismiss by Defendants CNMI, Brown, and Atalig.

1        Plaintiff, however, will further argue that her § 1983 claims for
2  violation of her substantive due process and equal protection rights also came about
3  as a result of her settlement agreement with the former MPLA.  This particular
4  settlement agreement concerns Defendant CNMI's exercising its constitutional right
5  to take Plaintiff's property and the attempts by the Defendants herein, including
6  Defendant BOG, to deny her her right to be justly compensated for such a taking.
7  There is no question that Plaintiff had a "fundamental interest" in her property,
8  protected by both the Federal and the CNMI constitutions.  Having taken her property,
9  Plaintiff was entitled to be constitutionally compensated which, in this case, came in
10  the form of a settlement agreement with the former MPLA.  The decision to treat
11  Plaintiff differently by denying, not delaying her compensation in light of other similarly
12  situated wetland owners having been compensated and in light of her settlement
13  agreement with the former MPLA was violative of her substantive due process and
14  equal protection rights to her "just compensation" in this case.

15        Now, the decision by Defendant BOG to participate in the attempted
16  denial of Plaintiff's constitutionally mandated compensation, as above discussed,
17  renders said Defendant potentially liable to Plaintiff in this case.

18
19              **2.    The Bank Did Not Violate a Clearly Established Right.**

20        Defendant BOG appears to be mis-placing Plaintiff's claims in this
21  case. Plaintiff's claims are not based on the Indenture Agreement. Further, as already
22  discussed above, the Indenture Agreement is irrelevant as far as Plaintiff is concerned.
23  The "Trust" in this case was created by law and Plaintiff is a "Beneficiary" of the
24  same, again, as a matter of law.  Be that as it may, Plaintiff's right to her "just
25  compensation" for the taking of her property, as evidenced by her settlement
26  agreement with MPLA, is beyond any dispute. As a matter of constitutional law,
27  Plaintiff had a right to be "justly compensated," nothing more and nothing less.

28        Defendant BOG, as further support of its argument, cites to the

1  case of *Commonwealth v. Demapan-Castro, Civil Action No. 04-563 (CNMI Superior*
2  *Court).* That case involved an attempt to compensate a landowner for the taking of
3  a land that had been previously a subject of a condemnation judgment in favor of the
4  former Trust Territory of the Pacific Islands ["TTPI"] as well as the authority of
5  Defendant Brown to bring such a lawsuit in her alleged capacity as the CNMI Attorney
6  General. *See Defendant BOG's Motion, Appendix 8 (Decision and Order, March 22,*
7  *2005).* Thus, the statement by the CNMI Trial Court to the effect that "CDA's
8  approval is necessary for any disbursement of funds for land compensation" was, at
9  most, dictum. Further, as already discussed above, such a statement had no basis in
10 law vis a vis CNMI P.L. 13-17, *as amended*. On the other hand, with respect to the
11 role of the Secretary of Finance in the disbursement process, such was relevant and,
12 in the *Demapan-Castro* case, it his revocation of a prior concurrence that was one of
13 the issues in the case. In this case, no such revocation took place. Rather, it is his
14 concurrence given as a matter of law for which Defendants Brown, CDA, Ada, and
15 BOG ignored. This ignorance, if anything, could be viewed as a futile attempt on the
16 part of these Defendants to revoke the concurrence given in this case.

17

18   **b.   Qualified Immunity May Be Applied to the Bank as a Private Party in the**
     **Circumstances of this Case.**
19
20   Defendant BOG, as a private firm, is not entitled to qualified immunity as
21 a matter of law. *See Ace Beverage v. Lockheed Info. Management, 144 F.3d 1218*
22 *(9th Cir. 1998); citing Richardson v. McKnight, 521 U.S. 399 (1997).*[3]

23

24   **1.   The Bank Falls Within the "Close Supervision" Qualification in**
     **Richardson.**

25   ———————————

26   [3]    Prior to McKnight, the Ninth Circuit had adopted a general rule that private
parties are not entitled to qualified immunity from actions brought under 42 U.S.C. § 1983.
27 *See  Ace Beverage v. Lockheed Info. Management, 144 F.3d at 1219 n. 3, citing*
*Howerton v. Gabica, 708 F.2d 380, 385 n. 10 (9th Cir. 1983); Conner v. City of Santa Ana,*
28 *897 F.2d 1487, 1492 n. 9 (9th Cir. 1990).*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrary to Defendant BOG's argument, its actions in this case clearly shows that it is not subject to any "supervision" by Defendant CNMI. There is no question that Defendant BOG is a "private firm" who entered into the land compensation process in this case for profit. Its ignorance of a specific instruction by the former MPLA to process Plaintiff's requisition, said requisition being concurred to by Defendant Atalig as the Secretary of Finance, is a clear indication that it was not under the supervision of anybody. As already made very clear, through CNMI P.L. 13-17, *as amended*, Defendant CNMI delegated its duties and responsibilities of compensating land owners whose land have been taken to the former MPLA. Defendant BOG chose not to subject itself to the supervision of the former MPLA. This is undisputed!

In *Ace Beverage v. Lockheed Info. Management*, *infra*, Lockheed (a private firm) was hired to process parking tickets for the City of Los Angeles. Its responsibilities included setting ticket disputes for trial. Ace Beverage and other plaintiffs hired a law firm to represent them in challenging their parking tickets. In an apparent retaliation, Lockheed started requiring the law firm to present the original ticket in order to set the matter for trial. This was contrary to its earlier policy of allowing any violator to only present either a copy of the ticket, a notice of a delinquent ticket, or a computer-generated list of parking tickets supplied by the City of Los Angeles. This policy was still being instituted as to all other violators except the law firm's clients, which included Ace Beverage and others. The law firm sued Lockheed and others pursuant to § 1983. The trial court refused to grant Lockheed qualified immunity given that it was a private party. On appeal to the Ninth Circuit, Lockheed argued (much the same as Defendant BOG in this case) that it was entitled to qualified immunity as it did not fall within *McKnight*'s rule because it was under the close supervision of the City of Los Angeles. The Ninth Circuit, citing *McKnight*, rejected such an argument. In so doing, the Ninth Circuit noted that the "[t]he contract between the City and

- 18 -

1  Lockheed provides that Lockheed has the responsibility of general oversight of project

2  activities, while the City will set policy and monitor Lockheed's performance.  The

3  Ninth Circuit further noted the following:

> "This is exactly the type of 'limited direct supervision' by government that the Supreme Court found inadequate to confer qualified immunity in *McKnight*. *See id.* Moreover, the Supreme Court was addressing the question of immunity of employee of a 'firm, systematically organized' to undertake a governmental task, as opposed to 'a private individual briefly associated with a government body, serving as an adjunct to government . . ., or acting under close official supervision.' *Id*. Lockheed is most assuredly in the position of the firm, not the individual, in the Supreme Court's example." *See Lockheed Info. Management, 144 F3d 1219-20.*

In light of the foregoing and the facts of this case as they relate to Defendant

BOG, Defendant BOG is not entitled to the defense of qualified immunity.

> **2.  The Bank Is Entitled to Qualified Immunity Based on Analogous Common Law Immunity**.

Again, for the reasons stated above, Defendant BOG is not entitled

to qualified immunity in this case. More importantly, only immunities recognized under

common law could be asserted in a § 1983 action. *See Tenny v. Brandhove, 341*

*U.S. 367, 376 (1951) (Although we have found immunities in § 1983 that do not*

*appear on the face of the statue, '[w]e do not have a license to establish immunities*

*from § 1983 actions in the interests of what we judges to be sound public policy.")*

Thus, in *Wyatt v. Cole, 504 U.S. 158 (1992)*, the Supreme Court relied on the

common law in concluding that private actors are not entitled to the absolute immunity

granted to some governmental officials, such as prosecutors and judges, *id. at 164-65*,

and that "private persons, who conspire with state officials to violate constitutional

rights" are not entitled to qualified immunity available to other public officials. *Id. at*

*168-69.*

- 19 -

3.    **Public Purpose Criteria in Richardson Warrant Application of Immunity.**

Plaintiff, in response to the foregoing argument, would respectfully incorporate her arguments above which clearly shows that Defendant BOG is not entitled to any immunity in this case, qualified or otherwise.

c.    **If the Bank as a Private Party is Not Entitled to Qualified Immunity, the Bank Has a Good Faith Defense.**

In *Ace Beverage v. Lockheed Info. Management*, 144 F.3d 1218 (9th Cir. 1998), the Ninth Circuit noted that the "[t]he Supreme Court in *McKnight*, left open the possibility 'that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause." *Id. at 1220.* The Ninth Circuit in that case expressed no opinion on this question.  Similarly, in *Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002), the Ninth Circuit also noted that the Supreme Court has never foreclose the possibility for a defense of good faith and/or probable cause, *citing Wyatt*, 504 U.S. at 1689. *See Fox*, 312 F.3d at 444.

In light of the foregoing, it is note worthy to inform this Honorable Court that Defendant BOG, as a "Trustee" in this case, is not entitled to the defense of good faith. *See Restatement of Trust § 201, cmt. b (1959)*. *Comment b* states the following:

> "b. *Mistake of law as to existence of duties and powers*. A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, whether a statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. **In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies upon the advice of counsel.**" *Id*. (*Emphasis added*)

In light of the facts of this case, particularly that of Defendant BOG as a "Trustee," Defendant BOG is not entitled to assert a good faith defense in this case.

**IV.    PLAINTIFF'S § 1985(3) CLAIM FAILS TO SHOW DISCRIMINATION BASED UPON RACE OR OTHERWISE CLASS BASED DISCRIMINATORY ANIMUS.**

Plaintiff, in response, would argue that, at minimum, she has presented sufficient facts upon which a jury could infer that a conspiracy under § 1983 exit in this case. *See Juyel Ashmed et al. v. Robert Goldberg, Civil Action Nos. 00-0005 & 99-0046 (consolidated), Order Granting In Part and Denying In Part Defendant Goldberg's Motion to Dismiss (NMI Dist. Ct. Nov. 14, 2000); citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)* (To establish a conspiracy under § 1983, plaintiff must show "the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured plaintiff.").[4]

Defendants Brown, CDA and Ada had agreed to withhold the processing of Plaintiff's requisition.  Defendant BOG joined in this "agreement" and, as a result, caused Plaintiff  to suffer injuries in this case.

**V.    PLAINTIFF'S SATE LAW CLAIMS MUST BE DISMISSED:**

    **a.    There Is No Common Law Claim Conspiracy Tort in the CNMI Nor Evidence the Bank Conspired.**

Defendant BOG, relying on *I.G.I. General Contractor & Dev., Ins. v. PSS, et. al., 5 N.M.I. 250 (1999)*, argues that there is no tort for civil conspiracy in the CNMI.  And, even if it existed, there is no basis to hold Defendant BOG to it.  *See Defendant BOG's Motion, pg. 23.*

In *Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)*, as mentioned above, the Supreme Court stated that in order to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding

---

⁴    *See e.g. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)* (in order to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding between civilian and officers to deprive plaintiff of her rights).

1  between civilian and officers to deprive plaintiff of her rights. Id. 152.

2  There is no question that Plaintiff has submitted sufficient as to Defendant
3  BOG's participation in withholding the processing of her requisition upon which a jury
4  could infer that a conspiracy existed as between said Defendant and Defendants
5  Brown, CDA and Ada in this case.

6

7  **b.    Plaintiff's Claims for Intentional Interference with Contractual Rights and
        Economic Relations Are Unsupported.**

8
9  Defendant BOG, citing *Restatement of Torts 2nd, § 766* and *Lucky*
10  *Development Co., Ltd. v. Tokai USA Inc., 3 N.M.I. 379 (N.M.I. 1992)*, argues that
11  "[t]he Bank did not 'induce' or 'cause' a third person not to perform any contract. *See*
12  *Defendant BOG's Motion, pg. 23.* In a footnote, Defendant BOG further argues that
13  there was no "third person" given that Defendant CNMI and MPLA are one and the
14  same. *Id.* The foregoing argument misstate the undisputed facts of this case as far
   as Plaintiff's settlement agreement with the former MPLA is concerned.

15
16  As already argued above, pursuant to CNMI P.L. 13-17, *as amended*, the
17  former MPLA was delegated the authority to compensate land owners, an authority
18  that would have been otherwise exercised by Defendant CNMI. In fact, a review of
19  Plaintiff's settlement agreement with the former MPLA makes it undoubtedly clear that
20  the settlement agreement is between only the Plaintiff and MPLA. *See Plaintiff's*
21  *Complaint, Exhibit "D."* That is, MPLA entered into the settlement agreement on its
22  own and definitely not on behalf of Defendant CNMI in light of *CNMI Const. Art. XI,*
23  *§ 3 and CNMI P.L. 12-33, as amended.* As such, MPLA fits the capacity of a "third
24  person" in this case. By agreeing with Defendants Brown, CDA, and Ada to withhold
25  the processing of Plaintiff's requisition that would have allowed Plaintiff to realized the
26  benefit of her bargain from the former MPLA, Defendant BOG prevented the former
27  MPLA from compensating Plaintiff. This is a classic case of interfering with one's
   contractual rights and economic relations.

28

- 22 -

1

**c.    Plaintiff's Breach of Fiduciary Duties Claim Must Be Dismissed as the Bank Owed No Fiduciary Duty to Plaintiff.**

2

3        Plaintiff, in response to this argument, respectfully incorporates all of her

4    arguments presented above in opposition to Defendant BOG's arguments as contained

5    in Section I of its motion.  In sum, CNMI P.L. 13-17, *as amended*, created a "Trust"

6    of which Plaintiff is a "Beneficiary."  The Trustee of this Trust is Defendant BOG.

7

8

**d.    Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress Must Be Dismissed.**

9        Defendant BOG, citing among others *Charfauros v. Board of Elections,*

10    *1998 MP 16 (5 N.M.I. 188 (1998))* and *Restatement of Torts 2d,* § *46*, argues that

11    "[e]ven if this Court were somehow to find the Bank's compliance improper, its

12    compliance was not 'so extreme in degree, as to go beyond all possible bounds of

13    decency, and to be regarded as atrocious, and utterly intolerable in a civilized

14    community."  *See Defendant BOG's Motion, pg. 25*.

15        Without weighing the evidence in this case, Plaintiff has submitted

16    sufficient evidence to support her claims for intentional and negligent infliction of

17    emotional distress in this case.  *See Declaration of Rosario DLG Kumagai*.  Now,

18    whether or not Defendant BOG's conducts meets the elements of the foregoing claim,

19    however, it is for the trier of facts to decide.  In this case, that would be a jury of

20    Plaintiff's peers.

21

22                                    **CONCLUSION:**

23        Based on the foregoing arguments by Plaintiff, Plaintiff respectfully ask that this

24    Honorable Court denies Defendant BOG's Motion for Summary Judgment in this case.

25        Dated this the ___/2h___ day of June, 2006.

26

27

                                    Brien Sers Nicholas, Esq.

28                                    Attorney for Plaintiff

- 23 -