1   **JOAQUIN C. ARRIOLA**
2   **MARK E. COWAN**
    **ARRIOLA, COWAN & ARRIOLA**
3   259 Martyr Street, Suite 201
    P.O. Box X, Hagåtña, Guam 96932
4   Telephone: (671) 477-9730/33
    Telecopier: (671) 477-9734
5
    **VICTORINO D.L.G. TORRES**
6   **VINCENT D.L.G. TORRES**
    **TORRES BROTHERS, P.C.**
7   P.O. Box 501856
8   Saipan, NMI 96950
    Telephone: (670) 233-5504/6
9   Telecopier: (670) 233-5510

10  Attorneys for **BANK OF GUAM**

11          IN THE UNITED STATES DISTRICT COURT FOR
12              THE NORTHERN MARIANA ISLANDS

13  ROSARIO DLG KUMAGAI,                    )    CIVIL ACTION NO. 05-0037
                                            )
14                      Plaintiff,          )
                                            )
15          vs.                             )
                                            )
16  PAMELA BROWN, a.k.a. PAMELA BROWN       )
17  BLACKBURN, personally and in her official )
    capacity as the Attorney General for the )
18  Commonwealth of the Northern Mariana Islands; )
19  FERMIN M. ATALIG, personally and in his )    **DEFENDANT BANK OF GUAM'S**
    official capacity as the Secretary of Finance, )  **REPLY TO PLAINTIFF KUMAGAI'S**
20  COMMONWEALTH OF THE NORTHERN            )    **OPPOSITION TO BANK OF GUAM'S**
    MARIANA ISLANDS;                        )    **MOTION FOR SUMMARY**
21  MARIA LOURDES SEMAN ADA, personally     )    **JUDGMENT**
22  and in her official capacity as the Executive )
    Director for the Commonwealth Development )
23  Authority;                              )
    COMMONWEALTH DEVELOPMENT                )
24  AUTHORITY;                              )    Hearing:   July 20, 2006
25  BANK OF GUAM;                           )
26  and JOHN DOES ONE thru TEN,             )    Time:     9:00 AM
                                            )
27                      Defendants.         )    Judge:    Hon. Alex R. Munson
                                            )
28  _____)

F I L E D
Clerk
District Court

JUN 2 6 2006

For The Northern Mariana Islands
By_____
        (Deputy Clerk)

-1-

**I. The facts in this action are not in material dispute and the Bank is entitled to Summary Judgment.**

Kumagai's opposition contains numerous characterizations as to the Bank's purported motive, intent, or joinder with other parties in deliberate action unsupported by evidence. For example, on page 12, Kumagai asserts the Bank "willfully participated" and "acted in concert" with other Defendants in "an attempt to deprive Plaintiff of her right to her property". At page 15, she states that the Bank shared a "meeting of the minds" to deny Plaintiff a right to property. Plaintiff furnishes no evidence to support these and similar characterizations.[1] Much of Plaintiff's Complaint against the Bank was based on conclusory allegations of conspiracy. Plaintiff has offered no specific evidence of conspiracy. The Declaration of Amoretta Carlson, ¶¶6-8, 12-14, 19, shows that the Bank had no involvement in any of the matters alleged in the Complaint prior to the Bank's initial receipt of the requisition for payment to Plaintiff, and that it withheld processing solely motivated by a desire to comply with what it believed to be a valid instruction of CDA.

It is respectfully submitted that the Bank is entitled to summary judgment on both the federal and state claims asserted against it. In this Court's decisions entered on May 18, 2006 granting the motions to dismiss of the other Defendants, the Court concluded that Plaintiff had failed to state claims of constitutional violation. Those decisions logically support disposition of the federal claims as to the Bank, as do the alternate grounds for summary judgment on those claims submitted by the Bank, including that the Bank was not a state actor, was not the proximate cause of the injuries Plaintiff suffered, and is entitled to either a good faith or qualified immunity defense to the federal

---

[1] Similarly Kumagai asserts on page 5 of her Opposition that the Bank "knew or should have known that it had previously issued compensation to other individuals similarly situated". The statement has no factual support and is contradicted by the Declaration of Amoretta Carlson, ¶¶14-18, demonstrating that the Bank did not have information showing the wetland or non-wetland classification of properties being paid. On the same page, Plaintiff without evidentiary support reiterates an allegation previously made that compensation was paid to another wetland owner during the pendency of the MPLA lawsuit. This also is contradicted by the Carlson Declaration, ¶¶14-17.

-2-

1  claims.[2]

2      The Court dismissed the Section 1985(3) conspiracy claim as to Defendants Brown and
3
4  CDA with leave to amend, and the other federal claims as those Defendants without prejudice. The
5  Court dismissed the federal claims as to Ada and CDA without granting leave to amend, or stating
6  the dismissal was without prejudice, accordingly those dismissals may be construed as with
7  prejudice. U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220 at 241-242 (1st Cir.
8  2004), Wagh v. Metris Direct, Inc., 348 F.3d 1102 at 1113 (9th Cir. 2003), Stewart v. U.S. Bancorp,
9
10  297 F.3d 953 at 957 (9th Cir. 2002).

11      Unlike the case with the other Defendants, the Bank's motion is a motion for summary
12  judgment not a motion to dismiss for failure to state a claim under Rule 12(b)(6). Taking into
13  account the lack of evidence submitted by Plaintiff supporting her claims in response to the Bank's
14  Motion, Summary Judgment should be granted to the Bank. The evidence shows that the Bank was
15  situated differently to the other Defendants in simply acting upon an instruction from the CDA not,
16
17  as may be the case with at least some of the other Defendants herein, initiating the sequence of
18  events which are the basis of Plaintiff's claims.

19      The Bank respectfully submits that the Court may also consider and grant summary judgment
20  upon Plaintiff's local law claims. The Court dismissed those claims as to the other Defendants
21  without prejudice, apparently pursuant to its discretion under 28 USC §1367, which provides in part:
22
23          (a) ... in any civil action of which the district courts have original
24

25      [2]On the issue of constitutional violation the Bank of Guam essentially adopted the arguments made
26  by the other Defendants in support of their motions to dismiss. See, Bank's Memorandum, pp.16-17.
    Kumagai in her Opposition Memorandum similarly incorporated her prior responses on the constitutional
27  issue in those motions. Opposition Memorandum, pp.15-16. Kumagai appears additionally to argue a
    property interest in her settlement agreement with the former MPLA. However, this is not a new argument
28  as was raised in Kumagai's Memorandum in Opposition to CDA's Motion to Dismiss, filed January 17,
    2006, p.4, f/n1.

-3-

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(c)    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -- ... (3) the district court has dismissed all claims over which it has original jurisdiction.

Grant of summary judgment to the Bank on the federal claims would not preclude the Court from granting summary judgment on the state law claims asserted against the Bank. Common facts underlie both the federal and state claims. The local law claims do not involve novel issues of law. In similar circumstances courts in disposing of federal claims on summary judgment have also disposed of state law claims, rather than declining jurisdiction. Lowe v. Unifi, Inc., 292 F.Supp.2d 773 at 789-791 (M.D.N.C., 2003), Heideman v. Wirsing, 840 F.Supp. 1285 at 1302-1303 (W.D. Wis., 1992), Ivy v. Kimbrough, 115 F.3d 550 at 557-553 (8th Cir., 1997), Thurman v. City of Lake St. Louis, 24 F.3d 1034 (8th Cir., 1994).

In considering whether to dismiss the local claims, the Court should consider conservation of judicial energy and the avoidance of multiplicity of litigation.  Fralin v. County of Bucks, 296 F.Supp.2d 609 (E.D. Penn., 2003). Here as the federal and state claims arise out of the same facts it would not suit judicial economy to have the claims, to the extent not disposed of on the merits, pursued as to the Bank in different courts or pursued as to the Bank and other parties in different courts.[3]

Also, to the extent the Court has not dismissed on the merits all federal claims against all Defendants, it is respectfully submitted that the Court has not yet "dismissed all claims over which

---

[3]Here, as in Heideman v. Wirsing, the federal and state claims are "simply different legal approaches to the same set of allegations."  840 F.Supp. 1285 at 1303.

-4-

it had original jurisdiction." A dismissal without prejudice is normally viewed as not final or appealable, Montano v. City of Chicago, 375 F.3d 593 at 597 (7th Cir. 2004).[4] Ordinarily courts declining to exercise supplemental jurisdiction over state law claims after disposition of federal claims do so when the federal claims have all been disposed of by summary judgment or with prejudice. See, e.g., Phillips v. Bailey, 337 F.Supp.2d 804 at 805 (W.D. Va., 2004), Cox v. Maine State Police, 324 F.Supp.2d 128 at 135 (D.Me., 2004). Compare Fralin v. County of Bucks, 296 F.Supp.2d 609 (E.D. Pa., 2003), White v. Union Pacific R.R., 805 F.Supp. 883 at 890 (Kan., 1992), (state law claims not dismissed where some federal claims still viable notwithstanding grant of summary judgment on other federal claims).

## II. Kumagai Is Not a Trust Beneficiary.

The Trust in this case was created by the Indenture. Kumagai does not controvert the Bank's analysis of the Indenture as to CDA's authority under the Indenture, nor the analysis and authorities cited by the Bank showing that under the Indenture Plaintiff is not a beneficiary. Instead, Kumagai argues that the provisions of the Indenture are contrary to law.

Kumagai cites no judicial or other determination in effect at the time of the events at issue or to date that the Indenture in either respect is contrary to law. In Commonwealth v. Demapan-Castro, Civil Action 04-0563, cited in the Bank's Memorandum, p.17, the Court clearly held the Attorney General had authority to question the legality of disbursements by MPLA from the bond proceeds at issue here, and stated that CDA authorization for a disbursement was necessary. Although characterizing that statement as dicta, Kumagai cites no contrary precedent supporting her contention.

Contrary to the statement at page 11 of Kumagai's Opposition, it was Kumagai not Plaintiff

---

[4] The decisions as to the other Defendants are also, at least at this point, not yet final under FRCP 54 and 58.

-5-

that had the opportunity to challenge the legality of CDA's action, and of the Indenture, in the MPLA action since Kumagai, not the Bank, was a party in that action. The Court's statement in Demapan-Castro that CDA's approval is necessary for disbursement reflects the understanding of all parties in interest as to CDA's authority. While MPLA did not include or refer to CDA in its Agreement on Land Compensation Draw Down and Disbursement Procedures, Complaint, Ex.C, it processed all but one requisition through CDA. Carlson Declaration, ¶4. CDA and the Attorney General entered into their agreement that CDA would not approve the requisition (Complaint, Ex.S) without the Bank, and the Attorney General did not join the Bank as a defendant in the MPLA case, or in Demapan-Castro nor did any party seek to compel the Bank's joinder, reflecting the view that the Bank had no independent authority to act on a requisition without CDA concurrence.[5]

As Defendant CDA has pointed out in its Reply filed January 26, 2006, at p.7, the history of amendments to P.L. 13-17, shows that P.L. 13-56 was to restrict authority of MPLA over the Bond proceeds as under earlier versions of the legislation, the Bond proceeds would have been paid to and held by MPLA giving MPLA unrestricted practical control over the funds. The language first included in P.L. 13-56, and reiterated in P.L. 14-29, diminished MPLA control by requiring funds to be held by the CDA appointed Trustee. See, also letter of Governor Babauta signing into law P.L. 14-29, Complaint, Ex.B, pp.2-3. The legislation caused checks on the government's use of its own money, not a trust enforceable directly by third parties. The statement in P.L. 13-56, Section 5, that

---

[5]The Bank's obligations under the Indenture were to the Bondholders and the Commonwealth not third parties challenging the Indenture. In addition to the provisions of the Indenture protecting the Trustee from third party claims, P.L. 11-3, Section 16, 4 CMC §10466, contains provisions designed to protect bonds from legal challenge. The Indenture contains on page 1 a recital of compliance with those conditions with those conditions and with law in issuance of the Bonds, which pursuant to Section 10466 is "conclusive evidence of their validity and the regularity of their issuance". In light of those provisions as well as its obligations to the Commonwealth it would be inappropriate for the Bank to have acted upon the Indenture other than as written, or to respond to a third party demand or claim of illegality until such claim of illegality was established in a timely and appropriate proceeding.

-6-

"the trust funds and earnings hereof are hereby continuously appropriated solely for the purpose of paying out land compensation claims subject to conditions necessary to maintain tax exemption of the bonds ..." is a statement as to how the Commonwealth shall use its own funds, not the creation of a trust enforceable directly by specific landowners against the Trustee.

P.L. 13-56 provided for the land compensation proceeds to be held by the "CDA appointed trustee", and the borrowing was specifically made a borrowing pursuant to P.L. 11-3, under which, as described in the Bank's Memorandum at pp. 2-3, 7-8, CDA represents the Commonwealth in the issuance of the Bonds. It is consistent with P.L. 13-17, as amended, taking into account the provisions of P.L. 11-3, as well as CDA's organic legislation discussed in the Bank's Memorandum, pp. 2-4, for CDA to retain an oversight function in the administration and disbursement of bond proceeds. Such a function is not an infringement upon MPLA's expenditure authority. MPLA has sole authority under the Indenture to initiate a requisition, and to determine compensation. [6] The apparent reason CDA exercised its power to withhold was not on its face arbitrary or irregular as it concerned the legality of the MPLA disbursement. MPLA "expenditure authority" is logically is expenditure authority consistent with law.

### III.    The Bank Was Not a State Actor.

Kumagai does not dispute the authority submitted by the Bank in support of its contention that it is not a state actor, except with respect to the proximate cause analysis, which she suggests is displaced by the state actor requirement. Opposition Memorandum, p.13. The state actor and proximate cause requirements both must be met to impose liability upon a private party. See,

---

[6]Kumagai incorrectly characterizes the Bank as ignoring MPLA, Opposition Memorandum, p.17, this is incorrect. Every requisition the Bank processed originated with the MPLA. It even commenced processing Kumagai's requisition. Carlson Declaration, ¶¶4, 7, 10. What it also took into account was CDA's instruction to withhold.

-7-

Franklin v. Fox, 312 F.3d 423 at 444-446 (9th Cir. 2002).

    **IV.**    **The Bank is Entitled to a Qualified Immunity or Good Faith Defense.**

    Kumagai asserts that the Bank as a Trustee is not entitled to a good faith defense. Kumagai mixes the availability of a good faith defense in a civil rights action, with the availability of a defense in a claim against a private trustee under Plaintiff's state law claims. As shown above and in the Bank's Memorandum the Bank is not a trustee with respect to Plaintiff under the Indenture. Even if a trustee, its liabilities may be limited by the terms and provisions of the trust as exculpatory provisions in a trust are valid, if not contrary to public policy, Restatement of Trusts 2d, §201, cmt. (d), §222. The Indenture in this case provides:

> Neither the Trustee nor the Paying Agent shall be liable in connection with the performance of its duties hereunder, except for its own negligence or willful misconduct.

Indenture of Trust, Section 6.02.

> . . . Trustee and the Paying Agent shall be protected in acting upon any notice, resolution, request, consent, order, certificate, report, Bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

Indenture of Trust, Section 6.03.

    For all the reasons set out in the Bank's Memorandum, pp.15-21, either a qualified immunity, or good faith defense should be held available to and established as to the Bank on the civil rights claims in this case. In Ace Beverage Company v. Lockheed Information Management Services, 144 F.3d 1218 (9th Cir. 1998), the court recognized the "close supervision" exception in Richardson but held it inapplicable on the facts. In that case public functions of parking ticket administration had been largely delegated to a private entity with large discretion and the government only monitoring performance and setting policy. No similar broad discretionary functions were granted

-8-

to the Bank in this case. It disbursed or withheld funds based upon specific government direction.

## V. Section 1985(3) Claim.

While citing this court's decision in <u>Ahmed et al. v. Goldberg</u>, Civil Action No. 00-0005 and 99-0046, Kumagai fails to show evidence of a Section 1985(3) claim consistent with the requirements of that decision, including that allegations of conspiracy must be factually specific and the requirement that there must be some race or otherwise class based invidious discriminatory animus behind the alleged conspirator's actions. See, Decision and Order<u>Ahmed et al. v. Goldberg</u>, pp.15-17.

## VI. State Law Conspiracy Claims.

In response to the Bank's contention that no CNMI Tort for civil conspiracy exists, Kumagai refers to <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), a Supreme Court case concerning conspiracy under Section 1983. Kumagai mixes constitutional and local law conspiracy claims and still fails to demonstrate the existence of any local law conspiracy cause of action, or that one exists against Bank of Guam. Further, Kumagai fails to provide any evidence from which any inference can be drawn of an "understanding" between Bank and any other party to deprive Plaintiff of her rights contrary to the implication in Kumagai's argument.

## VII. Intentional Interference with the Contract Rights and Economic Relations.

Kumagai does not respond to Bank's arguments on this claim other than to assert in response to footnote 6, page 23, of Bank of Guam's Memorandum, that MPLA entered into the Land Compensation Settlement Agreement with Plaintiff on its own account and not on behalf of Defendant CNMI, and accordingly that a "third person" did exist so as to support a contractual

---

[7]While the <u>Ace Beverage</u> suggests that the close supervision exception may be inapplicable to an entity as opposed to an individual, the Fifth and Third Circuits held the exception applicable to entities as well as individuals in <u>Bartell v. Lohiser</u>, 215 F.3d 550 (6th Cir. 2000), and <u>Rosewood Services Inc. v. Sunflower Diversified Services, Inc.</u>, 413 F.3d 1163 (10th Cir. 2005).

-9-

interference claim. The Agreement itself, Exhibit D to Plaintiff's Complaint, clearly shows that MPLA did enter into the Agreement on behalf of the CNMI. See, Complaint, Ex.D, Article 2, stating that MPLA "on behalf of the Commonwealth" agrees to make payment to Plaintiff. See, also, Ex.D, p.1, first through "Whereas" clauses, and Articles 3, 4, and 5. The Agreement was entered into to compensate Plaintiff for a taking in 1993 evidenced by two documents attached together as Exhibit A to the Complaint, neither issued by MPLA.

**VIII.   Intentional and Negligent Infliction of Emotional Distress.**

Plaintiff Kumagai's Declaration provides some evidence of distress, but does not address other elements of an infliction of emotional distress claim which are that the conduct of the party against it asserted must be outrageous, intentional, or reckless. See, Bank's Memorandum, pp.24-25. The Bank acted reasonably in respect to its obligations under the Indenture, which were to the CDA and the Commonwealth, and did not act outrageously, recklessly, or negligently as to Mrs. Kumagai.

**CONCLUSION**

For all the above reasons the Bank's Motion for Summary Judgment should be granted.

Dated:  6/26/06    .

ARRIOLA, COWAN & ARRIOLA
Attorneys for Defendant BANK OF GUAM

By:_____

**MARK E. COWAN**

-10-